# EXHIBIT A

COMMONWEALTH OF VIRGINIA
*CIRCUIT COURT OF FAIRFAX COUNTY*
4110 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
703-691-7320
(Press 3, Press 1)

Ismail Hafiz Hanif vs. Old Town Holdings LLC et al.

CL-2025-0007984

TO:    Alexandria Hotel Company LLC
       Via RA: Vikash K Patel
       2875 Towerview Road, Suite A4
       Herndon VA 20171

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.

Done in the name of the Commonwealth of Virginia, on June 5, 2025.

CHRISTOPHER J. FALCON, CLERK

By: _____
                    Deputy Clerk

Plaintiff's Attorney:  Michael L Daniels

E-FILED

05/30/2025 15:30:06

CL-2025-0007984

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

    By counsel:
    Law Offices of SRIS P.C.
    4008 Williamsburg Court
    Fairfax, VA 22032

      Plaintiff,

v.

**Old Town Holdings, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Alexandria Hotel Company, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Holiday Inn Express & Suites Alexandria - Fort Belvoir,**

    6055 Richmond Highway
    Alexandria, VA 22303

**Haley Hamre, (Individually)**

    4104 Rosewood Dr., Unit 1
    Joint Base Andrews, MD 20762

**Sharon Quinones Ramos, (Individually)**

    955 S. Columbus St. Apt 424
    Arlington VA 22204

Case No.:

1

**Officer Moises Romero,**
(Individually and in his capacity as a
Fairfax County Police Department Officer)

>   Serve: c/o Fairfax County Attorney
>   Office of the County Attorney
>   12000 Government Center Parkway
>   Suite 549 Fairfax, VA, 22035

**Fairfax County Government,**

>   Serve Chairman of the Board of Supervisors
>   Chairman Jeffrey McKay
>   12000 Government Center Parkway, Suite 530
>   Fairfax, VA, 22035
>
>   Serve: Fairfax County Attorney
>   Office of the County Attorney
>   12000 Government Center Parkway, Suite 549
>   Fairfax, VA, 22035

and

**InterContinental Hotels Group Resources, LLC**

>   Serve Registered Agent
>   United Agent Group Inc.
>   425 W. Washington St. Suite 4,
>   Suffolk, Va, 23434-5320

>   Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Ismail H. Hanif (hereinafter "Mr. Hanif" or "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; Officer Moises Romero; Fairfax County, Virginia; and InterContinental Hotels Group Resources, LLC (collectively, where appropriate, "Defendants"), and in support thereof states as follows:

2

## INTRODUCTION

1. This action seeks redress for the profound violation of Plaintiff Ismail H. Hanif's civil and common law rights and the significant damages he suffered when, on September 22, 2023, as a paying and lawfully registered guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir, he was subjected to racial profiling, falsely accused of trespassing by hotel management, who acted with gross negligence and willful misconduct, and then unlawfully detained, assaulted, battered, and falsely arrested by a Fairfax County Police Officer acting with gross negligence and malice.

2. Despite clear, readily available, and ultimately irrefutable evidence confirming Mr. Hanif's status as a lawful guest, the defendant hotel management and the defendant arresting officer engaged in conduct demonstrating a conscious and utter disregard for his rights and safety, culminating in a malicious prosecution for Disorderly Conduct that was ultimately dismissed when the truth of his guest status could no longer be ignored.

## PARTIES

3. **Plaintiff Ismail Hanif** is an individual residing at 1585 Springfield Avenue, Maplewood, NJ 07040. Mr. Hanif is an African American man.

4. Holiday Inn Express & Suites Alexandria - Fort Belvoir (the "Hotel") is a hotel located at 6055 Richmond Highway, Alexandria, VA 22303 and is a place of public accommodation.

5. The name Holiday Inn Express & Suites Alexandria – Fort Belvoir is not separately registered with the Virginia State Corporation Commission ("SCC") as a distinct legal entity or fictitious name, nor are there any close variations listed with the SCC. Upon information and belief, it is the operating name for the hotel premises owned and/or managed by other named Defendants, Alexandria Hotel Company, LLC and Old Town Holdings, LLC.

3

6.    **Defendant Old Town Holdings, LLC** ("Old Town Holdings") is a Virginia limited liability company with a principal office address of 5963 Richmond Highway, Alexandria, VA 22303. Public records indicate that Old Town Holdings is the owner of record for the real property located at 6055 Richmond Highway, Alexandria, VA 22303, where the Hotel Operates.

7.    **Defendant Alexandria Hotel Company, LLC** ("Alexandria Hotel Company") is a Virginia limited liability company with a principal office address of 5963 Richmond Highway, Alexandria, VA 22303. Alexandria Hotel Company, LLC, is the entity that holds itself out as responsible for the day-to-day operations, management, and staffing of the Holiday Inn Express and Suites located at 6055 Richmond Highway, Alexandria, VA 22303. Plaintiff alleges that Alexandria Hotel Company acted as an agent for Old Town Holdings, LLC, and/or Defendant IHG with respect to such operations, the full details of which are within the Defendants' knowledge and will be confirmed through discovery.

8.    **Defendant Haley Hamre** ("Hamre") was, at all relevant times, the Director of Sales at the Hotel and an agent, servant, and/or employee of Old Town Holdings, LLC and/or Alexandria Hotel Company, LLC. Plaintiff further alleges that Hamre acted as an agent of IHG, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with IHG are matters particularly within the knowledge of IHG and the other Hotel Defendants and will be further elucidated through discovery.

9.    **Defendant Sharon Quinones Ramos** ("Quinones Ramos") was, at all relevant times, the General Manager at the Hotel and an agent, servant, and/or employee of Old Town Holdings, LLC and/or Alexandria Hotel Company, LLC. Plaintiff further alleges that Quinones Ramos acted as an agent of IHG, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with IHG are matters particularly within the

4

knowledge of IHG and the other Hotel Defendants and will be further elucidated through discovery.

10. **Defendant Officer Moises Romero** ("Officer Romero") is/was, at all relevant times, a sworn law enforcement officer employed by Defendant Fairfax County, Virginia, through its agency the Fairfax County Police Department ("FCPD"). At all times relevant to this complaint, Officer Romero was acting individually, under color of state law, and within the course and scope of his employment.

11. Officer Romero is the arresting officer in this case.

12. Officer Romero was the first officer on the scene and led the actions, which culminated in Mr. Hanif's unlawful arrest.

13. Fairfax County Police Department (FCPD) is a law enforcement agency and a division of the Fairfax County Government, established pursuant to Virginia law and responsible for the supervision, training and conduct of its officers and employees.

14. **Defendant Fairfax County, Virginia** (the "County") is a political subdivision of the Commonwealth of Virginia. At all relevant times, the County, through its agency, the FCPD, employed, trained, supervised, and was responsible for the conduct of Officer Romero. The FCPD is the law enforcement agency established pursuant to Virginia law and responsible for establishing and enforcing policies, customs, and practices regarding police conduct, including but not limited to, investigations, detentions, arrests, use of force, and the verification of information in situations involving alleged trespassing at public accommodations. The County is liable for the tortious acts of its employees, including Officer Romero, when such acts constitute gross negligence or intentional wrongdoing committed within the scope of employment, thereby falling outside the protection of sovereign immunity.

5

15. Defendant InterContinental Hotels Group Resources, LLC ("IHG") Defendant InterContinental Hotels Group Resources, LLC ("IHG"), also known as IHG Hotels and Resorts, is a foreign limited liability company registered to do business in Virginia.

16. As franchisor for the Holiday Inn brand worldwide, including the subject Hotel, IHG establishes, mandates, and/or enforces brand standards, operational procedures, guest service protocols, and training requirements for its franchisees, including, in this instance, Old Town Holdings, LLC, and/or Alexandria Hotel Company, LLC. These mandated standards and procedures include, but are not limited to, standards concerning guest interactions, non-discrimination, complaint resolution, and procedures for verifying guest status. Plaintiff alleges that IHG exercised sufficient control over the Hotel's operations, policies, and employee training (or exhibited a negligent failure in its oversight or provision of adequate policies and training regarding non-discrimination, de-escalation, and proper guest verification) such that an actual and/or apparent agency relationship exists between IHG and Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Hamre, and Quinones Ramos. The specifics of these control mechanisms, franchise agreements, mandated operational procedures, and training programs are within the exclusive knowledge and possession of IHG and its co-defendants and will be detailed through discovery. Alternatively, Plaintiff alleges that IHG's own policies, training mandates, or the negligent failure to provide adequate policies and training directly and proximately contributed to the violations of Mr. Hanif's rights alleged herein.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the claims asserted herein pursuant to Va. Code § 17.1-513, as the amount in controversy exceeds the jurisdictional limits of the General District Court. This Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1,

6

as the events giving rise to this Complaint occurred in Fairfax County, Virginia, and/or Defendants transact business, reside, or regularly conduct affairs within Fairfax County.

18. Venue is proper in this Court under Va. Code § 8.01-262 because one or more Defendants reside or have their principal place of business in Fairfax County, Virginia, and/or the cause of action, or a part thereof, arose in Fairfax County, Virginia.

## DEFINITIONS

19. For the purposes of this Complaint, "Hotel Defendants" shall refer collectively to Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; and, where agency, vicarious, or direct liability is established by the facts and law, InterContinental Hotels Group Resources, LLC (IHG).

## FACTUAL BACKGROUND

20. On September 22, 2023, Mr. Hanif was a registered and paying guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir. (the "Hotel")

21. Mr. Hanif was lawfully present at the Hotel prior to, during, and at the time of his unlawful arrest.

22. Despite being a lawfully registered guest with all attendant rights and privileges, Mr. Hanif was falsely accused of trespassing by the Hotel staff, specifically including Defendants Hamre and Quinones Ramos, who, acting with gross negligence and/or willful and wanton disregard for the truth, incorrectly and without any reasonable verification stated that Mr. Hanif was not a guest.

23. The Fairfax County Police Department, initially represented by Defendant Officer Romero, arrived at the Hotel in response to the false report instigated by Defendant Hamre.

24. Defendant Officer Romero, deliberately ignoring his training and accepted police practices, acted solely on the unverified and false information provided by the Hotel staff. Without conducting any

7

reasonable or adequate independent investigation to verify Mr. Hanif's guest status, despite multiple opportunities and clear indications that such investigation was warranted, Officer Romero forcibly and unlawfully detained Mr. Hanif, accusing him of trespassing.

25. Mr. Hanif was subsequently arrested by Officer Romero and maliciously charged with disorderly conduct, a charge that was ultimately dismissed by the Commonwealth's Attorney on February 28, 2024, when irrefutable video evidence and the Hotel's own eventual admissions confirmed Mr. Hanif's status as a paying guest and the utter baselessness of the accusations against him. (Fairfax County General District Court, Case No: GC23130096-00).

26. The actions of the Hotel Defendants and Officer Romero were grossly negligent, demonstrated bad faith and malice, and reflected a conscious and utter disregard for Mr. Hanif's clearly established rights as a guest and as a citizen. Specifically:

    a. Hotel management, including Defendants Hamre and Quinones Ramos, took no reasonable steps to confirm whether Mr. Hanif was a guest prior to calling the police and accusing Mr. Hanif of trespassing.

    b. Defendant Officer Romero, and any other officers under his direction or acting in concert with him, refused to take the most basic, reasonable, and readily available steps to confirm whether Mr. Hanif was a guest prior to detaining, assaulting, battering, and arresting him, thereby abdicating their investigative duties.

    c. The Hotel staff, including Defendants Hamre and Quinones Ramos, repeatedly and falsely asserted that Mr. Hanif was not a guest without taking the most basic steps to confirm their allegation and persisted in this false assertion even when presented with clear evidence to the contrary.

8

d. Officer Romero consciously ignored, or was deliberately indifferent to, at least five distinct and compelling facts and statements that would indicate to any reasonable person, let alone a trained and competent police officer, that Mr. Hanif was a lawful guest and that his assertion of being a guest warranted immediate and thorough investigation rather than continued unlawful detention and escalation.

e. The facts and statements ignored by Officer Romero include, but are not limited to:

    i. The presence of a room key in Mr. Hanif's possession, which was found and acknowledged by Officer Romero;

    ii. A Question from a superior officer, Lt. Meeks, about a second guest staying in the room with Mr. Hanif;

    iii. A second officer, Ofc. [Fitzgerald], indicating that there was a guest in the room with Mr. Hanif independent of the superior officer;

    iv. A second officer explicitly stating several times that Mr. Hanif had a room key;

    v. Mr. Hanif's direct and repeated requests for Officer Romero to verify his guest status by checking the Hotel registry, going to his room, or contacting his companion in the room.

f. Officer Romero explicitly stated that he was not going to investigate evidence that would have conclusively shown that Mr. Hanif was a guest because, in Officer Romero's subjective and improper view, Mr. Hanif was not "polite." This statement is a direct admission of an improper, arbitrary, and malicious basis for his official actions, demonstrating a profound abuse of his authority and an utter abdication of his duty to investigate objectively and impartially.

9

## TIMELINE OF EVENTS ON SEPTEMBER 22, 2023
### (Taken from Police Body Camera Video)

27. At or around 8:36 AM on September 22, 2023, Fairfax County Police were called by Hotel staff (Defendant Hamre) and dispatched to the scene for a complaint of a Black man in the breakfast area allegedly cursing and making a disturbance. The caller falsely stated that the man was not a guest of the Hotel.

28. At or around 8:56:37 AM – Officer Romero entered the Hotel lobby.

29. At or around 8:56:52 AM – Defendant Haley Hamre tells Officer Romero that Mr. Hanif is not a Guest.

30. At or around 8:57:29 AM – Defendant Haley Hamre states that she is the director of sales, and the General Manager [Defendant Sharon Quinones Ramos] is not on site yet.

31. At or around 8:57:42 AM – Officer Romero makes his initial contact with Mr. Hanif. Without any lawful provocation, reasonable suspicion, or probable cause, Officer Romero immediately and unlawfully seized Mr. Hanif by physically stopping him from leaving the breakfast area, placing his hand on Mr. Hanif's chest, stopping his forward progress, and pushing him back. Mr. Hanif asked if he was being detained, but Officer Romero refused to answer Mr. Hanif's repeated question about his detention status, further exacerbating the unlawful nature of the seizure.

32. This unwarranted, offensive, and non-consensual touching constituted an assault and battery upon Mr. Hanif by Officer Romero.

33. At or around 8:57:57 AM – Officer Romero states that Mr. Hanif is trespassing.

34. At or around 8:58:03 AM – Mr. Hanif again asks if he is being detained – Officer Romero responds, "If you're going to leave, leave."

10

35. At or around 8:58:01 AM – Officer Romero, without basis, asks Mr. Hanif if he stole anything – escalating the conflict.

36. At or around 8:58:08 AM – Mr. Hanif, relying on Officer Romero's explicit statement that he was free to leave, attempts to do so but is again forcibly stopped by Officer Romero who grabs Mr. Hanif using both hands and forces him back.

37. This action constituted a further unlawful assault and battery.

38. At or around 8:58:12 AM – Officer Romero (again) asks if Mr. Hanif stole anything. In response, the breakfast attendant, Debra, states that Mr. Hanif did not steal anything.

39. At or around 8:58:19 AM – Officer Romero tells Mr. Hanif to leave. Mr. Hanif, understandably confused and agitated by the conflicting commands and false allegations, refuses, and Officer Romero continues to tell Mr. Hanif to leave.

40. At or around 8:58:21 AM – Mr. Hanif says to Officer Romero, "You didn't pay. You leave!" highlighting his status as a paying guest of the Hotel.

41. At or around 8:58:31 AM – Breakfast attendant, Debra, attempts to explain the situation.

42. At or around 8:58:58 AM – Debra (attendant) confirms that the general manager [Defendant Quinones Ramos] is not there, and Officer Romero incorrectly states that Defendant Haley Hamre is the manager.

43. At or around 8:59:19 AM – Mr. Hanif starts recording the encounter and Defendant Haley Hamre attempts to leave the area.

44. At or around 8:59:27 AM, Officer Romero falsely told Mr. Hanif that the Hotel wanted him to leave, but no one from the Hotel had directly asked Mr. Hanif to leave at that time nor would anyone from the Hotel have any lawful basis for asking Mr. Hanif to leave given his status as a paying guest.

11

45. At or around 8:59:37 AM, Officer Romero makes his first direct assertion to Mr. Hanif that Mr. Hanif was not a guest relying solely on the unverified claims of Defendant Hamre.

46. At or around 8:59:40 AM, Mr. Hanif asks how Officer Romero knows that he's not a guest. Officer Romero responds, "They said you're not a guest." Mr. Hanif asks, "how do you know...?" and "Who said that...?"

47. At or around 8:59:51 AM, Mr. Hanif confronts Ms. Hamre asking if she said that he is not a guest.

48. At or around 9:00:05 AM, Officer Romero continued to demand that Mr. Hanif leave.

49. At or around 9:00:27 AM, Officer Romero finally asked Mr. Hanif, if he was a guest, for the first time – several minutes into the hostile encounter and after having physically assaulted Mr. Hanif and giving him conflicting commands.

50. At or around 9:00:28 AM, Mr. Hanif immediately responded that he was a guest.

51. At or around 9:00:30 AM, Rather than accept Mr. Hanif's assertion as the basis for further investigation with the Hotel staff, Officer Romero counters by asking "What room are you staying in?"

52. At or around 9:00:34 AM, Mr. Hanif reiterated that he was a guest for the second time saying, "I told you that I'm a guest, that's all you need to know."

53. At or around 9:00:45 AM, Rather than taking this additional opportunity to investigate, Officer Romero asked Mr. Hanif to leave again and called for support.

54. At or around 9:00:49 AM, Officer Romero stated that Mr. Hanif would be arrested for trespassing if he did not leave.

55. At or around 9:01:03 AM, Mr. Hanif continued to assert that he was a guest.

56. At or around 9:01:52 AM, Mr. Hanif explained why he was upset by the false accusations and unwarranted actions against him by the police and Hotel staff.

12

57. At or around 9:02:23 AM, Mr. Hanif was taken into custody with Officer Armel, who was in plain clothes, assisting in the unlawful arrest.

58. At or around 9:03:09 AM, Defendant Quinones Ramos arrived, passing the officers and Mr. Hanif as they were taking Mr. Hanif out of the hotel lobby.

59. At or around 9:06:06 AM, while searching Mr. Hanif incident to the unlawful arrest, Officer Romero found a Hotel room key card in Mr. Hanif's possession – direct physical evidence confirming Mr. Hanif's guest status.

60. At or around 9:06:54 AM, Officer Fitzgerald ran Mr. Hanif's ID at Officer Romero's Request.

61. At or around 9:07:00 AM, Officer Romero returned to the Hotel Lobby, while Mr. Hanif remained in custody in Officer Romero's squad car.

62. At or around 9:07:12 AM, Defendant Quinones Ramos, now present, asked to have Mr. Hanif trespassed despite having no personal knowledge of the preceding events and without taking any steps to verify Mr. Hanif's guest status.

63. At or around 9:07:14 AM, Officer Romero agreed to this request.

64. At or around 9:07:17 AM, Officer Romero asked if they were sure that Mr. Hanif was not a guest but received no immediate definitive answer that would justify Mr. Hanif's continued detention.

65. At or around 9:07:22 AM, Officer Romero asked Ms. Quinones Ramos if Mr. Hanif was a guest.

66. At or around 9:07:23 AM, Ms. Quinones Ramos falsely denied that Mr. Hanif was a guest.

67. At or around 9:07:24 AM, Officer Romero explicitly informed the Hotel staff, including Defendants Hamre and Quinones Ramos, that Mr. Hanif had a Hotel key card. This direct communication of exculpatory physical evidence put the Hotel staff on undeniable notice of a high probability that Mr. Hanif was a guest.

13

68. At or around 9:07:25 AM, Defendant Quinones Ramos, in a demonstration of gross negligence and a reckless disregard for the truth, again denied that Mr. Hanif could be a guest, dismissively and falsely speculating (of the key card) "he might have picked it up off the floor." This statement by Quinones Ramos demonstrates a willful blindness to the truth and a predetermined, baseless assumption against Mr. Hanif, constituting gross negligence and evidencing malice.

69. At or around 9:08:44 AM, Officer Fitzgerald reported to Lieutenant Meeks that Mr. Hanif claimed to have a guest staying in the room with him further evidence of Mr. Hanif's lawful presence in the Hotel.

70. At or around 9:08:49 AM, Lieutenant Meeks asked why Mr. Hanif would not just "go with the program and go back to his room" but she was apparently unaware that Officer Romero had unlawfully prevented Mr. Hanif from doing so.

71. At or around 9:09:10 AM, Mr. Hanif's ID came back valid, expiring in 2029, with no warrants or alerts.

72. At or around 9:09:39 AM, Lieutenant Meeks went inside and asked Officer Romero and hotel staff if Mr. Hanif had family or a guest staying with him. Officer Romero, again failing to investigate, denied this without checking.

73. At or around 9:09:47 AM, Ms. Quinones Ramos falsely claimed that Mr. Hanif just came in trying to get breakfast and started describing behavior she never witnessed – further demonstrating her commitment to a false narrative.

74. At or around 9:10:55 AM, Ms. Quinones Ramos asked for a trespass form persisting in the unlawful course of action.

75. At or around 9:11:34 AM, Officer Fitzgerald informed Officer Romero that Mr. Hanif said he had another guest staying with him in the room. Officer Romero countered that the general manager

14

(Defendant Quinones Ramos) said Mr. Hanif was not a guest, and, in so doing, Officer Romero demonstrated a reckless disregard for the truth by choosing to rely on demonstrably false information over exculpatory facts.

76. At or around 9:11:41 AM, Officer Isabella stated that Mr. Hanif had a Hotel room key.

77. At or around 9:11:42 AM, Officer Romero confirms that he saw the Hotel room key.

78. At or around 9:11:46 AM, Officer Isabella states a second time that Mr. Hanif had a Hotel room key.

79. At or around 9:11:47 AM, Officer Romero states that he is going to do the trespass form to ban Mr. Hanif from the Hotel per the manager's request – continuing the unlawful arrest and process.

80. At or around 9:11:50 AM, A M. Lieutenant Kuhar asks about the Hotel room key – suggesting that they take the key in to deactivate it if it doesn't belong to Mr. Hanif.

81. At or around 9:11:56 AM, Mr. Hanif asks to speak to a supervisor because, as he correctly stated, "the officers are not doing proper police work."

82. At or around 9:12:33 AM, Officer Isabella showed the room key to Ms. Quinones Ramos, who again denied its significance underscoring her refusal to investigate Mr. Hanif's guest status and further demonstrating her gross negligence in this situation.

83. At or around 9:12:55 AM, Lieutenant Meeks asked if anyone was registered under Mr. Hanif's name. Officer Isabella incorrectly denied this, because no one had actually checked the Hotel's registry at that point.

84. At or around 9:14:07 AM, Ms. Quinones Ramos was still outside, as seen on Officer Fitzgerald's dash cam.

85. At or around 9:14:35 AM, Officer Romero said to Mr. Hanif, "If you had been polite, we would have tried to figure things out." This statement is direct evidence of Officer Romero's malice and

15

his decision to arrest and pursue charges against Mr. Hanif based on personal animus and abuse of authority, rather than on any legitimate law enforcement purpose or probable cause.

86. At or around 9:16:00 AM, Officer Romero tells Lieutenant Meeks that Mr. Hanif wants to speak to a supervisor. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 AM to 09:21:56 AM.

87. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 to 09:21:56.

88. At or around 9:16:06 AM, Defendant Sharon Quinones Ramos stunningly admitted to Officer Romero that Mr. Hanif was indeed a guest staying there with a friend and had checked in with another manager. Ms. Quinones Ramos further stated that the other manager remembered Mr. Hanif and confirmed his check-in, noting his description as a Black man with tattoos on his face.

89. Despite this admission and confirmation of Mr. Hanif's status as a paying guest, Defendant Quinones Ramos outrageously and inexplicably requested that the police proceed with charging Mr. Hanif with trespassing anyway and further requested that the other lawful guest also be removed from the Hotel room. This admission by Defendant Quinones Ramos, made after Mr. Hanif had already been unlawfully arrested and detained based on her and Hamre's false information, unequivocally establishes her actual knowledge of Mr. Hanif's status as a lawful guest. Her subsequent demand to Officer Romero to proceed with trespassing and charging Mr. Hanif despite this knowledge constitutes an act of profound bad faith, actual malice, and a willful and wanton disregard for Mr. Hanif's rights. It further demonstrates that the Hotel Defendants' actions were pretextual and intended to harass Mr. Hanif.

16

90. At or around 9:16:42 AM, The police declined to remove the other guest noting that because Mr. Hanif and the other guest were paid guests of the Hotel, they could not remove the other guest and that only the Hotel management could ask them to leave.

91. Despite this acknowledgement of Mr. Hanif's rights as a guest, the police unlawfully kept Mr. Hanif in custody.

92. At or around 9:16:57 AM, Ms. Quinones Ramos receives the completed trespass form from Officer Romero, asks if the name on the form is Mr. Hanif's name, and then signs the form – despite knowing that Mr. Hanif was actually a guest in the Hotel.

93. At or around 9:18:03 AM, Officer Isabela and Officer Romero joked about giving Mr. Hanif a parking ticket further showcasing their unprofessional conduct and callous indifference for Mr. Hanif's rights.

94. At or around 9:18:33 AM, Officer Romero suggested running the plates on Mr. Hanif's vehicle to see if Mr. Hanif's car was stolen. Officer Isabella runs the plates – a fishing expedition without any basis and a blatant attempt to find some reason to justify Mr. Hanif's continued detention.

95. At or around 9:24:34 AM, Lieutenant Meeks and Officer Isabella confirmed with Hotel staff that Mr. Hanif was the registered guest for room 121.

96. At or around 9:25:11 AM, Defendant Haley Hamre referred to Mr. Hanif as the guest.

97. At or around 9:25:39 AM, the Hotel staff confirmed that Mr. Hanif was the paid guest for the room.

98. At or around 9:28:00 AM, Officers Meeks and Isabella visited room 121.

99. At or around 9:28:39 AM, officers Meeks and Isabella personally confirmed that a guest named Talia was also a guest in room 121 and that Mr. Hanif was the registered guest for that room.

17

100. Despite all the unequivocal proof of Mr. Hanif's status as a paying guest, Mr. Hanif was still transported and processed on a criminal charge. The decision by Officer Romero and supervising officers to transport and process Mr. Hanif despite the mountain of exculpatory evidence and the Hotel's admission demonstrates a reckless, if not intentional, continuation of an unlawful arrest and initiation of a malicious prosecution, undertaken with gross negligence and/or malice.

### COUNT I – DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF VA. CODE 2.2-3904 ET SEQ. (VIRGINIA HUMAN RIGHTS ACT)

### (Against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; and InterContinental Hotels Group Resources, LLC)

101. Plaintiff incorporates and realleges the facts in paragraphs 1 - 100 as if fully set forth herein.

102. The foregoing events took place on September 22, 2023

103. As a direct result of the actions of the Hotel Defendants, instigated by their false reports and discriminatory animus, Officer Romero arrested Mr. Hanif. Mr. Hanif was subsequently charged with Criminal Disorderly Conduct in violation of Va. Code § 18.2-415, a misdemeanor..

104. The disorderly conduct charge against Mr. Hanif was pending until February 28, 2024, when it was dismissed by the Commonwealth.

105. The disorderly conduct charge was pending for a period of 160 Days.

106. On September 10, 2024, 195 days after the conclusion of the criminal case against Mr. Hanif, Counsel for Mr. Hanif filed two complaints with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") alleging: 1) Discrimination in a Place of Public Accommodation; and 2) Law Enforcement Misconduct.

107. On March 24, 2025, 196 days after the initial filing of Mr. Hanif's complaints with OCR, counsel for Mr. Hanif requested a "Right to Sue" letter from OCR and made a second request for the same on April 7, 2025.

18

108. On April 15,2025, counsel for Mr. Hanif received a Notice of Right to Sue from OCR. (Exhibit 1 – Right to Sue Notice.)

109. Va. Code § 2.2-3904 defines a "Place of public accommodation" as "all places or businesses offering or holding out to the general public goods, services, privileges, facilities, advantages, or accommodations." The Hotel was, at all relevant times, a place of public accommodation.

110. It is unlawful for any person, including the Hotel Defendants, to deny any individual, or to make any distinction, discrimination, or restriction on account of race, color, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. (Va. Code § 2.2-3904(B)).

111. On September 21, 2023, Mr. Hanif, a African American man, checked in to the Hotel as a registered and paying guest.

112. At that time, one of the amenities offered and available to registered guests was an included breakfast in the Hotel's designated breakfast facility.

113. On the morning of September 22, 2023, Mr. Hanif entered the lobby through the front door, after leaving his vehicle, which was parked in the Hotel parking lot.

114. Mr. Hanif proceeded to the breakfast area, as was his right as a guest, without returning to his room.

115. The breakfast attendant, Debra, asked Mr. Hanif if he was a guest.

116. Mr. Hanif, perceiving he was being singled out due to his race, responded by asking if the attendant had asked all of the other (non-African American) guests in the breakfast area if they were guests.

117. Mr. Hanif then informed the attendant that he was a guest and proceeded to have breakfast.

19

118. At the time Mr. Hanif arrived for breakfast, the guests in the breakfast area were predominantly of other races, and Mr. Hanif was one of very few, if not the only, African American guests in the breakfast area at that moment. These facts relating to the racial composition of the guests are based on Mr. Hanif's direct observations.

119. Notwithstanding the exchange between Mr. Hanif and the attendant, Mr. Hanif sat alone and quietly had breakfast without further incident, or disturbance until confronted by Defendant Hamre and Defendant Officer Romero.

120. The Hotel staff, specifically Defendant Hamre, acting on discriminatory animus and/or as a result of conscious or unconscious bias due to Mr. Hanif's race, called the police and falsely stated that Mr. Hanif was creating a disturbance and was not a guest.

121. Defendant Hamre's claim that Mr. Hanif was not a guest was made without any reasonable basis or verification of Mr. Hanif's status as a guest.

122. Mr. Hanif was identified by his race ("Black Man") and clothing on the call to police and not by name.

123. The Hotel management, including Defendants Hamre and Quinones Ramos, did not ask Mr. Hanif to leave the Hotel based on any legitimate, non-discriminatory reason (nor, initially, at all), nor did they take any reasonable steps to confirm his status as a paying guest prior to calling the police and instigating his removal and arrest.

124. This failure to verify, and immediate escalation to police action, was motivated, in whole or in substantial part, by Mr. Hanif's race and/or his appearance as an African American man, and constituted a deviation from how similarly situated non-African American guests would have been treated under like circumstances. Alternatively, if such actions represent standard practice, then such practice itself is discriminatory.

20

125. In order to induce the police to detain and arrest Mr. Hanif, and motivated by discriminatory animus, the Hotel Defendants, through Defendant Hamre and subsequently through Defendant Quinones Ramos, falsely and repeatedly claimed that Mr. Hanif was not a guest, thereby denying him, on account of his race, the full and equal enjoyment of the Hotel's accommodations, privileges, and services, including the right to be present in the Hotel and enjoy its amenities without being disturbed by baseless accusations and police intervention.

126. Prior to his arrest, Mr. Hanif informed Officer Romero that he was a guest.

127. Despite Mr. Hanif's insistence that he was a guest and numerous objective facts confirming this (e.g., his possession of a Hotel room key card, his assertion that a second guest was staying in the room with him, and his offer to prove his status), the Hotel staff, particularly Defendants Hamre and Quinones Ramos, driven by discriminatory bias, still insisted on his arrest and removal.

128. When confronted by the police with the fact that Mr. Hanif had a Hotel key card in his possession, Defendant Quinones Ramos, reflecting her discriminatory assumptions and determination to deny Mr. Hanif his rights as a guest, callously and baselessly dismissed this crucial evidence, falsely speculating that he might have picked the key card up from the floor. This statement further evidenced her unsubstantiated and biased position that Mr. Hanif, an African American man, could not possibly be a guest and her resolve to deny him the resulting services and privileges in this place of public accommodation.

129. Defendant Quinones Ramos falsely indicated to police that Mr. Hanif just came in off the street and was loading up on breakfast – despite the fact that she was not present to witness any of the events leading to the arrest and had no factual basis for this assertion.

130. Even after Defendant Quinones Ramos internally confirmed through another manager that Mr. Hanif was indeed a registered guest (based on his description as a Black man with tattoos on his

21

face – itself a racial identifier used in the context), she persisted in her discriminatory course of conduct.

131. Despite knowing that Mr. Hanif was a guest, Defendant Quinones Ramos still insisted on having Mr. Hanif "trespassed" and removed, effectively seeking to punish him for behavior she never witnessed and which was, in any event, a reaction to the Hotel Defendants' own discriminatory and provocative actions. This insistence was pretextual and a continuation of the discriminatory treatment against Mr. Hanif on account of his race.

132. The actions of the Hotel Defendants, including Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Haley Hamre, and Sharon Quinones Ramos, individually and collectively, by treating Mr. Hanif differently and less favorably than non-African American guests, and by denying him services and instigating his false arrest based on his race, constituted unlawful discrimination by denying Mr. Hanif, on the basis of his race and color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hotel, in direct violation of Va. Code § 2.2-3904(B).

133. Defendant IHG is vicariously liable for the discriminatory acts of its agents Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Hamre, and Quinones Ramos, who were acting within the scope of their actual and/or apparent agency and in furtherance of IHG's business, as previously alleged. Furthermore, Plaintiff alleges that Defendant IHG, through its franchise agreements, its mandatory training programs (or its negligent failure to provide adequate training regarding non-discrimination, implicit bias, de-escalation, and proper guest verification), and/or its control or right of control over operational standards, created an environment wherein such discriminatory actions by its franchisee's employees were foreseeable and inadequately addressed, and/or directly contributed to the denial of Mr. Hanif's rights. The specific details of IHG's franchise agreements,

22

training programs, and mechanisms of control or oversight which establish this liability are within the exclusive knowledge and possession of IHG and will be established through discovery. IHG's failure to ensure its franchisees and their employees complied with non-discrimination laws and basic guest verification protocols constitutes a breach of its own duties and/or ratifies the discriminatory conduct.

134. As a direct and proximate result of this unlawful discrimination by the Hotel Defendants, Mr. Hanif suffered a deprivation of his civil rights, false arrest, unlawful detention, malicious prosecution, assault, battery, significant emotional distress, humiliation, fear, anxiety, damage to his reputation, and other consequential damages, including the need to retain legal counsel for his criminal defense.

## COUNT II – ASSAULT AND BATTERY

### (Against Officer Moises Romero and Fairfax County, Virginia)

135. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 as if fully set forth herein.

136. At Officer Romero's initial contact with Mr. Hanif, on September 22, 2023, when Mr. Hanif, a lawful guest of the Hotel, attempted to walk past him in the breakfast area, Defendant Officer Romero committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif when he placed his hand on Mr. Hanif's chest and physically pushed him backward.

137. This act by Defendant Officer Romero also constituted an intentional assault as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of an imminent battery and further harmful or offensive contact.

23

138. Mr. Hanif asked Officer Romero several times if he was being detained. Officer Romero evasively responded, "If you're going to leave, leave," thereby affirmatively representing to Mr. Hanif that he was not detained and was free to depart.

139. Relying on Officer Romero's explicit representation that he was free to leave, Mr. Hanif again attempted to walk past Officer Romero and leave the area.

140. Rather than permit Mr. Hanif to leave as Officer Romero had just represented he could, and without informing Mr. Hanif that he was being detained or providing any lawful basis whatsoever for such detention or renewed use of force, Officer Romero again committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif, using both hands to forcibly push Mr. Hanif back and continue the unlawful seizure and confrontation.

141. This second act of unwanted and offensive physical force by Defendant Officer Romero also constituted an intentional assault, as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of further imminent battery and harmful or offensive contact.

142. Mr. Hanif did not consent to being touched, pushed, or physically handled in any way by Officer Romero.

143. At all relevant times, Mr. Hanif was a lawful and registered guest of the Hotel and had a clear legal right to be on the premises.

144. Mr. Hanif was not trespassing, nor was he engaged in any unlawful activity that would justify Officer Romero's use of force or physical contact when Officer Romero arrived or during these initial, unprovoked interactions.

24

145. Officer Romero's physical actions and use of force were not privileged under the circumstances, as Mr. Hanif was not actively resisting a lawful arrest (as no lawful basis for arrest existed at that time, nor had any intent to arrest been communicated), was not committing any offense in Officer Romero's presence justifying such force, posed no threat to Officer Romero or others, and was attempting to comply with or clarify Officer Romero's ambiguous and conflicting statements, including his representation that Mr. Hanif could leave.

146. Officer Romero's unconsented, offensive, and unjustified physical contact with Mr. Hanif constituted assault and battery.

147. Officer Romero was at all times acting in his official capacity as a Fairfax County Police Officer and within the course and scope of his employment with Defendant Fairfax County. His actions, however, were undertaken with gross negligence and/or malice, thereby exceeding the scope of any legitimate discretionary authority.

148. Defendant Fairfax County is vicariously liable for the assault and battery committed by its employee, Officer Romero. Officer Romero's actions, constituting intentional torts (assault and battery) committed with malice and/or gross negligence in the performance of his duties, fall outside the protection of sovereign immunity generally afforded to the County for the simple negligence of its employees. The County's liability arises from respondeat superior for these non-immunized acts.

149. As a direct and proximate result of the assault and battery committed by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered physical injury, pain, physical discomfort, offensive touching, fear, intimidation, severe emotional distress, public humiliation, and other damages.

25

### Count III – False Arrest

**(Against Defendants Officer Moises Romero; Fairfax County, Virginia; Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; and Sharon Quinones Ramos)**

150. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 149 as if fully set forth herein.

151. Defendants, acting individually and in concert, intentionally and unlawfully caused Mr. Hanif to be confined and detained against his will, without his consent, and without legal justification or privilege.

152. Defendant Officer Romero effectuated the arrest and confinement of Mr. Hanif by: (a) physically restraining him through repeated assaults and batteries; (b) verbally commanding him and asserting authority over his freedom of movement; (c) formally placing him in custody and handcuffing him; and (d) transporting him in a police vehicle to a police station for processing.

153. Mr. Hanif was conscious of this confinement and did not consent to it.

154. The arrest and confinement of Mr. Hanif were without probable cause, and therefore unlawful and unprivileged, because:

    a. Mr. Hanif was initially detained and subsequently arrested ostensibly for trespassing, yet, as Defendants knew or should have known through any reasonable inquiry, he was a confirmed, paying, and lawful guest of the Hotel with an absolute legal right to be present on the premises. No probable cause existed to believe he was trespassing.

    b. Neither Officer Romero nor the Hotel Defendants (Hamre and Quinones Ramos) conducted any objectively reasonable, or indeed any meaningful, verification of Mr. Hanif's guest status via the Hotel registry, by checking his key, or through other readily available means before instigating, causing, and effectuating his arrest for trespassing. This failure was a conscious dereliction of duty.

26

    c.  The subsequent charge of disorderly conduct was pretextual and also lacked probable cause, as detailed in Count IV (Malicious Prosecution).

    d.  At no point did Officer Romero possess articulable facts sufficient to establish probable cause that Mr. Hanif had committed, was committing, or was about to commit any crime that would justify his seizure and arrest.

155. Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Haley Hamre, and Sharon Quinones Ramos (the "Hotel Instigating Defendants" for this Count) actively instigated, participated in, and proximately caused Mr. Hanif's false arrest by:

    a.  Knowingly or with reckless disregard for the truth providing false and misleading information to Officer Romero that Mr. Hanif was not a guest and was trespassing;

    b.  Persistently demanding, encouraging, and/or importuning Officer Romero to arrest and/or trespass Mr. Hanif based on this false and unverified information, thereby substituting their unlawful demands for the officer's independent judgment;

    c.  Continuing to insist on Mr. Hanif's arrest and trespass even after Defendant Quinones Ramos possessed actual knowledge and had admitted that Mr. Hanif was, in fact, a registered and lawful guest, thereby demonstrating malice and an intent to cause an unlawful arrest.

156. Defendant Officer Romero knew, or in the exercise of reasonable diligence and adherence to standard police practices should have known, that there was no probable cause to arrest Mr. Hanif for trespassing or any other offense. His awareness of the presence of the room key, Mr. Hanif's consistent assertions of guest status, statements from other officers regarding the key and a second guest, and the utter failure of Hotel staff to provide credible, verified information, all negated any reasonable belief that Mr. Hanif was trespassing.

27

157. Officer Romero's decision to arrest Mr. Hanif under these circumstances was made with reckless disregard for Mr. Hanif's rights, lacked any lawful basis, and constituted an abuse of his lawful authority and/or gross negligence.

158. Defendant Fairfax County is vicariously liable for the false arrest/false imprisonment committed by its employee, Officer Romero. Officer Romero's actions in arresting Mr. Hanif without probable cause constituted gross negligence and/or an intentional tort (false arrest/imprisonment) committed with malice or an abuse of lawful authority, thereby falling outside the protection of sovereign immunity. The County's liability arises from respondeat superior for these non-immunized acts.

159. As a direct and proximate result of the false arrest instigated and carried out by Defendants, Mr. Hanif suffered significant damages, including but not limited to loss of liberty, physical discomfort and injury from handcuffing and transport, public humiliation, emotional distress, psychological harm including anxiety and fear, damage to his reputation, and financial losses including costs associated with his arrest, detention, and defense of the unsubstantiated disorderly conduct case.

## Count IV – Malicious Prosecution
### (Against Defendant Officer Moises Romero and Defendant Fairfax County)

160. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161. Defendant Officer Romero instituted and caused to be continued a criminal proceeding (Fairfax County General District Court Case No: GC23130096-00) against Mr. Hanif for the specific criminal offense of disorderly conduct, in violation of Virginia Code § 18.2-415.

162. The aforementioned criminal proceeding for disorderly conduct was terminated in Mr. Hanif's favor on February 28, 2024, when the Commonwealth's Attorney, recognizing the lack of merit,

28

moved to dismiss the charge (nolle prosequi or dismissed). This termination was indicative of Mr. Hanif's actual innocence of the charge.

163. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero without probable cause.

    a. Virginia Code § 18.2-415 requires conduct having a direct tendency to cause acts of violence by the person or persons at whom it is directed.

    b. At no point did Mr. Hanif's conduct, even when understandably and justifiably agitated by being falsely accused, unlawfully detained, and physically assaulted, have a direct tendency to cause acts of violence by anyone. His words and actions were a direct and foreseeable reaction to the unlawful conduct of the Defendants.

    c. This contention is supported by the fact that no one, including Officer Romero or any Hotel staff, responded to Mr. Hanif with violence or indicated they felt imminently threatened by violence from him.

    d. Officer Romero did not witness any conduct by Mr. Hanif upon his arrival that could remotely constitute disorderly conduct; Mr. Hanif was quietly finishing his breakfast.

    e. Any agitation displayed by Mr. Hanif was a direct and foreseeable result of the provocative, unlawful, and rights-violating actions of Officer Romero and the Hotel Defendants, including false accusations of theft and trespassing, and Officer Romero's physical assaults and unlawful detention.

    f. Officer Romero and other officers were aware, or became aware prior to formalizing the charge of disorderly conduct, that Mr. Hanif was a paying and lawful guest and thus not trespassing.

29

g. The disorderly conduct charge was, therefore, a pretextual charge manufactured by Officer Romero to attempt to justify an already unlawful arrest and detention, initiated after any conceivable basis for any trespass claim had evaporated and was known by him to be false.

h. The Fairfax County Magistrate refused to issue a trespassing charge against Mr. Hanif precisely because he was a paying guest of the Hotel, further evidencing the lack of probable cause for any initial detention or arrest related to his presence, and highlighting the baselessness of Officer Romero then pivoting to a disorderly conduct charge.

164. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero with malice. Facts that show Officer Romero's Malice include, but are not limited to the following:

a. Malice is directly evidenced by Officer Romero's statement to Mr. Hanif, "If you had been polite, we would have tried to figure things out," an unambiguous admission that the decision to arrest and prosecute was motivated by Officer Romero's personal animus, displeasure, or as a means of punishment, rather than a good faith belief based on facts that Mr. Hanif had committed any crime.

b. Malice is further evidenced by Officer Romero proceeding with and fabricating the disorderly conduct charge despite the utter lack of any reasonable factual basis, knowing the initial trespass claims from the hotel were false or unverified, and after the hotel management themselves had confirmed Mr. Hanif was a guest but, through Defendant Quinones Ramos, still outrageously desired his continued detention and prosecution. Officer Romero's alignment with this malicious civilian desire, rather than adherence to law and fact, demonstrates his own malice.

30

    c.  The pursuit of the disorderly conduct charge as a pretext after the trespassing allegation was known by Officer Romero to be false, demonstrates a willful and malicious disregard for Mr. Hanif's rights and an improper purpose to injure Mr. Hanif.

    d.  Malice is further evidenced by Officer Romero's participation in jokes about giving Mr. Hanif a parking ticket and his suggestion to run the plates on Mr. Hanif's car to see if it was stolen, all while Mr. Hanif was unlawfully detained. These actions demonstrate a vindictive mindset and an attempt to find *any* charge to levy against Mr. Hanif, irrespective of actual wrongdoing – a further indication of malice.

165. Defendant Fairfax County is vicariously liable for the malicious prosecution initiated and continued by its employee, Officer Romero. Officer Romero's actions in pursuing a baseless charge with malice constituted an intentional tort committed in the scope of his employment but far exceeded any legitimate exercise of police discretion, thus falling outside the protection of sovereign immunity.

166. As a direct and proximate result of the malicious prosecution by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered significant damages, including but not limited to legal fees and costs incurred in his criminal defense, loss of liberty during the arrest and booking process, damage to his reputation and standing in the community, profound emotional distress including humiliation, anxiety, anger, and fear, psychological harm, and other consequential damages.

31

## Count V: Gross Negligence

**(Against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; and Sharon Quinones Ramos**
**(collectively the "Hotel Gross Negligence Defendants" for this Count))**

167. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 166 as if fully set forth herein.

168. Defendants Old Town Holdings, LLC and Alexandria Hotel Company, LLC (collectively, the "Corporate Hotel Defendants" for this Count) own and/or operate the Hotel as a place of public accommodation for paying guests.

169. Defendants Haley Hamre and Sharon Quinones Ramos were, at all relevant times, managerial employees and/or agents of the Corporate Hotel Defendants, acting within the course and scope of their employment and agency, and vested with authority concerning guest interactions and hotel security.

170. As innkeepers, the Corporate Hotel Defendants, and through them their agents and employees Hamre and Quinones Ramos, owed Mr. Hanif, a registered and lawful paying guest, a legal duty of reasonable care.

171. This duty of reasonable care included, but was not limited to, the duty to:

　　a. Accurately and diligently verify his guest status before accusing him of trespassing or causing law enforcement to be summoned to remove him or arrest him for such an offense.

　　b. Refrain from making false, unverified, or reckless accusations against him to law enforcement that would foreseeably lead to his detention or arrest.

32

    c.  Take prompt and reasonable steps to investigate and correctly resolve guest status inquiries, particularly when a person asserts guest status, before escalating to police action and instigating arrest.

    d.  Ensure their conduct, policies, and procedures (or lack thereof) did not create an unreasonable risk of, or actually lead to, the false accusation, false arrest, or wrongful deprivation of liberty of a lawful guest.

    e.  Train and supervise their employees, including managerial staff like Hamre and Quinones Ramos, on proper, non-discriminatory guest verification procedures, de-escalation techniques, and the critical importance of accurate information when involving law enforcement.

    f.  Exercise prudence and diligence in their interactions with guests to protect them from unwarranted harm, humiliation, and deprivation of their rights on the Hotel premises.

172. Defendants Hamre and Quinones Ramos, acting individually and on behalf of the Corporate Hotel Defendants, breached these duties in a manner that demonstrated such an utter disregard of prudence as to constitute a complete neglect of the safety and rights of Mr. Hanif, thereby constituting gross negligence under Virginia law.

173. The gross negligence of these Hotel Gross Negligence Defendants, individually and collectively, is evidenced by, inter alia, their numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of their legal duties respecting the rights of Mr. Hanif, including but not limited to:

    a.  Defendant Hamre initiating a police call and instigating police action based on a false report that Mr. Hanif was trespassing and causing a disturbance, without any prior

33

attempt to verify Mr. Hanif's readily ascertainable guest status, thereby recklessly setting in motion the chain of events that harmed Mr. Hanif.

b.  Both Defendants Hamre and Quinones Ramos completely failing to check the Hotel's guest registry, consult with other staff who may have checked Mr. Hanif in, examine Mr. Hanif's key if offered, or make other simple, obvious, and readily available inquiries to confirm Mr. Hanif's status, despite his repeated assertions of being a guest and the high stakes of involving police for a trespass accusation. This failure showed an utter indifference to their duty of care.

c.  Defendant Quinones Ramos, upon being informed by police that Mr. Hanif possessed a Hotel room key – strong evidence of his guest status – outrightly and contemptuously dismissing this critical fact by baselessly and illogically speculating he "picked it up off the floor," thereby demonstrating a deliberate refusal to consider exculpatory evidence and an utter disregard for prudence.

d.  Defendant Quinones Ramos providing false and inflammatory information to the police that Mr. Hanif "just came in off the street," an event she did not witness and had no factual basis to assert, thereby recklessly exacerbating the situation and misleading law enforcement with a complete neglect for the truth.

e.  Defendant Quinones Ramos, even after internally confirming through another manager that Mr. Hanif was indeed a registered guest (meaning she possessed actual knowledge of his lawful status), shockingly and maliciously insisting that police proceed with trespassing him and continue with his arrest. This act demonstrates not merely a lack of care, but a conscious and utter disregard for Mr. Hanif's known legal right to be on the

34

premises and a complete neglect of her duties as an innkeeper, rising to the level of gross negligence and/or willful misconduct.

f.  The Corporate Hotel Defendants' failure to implement and enforce adequate policies and training for their employees regarding proper guest verification, non-discriminatory guest treatment, and appropriate procedures for addressing alleged disturbances without recklessly involving law enforcement against lawful guests, which created the conditions for and foreseeably led to the gross negligence of Hamre and Quinones Ramos.

174. The conduct of Defendants Hamre, Quinones Ramos, and vicariously the Corporate Hotel Defendants (Old Town Holdings, LLC and Alexandria Hotel Company, LLC), was not merely a failure to exercise ordinary care, but demonstrated a degree of negligence showing an utter disregard of prudence amounting to a complete neglect of the safety and fundamental rights of Mr. Hanif, a paying guest, and constituted a heedless and palpable violation of legal duties owed to him, thereby constituting gross negligence.

175. As a direct and proximate result of this gross negligence by the Hotel Gross Negligence Defendants, Mr. Hanif was falsely accused, unlawfully detained and arrested, publicly humiliated, subjected to physical restraint, endured a malicious criminal prosecution, was deprived of his liberty, and suffered severe emotional distress, psychological harm, damage to his reputation, and other consequential damages.

## Count VI: Gross Negligence
### (Against Defendants Officer Romero, and Fairfax County, Virginia)

176. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 175 as if fully set forth herein.

35

177. At all relevant times on September 22, 2023, Defendant Officer Moises Romero was acting under color of state law and within the course and scope of his employment as a sworn law enforcement officer of the Fairfax County Police Department, an agency of Defendant Fairfax County.

178. As a law enforcement officer, Officer Romero owed Mr. Hanif, and the public generally, a legal duty to perform his police duties with reasonable care and in compliance with established law, police department policies, and accepted police practices. This duty included, but was not limited to, the duty to conduct adequate and objective investigations before depriving an individual of liberty, to verify information before acting upon it to arrest, to refrain from using excessive or unwarranted force, to not arrest individuals without probable cause, and to act impartially without regard to personal pique or animus.

179. Defendant Officer Romero breached these duties in a manner so egregious that it evinced an utter disregard of prudence and a complete neglect of Mr. Hanif's constitutional and common law rights, thereby constituting gross negligence.

180. Officer Romero's gross negligence is evidenced by, inter alia, his numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of his legal duties respecting the rights of Mr. Hanif, including but not limited to:

   a. Failing entirely to take the most basic, reasonable, and readily available investigative steps to verify Mr. Hanif's lawful guest status (such as checking the Hotel registry, checking the room key, or speaking with Mr. Hanif's companion) before detaining, assaulting, battering, and arresting him, despite Mr. Hanif's repeated assertions of guest status and the presence of multiple pieces of clearly exculpatory evidence. This was a complete abdication of his investigative duty.

36

b.   Willfully and inexplicably disregarding or consciously choosing to ignore clear, compelling, and readily apparent exculpatory facts that overwhelmingly indicated Mr. Hanif was a lawful guest. These facts included Mr. Hanif's possession of a working Hotel room key (which Officer Romero saw), information from other officers about the key and a second guest in Mr. Hanif's room, and Mr. Hanif's own direct requests to verify his status with his companion guest or the Hotel registry. Such disregard shows a complete neglect of his duty to consider all facts.

c.   Unnecessarily and unlawfully escalating a verbal encounter, which he himself initiated based on false information, into a physical one by repeatedly assaulting and battering Mr. Hanif without any lawful justification, privilege, or provocation from Mr. Hanif.

d.   Arresting Mr. Hanif for trespassing without a shred of credible evidence amounting to probable cause, and in the face of substantial evidence showing he was a lawful guest, thereby demonstrating a complete neglect of the probable cause requirement.

e.   His unambiguous statement that "If you had been polite, we would have tried to figure things out," which is a direct admission that his decision-making process regarding Mr. Hanif's liberty was improperly and arbitrarily influenced by his personal feelings or animus rather than by objective facts, established police procedure, and law. This constitutes a reckless and flagrant dereliction of his sworn duty to act impartially and justly, amounting to an utter disregard of prudence.

f.   Participating in, encouraging, and facilitating the continuation of Mr. Hanif's unlawful detention and subsequent malicious prosecution for disorderly conduct even as evidence overwhelmingly and irrefutably confirmed his innocence of any trespass and the

37

baselessness of the disorderly conduct charge. This demonstrates a complete neglect for Mr. Hanif's rights once falsely accused.

g. Failing to de-escalate the situation, and instead actively escalating it through baseless accusations (e.g., "did you steal anything?"), physical force, and conflicting commands, contrary to accepted police practices and demonstrating an utter disregard for the safety and rights of Mr. Hanif.

181. This conduct by Officer Romero was so egregious, reckless, and indifferent to the rights and safety of Mr. Hanif that it rises far above simple negligence to the level of gross negligence, thereby stripping Officer Romero and, vicariously, Fairfax County of any immunity (including common law qualified immunity for discretionary acts or sovereign immunity) to which they might otherwise claim entitlement under Virginia law.

182. Defendant Fairfax County, as Officer Romero's employer, is vicariously liable under the doctrine of respondeat superior for the injuries and damages caused by Officer Romero's gross negligence committed within the course and scope of his employment, as such gross negligence is not protected by sovereign immunity.

183. The sovereign immunity of Fairfax County does not extend to acts of its employees that constitute gross negligence. Furthermore, the Fairfax County Police Department, in a letter dated January 22, 2025, concerning this incident (Exhibit 2 – FCPD Disposition Letter), admitted that there were "separate policy violations" by its officer(s) in connection with Mr. Hanif's arrest. These admitted policy violations lend further factual support to the claim that Officer Romero's conduct deviated grossly from established standards of care, procedure, and his training, and thus constituted gross negligence.

38

184. The acts and omissions of Defendant Fairfax County, through its agent and employee Officer Romero, demonstrate a willful and wanton disregard for Plaintiff's rights, or at a minimum, gross negligence.

185. The failure of supervising FCPD Lieutenants on scene (including but not limited to Lt. Meeks and Lt. Kuhar) to intervene effectively, to correct Officer Romero's obviously flawed and biased investigation, and to prevent the unlawful arrest and subsequent malicious prosecution of Mr. Hanif, despite being aware of many of the same compelling exculpatory facts (such as the room key and the statements about a second guest), further illustrates the environment of negligence within which Mr. Hanif's rights were violated and can constitute gross negligence on the part of such supervisors, for which the County may also be liable.

186. The foregoing conduct of Officer Romero, as well as the inaction or improper actions of his supervisors, demonstrates gross negligence, defined under Virginia law as conduct that "shows an utter disregard of prudence amounting to a complete neglect of the safety [and rights] of another" or "a heedless and palpable violation of legal duty respecting the rights of others." (e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991); *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945))

187. As a direct and proximate result of Officer Romero's gross negligence, and the gross negligence of other FCPD personnel for which Defendant Fairfax County is liable, Plaintiff suffered unlawful detention, false arrest, assault, battery, malicious prosecution, physical discomfort and injury, public humiliation, severe emotional distress, psychological harm, and other compensable injuries and damages.

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER**

39

WHEREFORE, Plaintiff Ismail Hanif respectfully requests that this Court enter judgment in his favor and against Defendants on all counts listed herein, awarding:

A. Ten-Million Dollars ($10,000,000.00) in compensatory and/or special damages in the aggregate across all counts;

B. $350,000 in Punitive damages or the maximum amount allowable by statute;

C. An award of Reasonable costs and attorney's fees, particularly pursuant to Va. Code § 2.2-3907(C) and § 2.2-3908(D) for Count I, and as otherwise permitted by law;

D. Pre-judgment and post-judgment interest; and

E. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

40

## OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
## OFFICE OF CIVIL RIGHTS

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

| | |
|---|---|
| **TO: ISMAIL H. HANIF, CHARGING PARTY**<br>**ATTN: MICHAEL L. DANIELS, ESQ.**<br>**LAW OFFICES OF SRIS, P.C.**<br>**4008 WILLIAMSBURG COURT**<br>**FAIRFAX, VA 22032**<br><br>☐ ON BEHALF OF AGGRIEVED PERSON WHOSE IDENTITY IS CONFIDENTIAL IN ACCORDANCE WITH 1 VA. ADMIN. CODE § 45-20-30 | **FROM:** Office of the Attorney General<br>Office of Civil Rights<br>202 N. 9th Street<br>Richmond, VA 23219<br>Phone: 804.225.2292 |
| **CHARGE NUMBER(S):**<br>OCR No: 25-3286<br>EEOC No: N/A | **OCR Representative:**<br>Name:    Timothy Wilson<br>Telephone: 804.225.2292 |

### Notice to the Person Aggrieved:

**In accordance with the Virginia Human Rights Act (VHRA), this is your Notice of Right to File a Civil Action (Notice) issued for the above-numbered charge and in accordance with Va. Code § 2.2-3907. Pursuant to 1 VAC 45-20-98(C), your lawsuit under the VHRA must be filed in a state court WITHIN 90 DAYS OF THIS NOTICE or your right to sue based on this charge in state court will be lost.**

*For additional information regarding your rights, please see the back side of this page.*

If your complaint involves employment discrimination and was dual filed by the Office with the U.S. Equal Employment Opportunity Commission (EEOC), the Office will notify the EEOC of the issuance of this Notice. (For <u>any</u> complaints involving federal law claims, the time limit for filing a suit in federal court will be based on federal law and, therefore, may be different.)

☒ More than 180 days have passed since the filing of this complaint.

☐ Less than 180 days have passed since the filing of this complaint, but the Office has determined that it is unlikely that it will be able to complete its administrative processing of the complaint within 180 days from the day the complaint was filed.

☒ The Charging Party has requested this Notice.

☒ The Office is ceasing its processing of this complaint.

☐ The Office will continue to process this complaint.

*If you file a lawsuit based on this complaint, please send us a copy of your court complaint.*

| | |
|---|---|
| **Issued on behalf of the Office of Civil Rights by:**<br><br><br>**Christine Lambrou Johnson, Chief** | **Date Issued: 04/11/2025** |
| cc:  Holiday Inn Express & Suites Alexandria – Fort Belvoir<br>ATTN: General Manager<br>6055 Richmond Highway<br>Alexandria, VA 22303 | |

OCR-Notice 09-16-2022

**EXHIBIT 1**

# OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
# OFFICE OF CIVIL RIGHTS

## Information Related to Filing Suit Under the Laws Enforced

## by the Office of the Attorney General - Office of Civil Rights

This information relates to filing a lawsuit in state court under Virginia law. If you also plan to sue claiming violations of federal law, please be aware that time limits may be shorter and other provisions of federal law may be different than those described below. *If this charge was dual filed with the U.S. Equal Employment Opportunity Commission (EEOC), the EEOC will issue its separate Notice of Right to Sue to the Charging Party for the relevant federal law claims upon receiving notification of the Office's dismissal of this charge pursuant to its issuance of this Notice.*

### PRIVATE SUIT RIGHTS – VIRGINIA HUMAN RIGHTS ACT, VA. CODE § 2.2-3900 et. seq.

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within **90 days** of the date you receive this Notice. Therefore, you should keep a record of the date you receive this Notice. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell your attorney the date on which you received this Notice.

Your lawsuit may be filed in the appropriate Virginia general district or circuit court or, if federal law claims are involved, in the U.S. District Court of competent jurisdiction. Whether you file in a Virginia or federal court is a matter for you to decide or in consultation with your attorney, if you have one. If you elect to file your lawsuit in federal court, you should make sure to share your Notice of Right to Sue from the EEOC with your attorney as well as this Notice, as different time limits may apply. Your lawsuit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.

### ATTORNEY REFERRAL AND ASSISTANCE

If you need assistance finding an attorney or have any questions about your legal rights, you may wish to contact the Virginia Lawyer Referral Service by telephone at (800) 552-7977 or by email at lawyerreferral@vsb.org, or a local legal aid service. If you need a copy of the information in this Office's file regarding your complaint, please request it promptly in writing and provide your OCR case number as shown on your Notice. Although the Office destroys case files after a certain time, all investigative files are kept for at least one year after our last action on the case. Therefore, if you file a lawsuit and want to obtain a copy of the investigative file, please submit your written request **within one year** of this Notice.

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

OCR-Notice 09-16-2022



# County of Fairfax, Virginia

To protect and enrich the quality of life for the people, neighborhoods, and diverse communities of Fairfax County

**Kevin Davis**
*Chief of Police*

**Brian J. Reilly**
*Executive Assistant Chief of Police*

**Robert A. Blakley**
*Assistant Chief of Police Operations*

**Brooke D. Wright**
*Assistant Chief of Police Investigations*

**Eli Cory**
*Assistant Chief of Police Administration*

**Deputy Chief John M. Lieb**
*Commander, Internal Affairs Bureau*

**Major Erica C. Webb**
*Commander, Internal Affairs Investigations Division*

January 22, 2025

Mr. Ismail Haafiz Hanif
1585 Springfield Avenue
Maplewood, NJ 07040

REF: 23IA-1597

Dear Mr. Hanif,

The Fairfax County Police Department (FCPD) has completed an administrative investigation of your complaint dated September 9, 2024. The investigation conducted by Second Lieutenant Gregory Salino, Employee Identification Number 330851, included a comprehensive examination of the facts and circumstances surrounding the event and the actions taken by PFC M. Romero which occurred on September 22, 2023.

Your complaint alleged that PFC Romero racially profiled you and that he unlawfully arrested you.

During this administrative investigation, you were interviewed by Second Lieutenant Gregory Salino on October 16, 2024. The Body Worn Camera (BWC), In-Car-Video (ICV), officer report, and court-related information were reviewed. Additionally, all officers involved in the incident were interviewed.

The investigation revealed the following facts:

On September 22, 2024, you were at the Holiday Inn at 6055 Richmond Highway in Alexandria, Virginia. The hotel staff contacted police, alleging you were acting in a disorderly manner in the continental breakfast area. PFC Romero arrived and spoke with you in addition to the hotel staff. The hotel staff requested that you leave the premises as permitted by the code of Virginia. You disregarded the request of the hotel staff and officers and yelled profanities in front of numerous guests of the hotel. PFC Romero placed you under arrest for trespassing and disorderly conduct.

**EXHIBIT**
**2**

**Fairfax County Police Department**
12099 Government Center Parkway
Fairfax, Virginia 22035
703-246-2195, TTY 711
Facsimile 703-246-3876
www.fairfaxcounty.gov

Mr. Hanif
January 22, 2025
Page 2

Based upon a review of all the evidence, it has been determined that the evidence does not support your allegations. PFC Romero's actions were lawful and in compliance with FCPD Regulations. However, during this administrative investigation, separate policy violations were identified, and the Department has taken corrective action. Any disciplinary actions taken against an employee are part of their personnel file and cannot be shared. Should you have any further questions of the FCPD concerning this matter, please contact Captain Christopher Cosgriff, Assistant Commander of the Internal Affairs Bureau, at 703-246-2793.

The Fairfax County Police Department is committed to providing transparency to the community we serve. The Fairfax County Board of Supervisors created the Police Civilian Review Panel (CRP) and the Office of the Independent Police Auditor. These two entities act independently by reviewing completed Fairfax County Police Department investigations into complaints containing allegations of abuse of authority or serious misconduct to ensure accuracy, completeness, thoroughness, objectivity, and impartiality.

- The Office of the Independent Police Auditor provides oversight of investigations involving the use of force by Fairfax County Police Officers. A detailed description of that office can be found at: http://www.fairfaxcounty.gov/policeauditor/

- The Civilian Review Panel can review investigations of the abuse of authority or serious misconduct by Fairfax County Police Officers. A detailed explanation of the Civilian Review Panel's function can be found at: http://www.fairfaxcounty.gov/policecivilianreviewpanel/

Complaints or requests for review can be made by contacting:

**Office of the Independent Police Auditor**
**12000 Government Center Parkway, Suite 233A**
**Fairfax, Virginia 22035**
**Email: IPAPoliceAuditor@fairfaxcounty.gov**
**Phone: 703-324-3459**

Or

**Fairfax County Police Civilian Review Panel**
**Email: PoliceCivilianReviewPanel@fairfaxcounty.gov**
**Phone: 703-324-2502**

Mr. Hanif
January 22, 2025
Page 3


For questions or additional assistance with this process, please contact the Office of the Independent Police Auditor.

Sincerely,

Deputy Chief John M. Lieb
Commander, Internal Affairs Bureau
Fairfax County Police Department

JL/gjs

cc:    Administrative Investigation File

# EXHIBIT B

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

    By counsel:
    Law Offices of SRIS P.C.
    4008 Williamsburg Court
    Fairfax, VA 22032

    Plaintiff,

v.

**Old Town Holdings, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Alexandria Hotel Company, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Case No.: CL 25-7984**

**Baywood Hotels, Inc.**

    Via: Vikash K. Patel (Registered Agent)
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Riverside Hotels, LLC DBA Holiday Inn
Express & Suites Alexandria
- Fort Belvoir,**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Hayley Hamre, (Individually)**

Page 1 of 60

4104 Rosewood Dr., Unit 1
Joint Base Andrews, MD 20762


**Sharon Quinones Ramos, (Individually)**

955 S. Columbus St. Apt 424
Arlington VA 22204


**Officer Moises Romero,**
(Individually and in his capacity as a
Fairfax County Police Department Officer)

Serve: c/o Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway
Suite 549 Fairfax, VA, 22035


**Fairfax County Government,**

Serve Chairman of the Board of Supervisors
Chairman Jeffrey McKay
12000 Government Center Parkway, Suite 530
Fairfax, VA, 22035

Serve: Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, VA, 22035

and

**InterContinental Hotels Group Resources, LLC**

Serve Registered Agent
United Agent Group Inc.
425 W. Washington St. Suite 4,
Suffolk, Va, 23434-5320

Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Ismail H. Hanif (hereinafter "Mr. Hanif" or "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; Officer Moises Romero; Fairfax County, Virginia; and InterContinental Hotels Group Resources, LLC (collectively, where appropriate, "Defendants"), and in support thereof states as follows:

### INTRODUCTION

1. This action seeks redress for the profound violation of Plaintiff Ismail H. Hanif's civil and common law rights and the significant damages he suffered when, on September 22, 2023, as a paying and lawfully registered guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir, he was subjected to racial profiling, falsely accused of trespassing by hotel management, who acted with gross negligence and willful misconduct, and then unlawfully detained, assaulted, battered, and falsely arrested by a Fairfax County Police Officer acting with gross negligence and malice.

2. Despite clear, readily available, and ultimately irrefutable evidence confirming Mr. Hanif's status as a lawful guest, the defendant hotel management and the defendant arresting officer engaged in conduct demonstrating a conscious and utter disregard for his rights and safety, culminating in a malicious prosecution for Disorderly Conduct that was ultimately dismissed when the truth of his guest status could no longer be ignored.

### PARTIES

3. **Plaintiff Ismail Hanif** is an individual residing at 1585 Springfield Avenue, Maplewood, NJ 07040. Mr. Hanif is an African American man.

4.  **Defendant Riverside Hotels, LLC D/B/A Holiday Inn Express & Suites Alexandria - Fort Belvoir** (the "Hotel") is a hotel located at 6055 Richmond Highway, Alexandria, VA 22303 and is a place of public accommodation.

5.  The name Holiday Inn Express & Suites Alexandria – Fort Belvoir is not separately registered with the Virginia State Corporation Commission ("SCC") as a distinct legal entity or fictitious name, nor are there any close variations listed with the SCC. Upon information and belief, it is the operating name for the hotel premises owned and/or managed by other named Defendants, Defendant Riverside Hotels, Inc and Defendant Baywood Hotels, Inc.

6.  **Defendant Baywood Hotels, Inc.** ("Baywood") is the management company for the Hotel and the employer of Defendants Hayley Hamre and Sharon Quinones Ramos.

7.  **Defendant Hayley Hamre** ("Hamre") was, at all relevant times, the Director of Sales at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Hamre acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

8.  **Defendant Sharon Quinones Ramos** ("Quinones Ramos") was, at all relevant times, the General Manager at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Quinones Ramos acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

9.   **Defendant Officer Moises Romero** ("Officer Romero") is/was, at all relevant times, a sworn law enforcement officer employed by Defendant Fairfax County, Virginia, through its agency the Fairfax County Police Department ("FCPD"). At all times relevant to this complaint, Officer Romero was acting individually, under color of state law, and within the course and scope of his employment.

10.  Officer Romero is the arresting officer in this case.

11.  Officer Romero was the first officer on the scene and led the actions, which culminated in Mr. Hanif's unlawful arrest.

12.  Fairfax County Police Department (FCPD) is a law enforcement agency and a division of the Fairfax County Government, established pursuant to Virginia law and responsible for the supervision, training and conduct of its officers and employees.

13.  **Defendant Fairfax County, Virginia** (the "County") is a political subdivision of the Commonwealth of Virginia. At all relevant times, the County, through its agency, the FCPD, employed, trained, supervised, and was responsible for the conduct of Officer Romero and Major Kuhar. The FCPD is the law enforcement agency established pursuant to Virginia law and responsible for establishing and enforcing policies, customs, and practices regarding police conduct, including but not limited to, investigations, detentions, arrests, use of force, and the verification of information in situations involving alleged trespassing at public accommodations. The County is liable for the tortious acts of its employees, including Officer Romero, when such acts constitute gross negligence or intentional wrongdoing committed within the scope of employment, thereby falling outside the protection of sovereign immunity.

14.  As franchisor for the Holiday Inn brand worldwide, including the subject Hotel, Baywood establishes, mandates, and/or enforces brand standards, operational procedures, guest service

protocols, and training requirements for its employees and managed properties, including, in this instance, Holiday Inn Express and Suites – Alexandria Ft. Belvoir. These standards and procedures include, but are not limited to, standards concerning guest interactions, non-discrimination, complaint resolution, and procedures for verifying guest status.

15.  Plaintiff alleges that Baywood exercised sufficient control over the Hotel's operations, policies, and employee training (or exhibited a negligent failure in its oversight or provision of adequate policies and training regarding non-discrimination, de-escalation, and proper guest verification) such that an actual and/or apparent agency relationship exists between Baywood and Defendant Riverside Hotels, LLC, Hamre, and Quinones Ramos.

16.  The specifics of these control mechanisms, franchise agreements, mandated operational procedures, and training programs are within the exclusive knowledge and possession of Baywood and its co-defendants and will be detailed through discovery.

17.  Alternatively, Plaintiff alleges that Baywood's own policies, training mandates, or the negligent failure to provide adequate policies and training directly and proximately contributed to the violations of Mr. Hanif's rights alleged herein.

## JURISDICTION AND VENUE

18.  This Court has subject matter jurisdiction over the claims asserted herein pursuant to Va. Code § 17.1-513, as the amount in controversy exceeds the jurisdictional limits of the General District Court. This Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1, as the events giving rise to this Complaint occurred in Fairfax County, Virginia, and/or Defendants transact business, reside, or regularly conduct affairs within Fairfax County.

19. Venue is proper in this Court under Va. Code § 8.01-262 because one or more Defendants reside or have their principal place of business in Fairfax County, Virginia, and/or the cause of action, or a part thereof, arose in Fairfax County, Virginia.

## DEFINITIONS

20. For the purposes of this Complaint, "Hotel Defendants" shall refer collectively to Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and, where agency, vicarious, or direct liability is established by the facts and law, Riverside Hotels, LLC ("Riverside").

## FACTUAL BACKGROUND

21. On September 22, 2023, Mr. Hanif was a registered and paying guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir. (the "Hotel")

22. Mr. Hanif was lawfully present at the Hotel prior to, during, and at the time of his unlawful arrest.

23. Despite being a lawfully registered guest with all attendant rights and privileges, Mr. Hanif was falsely accused of trespassing by the Hotel staff, specifically including Defendants Hamre and Quinones Ramos, who, acting with gross negligence and/or willful and wanton disregard for the truth, incorrectly and without any reasonable verification stated that Mr. Hanif was not a guest.

24. The Fairfax County Police Department, (FCPD) initially represented by Defendant Officer Romero, arrived at the Hotel in response to the false report instigated by Defendant Hamre.

25. The following FCPD officers were present at the Holiday Inn during Mr. Hanif's arrest and /or detention:

    a. Officer Moises Romero

    b. Captain (now Major) Marisa Kuhar

    c. Officer Hannah Isabella

    d.  Officer Frankie Fitzgerald, Jr.

    e.  Lieutenant Monica Meeks

    f.  Officer Callum Laing

    g.  Officer Thomas Armel

26.   In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD only provided video footage types from the following officers who were on site:

    a.  Officer Moises Romero – Body Worn Camera ("BWC"), Partial Dash Camera ("DC") and Rear Seat Car Camera ("CC")

    b.  Officer Frankie Fitzgerald, Jr. – BWC, DC, and CC

    c.  Lieutenant Monica Meeks – BWC, DC, and CC

    d.  Officer Callum Laing – BWC, DC, and CC

    e.  Officer Thomas Armel – BWC

    f.  Officer Hannah Isabella – DC, and CC (Nothing after her arrival on site.)

27.   In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD failed to provide video footage from the following officers who were on site:

    a.  Captain (now Major) Marisa Kuhar

    b.  Officer Hannah Isabella – BWC

28.   Defendant Officer Romero, deliberately ignoring his training and accepted police practices, acted solely on the unverified and false information provided by the Hotel staff. Without conducting any reasonable or adequate independent investigation to verify Mr. Hanif's guest status, despite multiple opportunities and clear indications that such investigation was warranted, Officer Romero forcibly and unlawfully detained Mr. Hanif, accusing him of trespassing.

29. Mr. Hanif was subsequently arrested by Officer Romero and maliciously charged with disorderly conduct, a charge that was ultimately dismissed by the Commonwealth's Attorney on February 28, 2024, when irrefutable video evidence and the Hotel's own eventual admissions confirmed Mr. Hanif's status as a paying guest and the utter baselessness of the accusations against him. (Fairfax County General District Court, Case No: GC23130096-00).

30. The actions of the Hotel Defendants and Officer Romero were grossly negligent, demonstrated bad faith and malice, and reflected a conscious and utter disregard for Mr. Hanif's clearly established rights as a guest and as a citizen. Specifically:

   a. Hotel management, including Defendants Hamre and Quinones Ramos, took no reasonable steps to confirm whether Mr. Hanif was a guest prior to calling the police and accusing Mr. Hanif of trespassing.

   b. Defendant Officer Romero, and any other officers under his direction or acting in concert with him, refused to take the most basic, reasonable, and readily available steps to confirm whether Mr. Hanif was a guest prior to detaining, assaulting, battering, and arresting him, thereby abdicating their investigative duties.

   c. The Hotel staff, including Defendants Hamre and Quinones Ramos, repeatedly and falsely asserted that Mr. Hanif was not a guest without taking the most basic steps to confirm their allegation and persisted in this false assertion even when presented with clear evidence to the contrary.

   d. Officer Romero consciously ignored, or was deliberately indifferent to, at least five distinct and compelling facts and statements that would indicate to any reasonable person, let alone a trained and competent police officer, that Mr. Hanif was a lawful guest

and that his assertion of being a guest warranted immediate and thorough investigation rather than continued unlawful detention and escalation.

e.  The facts and statements ignored by Officer Romero include, but are not limited to:

   i.  The presence of a room key in Mr. Hanif's possession, which was found and acknowledged by Officer Romero;

   ii.  A Question from a superior officer, Lt. Meeks, about a second guest staying in the room with Mr. Hanif;

   iii.  A second officer, Ofc. [Fitzgerald], indicating that there was a guest in the room with Mr. Hanif independent of the superior officer;

   iv.  A second officer explicitly stating several times that Mr. Hanif had a room key;

   v.  Mr. Hanif's direct and repeated requests for Officer Romero to verify his guest status by checking the Hotel registry, going to his room, or contacting his companion in the room.

f.  Officer Romero explicitly stated that he was not going to investigate evidence that would have conclusively shown that Mr. Hanif was a guest because, in Officer Romero's subjective and improper view, Mr. Hanif was not "polite." This statement is a direct admission of an improper, arbitrary, and malicious basis for his official actions, demonstrating a profound abuse of his authority and an utter abdication of his duty to investigate objectively and impartially.

**TIMELINE OF EVENTS ON SEPTEMBER 22, 2023**
**(Taken from Police Body Camera Video)**

Page 10 of 60

31. At or around 8:36 AM on September 22, 2023, Fairfax County Police were called by Hotel staff (Defendant Hamre) and dispatched to the scene for a complaint of a Black man in the breakfast area allegedly cursing and making a disturbance. The caller falsely stated that the man was not a guest of the Hotel.

32. At or around 8:56:37 AM – Officer Romero entered the Hotel lobby.

33. At or around 8:56:52 AM – Defendant Hayley Hamre tells Officer Romero that Mr. Hanif is not a Guest.

34. At or around 8:57:29 AM – Defendant Hayley Hamre states that she is the director of sales, and the General Manager [Defendant Sharon Quinones Ramos] is not on site yet.

35. At or around 8:57:42 AM – Officer Romero makes his initial contact with Mr. Hanif. Without any lawful provocation, reasonable suspicion, or probable cause, Officer Romero immediately and unlawfully seized Mr. Hanif by physically stopping him from leaving the breakfast area, placing his hand on Mr. Hanif's chest, stopping his forward progress, and pushing him back. Mr. Hanif asked if he was being detained, but Officer Romero refused to answer Mr. Hanif's repeated question about his detention status, further exacerbating the unlawful nature of the seizure.

36. This unwarranted, offensive, and non-consensual touching constituted an assault and battery upon Mr. Hanif by Officer Romero.

37. At or around 8:57:57 AM – Officer Romero states that Mr. Hanif is trespassing.

38. At or around 8:58:03 AM – Mr. Hanif again asks if he is being detained – Officer Romero responds, "If you're going to leave, leave."

39. At or around 8:58:01 AM – Officer Romero, without basis, asks Mr. Hanif if he stole anything – escalating the conflict.

40. At or around 8:58:08 AM – Mr. Hanif, relying on Officer Romero's explicit statement that he was free to leave, attempts to do so but is again forcibly stopped by Officer Romero who grabs Mr. Hanif using both hands and forces him back.

41. This action constituted a further unlawful assault and battery.

42. At or around 8:58:12 AM – Officer Romero (again) asks if Mr. Hanif stole anything. In response, the breakfast attendant, Debra, states that Mr. Hanif did not steal anything.

43. At or around 8:58:19 AM – Officer Romero tells Mr. Hanif to leave. Mr. Hanif, understandably confused and agitated by the conflicting commands and false allegations, refuses, and Officer Romero continues to tell Mr. Hanif to leave.

44. At or around 8:58:21 AM – Mr. Hanif says to Officer Romero, "You didn't pay. You leave!" highlighting his status as a paying guest of the Hotel.

45. At or around 8:58:31 AM – Breakfast attendant, Debra, attempts to explain the situation.

46. At or around 8:58:58 AM – Debra (attendant) confirms that the general manager [Defendant Quinones Ramos] is not there, and Officer Romero incorrectly states that Defendant Hayley Hamre is the manager.

47. At or around 8:59:19 AM – Mr. Hanif starts recording the encounter and Defendant Hayley Hamre attempts to leave the area.

48. At or around 8:59:27 AM, Officer Romero falsely told Mr. Hanif that the Hotel wanted him to leave, but no one from the Hotel had directly asked Mr. Hanif to leave at that time nor would anyone from the Hotel have any lawful basis for asking Mr. Hanif to leave given his status as a paying guest.

49. At or around 8:59:37 AM, Officer Romero makes his first direct assertion to Mr. Hanif that Mr. Hanif was not a guest relying solely on the unverified claims of Defendant Hamre.

50. At or around 8:59:40 AM, Mr. Hanif asks how Officer Romero knows that he's not a guest. Officer Romero responds, "They said you're not a guest." Mr. Hanif asks, "how do you know…?" and "Who said that...?"

51. At or around 8:59:51 AM, Mr. Hanif confronts Ms. Hamre asking if she said that he is not a guest.

52. At or around 9:00:05 AM, Officer Romero continued to demand that Mr. Hanif leave.

53. At or around 9:00:27 AM, Officer Romero finally asked Mr. Hanif, if he was a guest, for the first time – several minutes into the hostile encounter and after having physically assaulted Mr. Hanif and giving him conflicting commands.

54. At or around 9:00:28 AM, Mr. Hanif immediately responded that he was a guest.

55. At or around 9:00:30 AM, Rather than accept Mr. Hanif's assertion as the basis for further investigation with the Hotel staff, Officer Romero counters by asking "What room are you staying in?"

56. At or around 9:00:34 AM, Mr. Hanif reiterated that he was a guest for the second time saying, "I told you that I'm a guest, that's all you need to know."

57. At or around 9:00:45 AM, Rather than taking this additional opportunity to investigate, Officer Romero asked Mr. Hanif to leave again and called for support.

58. At or around 9:00:49 AM, Officer Romero stated that Mr. Hanif would be arrested for trespassing if he did not leave.

59. At or around 9:01:03 AM, Mr. Hanif continued to assert that he was a guest.

60. At or around 9:01:52 AM, Mr. Hanif explained why he was upset by the false accusations and unwarranted actions against him by the police and Hotel staff.

61. At or around 9:02:23 AM, Mr. Hanif was taken into custody with Officer Armel, who was in plain clothes, assisting in the unlawful arrest.

62. At or around 9:03:09 AM, Defendant Quinones Ramos arrived, passing the officers and Mr. Hanif as they were taking Mr. Hanif out of the hotel lobby.

63. At or around 9:04:12 AM, Officer Romero removed a bundle of cash and Mr. Hanif's Room key from Mr. Hanif's Pocket. Officer Romero then held the cash up in front of the dash cam of his squad car and placed the bundle on the hood of his squad car. At this time, Captain Kuhar was positioned on the driver's side of Officer Romero's squad car near the front windshield.

64. At or around 9:04:38 AM Captain Kuhar left her position on the driver's side of Officer Romero's Squad car and proceeded to the Passenger side of the squad car.

65. At or around 9:04:42 AM Captain Kuhar removed the bundle of cash and Mr. Hanif's Room key from the hood of Officer Romero's squad car

66. At or around 9:04:45 AM Captain Kuhar left the passenger side of Officer Romero's squad car.

67. At or around 09:04:49 Captain Kuhar returned to the Driver's side of Officer Romero's squad car with Mr. Hanif's room key in her right hand in plain view.

68. At or around 9:04:53 Captain Kuhar placed Mr. Hanif's room key and cash under Mr. Hanif's cell phone but did not alert the other officers to the presence of the room key (direct physical exculpatory evidence) that she readily observed.

69. At or around 09:05:52 Captain Kuhar responded to Officer Laing's question about what Mr. Hanif was doing inside saying "Disorderly.... Disorderly and..." This marks the first time any officer mentioned "Disorderly", but this comment was after Captain Kuhar's discovery of Mr. Hanif's room key.

70. At or around 9:06:06 AM, while searching through Mr. Hanif's possessions, incident to the unlawful arrest, Officer Romero discovered the room key that Captain Kuhar placed under Mr.

Hanif's cell phone – direct physical evidence confirming Mr. Hanif's guest status. At that time, Officer Romero did not alert the other officers to the presence of the room key.

71. At or around 9:06:54 AM, Officer Fitzgerald ran Mr. Hanif's ID at Officer Romero's Request.

72. At or around 9:07:00 AM, Officer Romero returned to the Hotel Lobby, while Mr. Hanif remained in custody in Officer Romero's squad car.

73. At or around 9:07:12 AM, Defendant Quinones Ramos, now present, asked to have Mr. Hanif trespassed despite having no personal knowledge of the preceding events and without taking any steps to verify Mr. Hanif's guest status.

74. At or around 9:07:14 AM, Officer Romero agreed to this request.

75. At or around 9:07:17 AM, Defendant Hamre informed Officer Romero that Defendant Quinones Ramos was the General Manager.

76. At or around 9:07:17 AM, Officer Romero asked if they were sure that Mr. Hanif was not a guest but received no immediate definitive answer that would justify Mr. Hanif's continued detention.

77. At or around 9:07:22 AM, Officer Romero asked Ms. Quinones Ramos if Mr. Hanif was a guest.

78. At or around 9:07:23 AM, Ms. Quinones Ramos falsely denied that Mr. Hanif was a guest.

79. At or around 9:07:24 AM, Officer Romero explicitly informed the Hotel staff, including Defendants Hamre and Quinones Ramos, that Mr. Hanif had a Hotel key card. This direct communication of exculpatory physical evidence put the Hotel staff on undeniable notice of a high probability that Mr. Hanif was a guest.

80. At or around 9:07:25 AM, Defendant Quinones Ramos, in a demonstration of gross negligence and a reckless disregard for the truth, again denied that Mr. Hanif could be a guest, dismissively and falsely speculating (of the key card) "he might have picked it up off the floor." This statement by

Page 15 of 60

Quinones Ramos demonstrates a willful blindness to the truth and a predetermined, baseless assumption against Mr. Hanif, constituting gross negligence and evidencing malice.

81. At or around 9:07:55 AM Defendant Quinones Ramos, told Officer Romero (speaking of Defendant Hamre "I feel bad because she has never had to deal with anything like this before."

82. At or around 9:08:44 AM, Officer Fitzgerald reported to Lieutenant Meeks that Mr. Hanif claimed to have a guest staying in the room with him further evidence of Mr. Hanif's lawful presence in the Hotel.

83. At or around 9:08:49 AM, Lieutenant Meeks asked why Mr. Hanif would not just "go with the program and go back to his room" but she was apparently unaware that Officer Romero had unlawfully prevented Mr. Hanif from doing so.

84. At or around 9:09:10 AM, Mr. Hanif's ID came back valid, expiring in 2029, with no warrants or alerts.

85. At or around 9:09:39 AM, Lieutenant Meeks went inside and asked Officer Romero and hotel staff if Mr. Hanif had family or a guest staying with him. Officer Romero, again failing to investigate, denied this without checking.

86. At or around 9:09:47 AM, Ms. Quinones Ramos falsely claimed that Mr. Hanif just came in trying to get breakfast and started describing behavior she never witnessed – further demonstrating her commitment to a false narrative.

87. At or around 9:10:55 AM, Ms. Quinones Ramos asked for a trespass form persisting in the unlawful course of action.

88. At or around 9:10:58 AM, Officer Laing and Lieutenant Meeks had a discussion about keeping stats, and Officer Laing commented that he would like to take someone to jail to avoid sitting for

four hours. Lieutenant Meeks replied, "Take somebody". Officer Laing replied, "I know, I want to take somebody..."

89. At or around 9:11:33 AM, Officer Fitzgerald informed Officer Romero that Mr. Hanif said he had another guest staying with him in the room. Officer Romero countered that the general manager (Defendant Quinones Ramos) said Mr. Hanif was not a guest, and, in so doing, Officer Romero demonstrated a reckless disregard for the truth by choosing to rely on demonstrably false information over exculpatory facts. This also marked the second time that Officer Romero was informed that Mr. Hanif was staying at the hotel with another guest, but Officer Romero again refused to investigate.

90. At or around 9:11:39 Approximately seven minutes after her discovery of Mr. Hanif's room key, Captain Kuhar tells Officer Romero that Mr. Hanif "also has a room key." Officer Romero acknowledges her comment by saying that he saw that. This marks the first time that the officers spoke to each other about the presence of the room key.

91. At or around 9:11:41 AM, Officer Isabella stated that Mr. Hanif had a Hotel room key.

92. At or around 9:11:42 AM, Officer Romero confirms that he saw the Hotel room key.

93. At or around 9:11:46 AM, Officer Isabella states a second time that Mr. Hanif had a Hotel room key.

94. At or around 9:11:47 AM, Officer Romero states that he is going to do the trespass form to ban Mr. Hanif from the Hotel per the manager's request – continuing the unlawful arrest and process.

95. At or around 9:11:50 AM, A M. Lieutenant Kuhar asks about the Hotel room key – suggesting that they take the key in to deactivate it if it doesn't belong to Mr. Hanif.

96. At or around 9:11:56 AM, Mr. Hanif asks to speak to a supervisor because, as he correctly stated, "the officers are not doing proper police work."

97. At or around 9:12:33 AM, Officer Isabella showed the room key to Ms. Quinones Ramos, who again denied its significance underscoring her refusal to investigate Mr. Hanif's guest status and further demonstrating her gross negligence in this situation.

98. At or around 9:12:55 AM, Lieutenant Meeks asked if anyone was registered under Mr. Hanif's name. Officer Isabella incorrectly denied this, because no one had actually checked the Hotel's registry at that point.

99. At or around 9:13:33, Lieutenant Meeks, Officer Isabella, and Officer Fitzgerald all deactivated their body worn cameras.

100. At or around 9:14:07 AM, Ms. Quinones Ramos was still outside, as seen on Officer Fitzgerald's dash cam.

101. At or around 9:14:13 AM, Mr. Hanif offered exculpatory evidence to Officer Romero saying, "If I got a key and we go in my room, what would happen? What would that that prove? That they are lying, right?" Officer Romero responded, "we're not going to do that." Mr. Hanif countered, "Yes! Because you know I'm right! That's why we're not going to do it, because you know I'm right!"

102. At or around 9:14:35 AM, Officer Romero said to Mr. Hanif, "If you had been polite, we would have tried to figure things out." This statement is direct evidence of Officer Romero's malice and his decision to arrest and pursue charges against Mr. Hanif based on personal animus and abuse of authority, rather than on any legitimate law enforcement purpose or probable cause.

103. At or around 9:16:00 AM, Officer Romero tells Lieutenant Meeks that Mr. Hanif wants to speak to a supervisor. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 AM to 09:21:56 AM.

104. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 to 09:21:56.

105. At or around 9:16:06 AM, Defendant Sharon Quinones Ramos admitted to Officer Romero that Mr. Hanif was indeed a guest staying there with a friend and had checked in with another manager. Ms. Quinones Ramos further stated that the other manager remembered Mr. Hanif and confirmed his check-in, noting his description as a Black man with tattoos on his face.

106. Despite this admission and confirmation of Mr. Hanif's status as a paying guest, Defendant Quinones Ramos outrageously and inexplicably requested that the police proceed with charging Mr. Hanif with trespassing anyway and further requested that the other lawful guest also be removed from the Hotel room. This admission by Defendant Quinones Ramos, made after Mr. Hanif had already been unlawfully arrested and detained based on her and Hamre's false information, unequivocally establishes her actual knowledge of Mr. Hanif's status as a lawful guest. Her subsequent demand to Officer Romero to proceed with trespassing and charging Mr. Hanif despite this knowledge constitutes an act of profound bad faith, actual malice, and a willful and wanton disregard for Mr. Hanif's rights. It further demonstrates that the Hotel Defendants' actions were pretextual and intended to harass Mr. Hanif.

107. At or around 9:16:42 AM, The police declined to remove the other guest noting that because Mr. Hanif and the other guest were paid guests of the Hotel, they could not remove the other guest and that only the Hotel management could ask them to leave.

108. Despite this acknowledgement of Mr. Hanif's rights as a guest, the police unlawfully kept Mr. Hanif in custody.

109. At or around 9:16:57 AM, Ms. Quinones Ramos receives the completed trespass form from Officer Romero, asks if the name on the form is Mr. Hanif's name, and then signs the form – despite knowing that Mr. Hanif was actually a guest in the Hotel.

110. At or around 9:18:03 AM, Officer Isabela and Officer Romero joked about giving Mr. Hanif a parking ticket further showcasing their unprofessional conduct and callous indifference for Mr. Hanif's rights.

111. At or around 9:18:33 AM, Officer Romero suggested running the plates on Mr. Hanif's vehicle to see if Mr. Hanif's car was stolen. Officer Isabella runs the plates – a fishing expedition without any basis and a blatant attempt to find some reason to justify Mr. Hanif's continued detention.

112. At or around 9:24:34 AM, Lieutenant Meeks and Officer Isabella confirmed with Hotel staff that Mr. Hanif was the registered guest for room 121.

113. At or around 9:25:11 AM, Defendant Hayley Hamre referred to Mr. Hanif as the guest.

114. At or around 9:25:39 AM, the Hotel staff confirmed that Mr. Hanif was the paid guest for the room.

115. At or around 9:28:00 AM, Officers Meeks and Isabella visited room 121.

116. At or around 9:28:39 AM, officers Meeks and Isabella personally confirmed that a guest named Talia was also a guest in room 121 and that Mr. Hanif was the registered guest for that room.

117. Despite all the unequivocal proof of Mr. Hanif's status as a paying guest, Mr. Hanif was still transported and processed on a criminal charge. The decision by Officer Romero and supervising officers to transport and process Mr. Hanif despite the mountain of exculpatory evidence and the Hotel's admission demonstrates a reckless, if not intentional, continuation of an unlawful arrest and initiation of a malicious prosecution, undertaken with gross negligence and/or malice.

## DISSIPATION OF PROBABLE CAUSE AND CONTINUED DETENTION

118. Even if probable cause had arguably existed at the time of Mr. Hanif's initial arrest (Plaintiff does not concede that it did), it quickly dissipated once officers were presented with plainly exculpatory facts including the following:

Page 20 of 60

a. Mr. Hanif possessed a valid hotel room key;

b. Mr. Hanif had a valid government-issued identification, which, along with the room key or independently from it, could have been used to confirm Mr. Hanif's Guest status in th hotel registry; and

c. The GM, Ms. Quinones Ramos gave explicit confirmation of a second registered guest Mr. Hanif's room.

119. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basi steps to investigate this exculpatory evidence.

120. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basi steps to investigate this plainly exculpatory evidence.

121. Rather than release Mr. Hanif in the face of overwhelming exculpatory evidence, officers prolonged his detention.

122. Officer Romero directed Officer Isabella to run Mr. Hanif's vehicle plates to see if the car was stolen, even though the vehicle was wholly unrelated to the alleged offenses of trespassing and disorderly conduct.

123. Even after Mr. Hanif's guest status had been established, Officer Isabella joked that they could "just give him a parking ticket."

124. These actions demonstrate that officers were not investigating an ongoing crime but searching fo an alternative justification to preserve an arrest that lacked any lawful basis.

125. The Fourth Amendment prohibits continued detention once probable cause has dissipated. By ignoring readily available exculpatory evidence and prolonging Mr. Hanif's custody, the officers violated clearly established constitutional rights.

## COUNT I – DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF VA. CODE 2.2-3904 ET SEQ. (VIRGINIA HUMAN RIGHTS ACT)

### (Against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and InterContinental Hotels Group Resources, LLC)

126. Plaintiff incorporates and realleges the facts in paragraphs 1 - 125 as if fully set forth herein.

127. The foregoing events took place on September 22, 2023

128. As a direct result of the actions of the Hotel Defendants, instigated by their false reports and discriminatory animus, Officer Romero arrested Mr. Hanif. Mr. Hanif was subsequently charged with Criminal Disorderly Conduct in violation of Va. Code § 18.2-415, a misdemeanor.

129. The disorderly conduct charge against Mr. Hanif was pending until February 28, 2024, when it was dismissed by the Commonwealth.

130. The disorderly conduct charge was pending for a period of 160 Days.

131. On September 10, 2024, 195 days after the conclusion of the criminal case against Mr. Hanif, Counsel for Mr. Hanif filed two complaints with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") alleging: 1) Discrimination in a Place of Public Accommodation; and 2) Law Enforcement Misconduct.

132. On March 24, 2025, 196 days after the initial filing of Mr. Hanif's complaints with OCR, counsel for Mr. Hanif requested a "Right to Sue" letter from OCR and made a second request for the same on April 7, 2025.

133. On April 15,2025, counsel for Mr. Hanif received a Notice of Right to Sue from OCR. (Exhibit 1 – Right to Sue Notice.)

134. Va. Code § 2.2-3904 defines a "Place of public accommodation" as "all places or businesses offering or holding out to the general public goods, services, privileges, facilities, advantages, or accommodations." The Hotel was, at all relevant times, a place of public accommodation.

135. It is unlawful for any person, including the Hotel Defendants, to deny any individual, or to make any distinction, discrimination, or restriction on account of race, color, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. (Va. Code § 2.2-3904(B)).

136. On September 21, 2023, Mr. Hanif, a African American man, checked in to the Hotel as a registered and paying guest.

137. At that time, one of the amenities offered and available to registered guests was an included breakfast in the Hotel's designated breakfast facility.

138. On the morning of September 22, 2023, Mr. Hanif entered the lobby through the front door, after leaving his vehicle, which was parked in the Hotel parking lot.

139. Mr. Hanif proceeded to the breakfast area, as was his right as a guest, without returning to his room.

140. The breakfast attendant, Debra, asked Mr. Hanif if he was a guest.

141. Mr. Hanif, perceiving he was being singled out due to his race, responded by asking if the attendant had asked all of the other (non-African American) guests in the breakfast area if they were guests.

142. Mr. Hanif then informed the attendant that he was a guest and proceeded to have breakfast.

143. At the time Mr. Hanif arrived for breakfast, the guests in the breakfast area were predominantly of other races, and Mr. Hanif was one of very few, if not the only, African American guests in the

breakfast area at that moment. These facts relating to the racial composition of the guests are based on Mr. Hanif's direct observations.

144. Notwithstanding the exchange between Mr. Hanif and the attendant, Mr. Hanif sat alone and quietly had breakfast without further incident, or disturbance until confronted by Defendant Hamre and Defendant Officer Romero.

145. The Hotel staff, specifically Defendant Hamre, acting on discriminatory animus and/or as a result of conscious or unconscious bias due to Mr. Hanif's race, called the police and falsely stated that Mr. Hanif was creating a disturbance and was not a guest.

146. Defendant Hamre's claim that Mr. Hanif was not a guest was made without any reasonable basis or verification of Mr. Hanif's status as a guest.

147. Mr. Hanif was identified by his race ("Black Man") and clothing on the call to police and not by name.

148. The Hotel management, including Defendants Hamre and Quinones Ramos, did not ask Mr. Hanif to leave the Hotel based on any legitimate, non-discriminatory reason (nor, initially, at all), nor did they take any reasonable steps to confirm his status as a paying guest prior to calling the police and instigating his removal and arrest.

149. This failure to verify, and immediate escalation to police action, was motivated, in whole or in substantial part, by Mr. Hanif's race and/or his appearance as an African American man and constituted a deviation from how similarly situated non-African American guests would have been treated under like circumstances. Alternatively, if such actions represent standard practice, then such practice itself is discriminatory.

150. In order to induce the police to detain and arrest Mr. Hanif, and motivated by discriminatory animus, the Hotel Defendants, through Defendant Hamre and subsequently through Defendant

Page 24 of 60

Quinones Ramos, falsely and repeatedly claimed that Mr. Hanif was not a guest, thereby denying him, on account of his race, the full and equal enjoyment of the Hotel's accommodations, privileges, and services, including the right to be present in the Hotel and enjoy its amenities without being disturbed by baseless accusations and police intervention.

151. Prior to his arrest, Mr. Hanif informed Officer Romero that he was a guest.

152. Despite Mr. Hanif's insistence that he was a guest and numerous objective facts confirming this (e.g., his possession of a Hotel room key card, his assertion that a second guest was staying in the room with him, and his offer to prove his status), the Hotel staff, particularly Defendants Hamre and Quinones Ramos, driven by discriminatory bias, still insisted on his arrest and removal.

153. When confronted by the police with the fact that Mr. Hanif had a Hotel key card in his possession, Defendant Quinones Ramos, reflecting her discriminatory assumptions and determination to deny Mr. Hanif his rights as a guest, callously and baselessly dismissed this crucial evidence, falsely speculating that he might have picked the key card up from the floor. This statement further evidenced her unsubstantiated and biased position that Mr. Hanif, an African American man, could not possibly be a guest and her resolve to deny him the resulting services and privileges in this place of public accommodation.

154. Defendant Quinones Ramos falsely indicated to police that Mr. Hanif just came in off the street and was loading up on breakfast – despite the fact that she was not present to witness any of the events leading to the arrest and had no factual basis for this assertion.

155. Even after Defendant Quinones Ramos internally confirmed through another manager that Mr. Hanif was indeed a registered guest (based on his description as a Black man with tattoos on his face – itself a racial identifier used in the context), she persisted in her discriminatory course of conduct.

156. Despite knowing that Mr. Hanif was a guest, Defendant Quinones Ramos still insisted on having Mr. Hanif "trespassed" and removed, effectively seeking to punish him for behavior she never witnessed and which was, in any event, a reaction to the Hotel Defendants' own discriminatory and provocative actions. This insistence was pretextual and a continuation of the discriminatory treatment against Mr. Hanif on account of his race.

157. The actions of the Hotel Defendants, including Riverside Hotels, LLC, Hayley Hamre, and Sharon Quinones Ramos, individually and collectively, by treating Mr. Hanif differently and less favorably than non-African American guests, and by denying him services and instigating his false arrest based on his race, constituted unlawful discrimination by denying Mr. Hanif, on the basis of his race and color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hotel, in direct violation of Va. Code § 2.2-3904(B).

158. Defendant Baywood is vicariously liable for the discriminatory acts of its agents/employees, Hamre, and Quinones Ramos, who were acting within the scope of their actual and/or apparent agency and in furtherance of Baywood's business, as previously alleged. Furthermore, Plaintiff alleges that Defendant Riverside Hotels, through its franchise agreements, its mandatory training programs (or its negligent failure to provide adequate training regarding non-discrimination, implicit bias, de-escalation, and proper guest verification), and/or its control or right of control over operational standards, created an environment wherein such discriminatory actions by its franchisee's employees were foreseeable and inadequately addressed, and/or directly contributed to the denial of Mr. Hanif's rights. The specific details of Baywood's agreements with Riverside Hotels, LLC, training programs, and mechanisms of control or oversight which establish this liability are within the exclusive knowledge and possession of Baywood and will be established through discovery. Baywood's failure to ensure its agents/employees complied with non-

discrimination laws and basic guest verification protocols constitutes a breach of its own duties and/or ratifies the discriminatory conduct.

159. As a direct and proximate result of this unlawful discrimination by the Hotel Defendants, Mr. Hanif suffered a deprivation of his civil rights, false arrest, unlawful detention, malicious prosecution, assault, battery, significant emotional distress, humiliation, fear, anxiety, damage to his reputation, and other consequential damages, including the need to retain legal counsel for his criminal defense.

WHEREFORE, Plaintiff demands judgment against Defendants Baywood and the hotel employees for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1, reasonable attorney's fees and costs under Va. Code §§ 2.2-3907(C) and 2.2-3908(D), and such further relief as the Court deems just and proper.

## COUNT II – ASSAULT AND BATTERY

### (Against Officer Moises Romero)

160. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161. At Officer Romero's initial contact with Mr. Hanif, on September 22, 2023, when Mr. Hanif, a lawful guest of the Hotel, attempted to walk past him in the breakfast area, Defendant Officer Romero committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif when he placed his hand on Mr. Hanif's chest and physically pushed him backward.

162. This act by Defendant Officer Romero also constituted an intentional assault as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of an imminent battery and further harmful or offensive contact.

163. Mr. Hanif asked Officer Romero several times if he was being detained. Officer Romero evasively responded, "If you're going to leave, leave," thereby affirmatively representing to Mr. Hanif that he was not detained and was free to depart.

164. Relying on Officer Romero's explicit representation that he was free to leave, Mr. Hanif again attempted to walk past Officer Romero and leave the area.

165. Rather than permit Mr. Hanif to leave as Officer Romero had just represented he could, and without informing Mr. Hanif that he was being detained or providing any lawful basis whatsoever for such detention or renewed use of force, Officer Romero again committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif, using both hands to forcibly push Mr. Hanif back and continue the unlawful seizure and confrontation.

166. This second act of unwanted and offensive physical force by Defendant Officer Romero also constituted an intentional assault, as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of further imminent battery and harmful or offensive contact.

167. Mr. Hanif did not consent to being touched, pushed, or physically handled in any way by Officer Romero.

168. Mr. Hanif asked Officer Romero why Officer Romero was touching him if Mr. Hanif wasn't being detained.

169. At all relevant times, Mr. Hanif was a lawful and registered guest of the Hotel and had a clear legal right to be on the premises.

170. Mr. Hanif was not trespassing, nor was he engaged in any unlawful activity that would justify Officer Romero's use of force or physical contact when Officer Romero arrived or during these initial, unprovoked interactions.

171. Officer Romero's physical actions and use of force were not privileged under the circumstances, as Mr. Hanif was not actively resisting a lawful arrest (as no lawful basis for arrest existed at that time, nor had any intent to arrest been communicated), was not committing any offense in Officer Romero's presence justifying such force, posed no threat to Officer Romero or others, and was attempting to comply with or clarify Officer Romero's ambiguous and conflicting statements, including his representation that Mr. Hanif could leave.

172. Officer Romero's unconsented, offensive, and unjustified physical contact with Mr. Hanif constituted assault and battery.

173. Officer Romero was at all times acting in his official capacity as a Fairfax County Police Officer and within the course and scope of his employment with Defendant Fairfax County. His actions, however, were undertaken with gross negligence and/or malice, thereby exceeding the scope of any legitimate discretionary authority.

174. As a direct and proximate result of the assault and battery committed by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered physical injury, pain, physical discomfort, offensive touching, fear, intimidation, severe emotional distress, public humiliation, and other damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

**Count III – False Arrest**

**(Against Defendants Officer Moises Romero; Virginia; Baywood Hotels, Inc.; Riverside Hotels, LLC; Hayley Hamre; and Sharon Quinones Ramos)**

175. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 174 as if fully set forth herein.

176. Defendants, acting individually and in concert, intentionally and unlawfully caused Mr. Hanif to be confined and detained against his will, without his consent, and without legal justification or privilege.

177. Defendant Officer Romero effectuated the arrest and confinement of Mr. Hanif by: (a) physically restraining him through repeated assaults and batteries; (b) verbally commanding him and asserting authority over his freedom of movement; (c) formally placing him in custody and handcuffing him; and (d) transporting him in a police vehicle to a police station for processing.

178. Mr. Hanif was conscious of this confinement and did not consent to it.

179. The arrest and confinement of Mr. Hanif were without probable cause, and therefore unlawful and unprivileged, because:

   a. Mr. Hanif was initially detained and subsequently arrested ostensibly for trespassing, yet, as Defendants knew or should have known through any reasonable inquiry, he was a confirmed, paying, and lawful guest of the Hotel with an absolute legal right to be present on the premises. No probable cause existed to believe he was trespassing.

   b. Neither Officer Romero nor the Hotel Defendants (Hamre and Quinones Ramos) conducted any objectively reasonable, or indeed any meaningful, verification of Mr. Hanif's guest status via the Hotel registry, by checking his key, or through other readily available means before instigating, causing, and effectuating his arrest for trespassing. This failure was a conscious dereliction of duty.

Page 30 of 60

    c. The subsequent charge of disorderly conduct was pretextual and also lacked probable cause, as detailed in Count IV (Malicious Prosecution), because no reasonable officer familiar with Va Code § 18.2-415 could believe that Mr. Hanif's conduct would incite violence (nor did it incite violence) in anyone whom the conduct was directed. Moreover, Mr. Hanif's conduct fell well within the bounds of activity that is protected by the first Amendment to the U.S. Constitution e.g. using profanity and recording police officers engaged in their official duties.

    d. At no point did Officer Romero possess articulable facts sufficient to establish probable cause that Mr. Hanif had committed, was committing, or was about to commit any crime that would justify his seizure and arrest.

180. Hayley Hamre, and Sharon Quinones Ramos (the "Hotel Instigating Defendants" for this Count) actively instigated, participated in, and proximately caused Mr. Hanif's false arrest by:

    a. Knowingly or with reckless disregard for the truth providing false and misleading information to Officer Romero that Mr. Hanif was not a guest and was trespassing;

    b. Persistently demanding, encouraging, and/or importuning Officer Romero to arrest and/or trespass Mr. Hanif based on this false and unverified information, thereby substituting their unlawful demands for the officer's independent judgment;

    c. Continuing to insist on Mr. Hanif's arrest and trespass even after Defendant Quinones Ramos possessed actual knowledge and had admitted that Mr. Hanif was, in fact, a registered and lawful guest, thereby demonstrating malice and an intent to cause an unlawful arrest.

Page 31 of 60

181. Defendant Officer Romero knew, or in the exercise of reasonable diligence and adherence to standard police practices should have known, that there was no probable cause to arrest Mr. Hanif for trespassing or any other offense.

182. Officer Romero's awareness of the presence of the room key, Mr. Hanif's consistent assertions of guest status, statements from other officers regarding the key and a second guest, and the utter failure of Hotel staff to provide credible, verified information, all negated any reasonable belief that Mr. Hanif was trespassing.

183. Officer Romero's decision to arrest Mr. Hanif under these circumstances was made with reckless disregard for Mr. Hanif's rights, lacked any lawful basis, and constituted an abuse of his lawful authority and/or gross negligence.

184. Defendant Fairfax County is vicariously liable for the false arrest/false imprisonment committed by its employee, Officer Romero. Officer Romero's actions in arresting Mr. Hanif without probable cause constituted gross negligence and/or an intentional tort (false arrest/imprisonment) committed with malice or an abuse of lawful authority, thereby falling outside the protection of sovereign immunity. The County's liability arises from respondeat superior for these non-immunized acts.

185. As a direct and proximate result of the false arrest instigated and carried out by Defendants, Mr. Hanif suffered significant damages, including but not limited to loss of liberty, physical discomfort and injury from handcuffing and transport, public humiliation, emotional distress, psychological harm including anxiety and fear, damage to his reputation, and financial losses including costs associated with his arrest, detention, and defense of the unsubstantiated disorderly conduct case.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

Page 32 of 60

punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

**Count IV – Malicious Prosecution**
**(Against Defendant Officer Moises Romero)**

186. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 185 as if fully set forth herein.

187. Defendant Officer Romero instituted and caused to be continued a criminal proceeding (Fairfax County General District Court Case No: GC23130096-00) against Mr. Hanif for the specific criminal offense of disorderly conduct, in violation of Virginia Code § 18.2-415.

188. The aforementioned criminal proceeding for disorderly conduct was terminated in Mr. Hanif's favor on February 28, 2024, when the Commonwealth's Attorney, recognizing the lack of merit, moved to dismiss the charge (nolle prosequi or dismissed). This termination was indicative of Mr. Hanif's actual innocence of the charge.

189. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero without probable cause.

   a. Virginia Code § 18.2-415 requires conduct having a direct tendency to cause acts of violence by the person or persons at whom it is directed.

   b. At no point did Mr. Hanif's conduct, even when understandably and justifiably agitated by being falsely accused, unlawfully detained, and physically assaulted, have a direct tendency to cause acts of violence by anyone. His words and actions were a direct and foreseeable reaction to the unlawful conduct of the Defendants.

   c. No one, including Officer Romero or any Hotel staff, responded to Mr. Hanif with violence or indicated they felt imminently threatened by violence from him.

Page 33 of 60

d.  Officer Romero did not witness any conduct by Mr. Hanif upon his arrival that could remotely constitute disorderly conduct;

e.  When Officer Romero arrived, Mr. Hanif was quietly finishing his breakfast and preparing to leave the dining area.

f.  Any agitation displayed by Mr. Hanif was a direct and foreseeable result of the provocative, unlawful, and rights-violating actions of Officer Romero and the Hotel Defendants, including false accusations of theft and trespassing, and Officer Romero's physical assaults and unlawful detention.

g.  Mr. Hanif's profanity and recording of the officers were protected first amendment activities.

h.  Officer Romero and other officers were aware or became aware prior to formalizing the charge of disorderly conduct, that Mr. Hanif was a paying and lawful guest and thus not trespassing.

i.  The disorderly conduct charge was, therefore, a pretextual charge manufactured by Officer Romero to attempt to justify an already unlawful arrest and detention, initiated after any conceivable basis for any trespass claim had evaporated and was known by him to be false.

j.  The Fairfax County Magistrate refused to issue a trespassing charge against Mr. Hanif precisely because he was a paying guest of the Hotel, further evidencing the lack of probable cause for any initial detention or arrest related to his presence, and highlighting the baselessness of Officer Romero then pivoting to a disorderly conduct charge.

k.  In addition, the Fairfax County Magistrate refused to issue a disorderly conduct charge against Mr. Hanif.

l.  No reasonable officer with knowledge of the disorderly conduct statute could reasonably believe that Mr. Hanif's conduct constituted disorderly conduct under the law.

190. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero with malice. Facts that show Officer Romero's Malice include, but are not limited to the following:

a.  Malice is directly evidenced by Officer Romero's statement to Mr. Hanif, "If you had been polite, we would have tried to figure things out," an unambiguous admission that the decision to arrest and prosecute was motivated by Officer Romero's personal animus, displeasure, or as a means of punishment, rather than a good faith belief based on facts that Mr. Hanif had committed any crime.

b.  Malice is further evidenced by Officer Romero proceeding with and fabricating the disorderly conduct charge despite the utter lack of any reasonable factual basis, knowing the initial trespass claims from the hotel were false or unverified, and after the hotel management themselves had confirmed Mr. Hanif was a guest but, through Defendant Quinones Ramos, still outrageously desired his continued detention and prosecution. Officer Romero's alignment with this malicious civilian desire, rather than adherence to law and fact, demonstrates his own malice.

c.  The pursuit of the disorderly conduct charge as a pretext after the trespassing allegation was known by Officer Romero to be false, demonstrates a willful and malicious disregard for Mr. Hanif's rights and an improper purpose to injure Mr. Hanif.

d.  Malice is further evidenced by Officer Romero's participation in jokes about giving Mr. Hanif a parking ticket and his suggestion that Officer Isabella run the plates on Mr. Hanif's car to see if it was stolen, all while Mr. Hanif was unlawfully detained. These

Page 35 of 60

actions demonstrate a vindictive mindset and an attempt to find \*any\* charge to levy against Mr. Hanif, irrespective of actual wrongdoing – a further indication of malice.

191. Defendant Fairfax County is vicariously liable for the malicious prosecution initiated and continued by its employee, Officer Romero. Officer Romero's actions in pursuing a baseless charge with malice constituted an intentional tort committed in the scope of his employment but far exceeded any legitimate exercise of police discretion, thus falling outside the protection of sovereign immunity.

192. As a direct and proximate result of the malicious prosecution by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered significant damages, including but not limited to legal fees and costs incurred in his criminal defense, loss of liberty during the arrest and booking process, damage to his reputation and standing in the community, profound emotional distress including humiliation, anxiety, anger, and fear, psychological harm, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## Count V: Gross Negligence
**(Against Defendants Baywood Hotels, Inc.; Hayley Hamre; and Sharon Quinones Ramos (collectively the "Hotel Gross Negligence Defendants" for this Count))**

193. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 192 as if fully set forth herein.

Page 36 of 60

194. Defendant Riverside Hotels, LLC and Defendant Baywood Hotels, Inc. (the "Corporate Hotel Defendants" for this Count) own and operate the Hotel as a place of public accommodation for paying guests – the former being the owner and the latter being the management company.

195. Defendants Hayley Hamre and Sharon Quinones Ramos were, at all relevant times, managerial employees and/or agents of the Corporate Hotel Defendants, acting within the course and scope of their employment and agency, and vested with authority concerning guest interactions and hotel security.

196. As innkeepers, the Corporate Hotel Defendants, and through them their agents and employees Hamre and Quinones Ramos, owed Mr. Hanif, a registered and lawful paying guest, a legal duty of reasonable care.

197. This duty of reasonable care included, but was not limited to, the duty to:

   a. Accurately and diligently verify his guest status before accusing him of trespassing or causing law enforcement to be summoned to remove him or arrest him for such an offense.

   b. Refrain from making false, unverified, or reckless accusations against him to law enforcement that would foreseeably lead to his detention or arrest.

   c. Take prompt and reasonable steps to investigate and correctly resolve guest status inquiries, particularly when a person asserts guest status, before escalating to police action and instigating arrest.

   d. Ensure their conduct, policies, and procedures (or lack thereof) did not create an unreasonable risk of, or actually lead to, the false accusation, false arrest, or wrongful deprivation of liberty of a lawful guest.

Page 37 of 60

e.  Train and supervise their employees, including managerial staff like Hamre and Quinones Ramos, on proper, non-discriminatory guest verification procedures, de-escalation techniques, and the critical importance of accurate information when involving law enforcement.

f.  Exercise prudence and diligence in their interactions with guests to protect them from unwarranted harm, humiliation, and deprivation of their rights on the Hotel premises.

198. Defendants Hamre and Quinones Ramos, acting individually and on behalf of the Corporate Hotel Defendants, breached these duties in a manner that demonstrated such an utter disregard of prudence as to constitute a complete neglect of the safety and rights of Mr. Hanif, thereby constituting gross negligence under Virginia law.

199. The gross negligence of these Hotel Gross Negligence Defendants, individually and collectively, is evidenced by, among other things, their numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of their legal duties respecting the rights of Mr. Hanif, including but not limited to:

a.  Defendant Hamre initiating a police call and instigating police action based on a false report that Mr. Hanif was trespassing and causing a disturbance, without any prior attempt to verify Mr. Hanif's readily ascertainable guest status, thereby recklessly setting in motion the chain of events that harmed Mr. Hanif.

b.  Both Defendants Hamre and Quinones Ramos completely failing to check the Hotel's guest registry, consult with other staff who may have checked Mr. Hanif in, examine Mr. Hanif's key if offered, or make other simple, obvious, and readily available inquiries to confirm Mr. Hanif's status, despite his repeated assertions of being a guest and the high

stakes of involving police for a trespass accusation. This failure showed an utter indifference to their duty of care.

c. Defendant Quinones Ramos, upon being informed by police that Mr. Hanif possessed a Hotel room key – strong evidence of his guest status – outrightly and contemptuously dismissing this critical fact by baselessly and illogically speculating he "picked it up off the floor," thereby demonstrating a deliberate refusal to consider exculpatory evidence and an utter disregard for prudence.

d. Defendant Quinones Ramos providing false and inflammatory information to the police that Mr. Hanif "just came in off the street," an event she did not witness and had no factual basis to assert, thereby recklessly exacerbating the situation and misleading law enforcement with a complete neglect for the truth.

e. Defendant Quinones Ramos, even after internally confirming through another manager that Mr. Hanif was indeed a registered guest (meaning she possessed actual knowledge of his lawful status), maliciously insisting that police proceed with trespassing him and continue with his arrest. This act demonstrates not merely a lack of care, but a conscious and utter disregard for Mr. Hanif's known legal right to be on the premises and a complete neglect of her duties as an innkeeper, rising to the level of gross negligence and/or willful misconduct.

f. The Corporate Hotel Defendant' failure to implement and enforce adequate policies and training for their employees regarding proper guest verification, non-discriminatory guest treatment, and appropriate procedures for addressing alleged disturbances without recklessly involving law enforcement against lawful guests, which created the conditions for and foreseeably led to the gross negligence of Hamre and Quinones Ramos.

200. The conduct of Defendants Hamre, Quinones Ramos, and vicariously the Corporate Hotel Defendant (Baywood Hotels, Inc.), was not merely a failure to exercise ordinary care, but demonstrated a degree of negligence showing an utter disregard of prudence amounting to a complete neglect of the safety and fundamental rights of Mr. Hanif, a paying guest, and constituted a heedless and palpable violation of legal duties owed to him, thereby constituting gross negligence.

201. As a direct and proximate result of this gross negligence by the Hotel Gross Negligence Defendants, Mr. Hanif was falsely accused, unlawfully detained and arrested, publicly humiliated, subjected to physical restraint, endured a malicious criminal prosecution, was deprived of his liberty, and suffered severe emotional distress, psychological harm, damage to his reputation, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally where permitted by law, for compensatory damages in an amount to be proven at trial, punitive damages against the individual and private Defendants, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## Count VI: Gross Negligence
### (Against Defendant Officer Romero)

202. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 201 as if fully set forth herein.

203. At all relevant times on September 22, 2023, Defendant Officer Moises Romero was acting under color of state law and within the course and scope of his employment as a sworn law enforcement officer of the Fairfax County Police Department, an agency of Defendant Fairfax County.

204. Defendant Fairfax County, through its Police Department, acted with gross negligence by permitting and tolerating a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene.

205. Fairfax County owed Plaintiff a duty to exercise reasonable care in the training, supervision, and conduct of its police officers, including a duty to ensure that arrests are made and continued only with probable cause and in compliance with constitutional requirements.

206. Fairfax County, through its officers, breached that duty by acting with gross negligence — defined under Virginia law as "an utter disregard of prudence amounting to a complete neglect of the safety of another."

207. The County's officers ignored plainly exculpatory evidence, including Plaintiff's valid hotel room key, government-issued identification, and confirmation of a second registered guest. These facts clearly established that Plaintiff was lawfully present on the property.

208. Supervisory officers, including Captain Kuhar and Lieutenant Meeks, failed to perform even minimal independent investigation. Instead, they deferred entirely to Officer Romero's unsupported narrative, allowed false staff statements to control the decision-making, and permitted Officer Armel — who was out of uniform and unknown to the supervising captain — to participate in the arrest without exigent circumstances.

209. Rather than intervene to prevent an unlawful arrest, these supervisors ratified Romero's conduct, prolonging Plaintiff's detention after probable cause had dissipated. Such abdication of supervisory responsibility constitutes gross negligence.

210. The County's Internal Affairs Bureau later issued a disposition letter finding Romero's arrest to be "lawful and in compliance with FCPD regulations," while simultaneously admitting that "separate policy violations were identified."

211. This contradiction demonstrates Fairfax County's systemic indifference to the rights of citizens and its entrenched custom of rubber-stamping unconstitutional conduct.

212. Fairfax County's gross negligence in training, supervision, and investigation was a direct and proximate cause of Plaintiff's unlawful arrest, detention, and prosecution, causing him humiliation, emotional distress, financial harm, and reputational damage.

213. As a law enforcement officer, Officer Romero owed Mr. Hanif, and the public generally, a legal duty to perform his police duties with reasonable care and in compliance with established law, police department policies, and accepted police practices.

214. This duty included, but was not limited to, the duty to conduct adequate and objective investigations before depriving an individual of liberty, to verify information before acting upon it to arrest, to refrain from using excessive or unwarranted force, to not arrest individuals without probable cause, and to act impartially without regard to personal pique or animus.

215. Defendant Officer Romero breached these duties in a manner so egregious that it evinced an utter disregard of prudence and a complete neglect of Mr. Hanif's constitutional and common law rights, thereby constituting gross negligence.

216. Officer Romero's gross negligence is evidenced by, inter alia, his numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of his legal duties respecting the rights of Mr. Hanif, including but not limited to:

   a. Failing entirely to take the most basic, reasonable, and readily available investigative steps to verify Mr. Hanif's lawful guest status (such as checking the Hotel registry, checking the room key, or speaking with Mr. Hanif's companion) before detaining, assaulting, battering, and arresting him, despite Mr. Hanif's repeated assertions of guest

status and the presence of multiple pieces of clearly exculpatory evidence. This was a complete abdication of his investigative duty.

b. Willfully and inexplicably disregarding or consciously choosing to ignore clear, compelling, and readily apparent exculpatory facts that overwhelmingly indicated Mr. Hanif was a lawful guest. These facts included Mr. Hanif's possession of a working Hotel room key (which Officer Romero saw), information from other officers about the key and a second guest in Mr. Hanif's room, and Mr. Hanif's own direct requests to verify his status with his companion guest or the Hotel registry. Such disregard shows a complete neglect of his duty to consider all facts.

c. Unnecessarily and unlawfully escalating a verbal encounter, which he himself initiated based on false information, into a physical one by repeatedly assaulting and battering Mr. Hanif without any lawful justification, privilege, or provocation from Mr. Hanif.

d. Arresting Mr. Hanif for trespassing without a shred of credible evidence amounting to probable cause, and in the face of substantial exculpatory evidence showing he was a lawful guest, thereby demonstrating a complete neglect of the probable cause requirement.

e. His unambiguous statement that "If you had been polite, we would have tried to figure things out," which is a direct admission that his decision-making process regarding Mr. Hanif's liberty was improperly and arbitrarily influenced by his personal feelings or animus rather than by objective facts, established police procedure, and law. This constitutes a reckless and flagrant dereliction of his sworn duty to act impartially and justly, amounting to an utter disregard of prudence.

f.   Participating in, encouraging, and facilitating the continuation of Mr. Hanif's unlawful detention and subsequent malicious prosecution for disorderly conduct even as evidence overwhelmingly and irrefutably confirmed his innocence of any trespass and the baselessness of the disorderly conduct charge. This demonstrates a complete neglect for Mr. Hanif's rights once falsely accused.

g.   Failing to de-escalate the situation, and instead actively escalating it through baseless accusations (e.g., "did you steal anything?"), physical force, and conflicting commands, contrary to accepted police practices and demonstrating an utter disregard for the safety and rights of Mr. Hanif.

217. This conduct by Officer Romero was so egregious, reckless, and indifferent to the rights and safety of Mr. Hanif that it rises far above simple negligence to the level of gross negligence, thereby stripping Officer Romero and, vicariously, Fairfax County of any immunity (including common law qualified immunity for discretionary acts or sovereign immunity) to which they might otherwise claim entitlement under Virginia law.

218. Defendant Fairfax County, as Officer Romero's employer, is vicariously liable under the doctrine of respondeat superior for the injuries and damages caused by Officer Romero's gross negligence committed within the course and scope of his employment, as such gross negligence is not protected by sovereign immunity.

219. The sovereign immunity of Fairfax County does not extend to acts of its employees that constitute gross negligence. Furthermore, the Fairfax County Police Department, in a letter dated January 22, 2025, concerning this incident (Exhibit 2 – FCPD Disposition Letter), admitted that there were "separate policy violations" by its officer(s) in connection with Mr. Hanif's arrest. These admitted policy violations lend further factual support to the claim that Officer Romero's conduct deviated

grossly from established standards of care, procedure, and his training, and thus constituted gross negligence.

220. The acts and omissions of Defendant Fairfax County, through its agent and employee Officer Romero, demonstrate a willful and wanton disregard for Plaintiff's rights, or at a minimum, gross negligence.

221. The failure of supervising FCPD Lieutenants on scene (including but not limited to Lt. Meeks and Lt. Kuhar) to intervene effectively, to correct Officer Romero's obviously flawed and biased investigation, and to prevent the unlawful arrest and subsequent malicious prosecution of Mr. Hanif, despite being aware of many of the same compelling exculpatory facts (such as the room key and the statements about a second guest), further illustrates the environment of negligence within which Mr. Hanif's rights were violated and can constitute gross negligence on the part of such supervisors, for which the County may also be liable.

222. The foregoing conduct of Officer Romero, as well as the inaction or improper actions of his supervisors, demonstrates gross negligence, defined under Virginia law as conduct that "shows an utter disregard of prudence amounting to a complete neglect of the safety [and rights] of another" or "a heedless and palpable violation of legal duty respecting the rights of others." (e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991); *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945))

223. As a direct and proximate result of Officer Romero's gross negligence, and the gross negligence of other FCPD personnel for which Defendant Fairfax County is liable, Plaintiff suffered unlawful detention, false arrest, assault, battery, malicious prosecution, physical discomfort and injury, public humiliation, severe emotional distress, psychological harm, and other compensable injuries and damages.

Page 45 of 60

224. Defendant Fairfax County's grossly negligent failure to train and supervise its officers permitted and tolerated a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene. This culture was a moving force behind Plaintiff's unlawful arrest and detention.

WHEREFORE, Plaintiff demands judgment against Fairfax County for compensatory damages, costs, and such further relief as the Court deems just and proper. Plaintiff does not seek punitive damages against Fairfax County consistent with Virginia law and City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

### COUNT VII – VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL SEIZURE
#### (Against Defendant Officer Romero, under 42 U.S.C. § 1983)

225. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 224 as if fully set forth herein.

226. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be free from unreasonable searches and seizures, including arrests without probable cause or arrest warrants.

227. On September 22, 2023, Plaintiff was lawfully present at the Holiday Inn Express Alexandria–Fort Belvoir as a paying guest with valid room access.

228. Despite this, Defendant Officer Romero, acting under color of law, arrested Plaintiff for alleged trespassing and disorderly conduct without confirming his guest status or conducting a reasonable investigation into the facts.

229. General Manager Quiñones Ramos asked Officer Romero whether Plaintiff could be trespassed from the premises, and Romero agreed, despite the absence of any independent verification that Plaintiff was not a guest and despite exculpatory evidence, including Plaintiff's room key and his assertions of lawful guest status.

230. Romero misapplied and misstated the elements of Virginia's disorderly conduct statute, demonstrating a failure of training and a reckless disregard for the protections of the Fourth Amendment.

231. Captain Kuhar, as the senior officer on scene, deferred entirely to Romero's judgment and failed to intervene to prevent an unconstitutional seizure.

232. Other officers, including Lieutenant Meeks, arrived after the arrest and reinforced assumptions of guilt by making conclusory statements—such as "his name's not in the registry"—without confirming whether anyone had checked the registry or verified Plaintiff's guest status.

233. The arrest was further influenced by an internal culture encouraging arrests for the sake of statistics, evidenced by comments from supervising officers about the need to "take someone," and Romero's response that he would "take" Plaintiff.

234. Plaintiff had committed no criminal offense justifying his arrest. His conduct—disputing accusations, using limited profanity not amounting to "fighting words," and refusing to leave a place where he had a contractual right to remain—was protected by law.

235. By arresting Plaintiff without probable cause and without a lawful basis, Defendants deprived Plaintiff of his liberty in violation of the Fourth Amendment.

236. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unlawful seizure, deprivation of liberty, emotional distress, reputational harm, financial losses, and other damages to be proven at trial.

   WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT VIII – FIRST AMENDMENT RETALIATION
### (Against Defendant Officer Romero under 42 U.S.C. § 1983)

237. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 236 as if fully set forth herein.

238. The First Amendment to the United States Constitution protects *inter alia* the rights of individuals to engage in free speech, to petition the government, and to record public officials in the performance of their duties.

239. Plaintiff engaged in constitutionally protected conduct, including:

a. Verbally disputing the accusations made by hotel staff and officers.

b. Using profanity in a limited manner, without racial or threatening language, and without rising to the level of "fighting words" that would provoke imminent violence.

c. Recording and documenting the conduct of Officer Romero and other responding officers.

240. In response to this protected activity, Officer Romero placed Mr. Hanif under arrest for trespassing – later stating, "if you had been polite, we would have tried to figure things out."

241. Defendants, acting under color of law, arrested Plaintiff in retaliation for his exercise of these protected rights.

242. Officer Romero's decision to arrest Plaintiff was not based on probable cause but was substantially motivated by Plaintiff's refusal to "go with the program," his verbal objections, and his insistence on documenting the officers' actions.

243. Captain Kuhar, as the senior officer on scene, failed to question or correct Romero's retaliatory actions and instead endorsed the decision to arrest.

244. Lieutenant Meeks, arriving later, reinforced the retaliatory nature of the arrest by making statements confirming assumptions rather than asking questions to uncover exculpatory facts.

Page 48 of 60

245. The culture of retaliation within the Fairfax County Police Department was further evidenced by contemporaneous officer comments about the need to "take someone," and Romero's own confirmation that he would "take" Plaintiff.

246. Defendants' actions had a chilling effect on Plaintiff's exercise of his First Amendment rights and would deter a person of ordinary firmness from continuing to exercise those rights.

247. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT IX – VIOLATION OF THE FOURTEENTH AMENDMENT
### (DUE PROCESS AND EQUAL PROTECTION)
### (Against Defendant Officer Romero under 42 U.S.C. § 1983)

248. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 247 as if fully set forth herein.

249. Fairfax County, through the Fairfax County Police Department, has maintained a policy, custom, or practice of deferral, by which officers and supervisors abdicate their duty to investigate and instead uncritically adopt the conclusions of the first officer on scene.

250. This culture of deferral, repeatedly demonstrated on September 22, 2023, when multiple officers ignored exculpatory evidence and deferred entirely to Officer Romero's unsupported narrative,

Page 49 of 60

constitutes a County policy or custom that reflects deliberate indifference to constitutional rights and was a moving force behind Plaintiff's unlawful arrest and detention.

251. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person the equal protection of the laws.

252. Defendants, acting under color of law, deprived Plaintiff of liberty and equal protection by arresting him without probable cause, removing him from the premises, and charging him with offenses unsupported by law or fact.

253. Procedural Due Process: Plaintiff was deprived of liberty without adequate investigation or verification of his guest status.

a. Ms. Quiñones Ramos, the hotel's General Manager, asked Officer Romero to trespass Plaintiff without confirming whether he was in fact a registered guest, despite acknowledging that her subordinate Ms. Hamre had no prior experience handling such matters.

b. Officer Romero deferred to Ramos's request without reviewing or seeking additional exculpatory evidence such as Plaintiff's room key, the hotel registry, or surveillance footage.

c. Captain Kuhar, as the highest-ranking officer on scene, likewise failed to inquire into or confirm whether Plaintiff was a lawful guest, instead deferring to Romero's judgment.

d. Lieutenant Meeks, upon arriving later, made conclusory statements—such as "his name's not in the registry"—without verifying whether anyone had in fact checked the registry. At no time did she ask the necessary questions that would have revealed exculpatory evidence and prevented an unlawful arrest.

254. Substantive Due Process: Defendants' actions were arbitrary and capricious.

a. Plaintiff's conduct—peacefully sitting in the breakfast area, verbally disputing his treatment, and

recording the officers—was constitutionally protected activity and did not constitute disorderly conduct under Virginia law.

b. Plaintiff's limited use of profanity during the encounter was not racially based, nor did it rise to the level of "fighting words" that could provoke violence.

c. Defendants' decision to criminalize this conduct bore no rational relationship to a legitimate governmental interest and instead reflected reckless disregard for Plaintiff's constitutional rights.

255. Equal Protection: Plaintiff was denied equal protection of the laws.

a. Ms. Ramos stated that Plaintiff was "just coming in to load up," implying that he was homeless, despite having no evidence and without any attempt to confirm his guest status.

b. Hotel staff and officers assumed Plaintiff's illegitimacy as a guest and treated him more harshly than other similarly situated hotel patrons.

c. The officers' culture of arbitrary enforcement is evidenced by contemporaneous statements among officers, including references to the need to "take someone," and Romero's confirmation that he would "take" Plaintiff for trespassing and disorderly conduct.

256. Supervisory Failures:

a. Captain Kuhar, as the senior officer on site, failed to supervise subordinates or question the legality of the arrest, instead endorsing Romero's unsupported conclusions.

b. Lieutenant Meeks reinforced a culture of confirmation bias by making statements rather than inquiries, thereby compounding the deprivation of Plaintiff's rights.

c. These supervisory failures were consistent with and the result of Fairfax County's policies, practices, and customs that tolerate or encourage unlawful arrests, inadequate training, and demonstrated indifference to constitutional rights.

257. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Fairfax County under 42 U.S.C. § 1983 and pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for compensatory in an amount to be proven at trial, attorney's fees and costs under 42 U.S.C. § 1988, and such further relief as the Court deems just and proper, on the grounds that the County's policy, custom, and practice of deferral was a moving force behind the constitutional violations suffered by Plaintiff.

### Count X– Conspiracy to Violate Civil Rights (Against Defendants Officer Romero, Hayley Hamre, Sharon Quinones Ramos under 42 U.S.C. § 1983 and § 1985(3))

258. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 257 as if fully set forth herein.

259. Defendants Romero, Hamre, Quinones Ramos, and others, reached a tacit and/or express understanding to deprive Plaintiff of his constitutional rights by effectuating an unlawful arrest without probable cause.

260. This agreement is evidenced by the coordinated actions of the Defendants.

261. Ramos and Hamre supplied unverified and misleading information about Plaintiff's guest status. Ramos asked Romero if Plaintiff could be trespassed, and Romero agreed without inquiry.

262. The conspiracy was further reinforced by the "take someone" culture present among FCPD officers. Meeks reinforced Laing's comment that he wanted to "take someone" rather than "just sitting for four hours," and Romero confirmed to Meeks that he would "take" Plaintiff for trespassing and disorderly conduct. This language demonstrates a common understanding among the officers that arrests were to be made to justify their presence, regardless of legal sufficiency.

Page 52 of 60

263. Defendants overtly acted on this agreement by arresting Plaintiff without verifying his guest status, by misstating the disorderly conduct statute to justify the arrest, and by ratifying Romero's unlawful decision-making.

264. The conspiracy lacked any legitimate purpose and was driven by animus against Plaintiff as a hotel guest asserting his rights, the Plaintiff's race, and by a culture that valued statistics and arrests over constitutional compliance.

265. As a direct and proximate result of this conspiracy, Plaintiff suffered the deprivation of his Fourth and Fourteenth Amendment rights, unlawful seizure, emotional distress, humiliation, reputational harm, and other compensable damages.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

### Count XI – Violation of 42 U.S.C. § 1981 (Racial Discrimination and Interference in Contractual Rights)
### (Against Defendants Baywood Hotels, Inc., Hayley Hamre, and Sharon Quiñones Ramos; as to state actors, enforced via 42 U.S.C. § 1983)

266. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 265 as if fully set forth herein.

267. At all relevant times, Plaintiff had an existing and enforceable contractual relationship with the Hotel, operated and managed by Baywood Hotels, Inc., entitling him, as a registered and paying guest, to lodging and the full use and enjoyment of hotel facilities and services. See 42 U.S.C. § 1981(b) (defining "make and enforce contracts" to include performance, modification, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship).

268. Defendant Sharon Quiñones Ramos, the Hotel's General Manager and a managerial agent of Baywood, requested that Officer Romero trespass Plaintiff from the Hotel without taking any steps to confirm Plaintiff's guest status, despite readily available verification methods (review of the guest registry, inspection of the room key, and communications with staff who checked Plaintiff in).

269. Ramos never personally interacted with Plaintiff, never observed any of his conduct, and did not witness any of the events leading to his arrest. Instead, acting on the false and biased representations of her subordinate, Defendant Haley Hamre, Ramos falsely asserted that Plaintiff was "just coming in to load up," implying he was a non-guest (e.g., homeless or otherwise unauthorized) and had no legitimate right to be present—when, in fact, Plaintiff was a paid, registered guest.

270. Ramos further acknowledged to Officer Romero that Hamre had never dealt with anything like this before, indicating her awareness that Hamre lacked relevant training and experience. Despite this knowledge, Ramos nevertheless accepted Hamre's account at face value and escalated to law enforcement, rather than exercising her own managerial responsibility to investigate or verify Plaintiff's guest status.

271. As General Manager, Ramos was responsible for supervising Hamre, but instead of intervening appropriately, she ratified or adopted Hamre's unfounded narrative and allowed it to become the basis for a law enforcement trespass request.

272. Officer Romero then agreed to Ramos's trespass request without verifying Plaintiff's status— further interrupting Plaintiff's contracted lodging and access to hotel facilities. The request and agreement functioned to terminate, restrict, and deny Plaintiff's contractual benefits because of his race.

Page 54 of 60

273. Baywood, through Ramos and Hamre, intentionally interfered with and denied Plaintiff the same right to make and enforce his lodging contract as is enjoyed by white citizens, including the enjoyment of all benefits, privileges, terms, and conditions of that contract, on account of Plaintiff's race, in violation of 42 U.S.C. § 1981.

274. To the extent state actors (including Romero and Kuhar) participated jointly with Baywood's agents in depriving Plaintiff of § 1981 rights, those deprivations are actionable via 42 U.S.C. § 1983 and are additionally pled in the § 1983 counts herein. Plaintiff pleads § 1981 directly against Baywood, Ramos, and Hamre, and pleads enforcement of § 1981 rights against state actors through § 1983 to preserve the claim structure recognized in controlling precedent.

275. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of contractual benefits, humiliation, emotional distress, reputational harm, and economic damages, and is entitled to compensatory and punitive damages, together with attorney's fees as allowed by law.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

### Count XII – Gross Negligence / Failure to Supervise / Negligent Supervision
### (Against Baywood Hotels, Inc. and Quiñones Ramos)

276. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 275 as if fully set forth herein.

277. Defendants Baywood Hotels, Inc. ("Baywood") and its General Manager, Quiñones Ramos, owed Plaintiff a duty to exercise reasonable care in the supervision, training, and conduct of hotel staff, including Defendant Hamre, in their interactions with guests and patrons.

Page 55 of 60

278. Ramos requested that Plaintiff be trespassed by law enforcement without conducting even the most basic inquiry into his guest status, despite being in a position to verify that information through hotel records, the front desk, or by questioning Plaintiff directly. In fact, Ramos later confirmed Mr. Hanif's guest status by speaking with another manager but still insisted that Officer Romero continue with the arrest.

279. Ramos relied entirely on the account of Defendant Hamre, despite explicitly acknowledging to Officer Romero that Hamre "had never had to deal with anything like this before." Rather than taking this admission as an indicator that closer supervision or independent verification was needed, Ramos ratified Hamre's judgment and elevated her unverified account into the basis for trespassing Plaintiff.

280. Ramos further undermined her supervisory responsibility by implying to Officer Romero that Plaintiff was merely "just coming in to load up," suggesting he was homeless, despite never having personally observed Plaintiff's conduct, spoken with him, or investigated his status.

281. Baywood, as the hotel's management entity, failed to ensure that Ramos and Hamre were adequately trained or supervised to handle guest disputes in accordance with contractual and legal obligations.

282. The negligent supervision and abdication of responsibility by Ramos and Baywood created the foreseeable risk that an innocent guest would be wrongfully treated as a trespasser, escalated to law enforcement, and subjected to an unlawful arrest.

283. Their failures were a substantial factor in causing Plaintiff's unlawful detention, reputational harm, emotional distress, and other damages, and constitute gross negligence under Virginia law.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

Page 56 of 60

punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT XIII – COMMON LAW CIVIL CONSPIRACY (Against All Defendants)

284. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 283 as if fully set forth herein.

285. Under Virginia law, a common-law civil conspiracy consists of a combination of two or more persons, acting in concert, to accomplish by some concerted action either (a) an unlawful purpose, or (b) a lawful purpose by unlawful means, resulting in damages to the plaintiff. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

286. Defendants, including hotel staff Haley Hamre and Sharon Quinones Ramos, and Officer Romero acted in coordination, combined and acted in concert to cause and continue Plaintiff's unlawful arrest and detention.

287. Specifically, Hamre and Ramos provided knowingly false and misleading statements to law enforcement regarding Plaintiff's status as a lawful guest of the hotel, while Fairfax County officers accepted and relied upon those statements without conducting any independent or reasonable investigation, despite the ready availability of exculpatory evidence including Plaintiff's room key, booking confirmation, and his lawful presence on the premises as a paying guest.

288. Defendants acted jointly and in agreement, with the shared objective of removing Plaintiff from the hotel premises and effectuating his arrest despite the absence of probable cause or lawful justification and while intentionally ignoring readily available exculpatory evidence.

289. The actions of Defendants, taken together, constituted concerted action designed to achieve an unlawful purpose — namely, Plaintiff's arrest without probable cause and in violation of his constitutional and statutory rights.

290. As a direct and proximate result of the conspiracy, Plaintiff suffered damages, including loss of liberty, emotional distress, reputational harm, and pecuniary losses.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER

WHEREFORE, Plaintiff Ismail Hanif respectfully requests that this Court enter judgment in his favor and against Defendants on all counts listed herein, awarding:

   A. Ten-Million Dollars ($10,000,000.00) in compensatory and/or special damages in the aggregate across all counts;

   B. Punitive damages in the amount of $350,000, subject to the statutory cap under Va. Code § 8.01-38.1, recoverable only against the individually named Defendants in their individual capacities and against the private entity Defendants, and not against Fairfax County, consistent with *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981);

   C. Reasonable costs and attorney's fees, including those available pursuant to Va. Code §§ 2.2-3907(C) and 2.2-3908(D) for Count I, and as otherwise permitted by law;

Page 58 of 60

D. Declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights;

E. Injunctive relief requiring Fairfax County to adopt and implement policies, training, and supervision sufficient to eliminate the culture of deferral within the Fairfax County Police Department, including mandatory verification of exculpatory evidence and independent supervisory review in trespass and disorderly conduct investigations;

F. Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable Virginia law;

G. Pre-judgment and post-judgment interest; and

H. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_/s/_ Michael L. Daniels, Esq.
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing First Amended Complaint was

served on all counsel of record on September 16, 2025.

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and Officer Moises Romero

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir, Haley Hamre, and Sharon Quinones Ramos

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
**Jessica.golden@kpmlaw.com**
*Counsel for InterContinental Hotwels Group Resourses*


                                        /s/ Michael L. Daniels, Esq.
                                        Michael L. Daniels, Esq.

# EXHIBIT C

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

ISMAIL HAFIZ HANIF,

    Plaintiff

v.

                      **CASE NO.: CL-2025-7984**

OLD TOWN HOLDINGS, LLC, *et al.,*

    Defendants.

## AGREED ORDER EXTENDING TIME TO FILE RESPONSIVE PLEADINGS

Plaintiff Ismail Hafiz Hanif and Defendants Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, and Sharon Quinones Ramos, as evidenced by the below signatures of their respective counsel, hereby stipulate and agree that these Defendants shall have up to and including July 18, 2025 to file responsive pleadings to the Complaint in this matter.

_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:                         SEEN AND AGREED:

*(signature)*                                         *(signature)* (FF40585)

William L. Mitchell, II (VSB #48585)      Michael L. Daniels (VSB #93154) (w/ permission)
Michelle B. Jessee (VSB #80125)         Atchuthan Sriskandarajah (VSB #41115)
ECCLESTON & WOLF, P.C.             Law Offices of SRIS P.C.
10400 Eaton Place, Suite 107          4008 Williamsburg Court
Fairfax Virginia 22030              Fairfax, Virginia 22032
T: (703) 218-5330                   T: (703) 278-0405
F: (703) 218-5350                   F: (703) 278-0420
wmitchell@ewva.com             michael.daniels@srislawyer.com
armstrong@ewva.com             sris@srislawyer.com
*Counsel for Defendants*          *Counsel for Plaintiff Ismail Hanif*

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| ISMAIL HAFIZ HANIF, | |
| Plaintiff | |
| v. | **CASE NO.: CL-2025-7984** |
| OLD TOWN HOLDINGS, LLC, *et al.*, | |
| **Defendants.** | |

## AGREED ORDER EXTENDING TIME TO FILE RESPONSIVE PLEADINGS

Plaintiff Ismail Hafiz Hanif and Defendants Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, and Sharon Quinones Ramos, as evidenced by the below signatures of their respective counsel, hereby stipulate and agree that these Defendants shall have up to and including July 18, 2025 to file responsive pleadings to the Complaint in this matter.

_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:

William L. Mitchell, II (VSB #48585)
Michelle B. Jessee (VSB #80125)
ECCLESTON & WOLF, P.C.
10400 Eaton Place, Suite 107
Fairfax Virginia 22030
T: (703) 218-5330
F: (703) 218-5350
wmitchell@ewva.com
armstrong@ewva.com
*Counsel for Defendants*

SEEN AND AGREED:

Michael L. Daniels (VSB #93154)
Atchuthan Sriskandarajah (VSB #41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, Virginia 22032
T: (703) 278-0405
F: (703) 278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

By counsel:
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032

    Plaintiff,

v.

**Old Town Holdings, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Alexandria Hotel Company, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Baywood Hotels, Inc.**

    Via: Vikash K. Patel (Registered Agent)
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Riverside Hotels, LLC DBA Holiday Inn
Express & Suites Alexandria
- Fort Belvoir,**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Hayley Hamre, (Individually)**

**Case No.: CL 25-7984**

Page 1 of 60

4104 Rosewood Dr., Unit 1
Joint Base Andrews, MD 20762

**Sharon Quinones Ramos,** (Individually)

955 S. Columbus St. Apt 424
Arlington VA 22204

**Officer Moises Romero,**
(Individually and in his capacity as a
Fairfax County Police Department Officer)

Serve: c/o Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway
Suite 549 Fairfax, VA, 22035

**Fairfax County Government,**

Serve Chairman of the Board of Supervisors
Chairman Jeffrey McKay
12000 Government Center Parkway, Suite 530
Fairfax, VA, 22035

Serve: Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, VA, 22035

and

**InterContinental Hotels Group Resources, LLC**

Serve Registered Agent
United Agent Group Inc.
425 W. Washington St. Suite 4,
Suffolk, Va, 23434-5320

Defendants.

Page 2 of 60

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Ismail H. Hanif (hereinafter "Mr. Hanif" or "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; Officer Moises Romero; Fairfax County, Virginia; and InterContinental Hotels Group Resources, LLC (collectively, where appropriate, "Defendants"), and in support thereof states as follows:

### INTRODUCTION

1. This action seeks redress for the profound violation of Plaintiff Ismail H. Hanif's civil and common law rights and the significant damages he suffered when, on September 22, 2023, as a paying and lawfully registered guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir, he was subjected to racial profiling, falsely accused of trespassing by hotel management, who acted with gross negligence and willful misconduct, and then unlawfully detained, assaulted, battered, and falsely arrested by a Fairfax County Police Officer acting with gross negligence and malice.

2. Despite clear, readily available, and ultimately irrefutable evidence confirming Mr. Hanif's status as a lawful guest, the defendant hotel management and the defendant arresting officer engaged in conduct demonstrating a conscious and utter disregard for his rights and safety, culminating in a malicious prosecution for Disorderly Conduct that was ultimately dismissed when the truth of his guest status could no longer be ignored.

### PARTIES

3. **Plaintiff Ismail Hanif** is an individual residing at 1585 Springfield Avenue, Maplewood, NJ 07040. Mr. Hanif is an African American man.

4.   **Defendant Riverside Hotels, LLC D/B/A Holiday Inn Express & Suites Alexandria - Fort Belvoir** (the "Hotel") is a hotel located at 6055 Richmond Highway, Alexandria, VA 22303 and is a place of public accommodation.

5.   The name Holiday Inn Express & Suites Alexandria – Fort Belvoir is not separately registered with the Virginia State Corporation Commission ("SCC") as a distinct legal entity or fictitious name, nor are there any close variations listed with the SCC. Upon information and belief, it is the operating name for the hotel premises owned and/or managed by other named Defendants, Defendant Riverside Hotels, Inc and Defendant Baywood Hotels, Inc.

6.   **Defendant Baywood Hotels, Inc.** ("Baywood") is the management company for the Hotel and the employer of Defendants Hayley Hamre and Sharon Quinones Ramos.

7.   **Defendant Hayley Hamre** ("Hamre") was, at all relevant times, the Director of Sales at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Hamre acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

8.   **Defendant Sharon Quinones Ramos** ("Quinones Ramos") was, at all relevant times, the General Manager at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Quinones Ramos acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

9.  **Defendant Officer Moises Romero** ("Officer Romero") is/was, at all relevant times, a sworn law enforcement officer employed by Defendant Fairfax County, Virginia, through its agency the Fairfax County Police Department ("FCPD"). At all times relevant to this complaint, Officer Romero was acting individually, under color of state law, and within the course and scope of his employment.

10. Officer Romero is the arresting officer in this case.

11. Officer Romero was the first officer on the scene and led the actions, which culminated in Mr. Hanif's unlawful arrest.

12. Fairfax County Police Department (FCPD) is a law enforcement agency and a division of the Fairfax County Government, established pursuant to Virginia law and responsible for the supervision, training and conduct of its officers and employees.

13. **Defendant Fairfax County, Virginia** (the "County") is a political subdivision of the Commonwealth of Virginia. At all relevant times, the County, through its agency, the FCPD, employed, trained, supervised, and was responsible for the conduct of Officer Romero and Major Kuhar. The FCPD is the law enforcement agency established pursuant to Virginia law and responsible for establishing and enforcing policies, customs, and practices regarding police conduct, including but not limited to, investigations, detentions, arrests, use of force, and the verification of information in situations involving alleged trespassing at public accommodations. The County is liable for the tortious acts of its employees, including Officer Romero, when such acts constitute gross negligence or intentional wrongdoing committed within the scope of employment, thereby falling outside the protection of sovereign immunity.

14. As franchisor for the Holiday Inn brand worldwide, including the subject Hotel, Baywood establishes, mandates, and/or enforces brand standards, operational procedures, guest service

Page 5 of 60

protocols, and training requirements for its employees and managed properties, including, in this instance, Holiday Inn Express and Suites – Alexandria Ft. Belvoir. These standards and procedures include, but are not limited to, standards concerning guest interactions, non-discrimination, complaint resolution, and procedures for verifying guest status.

15. Plaintiff alleges that Baywood exercised sufficient control over the Hotel's operations, policies, and employee training (or exhibited a negligent failure in its oversight or provision of adequate policies and training regarding non-discrimination, de-escalation, and proper guest verification) such that an actual and/or apparent agency relationship exists between Baywood and Defendant Riverside Hotels, LLC, Hamre, and Quinones Ramos.

16. The specifics of these control mechanisms, franchise agreements, mandated operational procedures, and training programs are within the exclusive knowledge and possession of Baywood and its co-defendants and will be detailed through discovery.

17. Alternatively, Plaintiff alleges that Baywood's own policies, training mandates, or the negligent failure to provide adequate policies and training directly and proximately contributed to the violations of Mr. Hanif's rights alleged herein.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over the claims asserted herein pursuant to Va. Code § 17.1-513, as the amount in controversy exceeds the jurisdictional limits of the General District Court. This Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1, as the events giving rise to this Complaint occurred in Fairfax County, Virginia, and/or Defendants transact business, reside, or regularly conduct affairs within Fairfax County.

19. Venue is proper in this Court under Va. Code § 8.01-262 because one or more Defendants reside or have their principal place of business in Fairfax County, Virginia, and/or the cause of action, or a part thereof, arose in Fairfax County, Virginia.

## DEFINITIONS

20. For the purposes of this Complaint, "Hotel Defendants" shall refer collectively to Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and, where agency, vicarious, or direct liability is established by the facts and law, Riverside Hotels, LLC ("Riverside").

## FACTUAL BACKGROUND

21. On September 22, 2023, Mr. Hanif was a registered and paying guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir. (the "Hotel")

22. Mr. Hanif was lawfully present at the Hotel prior to, during, and at the time of his unlawful arrest.

23. Despite being a lawfully registered guest with all attendant rights and privileges, Mr. Hanif was falsely accused of trespassing by the Hotel staff, specifically including Defendants Hamre and Quinones Ramos, who, acting with gross negligence and/or willful and wanton disregard for the truth, incorrectly and without any reasonable verification stated that Mr. Hanif was not a guest.

24. The Fairfax County Police Department, (FCPD) initially represented by Defendant Officer Romero, arrived at the Hotel in response to the false report instigated by Defendant Hamre.

25. The following FCPD officers were present at the Holiday Inn during Mr. Hanif's arrest and /or detention:

   a. Officer Moises Romero

   b. Captain (now Major) Marisa Kuhar

   c. Officer Hannah Isabella

    d.  Officer Frankie Fitzgerald, Jr.

    e.  Lieutenant Monica Meeks

    f.  Officer Callum Laing

    g.  Officer Thomas Armel

26. In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD only provided video footage types from the following officers who were on site:

    a.  Officer Moises Romero – Body Worn Camera ("BWC"), Partial Dash Camera ("DC") and Rear Seat Car Camera ("CC")

    b.  Officer Frankie Fitzgerald, Jr. – BWC, DC, and CC

    c.  Lieutenant Monica Meeks – BWC, DC, and CC

    d.  Officer Callum Laing – BWC, DC, and CC

    e.  Officer Thomas Armel – BWC

    f.  Officer Hannah Isabella – DC, and CC (Nothing after her arrival on site.)

27. In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD failed to provide video footage from the following officers who were on site:

    a.  Captain (now Major) Marisa Kuhar

    b.  Officer Hannah Isabella – BWC

28. Defendant Officer Romero, deliberately ignoring his training and accepted police practices, acted solely on the unverified and false information provided by the Hotel staff. Without conducting any reasonable or adequate independent investigation to verify Mr. Hanif's guest status, despite multiple opportunities and clear indications that such investigation was warranted, Officer Romero forcibly and unlawfully detained Mr. Hanif, accusing him of trespassing.

29. Mr. Hanif was subsequently arrested by Officer Romero and maliciously charged with disorderly conduct, a charge that was ultimately dismissed by the Commonwealth's Attorney on February 28, 2024, when irrefutable video evidence and the Hotel's own eventual admissions confirmed Mr. Hanif's status as a paying guest and the utter baselessness of the accusations against him. (Fairfax County General District Court, Case No: GC23130096-00).

30. The actions of the Hotel Defendants and Officer Romero were grossly negligent, demonstrated bad faith and malice, and reflected a conscious and utter disregard for Mr. Hanif's clearly established rights as a guest and as a citizen. Specifically:

    a. Hotel management, including Defendants Hamre and Quinones Ramos, took no reasonable steps to confirm whether Mr. Hanif was a guest prior to calling the police and accusing Mr. Hanif of trespassing.

    b. Defendant Officer Romero, and any other officers under his direction or acting in concert with him, refused to take the most basic, reasonable, and readily available steps to confirm whether Mr. Hanif was a guest prior to detaining, assaulting, battering, and arresting him, thereby abdicating their investigative duties.

    c. The Hotel staff, including Defendants Hamre and Quinones Ramos, repeatedly and falsely asserted that Mr. Hanif was not a guest without taking the most basic steps to confirm their allegation and persisted in this false assertion even when presented with clear evidence to the contrary.

    d. Officer Romero consciously ignored, or was deliberately indifferent to, at least five distinct and compelling facts and statements that would indicate to any reasonable person, let alone a trained and competent police officer, that Mr. Hanif was a lawful guest

and that his assertion of being a guest warranted immediate and thorough investigation rather than continued unlawful detention and escalation.

e. The facts and statements ignored by Officer Romero include, but are not limited to:

    i. The presence of a room key in Mr. Hanif's possession, which was found and acknowledged by Officer Romero;

    ii. A Question from a superior officer, Lt. Meeks, about a second guest staying in the room with Mr. Hanif;

    iii. A second officer, Ofc. [Fitzgerald], indicating that there was a guest in the room with Mr. Hanif independent of the superior officer;

    iv. A second officer explicitly stating several times that Mr. Hanif had a room key;

    v. Mr. Hanif's direct and repeated requests for Officer Romero to verify his guest status by checking the Hotel registry, going to his room, or contacting his companion in the room.

f. Officer Romero explicitly stated that he was not going to investigate evidence that would have conclusively shown that Mr. Hanif was a guest because, in Officer Romero's subjective and improper view, Mr. Hanif was not "polite." This statement is a direct admission of an improper, arbitrary, and malicious basis for his official actions, demonstrating a profound abuse of his authority and an utter abdication of his duty to investigate objectively and impartially.

**TIMELINE OF EVENTS ON SEPTEMBER 22, 2023**
**(Taken from Police Body Camera Video)**

Page 10 of 60

31. At or around 8:36 AM on September 22, 2023, Fairfax County Police were called by Hotel staff (Defendant Hamre) and dispatched to the scene for a complaint of a Black man in the breakfast area allegedly cursing and making a disturbance. The caller falsely stated that the man was not a guest of the Hotel.

32. At or around 8:56:37 AM – Officer Romero entered the Hotel lobby.

33. At or around 8:56:52 AM – Defendant Hayley Hamre tells Officer Romero that Mr. Hanif is not a Guest.

34. At or around 8:57:29 AM – Defendant Hayley Hamre states that she is the director of sales, and the General Manager [Defendant Sharon Quinones Ramos] is not on site yet.

35. At or around 8:57:42 AM – Officer Romero makes his initial contact with Mr. Hanif. Without any lawful provocation, reasonable suspicion, or probable cause, Officer Romero immediately and unlawfully seized Mr. Hanif by physically stopping him from leaving the breakfast area, placing his hand on Mr. Hanif's chest, stopping his forward progress, and pushing him back. Mr. Hanif asked if he was being detained, but Officer Romero refused to answer Mr. Hanif's repeated question about his detention status, further exacerbating the unlawful nature of the seizure.

36. This unwarranted, offensive, and non-consensual touching constituted an assault and battery upon Mr. Hanif by Officer Romero.

37. At or around 8:57:57 AM – Officer Romero states that Mr. Hanif is trespassing.

38. At or around 8:58:03 AM – Mr. Hanif again asks if he is being detained – Officer Romero responds, "If you're going to leave, leave."

39. At or around 8:58:01 AM – Officer Romero, without basis, asks Mr. Hanif if he stole anything – escalating the conflict.

40. At or around 8:58:08 AM – Mr. Hanif, relying on Officer Romero's explicit statement that he was free to leave, attempts to do so but is again forcibly stopped by Officer Romero who grabs Mr. Hanif using both hands and forces him back.

41. This action constituted a further unlawful assault and battery.

42. At or around 8:58:12 AM – Officer Romero (again) asks if Mr. Hanif stole anything. In response, the breakfast attendant, Debra, states that Mr. Hanif did not steal anything.

43. At or around 8:58:19 AM – Officer Romero tells Mr. Hanif to leave. Mr. Hanif, understandably confused and agitated by the conflicting commands and false allegations, refuses, and Officer Romero continues to tell Mr. Hanif to leave.

44. At or around 8:58:21 AM – Mr. Hanif says to Officer Romero, "You didn't pay. You leave!" highlighting his status as a paying guest of the Hotel.

45. At or around 8:58:31 AM – Breakfast attendant, Debra, attempts to explain the situation.

46. At or around 8:58:58 AM – Debra (attendant) confirms that the general manager [Defendant Quinones Ramos] is not there, and Officer Romero incorrectly states that Defendant Hayley Hamre is the manager.

47. At or around 8:59:19 AM – Mr. Hanif starts recording the encounter and Defendant Hayley Hamre attempts to leave the area.

48. At or around 8:59:27 AM, Officer Romero falsely told Mr. Hanif that the Hotel wanted him to leave, but no one from the Hotel had directly asked Mr. Hanif to leave at that time nor would anyone from the Hotel have any lawful basis for asking Mr. Hanif to leave given his status as a paying guest.

49. At or around 8:59:37 AM, Officer Romero makes his first direct assertion to Mr. Hanif that Mr. Hanif was not a guest relying solely on the unverified claims of Defendant Hamre.

50. At or around 8:59:40 AM, Mr. Hanif asks how Officer Romero knows that he's not a guest. Officer Romero responds, "They said you're not a guest." Mr. Hanif asks, "how do you know...?" and "Who said that...?"

51. At or around 8:59:51 AM, Mr. Hanif confronts Ms. Hamre asking if she said that he is not a guest.

52. At or around 9:00:05 AM, Officer Romero continued to demand that Mr. Hanif leave.

53. At or around 9:00:27 AM, Officer Romero finally asked Mr. Hanif, if he was a guest, for the first time – several minutes into the hostile encounter and after having physically assaulted Mr. Hanif and giving him conflicting commands.

54. At or around 9:00:28 AM, Mr. Hanif immediately responded that he was a guest.

55. At or around 9:00:30 AM, Rather than accept Mr. Hanif's assertion as the basis for further investigation with the Hotel staff, Officer Romero counters by asking "What room are you staying in?"

56. At or around 9:00:34 AM, Mr. Hanif reiterated that he was a guest for the second time saying, "I told you that I'm a guest, that's all you need to know."

57. At or around 9:00:45 AM, Rather than taking this additional opportunity to investigate, Officer Romero asked Mr. Hanif to leave again and called for support.

58. At or around 9:00:49 AM, Officer Romero stated that Mr. Hanif would be arrested for trespassing if he did not leave.

59. At or around 9:01:03 AM, Mr. Hanif continued to assert that he was a guest.

60. At or around 9:01:52 AM, Mr. Hanif explained why he was upset by the false accusations and unwarranted actions against him by the police and Hotel staff.

61. At or around 9:02:23 AM, Mr. Hanif was taken into custody with Officer Armel, who was in plain clothes, assisting in the unlawful arrest.

62. At or around 9:03:09 AM, Defendant Quinones Ramos arrived, passing the officers and Mr. Hanif as they were taking Mr. Hanif out of the hotel lobby.

63. At or around 9:04:12 AM, Officer Romero removed a bundle of cash and Mr. Hanif's Room key from Mr. Hanif's Pocket. Officer Romero then held the cash up in front of the dash cam of his squad car and placed the bundle on the hood of his squad car. At this time, Captain Kuhar was positioned on the driver's side of Officer Romero's squad car near the front windshield.

64. At or around 9:04:38 AM Captain Kuhar left her position on the driver's side of Officer Romero's Squad car and proceeded to the Passenger side of the squad car.

65. At or around 9:04:42 AM Captain Kuhar removed the bundle of cash and Mr. Hanif's Room key from the hood of Officer Romero's squad car

66. At or around 9:04:45 AM Captain Kuhar left the passenger side of Officer Romero's squad car.

67. At or around 09:04:49 Captain Kuhar returned to the Driver's side of Officer Romero's squad car with Mr. Hanif's room key in her right hand in plain view.

68. At or around 9:04:53 Captain Kuhar placed Mr. Hanif's room key and cash under Mr. Hanif's cell phone but did not alert the other officers to the presence of the room key (direct physical exculpatory evidence) that she readily observed.

69. At or around 09:05:52 Captain Kuhar responded to Officer Laing's question about what Mr. Hanif was doing inside saying "Disorderly…. Disorderly and…" This marks the first time any officer mentioned "Disorderly", but this comment was after Captain Kuhar's discovery of Mr. Hanif's room key.

70. At or around 9:06:06 AM, while searching through Mr. Hanif's possessions, incident to the unlawful arrest, Officer Romero discovered the room key that Captain Kuhar placed under Mr.

Hanif's cell phone – direct physical evidence confirming Mr. Hanif's guest status. At that time, Officer Romero did not alert the other officers to the presence of the room key.

71. At or around 9:06:54 AM, Officer Fitzgerald ran Mr. Hanif's ID at Officer Romero's Request.

72. At or around 9:07:00 AM, Officer Romero returned to the Hotel Lobby, while Mr. Hanif remained in custody in Officer Romero's squad car.

73. At or around 9:07:12 AM, Defendant Quinones Ramos, now present, asked to have Mr. Hanif trespassed despite having no personal knowledge of the preceding events and without taking any steps to verify Mr. Hanif's guest status.

74. At or around 9:07:14 AM, Officer Romero agreed to this request.

75. At or around 9:07:17 AM, Defendant Hamre informed Officer Romero that Defendant Quinones Ramos was the General Manager.

76. At or around 9:07:17 AM, Officer Romero asked if they were sure that Mr. Hanif was not a guest but received no immediate definitive answer that would justify Mr. Hanif's continued detention.

77. At or around 9:07:22 AM, Officer Romero asked Ms. Quinones Ramos if Mr. Hanif was a guest.

78. At or around 9:07:23 AM, Ms. Quinones Ramos falsely denied that Mr. Hanif was a guest.

79. At or around 9:07:24 AM, Officer Romero explicitly informed the Hotel staff, including Defendants Hamre and Quinones Ramos, that Mr. Hanif had a Hotel key card. This direct communication of exculpatory physical evidence put the Hotel staff on undeniable notice of a high probability that Mr. Hanif was a guest.

80. At or around 9:07:25 AM, Defendant Quinones Ramos, in a demonstration of gross negligence and a reckless disregard for the truth, again denied that Mr. Hanif could be a guest, dismissively and falsely speculating (of the key card) "he might have picked it up off the floor." This statement by

Quinones Ramos demonstrates a willful blindness to the truth and a predetermined, baseless assumption against Mr. Hanif, constituting gross negligence and evidencing malice.

81. At or around 9:07:55 AM Defendant Quinones Ramos, told Officer Romero (speaking of Defendant Hamre "I feel bad because she has never had to deal with anything like this before."

82. At or around 9:08:44 AM, Officer Fitzgerald reported to Lieutenant Meeks that Mr. Hanif claimed to have a guest staying in the room with him further evidence of Mr. Hanif's lawful presence in the Hotel.

83. At or around 9:08:49 AM, Lieutenant Meeks asked why Mr. Hanif would not just "go with the program and go back to his room" but she was apparently unaware that Officer Romero had unlawfully prevented Mr. Hanif from doing so.

84. At or around 9:09:10 AM, Mr. Hanif's ID came back valid, expiring in 2029, with no warrants or alerts.

85. At or around 9:09:39 AM, Lieutenant Meeks went inside and asked Officer Romero and hotel staff if Mr. Hanif had family or a guest staying with him. Officer Romero, again failing to investigate, denied this without checking.

86. At or around 9:09:47 AM, Ms. Quinones Ramos falsely claimed that Mr. Hanif just came in trying to get breakfast and started describing behavior she never witnessed – further demonstrating her commitment to a false narrative.

87. At or around 9:10:55 AM, Ms. Quinones Ramos asked for a trespass form persisting in the unlawful course of action.

88. At or around 9:10:58 AM, Officer Laing and Lieutenant Meeks had a discussion about keeping stats, and Officer Laing commented that he would like to take someone to jail to avoid sitting for

four hours. Lieutenant Meeks replied, "Take somebody". Officer Laing replied, "I know, I want to take somebody…"

89. At or around 9:11:33 AM, Officer Fitzgerald informed Officer Romero that Mr. Hanif said he had another guest staying with him in the room. Officer Romero countered that the general manager (Defendant Quinones Ramos) said Mr. Hanif was not a guest, and, in so doing, Officer Romero demonstrated a reckless disregard for the truth by choosing to rely on demonstrably false information over exculpatory facts. This also marked the second time that Officer Romero was informed that Mr. Hanif was staying at the hotel with another guest, but Officer Romero again refused to investigate.

90. At or around 9:11:39 Approximately seven minutes after her discovery of Mr. Hanif's room key, Captain Kuhar tells Officer Romero that Mr. Hanif "also has a room key." Officer Romero acknowledges her comment by saying that he saw that. This marks the first time that the officers spoke to each other about the presence of the room key.

91. At or around 9:11:41 AM, Officer Isabella stated that Mr. Hanif had a Hotel room key.

92. At or around 9:11:42 AM, Officer Romero confirms that he saw the Hotel room key.

93. At or around 9:11:46 AM, Officer Isabella states a second time that Mr. Hanif had a Hotel room key.

94. At or around 9:11:47 AM, Officer Romero states that he is going to do the trespass form to ban Mr. Hanif from the Hotel per the manager's request – continuing the unlawful arrest and process.

95. At or around 9:11:50 AM, A M. Lieutenant Kuhar asks about the Hotel room key – suggesting that they take the key in to deactivate it if it doesn't belong to Mr. Hanif.

96. At or around 9:11:56 AM, Mr. Hanif asks to speak to a supervisor because, as he correctly stated, "the officers are not doing proper police work."

97. At or around 9:12:33 AM, Officer Isabella showed the room key to Ms. Quinones Ramos, who again denied its significance underscoring her refusal to investigate Mr. Hanif's guest status and further demonstrating her gross negligence in this situation.

98. At or around 9:12:55 AM, Lieutenant Meeks asked if anyone was registered under Mr. Hanif's name. Officer Isabella incorrectly denied this, because no one had actually checked the Hotel's registry at that point.

99. At or around 9:13:33, Lieutenant Meeks, Officer Isabella, and Officer Fitzgerald all deactivated their body worn cameras.

100. At or around 9:14:07 AM, Ms. Quinones Ramos was still outside, as seen on Officer Fitzgerald's dash cam.

101. At or around 9:14:13 AM, Mr. Hanif offered exculpatory evidence to Officer Romero saying, "If I got a key and we go in my room, what would happen? What would that that prove? That they are lying, right?" Officer Romero responded, "we're not going to do that." Mr. Hanif countered, "Yes! Because you know I'm right! That's why we're not going to do it, because you know I'm right!"

102. At or around 9:14:35 AM, Officer Romero said to Mr. Hanif, "If you had been polite, we would have tried to figure things out." This statement is direct evidence of Officer Romero's malice and his decision to arrest and pursue charges against Mr. Hanif based on personal animus and abuse of authority, rather than on any legitimate law enforcement purpose or probable cause.

103. At or around 9:16:00 AM, Officer Romero tells Lieutenant Meeks that Mr. Hanif wants to speak to a supervisor. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 AM to 09:21:56 AM.

104. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 to 09:21:56.

105. At or around 9:16:06 AM, Defendant Sharon Quinones Ramos admitted to Officer Romero that Mr. Hanif was indeed a guest staying there with a friend and had checked in with another manager. Ms. Quinones Ramos further stated that the other manager remembered Mr. Hanif and confirmed his check-in, noting his description as a Black man with tattoos on his face.

106. Despite this admission and confirmation of Mr. Hanif's status as a paying guest, Defendant Quinones Ramos outrageously and inexplicably requested that the police proceed with charging Mr. Hanif with trespassing anyway and further requested that the other lawful guest also be removed from the Hotel room. This admission by Defendant Quinones Ramos, made after Mr. Hanif had already been unlawfully arrested and detained based on her and Hamre's false information, unequivocally establishes her actual knowledge of Mr. Hanif's status as a lawful guest. Her subsequent demand to Officer Romero to proceed with trespassing and charging Mr. Hanif despite this knowledge constitutes an act of profound bad faith, actual malice, and a willful and wanton disregard for Mr. Hanif's rights. It further demonstrates that the Hotel Defendants' actions were pretextual and intended to harass Mr. Hanif.

107. At or around 9:16:42 AM, The police declined to remove the other guest noting that because Mr. Hanif and the other guest were paid guests of the Hotel, they could not remove the other guest and that only the Hotel management could ask them to leave.

108. Despite this acknowledgement of Mr. Hanif's rights as a guest, the police unlawfully kept Mr. Hanif in custody.

109. At or around 9:16:57 AM, Ms. Quinones Ramos receives the completed trespass form from Officer Romero, asks if the name on the form is Mr. Hanif's name, and then signs the form – despite knowing that Mr. Hanif was actually a guest in the Hotel.

110. At or around 9:18:03 AM, Officer Isabela and Officer Romero joked about giving Mr. Hanif a parking ticket further showcasing their unprofessional conduct and callous indifference for Mr. Hanif's rights.

111. At or around 9:18:33 AM, Officer Romero suggested running the plates on Mr. Hanif's vehicle to see if Mr. Hanif's car was stolen. Officer Isabella runs the plates – a fishing expedition without any basis and a blatant attempt to find some reason to justify Mr. Hanif's continued detention.

112. At or around 9:24:34 AM, Lieutenant Meeks and Officer Isabella confirmed with Hotel staff that Mr. Hanif was the registered guest for room 121.

113. At or around 9:25:11 AM, Defendant Hayley Hamre referred to Mr. Hanif as the guest.

114. At or around 9:25:39 AM, the Hotel staff confirmed that Mr. Hanif was the paid guest for the room.

115. At or around 9:28:00 AM, Officers Meeks and Isabella visited room 121.

116. At or around 9:28:39 AM, officers Meeks and Isabella personally confirmed that a guest named Talia was also a guest in room 121 and that Mr. Hanif was the registered guest for that room.

117. Despite all the unequivocal proof of Mr. Hanif's status as a paying guest, Mr. Hanif was still transported and processed on a criminal charge. The decision by Officer Romero and supervising officers to transport and process Mr. Hanif despite the mountain of exculpatory evidence and the Hotel's admission demonstrates a reckless, if not intentional, continuation of an unlawful arrest and initiation of a malicious prosecution, undertaken with gross negligence and/or malice.

## DISSIPATION OF PROBABLE CAUSE AND CONTINUED DETENTION

118. Even if probable cause had arguably existed at the time of Mr. Hanif's initial arrest (Plaintiff does not concede that it did), it quickly dissipated once officers were presented with plainly exculpatory facts including the following:

a. Mr. Hanif possessed a valid hotel room key;

b. Mr. Hanif had a valid government-issued identification, which, along with the room key or independently from it, could have been used to confirm Mr. Hanif's Guest status in the hotel registry; and

c. The GM, Ms. Quinones Ramos gave explicit confirmation of a second registered guest Mr. Hanif's room.

119. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basic steps to investigate this exculpatory evidence.

120. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basic steps to investigate this plainly exculpatory evidence.

121. Rather than release Mr. Hanif in the face of overwhelming exculpatory evidence, officers prolonged his detention.

122. Officer Romero directed Officer Isabella to run Mr. Hanif's vehicle plates to see if the car was stolen, even though the vehicle was wholly unrelated to the alleged offenses of trespassing and disorderly conduct.

123. Even after Mr. Hanif's guest status had been established, Officer Isabella joked that they could "just give him a parking ticket."

124. These actions demonstrate that officers were not investigating an ongoing crime but searching for an alternative justification to preserve an arrest that lacked any lawful basis.

125. The Fourth Amendment prohibits continued detention once probable cause has dissipated. By ignoring readily available exculpatory evidence and prolonging Mr. Hanif's custody, the officers violated clearly established constitutional rights.

## COUNT I – DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF VA. CODE 2.2-3904 ET SEQ. (VIRGINIA HUMAN RIGHTS ACT)

### (Against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and InterContinental Hotels Group Resources, LLC)

126. Plaintiff incorporates and realleges the facts in paragraphs 1 - 125 as if fully set forth herein.

127. The foregoing events took place on September 22, 2023

128. As a direct result of the actions of the Hotel Defendants, instigated by their false reports and discriminatory animus, Officer Romero arrested Mr. Hanif. Mr. Hanif was subsequently charged with Criminal Disorderly Conduct in violation of Va. Code § 18.2-415, a misdemeanor.

129. The disorderly conduct charge against Mr. Hanif was pending until February 28, 2024, when it was dismissed by the Commonwealth.

130. The disorderly conduct charge was pending for a period of 160 Days.

131. On September 10, 2024, 195 days after the conclusion of the criminal case against Mr. Hanif, Counsel for Mr. Hanif filed two complaints with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") alleging: 1) Discrimination in a Place of Public Accommodation; and 2) Law Enforcement Misconduct.

132. On March 24, 2025, 196 days after the initial filing of Mr. Hanif's complaints with OCR, counsel for Mr. Hanif requested a "Right to Sue" letter from OCR and made a second request for the same on April 7, 2025.

133. On April 15,2025, counsel for Mr. Hanif received a Notice of Right to Sue from OCR. (Exhibit 1 – Right to Sue Notice.)

134. Va. Code § 2.2-3904 defines a "Place of public accommodation" as "all places or businesses offering or holding out to the general public goods, services, privileges, facilities, advantages, or accommodations." The Hotel was, at all relevant times, a place of public accommodation.

135. It is unlawful for any person, including the Hotel Defendants, to deny any individual, or to make any distinction, discrimination, or restriction on account of race, color, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. (Va. Code § 2.2-3904(B)).

136. On September 21, 2023, Mr. Hanif, a African American man, checked in to the Hotel as a registered and paying guest.

137. At that time, one of the amenities offered and available to registered guests was an included breakfast in the Hotel's designated breakfast facility.

138. On the morning of September 22, 2023, Mr. Hanif entered the lobby through the front door, after leaving his vehicle, which was parked in the Hotel parking lot.

139. Mr. Hanif proceeded to the breakfast area, as was his right as a guest, without returning to his room.

140. The breakfast attendant, Debra, asked Mr. Hanif if he was a guest.

141. Mr. Hanif, perceiving he was being singled out due to his race, responded by asking if the attendant had asked all of the other (non-African American) guests in the breakfast area if they were guests.

142. Mr. Hanif then informed the attendant that he was a guest and proceeded to have breakfast.

143. At the time Mr. Hanif arrived for breakfast, the guests in the breakfast area were predominantly of other races, and Mr. Hanif was one of very few, if not the only, African American guests in the

breakfast area at that moment. These facts relating to the racial composition of the guests are based on Mr. Hanif's direct observations.

144. Notwithstanding the exchange between Mr. Hanif and the attendant, Mr. Hanif sat alone and quietly had breakfast without further incident, or disturbance until confronted by Defendant Hamre and Defendant Officer Romero.

145. The Hotel staff, specifically Defendant Hamre, acting on discriminatory animus and/or as a result of conscious or unconscious bias due to Mr. Hanif's race, called the police and falsely stated that Mr. Hanif was creating a disturbance and was not a guest.

146. Defendant Hamre's claim that Mr. Hanif was not a guest was made without any reasonable basis or verification of Mr. Hanif's status as a guest.

147. Mr. Hanif was identified by his race ("Black Man") and clothing on the call to police and not by name.

148. The Hotel management, including Defendants Hamre and Quinones Ramos, did not ask Mr. Hanif to leave the Hotel based on any legitimate, non-discriminatory reason (nor, initially, at all), nor did they take any reasonable steps to confirm his status as a paying guest prior to calling the police and instigating his removal and arrest.

149. This failure to verify, and immediate escalation to police action, was motivated, in whole or in substantial part, by Mr. Hanif's race and/or his appearance as an African American man and constituted a deviation from how similarly situated non-African American guests would have been treated under like circumstances. Alternatively, if such actions represent standard practice, then such practice itself is discriminatory.

150. In order to induce the police to detain and arrest Mr. Hanif, and motivated by discriminatory animus, the Hotel Defendants, through Defendant Hamre and subsequently through Defendant

Quinones Ramos, falsely and repeatedly claimed that Mr. Hanif was not a guest, thereby denying him, on account of his race, the full and equal enjoyment of the Hotel's accommodations, privileges, and services, including the right to be present in the Hotel and enjoy its amenities without being disturbed by baseless accusations and police intervention.

151. Prior to his arrest, Mr. Hanif informed Officer Romero that he was a guest.

152. Despite Mr. Hanif's insistence that he was a guest and numerous objective facts confirming this (e.g., his possession of a Hotel room key card, his assertion that a second guest was staying in the room with him, and his offer to prove his status), the Hotel staff, particularly Defendants Hamre and Quinones Ramos, driven by discriminatory bias, still insisted on his arrest and removal.

153. When confronted by the police with the fact that Mr. Hanif had a Hotel key card in his possession, Defendant Quinones Ramos, reflecting her discriminatory assumptions and determination to deny Mr. Hanif his rights as a guest, callously and baselessly dismissed this crucial evidence, falsely speculating that he might have picked the key card up from the floor. This statement further evidenced her unsubstantiated and biased position that Mr. Hanif, an African American man, could not possibly be a guest and her resolve to deny him the resulting services and privileges in this place of public accommodation.

154. Defendant Quinones Ramos falsely indicated to police that Mr. Hanif just came in off the street and was loading up on breakfast – despite the fact that she was not present to witness any of the events leading to the arrest and had no factual basis for this assertion.

155. Even after Defendant Quinones Ramos internally confirmed through another manager that Mr. Hanif was indeed a registered guest (based on his description as a Black man with tattoos on his face – itself a racial identifier used in the context), she persisted in her discriminatory course of conduct.

156. Despite knowing that Mr. Hanif was a guest, Defendant Quinones Ramos still insisted on having Mr. Hanif "trespassed" and removed, effectively seeking to punish him for behavior she never witnessed and which was, in any event, a reaction to the Hotel Defendants' own discriminatory and provocative actions. This insistence was pretextual and a continuation of the discriminatory treatment against Mr. Hanif on account of his race.

157. The actions of the Hotel Defendants, including Riverside Hotels, LLC, Hayley Hamre, and Sharon Quinones Ramos, individually and collectively, by treating Mr. Hanif differently and less favorably than non-African American guests, and by denying him services and instigating his false arrest based on his race, constituted unlawful discrimination by denying Mr. Hanif, on the basis of his race and color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hotel, in direct violation of Va. Code § 2.2-3904(B).

158. Defendant Baywood is vicariously liable for the discriminatory acts of its agents/employees, Hamre, and Quinones Ramos, who were acting within the scope of their actual and/or apparent agency and in furtherance of Baywood's business, as previously alleged. Furthermore, Plaintiff alleges that Defendant Riverside Hotels, through its franchise agreements, its mandatory training programs (or its negligent failure to provide adequate training regarding non-discrimination, implicit bias, de-escalation, and proper guest verification), and/or its control or right of control over operational standards, created an environment wherein such discriminatory actions by its franchisee's employees were foreseeable and inadequately addressed, and/or directly contributed to the denial of Mr. Hanif's rights. The specific details of Baywood's agreements with Riverside Hotels, LLC, training programs, and mechanisms of control or oversight which establish this liability are within the exclusive knowledge and possession of Baywood and will be established through discovery. Baywood's failure to ensure its agents/employees complied with non-

discrimination laws and basic guest verification protocols constitutes a breach of its own duties and/or ratifies the discriminatory conduct.

159. As a direct and proximate result of this unlawful discrimination by the Hotel Defendants, Mr. Hanif suffered a deprivation of his civil rights, false arrest, unlawful detention, malicious prosecution, assault, battery, significant emotional distress, humiliation, fear, anxiety, damage to his reputation, and other consequential damages, including the need to retain legal counsel for his criminal defense.

WHEREFORE, Plaintiff demands judgment against Defendants Baywood and the hotel employees for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1, reasonable attorney's fees and costs under Va. Code §§ 2.2-3907(C) and 2.2-3908(D), and such further relief as the Court deems just and proper.

## COUNT II – ASSAULT AND BATTERY

### (Against Officer Moises Romero)

160. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161. At Officer Romero's initial contact with Mr. Hanif, on September 22, 2023, when Mr. Hanif, a lawful guest of the Hotel, attempted to walk past him in the breakfast area, Defendant Officer Romero committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif when he placed his hand on Mr. Hanif's chest and physically pushed him backward.

162. This act by Defendant Officer Romero also constituted an intentional assault as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of an imminent battery and further harmful or offensive contact.

163. Mr. Hanif asked Officer Romero several times if he was being detained. Officer Romero evasively responded, "If you're going to leave, leave," thereby affirmatively representing to Mr. Hanif that he was not detained and was free to depart.

164. Relying on Officer Romero's explicit representation that he was free to leave, Mr. Hanif again attempted to walk past Officer Romero and leave the area.

165. Rather than permit Mr. Hanif to leave as Officer Romero had just represented he could, and without informing Mr. Hanif that he was being detained or providing any lawful basis whatsoever for such detention or renewed use of force, Officer Romero again committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif, using both hands to forcibly push Mr. Hanif back and continue the unlawful seizure and confrontation.

166. This second act of unwanted and offensive physical force by Defendant Officer Romero also constituted an intentional assault, as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of further imminent battery and harmful or offensive contact.

167. Mr. Hanif did not consent to being touched, pushed, or physically handled in any way by Officer Romero.

168. Mr. Hanif asked Officer Romero why Officer Romero was touching him if Mr. Hanif wasn't being detained.

169. At all relevant times, Mr. Hanif was a lawful and registered guest of the Hotel and had a clear legal right to be on the premises.

170. Mr. Hanif was not trespassing, nor was he engaged in any unlawful activity that would justify Officer Romero's use of force or physical contact when Officer Romero arrived or during these initial, unprovoked interactions.

171. Officer Romero's physical actions and use of force were not privileged under the circumstances, as Mr. Hanif was not actively resisting a lawful arrest (as no lawful basis for arrest existed at that time, nor had any intent to arrest been communicated), was not committing any offense in Officer Romero's presence justifying such force, posed no threat to Officer Romero or others, and was attempting to comply with or clarify Officer Romero's ambiguous and conflicting statements, including his representation that Mr. Hanif could leave.

172. Officer Romero's unconsented, offensive, and unjustified physical contact with Mr. Hanif constituted assault and battery.

173. Officer Romero was at all times acting in his official capacity as a Fairfax County Police Officer and within the course and scope of his employment with Defendant Fairfax County. His actions, however, were undertaken with gross negligence and/or malice, thereby exceeding the scope of any legitimate discretionary authority.

174. As a direct and proximate result of the assault and battery committed by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered physical injury, pain, physical discomfort, offensive touching, fear, intimidation, severe emotional distress, public humiliation, and other damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## Count III – False Arrest

### (Against Defendants Officer Moises Romero; Virginia; Baywood Hotels, Inc.; Riverside Hotels, LLC; Hayley Hamre; and Sharon Quinones Ramos)

175. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 174 as if fully set forth herein.

176. Defendants, acting individually and in concert, intentionally and unlawfully caused Mr. Hanif to be confined and detained against his will, without his consent, and without legal justification or privilege.

177. Defendant Officer Romero effectuated the arrest and confinement of Mr. Hanif by: (a) physically restraining him through repeated assaults and batteries; (b) verbally commanding him and asserting authority over his freedom of movement; (c) formally placing him in custody and handcuffing him; and (d) transporting him in a police vehicle to a police station for processing.

178. Mr. Hanif was conscious of this confinement and did not consent to it.

179. The arrest and confinement of Mr. Hanif were without probable cause, and therefore unlawful and unprivileged, because:

    a. Mr. Hanif was initially detained and subsequently arrested ostensibly for trespassing, yet, as Defendants knew or should have known through any reasonable inquiry, he was a confirmed, paying, and lawful guest of the Hotel with an absolute legal right to be present on the premises. No probable cause existed to believe he was trespassing.

    b. Neither Officer Romero nor the Hotel Defendants (Hamre and Quinones Ramos) conducted any objectively reasonable, or indeed any meaningful, verification of Mr. Hanif's guest status via the Hotel registry, by checking his key, or through other readily available means before instigating, causing, and effectuating his arrest for trespassing. This failure was a conscious dereliction of duty.

Page 30 of 60

c. The subsequent charge of disorderly conduct was pretextual and also lacked probable cause, as detailed in Count IV (Malicious Prosecution), because no reasonable officer familiar with Va Code § 18.2-415 could believe that Mr. Hanif's conduct would incite violence (nor did it incite violence) in anyone whom the conduct was directed. Moreover, Mr. Hanif's conduct fell well within the bounds of activity that is protected by the first Amendment to the U.S. Constitution e.g. using profanity and recording police officers engaged in their official duties.

d. At no point did Officer Romero possess articulable facts sufficient to establish probable cause that Mr. Hanif had committed, was committing, or was about to commit any crime that would justify his seizure and arrest.

180. Hayley Hamre, and Sharon Quinones Ramos (the "Hotel Instigating Defendants" for this Count) actively instigated, participated in, and proximately caused Mr. Hanif's false arrest by:

a. Knowingly or with reckless disregard for the truth providing false and misleading information to Officer Romero that Mr. Hanif was not a guest and was trespassing;

b. Persistently demanding, encouraging, and/or importuning Officer Romero to arrest and/or trespass Mr. Hanif based on this false and unverified information, thereby substituting their unlawful demands for the officer's independent judgment;

c. Continuing to insist on Mr. Hanif's arrest and trespass even after Defendant Quinones Ramos possessed actual knowledge and had admitted that Mr. Hanif was, in fact, a registered and lawful guest, thereby demonstrating malice and an intent to cause an unlawful arrest.

181. Defendant Officer Romero knew, or in the exercise of reasonable diligence and adherence to standard police practices should have known, that there was no probable cause to arrest Mr. Hanif for trespassing or any other offense.

182. Officer Romero's awareness of the presence of the room key, Mr. Hanif's consistent assertions of guest status, statements from other officers regarding the key and a second guest, and the utter failure of Hotel staff to provide credible, verified information, all negated any reasonable belief that Mr. Hanif was trespassing.

183. Officer Romero's decision to arrest Mr. Hanif under these circumstances was made with reckless disregard for Mr. Hanif's rights, lacked any lawful basis, and constituted an abuse of his lawful authority and/or gross negligence.

184. Defendant Fairfax County is vicariously liable for the false arrest/false imprisonment committed by its employee, Officer Romero. Officer Romero's actions in arresting Mr. Hanif without probable cause constituted gross negligence and/or an intentional tort (false arrest/imprisonment) committed with malice or an abuse of lawful authority, thereby falling outside the protection of sovereign immunity. The County's liability arises from respondeat superior for these non-immunized acts.

185. As a direct and proximate result of the false arrest instigated and carried out by Defendants, Mr. Hanif suffered significant damages, including but not limited to loss of liberty, physical discomfort and injury from handcuffing and transport, public humiliation, emotional distress, psychological harm including anxiety and fear, damage to his reputation, and financial losses including costs associated with his arrest, detention, and defense of the unsubstantiated disorderly conduct case.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

Page 32 of 60

punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## Count IV – Malicious Prosecution
### (Against Defendant Officer Moises Romero)

186. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 185 as if fully set forth herein.

187. Defendant Officer Romero instituted and caused to be continued a criminal proceeding (Fairfax County General District Court Case No: GC23130096-00) against Mr. Hanif for the specific criminal offense of disorderly conduct, in violation of Virginia Code § 18.2-415.

188. The aforementioned criminal proceeding for disorderly conduct was terminated in Mr. Hanif's favor on February 28, 2024, when the Commonwealth's Attorney, recognizing the lack of merit, moved to dismiss the charge (nolle prosequi or dismissed). This termination was indicative of Mr. Hanif's actual innocence of the charge.

189. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero without probable cause.

    a. Virginia Code § 18.2-415 requires conduct having a direct tendency to cause acts of violence by the person or persons at whom it is directed.

    b. At no point did Mr. Hanif's conduct, even when understandably and justifiably agitated by being falsely accused, unlawfully detained, and physically assaulted, have a direct tendency to cause acts of violence by anyone. His words and actions were a direct and foreseeable reaction to the unlawful conduct of the Defendants.

    c. No one, including Officer Romero or any Hotel staff, responded to Mr. Hanif with violence or indicated they felt imminently threatened by violence from him.

d.  Officer Romero did not witness any conduct by Mr. Hanif upon his arrival that could remotely constitute disorderly conduct;

e.  When Officer Romero arrived, Mr. Hanif was quietly finishing his breakfast and preparing to leave the dining area.

f.  Any agitation displayed by Mr. Hanif was a direct and foreseeable result of the provocative, unlawful, and rights-violating actions of Officer Romero and the Hotel Defendants, including false accusations of theft and trespassing, and Officer Romero's physical assaults and unlawful detention.

g.  Mr. Hanif's profanity and recording of the officers were protected first amendment activities.

h.  Officer Romero and other officers were aware or became aware prior to formalizing the charge of disorderly conduct, that Mr. Hanif was a paying and lawful guest and thus not trespassing.

i.  The disorderly conduct charge was, therefore, a pretextual charge manufactured by Officer Romero to attempt to justify an already unlawful arrest and detention, initiated after any conceivable basis for any trespass claim had evaporated and was known by him to be false.

j.  The Fairfax County Magistrate refused to issue a trespassing charge against Mr. Hanif precisely because he was a paying guest of the Hotel, further evidencing the lack of probable cause for any initial detention or arrest related to his presence, and highlighting the baselessness of Officer Romero then pivoting to a disorderly conduct charge.

k.  In addition, the Fairfax County Magistrate refused to issue a disorderly conduct charge against Mr. Hanif.

l.  No reasonable officer with knowledge of the disorderly conduct statute could reasonably believe that Mr. Hanif's conduct constituted disorderly conduct under the law.

190.  The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero with malice. Facts that show Officer Romero's Malice include, but are not limited to the following:

a.  Malice is directly evidenced by Officer Romero's statement to Mr. Hanif, "If you had been polite, we would have tried to figure things out," an unambiguous admission that the decision to arrest and prosecute was motivated by Officer Romero's personal animus, displeasure, or as a means of punishment, rather than a good faith belief based on facts that Mr. Hanif had committed any crime.

b.  Malice is further evidenced by Officer Romero proceeding with and fabricating the disorderly conduct charge despite the utter lack of any reasonable factual basis, knowing the initial trespass claims from the hotel were false or unverified, and after the hotel management themselves had confirmed Mr. Hanif was a guest but, through Defendant Quinones Ramos, still outrageously desired his continued detention and prosecution. Officer Romero's alignment with this malicious civilian desire, rather than adherence to law and fact, demonstrates his own malice.

c.  The pursuit of the disorderly conduct charge as a pretext after the trespassing allegation was known by Officer Romero to be false, demonstrates a willful and malicious disregard for Mr. Hanif's rights and an improper purpose to injure Mr. Hanif.

d.  Malice is further evidenced by Officer Romero's participation in jokes about giving Mr. Hanif a parking ticket and his suggestion that Officer Isabella run the plates on Mr. Hanif's car to see if it was stolen, all while Mr. Hanif was unlawfully detained. These

actions demonstrate a vindictive mindset and an attempt to find *any* charge to levy against Mr. Hanif, irrespective of actual wrongdoing – a further indication of malice.

191. Defendant Fairfax County is vicariously liable for the malicious prosecution initiated and continued by its employee, Officer Romero. Officer Romero's actions in pursuing a baseless charge with malice constituted an intentional tort committed in the scope of his employment but far exceeded any legitimate exercise of police discretion, thus falling outside the protection of sovereign immunity.

192. As a direct and proximate result of the malicious prosecution by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered significant damages, including but not limited to legal fees and costs incurred in his criminal defense, loss of liberty during the arrest and booking process, damage to his reputation and standing in the community, profound emotional distress including humiliation, anxiety, anger, and fear, psychological harm, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## Count V: Gross Negligence
### (Against Defendants Baywood Hotels, Inc.; Hayley Hamre; and Sharon Quinones Ramos (collectively the "Hotel Gross Negligence Defendants" for this Count))

193. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 192 as if fully set forth herein.

Page 36 of 60

194. Defendant Riverside Hotels, LLC and Defendant Baywood Hotels, Inc. (the "Corporate Hotel Defendants" for this Count) own and operate the Hotel as a place of public accommodation for paying guests – the former being the owner and the latter being the management company.

195. Defendants Hayley Hamre and Sharon Quinones Ramos were, at all relevant times, managerial employees and/or agents of the Corporate Hotel Defendants, acting within the course and scope of their employment and agency, and vested with authority concerning guest interactions and hotel security.

196. As innkeepers, the Corporate Hotel Defendants, and through them their agents and employees Hamre and Quinones Ramos, owed Mr. Hanif, a registered and lawful paying guest, a legal duty of reasonable care.

197. This duty of reasonable care included, but was not limited to, the duty to:

   a. Accurately and diligently verify his guest status before accusing him of trespassing or causing law enforcement to be summoned to remove him or arrest him for such an offense.

   b. Refrain from making false, unverified, or reckless accusations against him to law enforcement that would foreseeably lead to his detention or arrest.

   c. Take prompt and reasonable steps to investigate and correctly resolve guest status inquiries, particularly when a person asserts guest status, before escalating to police action and instigating arrest.

   d. Ensure their conduct, policies, and procedures (or lack thereof) did not create an unreasonable risk of, or actually lead to, the false accusation, false arrest, or wrongful deprivation of liberty of a lawful guest.

e.  Train and supervise their employees, including managerial staff like Hamre and Quinones Ramos, on proper, non-discriminatory guest verification procedures, de-escalation techniques, and the critical importance of accurate information when involving law enforcement.

f.  Exercise prudence and diligence in their interactions with guests to protect them from unwarranted harm, humiliation, and deprivation of their rights on the Hotel premises.

198. Defendants Hamre and Quinones Ramos, acting individually and on behalf of the Corporate Hotel Defendants, breached these duties in a manner that demonstrated such an utter disregard of prudence as to constitute a complete neglect of the safety and rights of Mr. Hanif, thereby constituting gross negligence under Virginia law.

199. The gross negligence of these Hotel Gross Negligence Defendants, individually and collectively, is evidenced by, among other things, their numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of their legal duties respecting the rights of Mr. Hanif, including but not limited to:

a.  Defendant Hamre initiating a police call and instigating police action based on a false report that Mr. Hanif was trespassing and causing a disturbance, without any prior attempt to verify Mr. Hanif's readily ascertainable guest status, thereby recklessly setting in motion the chain of events that harmed Mr. Hanif.

b.  Both Defendants Hamre and Quinones Ramos completely failing to check the Hotel's guest registry, consult with other staff who may have checked Mr. Hanif in, examine Mr. Hanif's key if offered, or make other simple, obvious, and readily available inquiries to confirm Mr. Hanif's status, despite his repeated assertions of being a guest and the high

Page 38 of 60

stakes of involving police for a trespass accusation. This failure showed an utter indifference to their duty of care.

c.  Defendant Quinones Ramos, upon being informed by police that Mr. Hanif possessed a Hotel room key – strong evidence of his guest status – outrightly and contemptuously dismissing this critical fact by baselessly and illogically speculating he "picked it up off the floor," thereby demonstrating a deliberate refusal to consider exculpatory evidence and an utter disregard for prudence.

d.  Defendant Quinones Ramos providing false and inflammatory information to the police that Mr. Hanif "just came in off the street," an event she did not witness and had no factual basis to assert, thereby recklessly exacerbating the situation and misleading law enforcement with a complete neglect for the truth.

e.  Defendant Quinones Ramos, even after internally confirming through another manager that Mr. Hanif was indeed a registered guest (meaning she possessed actual knowledge of his lawful status), maliciously insisting that police proceed with trespassing him and continue with his arrest. This act demonstrates not merely a lack of care, but a conscious and utter disregard for Mr. Hanif's known legal right to be on the premises and a complete neglect of her duties as an innkeeper, rising to the level of gross negligence and/or willful misconduct.

f.  The Corporate Hotel Defendant' failure to implement and enforce adequate policies and training for their employees regarding proper guest verification, non-discriminatory guest treatment, and appropriate procedures for addressing alleged disturbances without recklessly involving law enforcement against lawful guests, which created the conditions for and foreseeably led to the gross negligence of Hamre and Quinones Ramos.

Page 39 of 60

200. The conduct of Defendants Hamre, Quinones Ramos, and vicariously the Corporate Hotel Defendant (Baywood Hotels, Inc.), was not merely a failure to exercise ordinary care, but demonstrated a degree of negligence showing an utter disregard of prudence amounting to a complete neglect of the safety and fundamental rights of Mr. Hanif, a paying guest, and constituted a heedless and palpable violation of legal duties owed to him, thereby constituting gross negligence.

201. As a direct and proximate result of this gross negligence by the Hotel Gross Negligence Defendants, Mr. Hanif was falsely accused, unlawfully detained and arrested, publicly humiliated, subjected to physical restraint, endured a malicious criminal prosecution, was deprived of his liberty, and suffered severe emotional distress, psychological harm, damage to his reputation, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally where permitted by law, for compensatory damages in an amount to be proven at trial, punitive damages against the individual and private Defendants, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## Count VI: Gross Negligence
### (Against Defendant Officer Romero)

202. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 201 as if fully set forth herein.

203. At all relevant times on September 22, 2023, Defendant Officer Moises Romero was acting under color of state law and within the course and scope of his employment as a sworn law enforcement officer of the Fairfax County Police Department, an agency of Defendant Fairfax County.

204. Defendant Fairfax County, through its Police Department, acted with gross negligence by permitting and tolerating a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene.

205. Fairfax County owed Plaintiff a duty to exercise reasonable care in the training, supervision, and conduct of its police officers, including a duty to ensure that arrests are made and continued only with probable cause and in compliance with constitutional requirements.

206. Fairfax County, through its officers, breached that duty by acting with gross negligence — defined under Virginia law as "an utter disregard of prudence amounting to a complete neglect of the safety of another."

207. The County's officers ignored plainly exculpatory evidence, including Plaintiff's valid hotel room key, government-issued identification, and confirmation of a second registered guest. These facts clearly established that Plaintiff was lawfully present on the property.

208. Supervisory officers, including Captain Kuhar and Lieutenant Meeks, failed to perform even minimal independent investigation. Instead, they deferred entirely to Officer Romero's unsupported narrative, allowed false staff statements to control the decision-making, and permitted Officer Armel — who was out of uniform and unknown to the supervising captain — to participate in the arrest without exigent circumstances.

209. Rather than intervene to prevent an unlawful arrest, these supervisors ratified Romero's conduct, prolonging Plaintiff's detention after probable cause had dissipated. Such abdication of supervisory responsibility constitutes gross negligence.

210. The County's Internal Affairs Bureau later issued a disposition letter finding Romero's arrest to be "lawful and in compliance with FCPD regulations," while simultaneously admitting that "separate policy violations were identified."

211. This contradiction demonstrates Fairfax County's systemic indifference to the rights of citizens and its entrenched custom of rubber-stamping unconstitutional conduct.

212. Fairfax County's gross negligence in training, supervision, and investigation was a direct and proximate cause of Plaintiff's unlawful arrest, detention, and prosecution, causing him humiliation, emotional distress, financial harm, and reputational damage.

213. As a law enforcement officer, Officer Romero owed Mr. Hanif, and the public generally, a legal duty to perform his police duties with reasonable care and in compliance with established law, police department policies, and accepted police practices.

214. This duty included, but was not limited to, the duty to conduct adequate and objective investigations before depriving an individual of liberty, to verify information before acting upon it to arrest, to refrain from using excessive or unwarranted force, to not arrest individuals without probable cause, and to act impartially without regard to personal pique or animus.

215. Defendant Officer Romero breached these duties in a manner so egregious that it evinced an utter disregard of prudence and a complete neglect of Mr. Hanif's constitutional and common law rights, thereby constituting gross negligence.

216. Officer Romero's gross negligence is evidenced by, inter alia, his numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of his legal duties respecting the rights of Mr. Hanif, including but not limited to:

    a. Failing entirely to take the most basic, reasonable, and readily available investigative steps to verify Mr. Hanif's lawful guest status (such as checking the Hotel registry, checking the room key, or speaking with Mr. Hanif's companion) before detaining, assaulting, battering, and arresting him, despite Mr. Hanif's repeated assertions of guest

status and the presence of multiple pieces of clearly exculpatory evidence. This was a complete abdication of his investigative duty.

b. Willfully and inexplicably disregarding or consciously choosing to ignore clear, compelling, and readily apparent exculpatory facts that overwhelmingly indicated Mr. Hanif was a lawful guest. These facts included Mr. Hanif's possession of a working Hotel room key (which Officer Romero saw), information from other officers about the key and a second guest in Mr. Hanif's room, and Mr. Hanif's own direct requests to verify his status with his companion guest or the Hotel registry. Such disregard shows a complete neglect of his duty to consider all facts.

c. Unnecessarily and unlawfully escalating a verbal encounter, which he himself initiated based on false information, into a physical one by repeatedly assaulting and battering Mr. Hanif without any lawful justification, privilege, or provocation from Mr. Hanif.

d. Arresting Mr. Hanif for trespassing without a shred of credible evidence amounting to probable cause, and in the face of substantial exculpatory evidence showing he was a lawful guest, thereby demonstrating a complete neglect of the probable cause requirement.

e. His unambiguous statement that "If you had been polite, we would have tried to figure things out," which is a direct admission that his decision-making process regarding Mr. Hanif's liberty was improperly and arbitrarily influenced by his personal feelings or animus rather than by objective facts, established police procedure, and law. This constitutes a reckless and flagrant dereliction of his sworn duty to act impartially and justly, amounting to an utter disregard of prudence.

f. Participating in, encouraging, and facilitating the continuation of Mr. Hanif's unlawful detention and subsequent malicious prosecution for disorderly conduct even as evidence overwhelmingly and irrefutably confirmed his innocence of any trespass and the baselessness of the disorderly conduct charge. This demonstrates a complete neglect for Mr. Hanif's rights once falsely accused.

g. Failing to de-escalate the situation, and instead actively escalating it through baseless accusations (e.g., "did you steal anything?"), physical force, and conflicting commands, contrary to accepted police practices and demonstrating an utter disregard for the safety and rights of Mr. Hanif.

217. This conduct by Officer Romero was so egregious, reckless, and indifferent to the rights and safety of Mr. Hanif that it rises far above simple negligence to the level of gross negligence, thereby stripping Officer Romero and, vicariously, Fairfax County of any immunity (including common law qualified immunity for discretionary acts or sovereign immunity) to which they might otherwise claim entitlement under Virginia law.

218. Defendant Fairfax County, as Officer Romero's employer, is vicariously liable under the doctrine of respondeat superior for the injuries and damages caused by Officer Romero's gross negligence committed within the course and scope of his employment, as such gross negligence is not protected by sovereign immunity.

219. The sovereign immunity of Fairfax County does not extend to acts of its employees that constitute gross negligence. Furthermore, the Fairfax County Police Department, in a letter dated January 22, 2025, concerning this incident (Exhibit 2 – FCPD Disposition Letter), admitted that there were "separate policy violations" by its officer(s) in connection with Mr. Hanif's arrest. These admitted policy violations lend further factual support to the claim that Officer Romero's conduct deviated

grossly from established standards of care, procedure, and his training, and thus constituted gross negligence.

220. The acts and omissions of Defendant Fairfax County, through its agent and employee Officer Romero, demonstrate a willful and wanton disregard for Plaintiff's rights, or at a minimum, gross negligence.

221. The failure of supervising FCPD Lieutenants on scene (including but not limited to Lt. Meeks and Lt. Kuhar) to intervene effectively, to correct Officer Romero's obviously flawed and biased investigation, and to prevent the unlawful arrest and subsequent malicious prosecution of Mr. Hanif, despite being aware of many of the same compelling exculpatory facts (such as the room key and the statements about a second guest), further illustrates the environment of negligence within which Mr. Hanif's rights were violated and can constitute gross negligence on the part of such supervisors, for which the County may also be liable.

222. The foregoing conduct of Officer Romero, as well as the inaction or improper actions of his supervisors, demonstrates gross negligence, defined under Virginia law as conduct that "shows an utter disregard of prudence amounting to a complete neglect of the safety [and rights] of another" or "a heedless and palpable violation of legal duty respecting the rights of others." (e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991); *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945))

223. As a direct and proximate result of Officer Romero's gross negligence, and the gross negligence of other FCPD personnel for which Defendant Fairfax County is liable, Plaintiff suffered unlawful detention, false arrest, assault, battery, malicious prosecution, physical discomfort and injury, public humiliation, severe emotional distress, psychological harm, and other compensable injuries and damages.

224. Defendant Fairfax County's grossly negligent failure to train and supervise its officers permitted and tolerated a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene. This culture was a moving force behind Plaintiff's unlawful arrest and detention.

WHEREFORE, Plaintiff demands judgment against Fairfax County for compensatory damages, costs, and such further relief as the Court deems just and proper. Plaintiff does not seek punitive damages against Fairfax County consistent with Virginia law and City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

### COUNT VII – VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL SEIZURE
(Against Defendant Officer Romero, under 42 U.S.C. § 1983)

225. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 224 as if fully set forth herein.

226. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be free from unreasonable searches and seizures, including arrests without probable cause or arrest warrants.

227. On September 22, 2023, Plaintiff was lawfully present at the Holiday Inn Express Alexandria–Fort Belvoir as a paying guest with valid room access.

228. Despite this, Defendant Officer Romero, acting under color of law, arrested Plaintiff for alleged trespassing and disorderly conduct without confirming his guest status or conducting a reasonable investigation into the facts.

229. General Manager Quiñones Ramos asked Officer Romero whether Plaintiff could be trespassed from the premises, and Romero agreed, despite the absence of any independent verification that Plaintiff was not a guest and despite exculpatory evidence, including Plaintiff's room key and his assertions of lawful guest status.

Page 46 of 60

230. Romero misapplied and misstated the elements of Virginia's disorderly conduct statute, demonstrating a failure of training and a reckless disregard for the protections of the Fourth Amendment.

231. Captain Kuhar, as the senior officer on scene, deferred entirely to Romero's judgment and failed to intervene to prevent an unconstitutional seizure.

232. Other officers, including Lieutenant Meeks, arrived after the arrest and reinforced assumptions of guilt by making conclusory statements—such as "his name's not in the registry"—without confirming whether anyone had checked the registry or verified Plaintiff's guest status.

233. The arrest was further influenced by an internal culture encouraging arrests for the sake of statistics, evidenced by comments from supervising officers about the need to "take someone," and Romero's response that he would "take" Plaintiff.

234. Plaintiff had committed no criminal offense justifying his arrest. His conduct—disputing accusations, using limited profanity not amounting to "fighting words," and refusing to leave a place where he had a contractual right to remain—was protected by law.

235. By arresting Plaintiff without probable cause and without a lawful basis, Defendants deprived Plaintiff of his liberty in violation of the Fourth Amendment.

236. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unlawful seizure, deprivation of liberty, emotional distress, reputational harm, financial losses, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

**COUNT VIII – FIRST AMENDMENT RETALIATION**
**(Against Defendant Officer Romero under 42 U.S.C. § 1983)**

237. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 236 as if fully set forth herein.

238. The First Amendment to the United States Constitution protects *inter alia* the rights of individuals to engage in free speech, to petition the government, and to record public officials in the performance of their duties.

239. Plaintiff engaged in constitutionally protected conduct, including:

   a. Verbally disputing the accusations made by hotel staff and officers.

   b. Using profanity in a limited manner, without racial or threatening language, and without rising to the level of "fighting words" that would provoke imminent violence.

   c. Recording and documenting the conduct of Officer Romero and other responding officers.

240. In response to this protected activity, Officer Romero placed Mr. Hanif under arrest for trespassing – later stating, "if you had been polite, we would have tried to figure things out."

241. Defendants, acting under color of law, arrested Plaintiff in retaliation for his exercise of these protected rights.

242. Officer Romero's decision to arrest Plaintiff was not based on probable cause but was substantially motivated by Plaintiff's refusal to "go with the program," his verbal objections, and his insistence on documenting the officers' actions.

243. Captain Kuhar, as the senior officer on scene, failed to question or correct Romero's retaliatory actions and instead endorsed the decision to arrest.

244. Lieutenant Meeks, arriving later, reinforced the retaliatory nature of the arrest by making statements confirming assumptions rather than asking questions to uncover exculpatory facts.

245. The culture of retaliation within the Fairfax County Police Department was further evidenced by contemporaneous officer comments about the need to "take someone," and Romero's own confirmation that he would "take" Plaintiff.

246. Defendants' actions had a chilling effect on Plaintiff's exercise of his First Amendment rights and would deter a person of ordinary firmness from continuing to exercise those rights.

247. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT IX – VIOLATION OF THE FOURTEENTH AMENDMENT
### (DUE PROCESS AND EQUAL PROTECTION)
#### (Against Defendant Officer Romero under 42 U.S.C. § 1983)

248. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 247 as if fully set forth herein.

249. Fairfax County, through the Fairfax County Police Department, has maintained a policy, custom, or practice of deferral, by which officers and supervisors abdicate their duty to investigate and instead uncritically adopt the conclusions of the first officer on scene.

250. This culture of deferral, repeatedly demonstrated on September 22, 2023, when multiple officers ignored exculpatory evidence and deferred entirely to Officer Romero's unsupported narrative,

Page 49 of 60

constitutes a County policy or custom that reflects deliberate indifference to constitutional rights and was a moving force behind Plaintiff's unlawful arrest and detention.

251. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person the equal protection of the laws.

252. Defendants, acting under color of law, deprived Plaintiff of liberty and equal protection by arresting him without probable cause, removing him from the premises, and charging him with offenses unsupported by law or fact.

253. Procedural Due Process: Plaintiff was deprived of liberty without adequate investigation or verification of his guest status.

a. Ms. Quiñones Ramos, the hotel's General Manager, asked Officer Romero to trespass Plaintiff without confirming whether he was in fact a registered guest, despite acknowledging that her subordinate Ms. Hamre had no prior experience handling such matters.

b. Officer Romero deferred to Ramos's request without reviewing or seeking additional exculpatory evidence such as Plaintiff's room key, the hotel registry, or surveillance footage.

c. Captain Kuhar, as the highest-ranking officer on scene, likewise failed to inquire into or confirm whether Plaintiff was a lawful guest, instead deferring to Romero's judgment.

d. Lieutenant Meeks, upon arriving later, made conclusory statements—such as "his name's not in the registry"—without verifying whether anyone had in fact checked the registry. At no time did she ask the necessary questions that would have revealed exculpatory evidence and prevented an unlawful arrest.

254. Substantive Due Process: Defendants' actions were arbitrary and capricious.

a. Plaintiff's conduct—peacefully sitting in the breakfast area, verbally disputing his treatment, and

recording the officers—was constitutionally protected activity and did not constitute disorderly conduct under Virginia law.

b. Plaintiff's limited use of profanity during the encounter was not racially based, nor did it rise to the level of "fighting words" that could provoke violence.

c. Defendants' decision to criminalize this conduct bore no rational relationship to a legitimate governmental interest and instead reflected reckless disregard for Plaintiff's constitutional rights.

255. Equal Protection: Plaintiff was denied equal protection of the laws.

a. Ms. Ramos stated that Plaintiff was "just coming in to load up," implying that he was homeless, despite having no evidence and without any attempt to confirm his guest status.

b. Hotel staff and officers assumed Plaintiff's illegitimacy as a guest and treated him more harshly than other similarly situated hotel patrons.

c. The officers' culture of arbitrary enforcement is evidenced by contemporaneous statements among officers, including references to the need to "take someone," and Romero's confirmation that he would "take" Plaintiff for trespassing and disorderly conduct.

256. Supervisory Failures:

a. Captain Kuhar, as the senior officer on site, failed to supervise subordinates or question the legality of the arrest, instead endorsing Romero's unsupported conclusions.

b. Lieutenant Meeks reinforced a culture of confirmation bias by making statements rather than inquiries, thereby compounding the deprivation of Plaintiff's rights.

c. These supervisory failures were consistent with and the result of Fairfax County's policies, practices, and customs that tolerate or encourage unlawful arrests, inadequate training, and demonstrated indifference to constitutional rights.

257. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Fairfax County under 42 U.S.C. § 1983 and pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for compensatory in an amount to be proven at trial, attorney's fees and costs under 42 U.S.C. § 1988, and such further relief as the Court deems just and proper, on the grounds that the County's policy, custom, and practice of deferral was a moving force behind the constitutional violations suffered by Plaintiff.

### Count X– Conspiracy to Violate Civil Rights (Against Defendants Officer Romero, Hayley Hamre, Sharon Quinones Ramos under 42 U.S.C. § 1983 and § 1985(3))

258. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 257 as if fully set forth herein.

259. Defendants Romero, Hamre, Quinones Ramos, and others, reached a tacit and/or express understanding to deprive Plaintiff of his constitutional rights by effectuating an unlawful arrest without probable cause.

260. This agreement is evidenced by the coordinated actions of the Defendants.

261. Ramos and Hamre supplied unverified and misleading information about Plaintiff's guest status. Ramos asked Romero if Plaintiff could be trespassed, and Romero agreed without inquiry.

262. The conspiracy was further reinforced by the "take someone" culture present among FCPD officers. Meeks reinforced Laing's comment that he wanted to "take someone" rather than "just sitting for four hours," and Romero confirmed to Meeks that he would "take" Plaintiff for trespassing and disorderly conduct. This language demonstrates a common understanding among the officers that arrests were to be made to justify their presence, regardless of legal sufficiency.

263. Defendants overtly acted on this agreement by arresting Plaintiff without verifying his guest status, by misstating the disorderly conduct statute to justify the arrest, and by ratifying Romero's unlawful decision-making.

264. The conspiracy lacked any legitimate purpose and was driven by animus against Plaintiff as a hotel guest asserting his rights, the Plaintiff's race, and by a culture that valued statistics and arrests over constitutional compliance.

265. As a direct and proximate result of this conspiracy, Plaintiff suffered the deprivation of his Fourth and Fourteenth Amendment rights, unlawful seizure, emotional distress, humiliation, reputational harm, and other compensable damages.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

### Count XI – Violation of 42 U.S.C. § 1981 (Racial Discrimination and Interference in Contractual Rights)
### (Against Defendants Baywood Hotels, Inc., Hayley Hamre, and Sharon Quiñones Ramos; as to state actors, enforced via 42 U.S.C. § 1983)

266. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 265 as if fully set forth herein.

267. At all relevant times, Plaintiff had an existing and enforceable contractual relationship with the Hotel, operated and managed by Baywood Hotels, Inc., entitling him, as a registered and paying guest, to lodging and the full use and enjoyment of hotel facilities and services. See 42 U.S.C. § 1981(b) (defining "make and enforce contracts" to include performance, modification, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship).

Page 53 of 60

268. Defendant Sharon Quiñones Ramos, the Hotel's General Manager and a managerial agent of Baywood, requested that Officer Romero trespass Plaintiff from the Hotel without taking any steps to confirm Plaintiff's guest status, despite readily available verification methods (review of the guest registry, inspection of the room key, and communications with staff who checked Plaintiff in).

269. Ramos never personally interacted with Plaintiff, never observed any of his conduct, and did not witness any of the events leading to his arrest. Instead, acting on the false and biased representations of her subordinate, Defendant Haley Hamre, Ramos falsely asserted that Plaintiff was "just coming in to load up," implying he was a non-guest (e.g., homeless or otherwise unauthorized) and had no legitimate right to be present—when, in fact, Plaintiff was a paid, registered guest.

270. Ramos further acknowledged to Officer Romero that Hamre had never dealt with anything like this before, indicating her awareness that Hamre lacked relevant training and experience. Despite this knowledge, Ramos nevertheless accepted Hamre's account at face value and escalated to law enforcement, rather than exercising her own managerial responsibility to investigate or verify Plaintiff's guest status.

271. As General Manager, Ramos was responsible for supervising Hamre, but instead of intervening appropriately, she ratified or adopted Hamre's unfounded narrative and allowed it to become the basis for a law enforcement trespass request.

272. Officer Romero then agreed to Ramos's trespass request without verifying Plaintiff's status—further interrupting Plaintiff's contracted lodging and access to hotel facilities. The request and agreement functioned to terminate, restrict, and deny Plaintiff's contractual benefits because of his race.

273. Baywood, through Ramos and Hamre, intentionally interfered with and denied Plaintiff the same right to make and enforce his lodging contract as is enjoyed by white citizens, including the enjoyment of all benefits, privileges, terms, and conditions of that contract, on account of Plaintiff's race, in violation of 42 U.S.C. § 1981.

274. To the extent state actors (including Romero and Kuhar) participated jointly with Baywood's agents in depriving Plaintiff of § 1981 rights, those deprivations are actionable via 42 U.S.C. § 1983 and are additionally pled in the § 1983 counts herein. Plaintiff pleads § 1981 directly against Baywood, Ramos, and Hamre, and pleads enforcement of § 1981 rights against state actors through § 1983 to preserve the claim structure recognized in controlling precedent.

275. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of contractual benefits, humiliation, emotional distress, reputational harm, and economic damages, and is entitled to compensatory and punitive damages, together with attorney's fees as allowed by law.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

## Count XII – Gross Negligence / Failure to Supervise / Negligent Supervision
### (Against Baywood Hotels, Inc. and Quiñones Ramos)

276. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 275 as if fully set forth herein.

277. Defendants Baywood Hotels, Inc. ("Baywood") and its General Manager, Quiñones Ramos, owed Plaintiff a duty to exercise reasonable care in the supervision, training, and conduct of hotel staff, including Defendant Hamre, in their interactions with guests and patrons.

278. Ramos requested that Plaintiff be trespassed by law enforcement without conducting even the most basic inquiry into his guest status, despite being in a position to verify that information through hotel records, the front desk, or by questioning Plaintiff directly. In fact, Ramos later confirmed Mr. Hanif's guest status by speaking with another manager but still insisted that Officer Romero continue with the arrest.

279. Ramos relied entirely on the account of Defendant Hamre, despite explicitly acknowledging to Officer Romero that Hamre "had never had to deal with anything like this before." Rather than taking this admission as an indicator that closer supervision or independent verification was needed, Ramos ratified Hamre's judgment and elevated her unverified account into the basis for trespassing Plaintiff.

280. Ramos further undermined her supervisory responsibility by implying to Officer Romero that Plaintiff was merely "just coming in to load up," suggesting he was homeless, despite never having personally observed Plaintiff's conduct, spoken with him, or investigated his status.

281. Baywood, as the hotel's management entity, failed to ensure that Ramos and Hamre were adequately trained or supervised to handle guest disputes in accordance with contractual and legal obligations.

282. The negligent supervision and abdication of responsibility by Ramos and Baywood created the foreseeable risk that an innocent guest would be wrongfully treated as a trespasser, escalated to law enforcement, and subjected to an unlawful arrest.

283. Their failures were a substantial factor in causing Plaintiff's unlawful detention, reputational harm, emotional distress, and other damages, and constitute gross negligence under Virginia law.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42

U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT XIII – COMMON LAW CIVIL CONSPIRACY (Against All Defendants)

284. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 283 as if fully set forth herein.

285. Under Virginia law, a common-law civil conspiracy consists of a combination of two or more persons, acting in concert, to accomplish by some concerted action either (a) an unlawful purpose, or (b) a lawful purpose by unlawful means, resulting in damages to the plaintiff. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

286. Defendants, including hotel staff Haley Hamre and Sharon Quinones Ramos, and Officer Romero acted in coordination, combined and acted in concert to cause and continue Plaintiff's unlawful arrest and detention.

287. Specifically, Hamre and Ramos provided knowingly false and misleading statements to law enforcement regarding Plaintiff's status as a lawful guest of the hotel, while Fairfax County officers accepted and relied upon those statements without conducting any independent or reasonable investigation, despite the ready availability of exculpatory evidence including Plaintiff's room key, booking confirmation, and his lawful presence on the premises as a paying guest.

288. Defendants acted jointly and in agreement, with the shared objective of removing Plaintiff from the hotel premises and effectuating his arrest despite the absence of probable cause or lawful justification and while intentionally ignoring readily available exculpatory evidence.

289. The actions of Defendants, taken together, constituted concerted action designed to achieve an unlawful purpose — namely, Plaintiff's arrest without probable cause and in violation of his constitutional and statutory rights.

290. As a direct and proximate result of the conspiracy, Plaintiff suffered damages, including loss of liberty, emotional distress, reputational harm, and pecuniary losses.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER

WHEREFORE, Plaintiff Ismail Hanif respectfully requests that this Court enter judgment in his favor and against Defendants on all counts listed herein, awarding:

A. Ten-Million Dollars ($10,000,000.00) in compensatory and/or special damages in the aggregate across all counts;

B. Punitive damages in the amount of $350,000, subject to the statutory cap under Va. Code § 8.01-38.1, recoverable only against the individually named Defendants in their individual capacities and against the private entity Defendants, and not against Fairfax County, consistent with *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981);

C. Reasonable costs and attorney's fees, including those available pursuant to Va. Code §§ 2.2-3907(C) and 2.2-3908(D) for Count I, and as otherwise permitted by law;

Page 58 of 60

D.  Declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights;

E.  Injunctive relief requiring Fairfax County to adopt and implement policies, training, and supervision sufficient to eliminate the culture of deferral within the Fairfax County Police Department, including mandatory verification of exculpatory evidence and independent supervisory review in trespass and disorderly conduct investigations;

F.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable Virginia law;

G.  Pre-judgment and post-judgment interest; and

H.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Michael L. Daniels, Esq. _____
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

Page 59 of 60

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing First Amended Complaint was

served on all counsel of record on September 16, 2025.

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and Officer Moises Romero

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir, Haley Hamre, and Sharon Quinones Ramos

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
**Jessica.golden@kpmlaw.com**
*Counsel for InterContinental Hotwels Group Resourses*

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq.

Page 60 of 60

Law Offices

**Eccleston and Wolf**

Professional Corporation

(703) 218-5330
FAX (703) 218-5350
WMITCHELL@EWVA.COM

WILLIAM L. MITCHELL, II

SUITE 107
10400 EATON PLACE
FAIRFAX, VIRGINIA 22030

BALTIMORE-WASHINGTON LAW CENTER
7240 PARKWAY DRIVE – 4th FLOOR
HANOVER, MARYLAND 21076
(410) 752-7474

SUITE 260
1629 K STREET, N.W.
WASHINGTON, D.C. 20006
(202) 857-1696

FILED
CIVIL PROCESSING

2025 JUL 30  P 12: 42

CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

July 30, 2025

**VIA HAND DELIVERY**
The Honorable Christopher J. Falcon
Clerk, Fairfax County Circuit Court
Civil Division - 3rd Floor
4110 Chain Bridge Road
Fairfax, Virginia 22030

RE:   ***Ismail Hariz Hanif v. Old Town***
***Holdings LLC, et al.***
Case No. CL-2025-7984

Dear Mr. Falcon:

Enclosed please find the following in the above-referenced matter:

1.   A corrected Agreed Order signed by counsel for all parties; and
2.   July 23, 2025, email rejecting the previously filed Agreed Order.

Please file these materials among the papers in this case and submit the corrected Agreed Order to Chambers for endorsement and entry by the Court. If possible, please email me a copy of the Agreed Order once the Court has entered it.

Thank you for your prompt attention to this matter. Please let me know if you have any questions.

Sincerely,

ECCLESTON AND WOLF, P.C.

By: _____
William F. Mitchell, II

WLM:ss
Enclosures
cc:   Michael Daniels, Esq. (Via Email)
Bernard Feord, Jr., Esq. (Via Email)
Jessica Golden, Esq. (Via Email)

J:\5C660\Corresp\Clerk 01.Docx

**VIRGINIA:**

FILED
CIVIL PROCESSING

2025 JUL 30 P 12: 42

J FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

---

ISMAIL HAFIZ HANIF,

    Plaintiff

v.

**CASE NO.: CL-2025-7984**

OLD TOWN HOLDINGS, LLC, *et al.*,

    Defendants.

---

## SECOND AGREED ORDER EXTENDING TIME TO FILE RESPONSIVE PLEADINGS

Plaintiff Ismail Hafiz Hanif and Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, Sharon Quinones Ramos, and InterContinental Hotels Group Resources, LLC (hereinafter "these Defendants"), as evidenced by the below signatures of their respective counsel, hereby stipulate and agree as follows:

1.    These Defendants initially obtained extensions of time to file responsive pleadings to the Complaint.

2.    Plaintiff, however, desires to file an Amended Complaint in this action. Therefore, Plaintiff and these Defendants have agreed that these Defendants shall not be required to respond to the current Complaint.

3.    To minimize the waste of party and judicial resources, Plaintiff and these Defendants have agreed that these Defendants shall have 21 days after the filing and service of the Amended Complaint upon them to file responsive pleadings thereto.

1

4.    The Fairfax County Government and Officer Moises Romero, the remaining defendants in this action, previously filed a Plea in Bar and Demurrer in response to the Complaint, and, by the signature of their attorney below, consent to the relief requested herein.

Based on the foregoing, the Court finds that this Second Agreed Order is supported by good cause and, therefore, it is hereby **ORDERED** that Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, Sharon Quinones Ramos, and InterContinental Hotels Group Resources, LLC shall not be required to respond to the current Complaint, and shall have up to and including 21 days from the date they are served with any Amended Complaint to file responsive pleadings thereto.

AND THIS CAUSE CONTINUES.

_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:

William L. Mitchell, II (VSB #48585)
Michelle B. Jessee (VSB #80125)
ECCLESTON & WOLF, P.C.
10400 Eaton Place, Suite 107
Fairfax Virginia 22030
T: (703) 218-5330
F: (703) 218-5350
wmitchell@ewva.com
armstrong@ewva.com
*Counsel for Defendants Old Town
Holdings, LLC, Alexandria Hotel
Company, LLC, Holiday Inn Express
& Suites Alexandria-Fort Belvoir,
Haley Hamre, and Sharon Quinones Ramos*

SEEN AND AGREED:

Michael L. Daniels (VSB #93154) (w/permission)
Atchuthan Sriskandarajah (VSB #41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, Virginia 22032
T: (703) 278-0405
F: (703) 278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

2

SEEN AND AGREED:                              SEEN AND AGREED:

Bernard G. Feord, Jr. (VSB #28821)            Jessica Golden (VSB #76775)
Assistant County Attorney                     Kelbaugh Pfund & Messersmith, P.C.
12000 Government Center Parkway, Suite 549     901 Moorefield Park Drive, Suite 200
Fairfax, Virginia 22035-0064                  Richmond, Virginia 23236
T: (703) 324-2421                             T: (804) 320-6300
F: (703) 324-2665                             F: (804) 320-6312
Bernard.Feord@fairfaxcounty.gov               Jessica.Golden@kpmlaw.com
*Counsel for Defendants Fairfax County*       *Counsel for Defendant InterContinental*
*Government and Officer Moises Romero*        *Hotels Group Resources, LLC*

3

Based on the foregoing, the Court finds that this Second Agreed Order is supported by good cause and, therefore, it is hereby **ORDERED** that Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, and Sharon Quinones Ramos shall not be required to respond to the current Complaint, and shall have up to and including 21 days from the date they are served with any Amended Complaint to file responsive pleadings thereto.

AND THIS CAUSE CONTINUES.

_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:

William L. Mitchell, II (VSB #48585)
Michelle B. Jessee (VSB #80125)
ECCLESTON & WOLF, P.C.
10400 Eaton Place, Suite 107
Fairfax Virginia 22030
T: (703) 218-5330
F: (703) 218-5350
wmitchell@ewva.com
mm.from@ewva.com
*Counsel for Defendants*

SEEN AND AGREED:

Michael L. Daniels (VSB #93154)
Atchuthan Sriskandarajah (VSB #41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, Virginia 22032
T: (703) 278-0405
F: (703) 278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

SEEN AND AGREED:

Bernard G. Feord, Jr. (VSB #288   )
Assistant County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
T: (703) 324-2421
F: (703) 324-2665
Bernard.Feord@fairfaxcounty.gov
*Counsel for Defendants Fairfax County*
*Government and Officer Moises Romero*

SEEN AND AGREED:

_____
Jessica Golden (VSB #
Kelbaugh Pfund & Messersmith, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
T: (804) 320-6300
F: (804) 320-6312
Jessica.Golden@kpmlaw.com
*Counsel for Defendant InterContinental*
*Hotels Group Resources, LLC*

3

SEEN AND AGREED:

---

Bernard G. Feord, Jr. (VSB #28821)
Assistant County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
T: (703) 324-2421
F: (703) 324-2665
Bernard.Feord@fairfaxcounty.gov
*Counsel for Defendants Fairfax County*
*Government and Officer Moises Romero*

SEEN AND AGREED:

Jessica Golden (VSB# 76775)
Kelbaugh Pfund & Messersmith, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
T: (804) 320-6300
F: (804) 320-6312
Jessica.Golden@kpmlaw.com
*Counsel for Defendant InterContinental*
*Hotels Group Resources, LLC*

3

# FAIRFAX CIRCUIT COURT
# NOTICE OF CIVIL TERM DAY

**ISMAIL HAFIZ HANIF**

**VS.**                                                    **Case No. CL-2025-0007984**

**OLD TOWN HOLDINGS LLC ET AL.**

**To:**    **Michael L Daniels**
        **4008 Williamsburg Court**
        **Fairfax, VA 22032**

To resolve your case quickly and fairly, the Court has placed this case on the Civil Term Day Docket. At Term Day, we will establish a trial date and discovery schedule, **enter a Scheduling Order**, and deal with other pre-trial matters.

You are to appear for the Term Day hearing at **12:00 PM on September 22, 2025**, at the Fairfax Courthouse, 4110 Chain Bridge Road in Fairfax. The docket with courtroom assignments will be posted electronically on the monitors located on the 4th and 5th floor of the courthouse.

Make **SURE** that the following things have been taken care of **BEFORE** the Term Day hearing:

1. Check service of process on each defendant. If a defendant has not been served, either obtain service or be prepared to explain why service has not been effected.

2. If any defendant is in default, obtain a default judgment against him, if possible, or at least a judicial declaration that he/she is in default.

3. Corporations must be represented by counsel.

**If there is a problem with the assigned date, please contact the Case Management staff at (703) 246-2880, AT LEAST TEN CALENDAR DAYS before the Term Day for further instructions.**

**FAILURE TO APPEAR AT THIS TERM DAY MAY RESULT IN YOUR CASE BEING DISMISSED.**

                                    *The Judges of the Fairfax Circuit Court*

**07/03/2025**

**NOTE:** Members of the Virginia State Bar can select their trial dates using the Online Scheduling System (OSS) - https://www.fairfaxcounty.gov/circuit/online-services/online-scheduling-system

CCR-D-30                                                    August 2023

## FAIRFAX CIRCUIT COURT
## NOTICE OF CIVIL TERM DAY

**ISMAIL HAFIZ HANIF**

**VS.**                                                    **Case No. CL-2025-0007984**

**OLD TOWN HOLDINGS LLC ET AL.**

To:    **William L Mitchell II**
       **Eccleston & Wolf, PC (VA)**
       **10400 Eaton Place, Suite 107**
       **Fairfax VA 22030**

To resolve your case quickly and fairly, the Court has placed this case on the Civil Term Day Docket. At Term Day, we will establish a trial date and discovery schedule, **enter a Scheduling Order**, and deal with other pre-trial matters.

You are to appear for the Term Day hearing at **12:00 PM on September 22, 2025**, at the Fairfax Courthouse, 4110 Chain Bridge Road in Fairfax. The docket with courtroom assignments will be posted electronically on the monitors located on the 4th and 5th floor of the courthouse.

Make **SURE** that the following things have been taken care of **BEFORE** the Term Day hearing:

1. Check service of process on each defendant. If a defendant has not been served, either obtain service or be prepared to explain why service has not been effected.

2. If any defendant is in default, obtain a default judgment against him, if possible, or at least a judicial declaration that he/she is in default.

3. Corporations must be represented by counsel.

**If there is a problem with the assigned date, please contact the Case Management staff at (703) 246-2880, AT LEAST TEN CALENDAR DAYS before the Term Day for further instructions.**

**FAILURE TO APPEAR AT THIS TERM DAY MAY RESULT IN YOUR CASE BEING DISMISSED.**

                                    *The Judges of the Fairfax Circuit Court*

**07/03/2025**

**NOTE:** Members of the Virginia State Bar can select their trial dates using the Online Scheduling System (OSS) - https://www.fairfaxcounty.gov/circuit/online-services/online-scheduling-system

CCR-D-30                                                        August 2023

# FAIRFAX CIRCUIT COURT
# NOTICE OF CIVIL TERM DAY

**ISMAIL HAFIZ HANIF**

**VS.**                                                    **Case No. CL-2025-0007984**

**OLD TOWN HOLDINGS LLC ET AL.**

**To:    Bernard G. Feord Jr**
**Office of the County Attorney**
**12000 Government Center Pkwy, Suite 549**
**Fairfax VA 22035**

To resolve your case quickly and fairly, the Court has placed this case on the Civil Term Day Docket. At Term Day, we will establish a trial date and discovery schedule, **enter a Scheduling Order**, and deal with other pre-trial matters.

You are to appear for the Term Day hearing at **12:00 PM on September 22, 2025**, at the Fairfax Courthouse, 4110 Chain Bridge Road in Fairfax. The docket with courtroom assignments will be posted electronically on the monitors located on the 4th and 5th floor of the courthouse.

Make **SURE** that the following things have been taken care of **BEFORE** the Term Day hearing:

1. Check service of process on each defendant. If a defendant has not been served, either obtain service or be prepared to explain why service has not been effected.

2. If any defendant is in default, obtain a default judgment against him, if possible, or at least a judicial declaration that he/she is in default.

3. Corporations must be represented by counsel.

**If there is a problem with the assigned date, please contact the Case Management staff at (703) 246-2880, AT LEAST TEN CALENDAR DAYS before the Term Day for further instructions.**

**FAILURE TO APPEAR AT THIS TERM DAY MAY RESULT IN YOUR CASE BEING DISMISSED.**

*The Judges of the Fairfax Circuit Court*

**07/03/2025**

**NOTE:** Members of the Virginia State Bar can select their trial dates using the Online Scheduling System (OSS) - https://www.fairfaxcounty.gov/circuit/online-services/online-scheduling-system

CCR-D-30                                                                          August 2023

## FAIRFAX CIRCUIT COURT
## NOTICE OF CIVIL TERM DAY

ISMAIL HAFIZ HANIF

VS.                                                    Case No. CL-2025-0007984

OLD TOWN HOLDINGS LLC ET AL.

To:    Old Town Holdings LLC
       Defendant
       2875 Towerview Road, Suite A4
       Via RA: Vikash K Patel
       Herndon, VA 20171

To resolve your case quickly and fairly, the Court has placed this case on the Civil Term Day Docket. At Term Day, we will establish a trial date and discovery schedule, **enter a Scheduling Order**, and deal with other pre-trial matters.

You are to appear for the Term Day hearing at **12:00 PM on September 22, 2025**, at the Fairfax Courthouse, 4110 Chain Bridge Road in Fairfax. The docket with courtroom assignments will be posted electronically on the monitors located on the 4th and 5th floor of the courthouse.

Make **SURE** that the following things have been taken care of **BEFORE** the Term Day hearing:

1. Check service of process on each defendant. If a defendant has not been served, either obtain service or be prepared to explain why service has not been effected.

2. If any defendant is in default, obtain a default judgment against him, if possible, or at least a judicial declaration that he/she is in default.

3. Corporations must be represented by counsel.

**If there is a problem with the assigned date, please contact the Case Management staff at (703) 246-2880, AT LEAST TEN CALENDAR DAYS before the Term Day for further instructions.**

**FAILURE TO APPEAR AT THIS TERM DAY MAY RESULT IN YOUR CASE BEING DISMISSED.**

*The Judges of the Fairfax Circuit Court*

07/03/2025

**NOTE:** Members of the Virginia State Bar can select their trial dates using the Online Scheduling System (OSS) - https://www.fairfaxcounty.gov/circuit/online-services/online-scheduling-system

CCR-D-30                                                                        August 2023

## FAIRFAX CIRCUIT COURT
## NOTICE OF CIVIL TERM DAY

**ISMAIL HAFIZ HANIF**

**VS.**

**Case No. CL-2025-0007984**

**OLD TOWN HOLDINGS LLC ET AL.**

To:    **InterContinental Hotels Group Resources LLC**
**Defendant**
**425 W. Washington St., Suite 4**
**Serve Registered Agent United Agent Group Inc**
**Suffolk, VA 23434**

To resolve your case quickly and fairly, the Court has placed this case on the Civil Term Day Docket. At Term Day, we will establish a trial date and discovery schedule, **enter a Scheduling Order**, and deal with other pre-trial matters.

You are to appear for the Term Day hearing at **12:00 PM on September 22, 2025**, at the Fairfax Courthouse, 4110 Chain Bridge Road in Fairfax. The docket with courtroom assignments will be posted electronically on the monitors located on the 4th and 5th floor of the courthouse.

Make **SURE** that the following things have been taken care of **BEFORE** the Term Day hearing:

1. Check service of process on each defendant. If a defendant has not been served, either obtain service or be prepared to explain why service has not been effected.

2. If any defendant is in default, obtain a default judgment against him, if possible, or at least a judicial declaration that he/she is in default.

3. Corporations must be represented by counsel.

**If there is a problem with the assigned date, please contact the Case Management staff at (703) 246-2880, AT LEAST TEN CALENDAR DAYS before the Term Day for further instructions.**

**FAILURE TO APPEAR AT THIS TERM DAY MAY RESULT IN YOUR CASE BEING DISMISSED.**

*The Judges of the Fairfax Circuit Court*

**07/03/2025**

**NOTE:** Members of the Virginia State Bar can select their trial dates using the Online Scheduling System (OSS) - https://www.fairfaxcounty.gov/circuit/online-services/online-scheduling-system

CCR-D-30                                                                                                                          August 2023

**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

By counsel:

Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032

Plaintiff,

v.

**Old Town Holdings, LLC**

Via: Registered Agent
Vikash K. Patel
2875 Towerview Road, Suite A4          **Case No.: CL 25-7984**
Herndon, VA 20171

**Alexandria Hotel Company, LLC**

Via: Registered Agent
Vikash K. Patel
2875 Towerview Road, Suite A4
Herndon, VA 20171

**Baywood Hotels, Inc.**

Via: Vikash K. Patel (Registered Agent)
2875 Towerview Road, Suite A4
Herndon, VA 20171

Page 1 of 5

**Riverside Hotels, LLC DBA Holiday Inn Express & Suites Alexandria**

**- Fort Belvoir,**

    Via: Registered Agent

    Vikash K. Patel

    2875 Towerview Road, Suite A4

    Herndon, VA 20171

**Hayley Hamre,** (Individually)

    4104 Rosewood Dr., Unit 1

    Joint Base Andrews, MD 20762

**Sharon Quinones Ramos,** (Individually)

    955 S. Columbus St. Apt 424

    Arlington VA 22204

**Officer Moises Romero,**

(Individually and in his capacity as a

Fairfax County Police Department Officer)

    Serve: c/o Fairfax County Attorney

    Office of the County Attorney

    12000 Government Center Parkway

    Suite 549 Fairfax, VA, 22035

**Fairfax County Government,**

Page 2 of 5

Serve Chairman of the Board of Supervisors

Chairman Jeffrey McKay

12000 Government Center Parkway, Suite 530

Fairfax, VA, 22035


Serve: Fairfax County Attorney

Office of the County Attorney

12000 Government Center Parkway, Suite 549

Fairfax, VA, 22035


and


**InterContinental Hotels Group Resources, LLC**


Serve Registered Agent

United Agent Group Inc.

425 W. Washington St. Suite 4,

Suffolk, Va, 23434-5320


Defendants.


COMES NOW the Plaintiff, Ismail Hafiz Hanif, by counsel and moves this Court for leave

to amend his complaint for damages against the above-named Defendants. In support of his

motion, the Plaintiff states as follows:

1. Pursuant to Va. Sup. Ct. R. 1:8, "Leave to amend should be liberally granted in

   furtherance of the of justice

2. Counsel for the Plaintiff conferred with counsel for each of the Defendants.

Page 3 of 5

3. The Parties, through their counsel agreed on an order that extends time for responsive pleadings until after an amended complaint is filed and served.

4. While the Order mentions an amended complaint, it does not explicitly *authorize* the amended complaint.

5. Plaintiff asks that the Amended complaint filed on September 16, 2025 and also attached to this motion be accepted by the court as his first amended complaint and that the Defendant's be given 21 days from the date the amended complaint was served on the Defendants, or such longer or shorter time as the Court deems appropriate, to respond to the amended complaint.

Respectfully submitted,

_/s/ Michael L. Daniels, Esq._
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing First Amended Complaint

was served on all counsel of record on September 18, 2025.

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and Officer Moises Romero

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir, Haley Hamre, and Sharon Quinones

Ramos

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotwels Group Resourses*

/s/ **Michael L. Daniels, Esq.**
Michael L. Daniels, Esq.

Page 5 of 5

**VIRGINIA:**

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

| | |
|---|---|
| **Ismail Hafiz Hanif,** | |
|     Plaintiff, | |
| v. | **Case No.: CL 25-7984** |
| **Old Town Holdings, LLC, et al** | |
|     Defendants. | |

## <u>ORDER</u>

THIS CAUSE came before the Court on the Plaintiff's Motion for Leave to Amend; and

IT APPEARING TO THE COURT that leave to amend should be liberally granted under Rule 1:8 of the Rules of the Supreme Court of Virginia, and that it is otherwise just and proper to do so;

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Leave to Amend is GRANTED and the Amended Complaint, which was filed on September 16, 2025 and attached to the motion as Exhibit A is deemed filed as the Plaintiff's First Amended Complaint as of September 16, 2025. Counsel for the Defendants are granted 21 days from the entry of this order to file any responsive pleadings to the Amended Complaint.

ENTERED this _____ day of _____, 2025

_____
Judge, Fairfax County Circuit Court

Page 1 of 2

I ASK FOR THIS

_/s/ Michael L. Daniels, Esq._
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB#
41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

SEEN and _____

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite
549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and
Officer Moises Romero

SEEN and _____

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotwels Group
Resourses*

SEEN and _____

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort
Belvoir, Haley Hamre, and Sharon Quinones
Ramos

Page 2 of 2

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

By counsel:
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032

Plaintiff,

v.

**Old Town Holdings, LLC**

Via: Registered Agent
Vikash K. Patel
2875 Towerview Road, Suite A4
Herndon, VA 20171

**Alexandria Hotel Company, LLC**

Via: Registered Agent
Vikash K. Patel
2875 Towerview Road, Suite A4
Herndon, VA 20171

**Baywood Hotels, Inc.**

Via: Vikash K. Patel (Registered Agent)
2875 Towerview Road, Suite A4
Herndon, VA 20171

**Riverside Hotels, LLC DBA Holiday Inn
Express & Suites Alexandria
- Fort Belvoir,**

Via: Registered Agent
Vikash K. Patel
2875 Towerview Road, Suite A4
Herndon, VA 20171

**Hayley Hamre, (Individually)**

**Case No.: CL 25-7984**

Page 1 of 60

4104 Rosewood Dr., Unit 1
Joint Base Andrews, MD 20762


**Sharon Quinones Ramos,** (Individually)

955 S. Columbus St. Apt 424
Arlington VA 22204


**Officer Moises Romero,**
(Individually and in his capacity as a
Fairfax County Police Department Officer)

Serve: c/o Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway
Suite 549 Fairfax, VA, 22035


**Fairfax County Government,**

Serve Chairman of the Board of Supervisors
Chairman Jeffrey McKay
12000 Government Center Parkway, Suite 530
Fairfax, VA, 22035

Serve: Fairfax County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, VA, 22035

and

**InterContinental Hotels Group Resources, LLC**

Serve Registered Agent
United Agent Group Inc.
425 W. Washington St. Suite 4,
Suffolk, Va, 23434-5320

Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Ismail H. Hanif (hereinafter "Mr. Hanif" or "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; Officer Moises Romero; Fairfax County, Virginia; and InterContinental Hotels Group Resources, LLC (collectively, where appropriate, "Defendants"), and in support thereof states as follows:

### INTRODUCTION

1. This action seeks redress for the profound violation of Plaintiff Ismail H. Hanif's civil and common law rights and the significant damages he suffered when, on September 22, 2023, as a paying and lawfully registered guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir, he was subjected to racial profiling, falsely accused of trespassing by hotel management, who acted with gross negligence and willful misconduct, and then unlawfully detained, assaulted, battered, and falsely arrested by a Fairfax County Police Officer acting with gross negligence and malice.

2. Despite clear, readily available, and ultimately irrefutable evidence confirming Mr. Hanif's status as a lawful guest, the defendant hotel management and the defendant arresting officer engaged in conduct demonstrating a conscious and utter disregard for his rights and safety, culminating in a malicious prosecution for Disorderly Conduct that was ultimately dismissed when the truth of his guest status could no longer be ignored.

### PARTIES

3. **Plaintiff Ismail Hanif** is an individual residing at 1585 Springfield Avenue, Maplewood, NJ 07040. Mr. Hanif is an African American man.

4.    **Defendant Riverside Hotels, LLC D/B/A Holiday Inn Express & Suites Alexandria - Fort Belvoir** (the "Hotel") is a hotel located at 6055 Richmond Highway, Alexandria, VA 22303 and is a place of public accommodation.

5.    The name Holiday Inn Express & Suites Alexandria – Fort Belvoir is not separately registered with the Virginia State Corporation Commission ("SCC") as a distinct legal entity or fictitious name, nor are there any close variations listed with the SCC. Upon information and belief, it is the operating name for the hotel premises owned and/or managed by other named Defendants, Defendant Riverside Hotels, Inc and Defendant Baywood Hotels, Inc.

6.    **Defendant Baywood Hotels, Inc.** ("Baywood") is the management company for the Hotel and the employer of Defendants Hayley Hamre and Sharon Quinones Ramos.

7.    **Defendant Hayley Hamre** ("Hamre") was, at all relevant times, the Director of Sales at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Hamre acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

8.    **Defendant Sharon Quinones Ramos** ("Quinones Ramos") was, at all relevant times, the General Manager at the Hotel and an agent, servant, and/or employee of Baywood Hotels, Inc. Plaintiff further alleges that Quinones Ramos acted as an agent of Baywood, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with Baywood are matters particularly within the knowledge of Baywood and the other Hotel Defendants and will be further elucidated through discovery.

9.   **Defendant Officer Moises Romero** ("Officer Romero") is/was, at all relevant times, a sworn law enforcement officer employed by Defendant Fairfax County, Virginia, through its agency the Fairfax County Police Department ("FCPD"). At all times relevant to this complaint, Officer Romero was acting individually, under color of state law, and within the course and scope of his employment.

10.  Officer Romero is the arresting officer in this case.

11.  Officer Romero was the first officer on the scene and led the actions, which culminated in Mr. Hanif's unlawful arrest.

12.  Fairfax County Police Department (FCPD) is a law enforcement agency and a division of the Fairfax County Government, established pursuant to Virginia law and responsible for the supervision, training and conduct of its officers and employees.

13.  **Defendant Fairfax County, Virginia** (the "County") is a political subdivision of the Commonwealth of Virginia. At all relevant times, the County, through its agency, the FCPD, employed, trained, supervised, and was responsible for the conduct of Officer Romero and Major Kuhar. The FCPD is the law enforcement agency established pursuant to Virginia law and responsible for establishing and enforcing policies, customs, and practices regarding police conduct, including but not limited to, investigations, detentions, arrests, use of force, and the verification of information in situations involving alleged trespassing at public accommodations. The County is liable for the tortious acts of its employees, including Officer Romero, when such acts constitute gross negligence or intentional wrongdoing committed within the scope of employment, thereby falling outside the protection of sovereign immunity.

14.  As franchisor for the Holiday Inn brand worldwide, including the subject Hotel, Baywood establishes, mandates, and/or enforces brand standards, operational procedures, guest service

Page 5 of 60

protocols, and training requirements for its employees and managed properties, including, in this instance, Holiday Inn Express and Suites – Alexandria Ft. Belvoir. These standards and procedures include, but are not limited to, standards concerning guest interactions, non-discrimination, complaint resolution, and procedures for verifying guest status.

15. Plaintiff alleges that Baywood exercised sufficient control over the Hotel's operations, policies, and employee training (or exhibited a negligent failure in its oversight or provision of adequate policies and training regarding non-discrimination, de-escalation, and proper guest verification) such that an actual and/or apparent agency relationship exists between Baywood and Defendant Riverside Hotels, LLC, Hamre, and Quinones Ramos.

16. The specifics of these control mechanisms, franchise agreements, mandated operational procedures, and training programs are within the exclusive knowledge and possession of Baywood and its co-defendants and will be detailed through discovery.

17. Alternatively, Plaintiff alleges that Baywood's own policies, training mandates, or the negligent failure to provide adequate policies and training directly and proximately contributed to the violations of Mr. Hanif's rights alleged herein.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over the claims asserted herein pursuant to Va. Code § 17.1-513, as the amount in controversy exceeds the jurisdictional limits of the General District Court. This Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1, as the events giving rise to this Complaint occurred in Fairfax County, Virginia, and/or Defendants transact business, reside, or regularly conduct affairs within Fairfax County.

19. Venue is proper in this Court under Va. Code § 8.01-262 because one or more Defendants reside or have their principal place of business in Fairfax County, Virginia, and/or the cause of action, or a part thereof, arose in Fairfax County, Virginia.

## DEFINITIONS

20. For the purposes of this Complaint, "Hotel Defendants" shall refer collectively to Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and, where agency, vicarious, or direct liability is established by the facts and law, Riverside Hotels, LLC ("Riverside").

## FACTUAL BACKGROUND

21. On September 22, 2023, Mr. Hanif was a registered and paying guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir. (the "Hotel")

22. Mr. Hanif was lawfully present at the Hotel prior to, during, and at the time of his unlawful arrest.

23. Despite being a lawfully registered guest with all attendant rights and privileges, Mr. Hanif was falsely accused of trespassing by the Hotel staff, specifically including Defendants Hamre and Quinones Ramos, who, acting with gross negligence and/or willful and wanton disregard for the truth, incorrectly and without any reasonable verification stated that Mr. Hanif was not a guest.

24. The Fairfax County Police Department, (FCPD) initially represented by Defendant Officer Romero, arrived at the Hotel in response to the false report instigated by Defendant Hamre.

25. The following FCPD officers were present at the Holiday Inn during Mr. Hanif's arrest and /or detention:

    a. Officer Moises Romero

    b. Captain (now Major) Marisa Kuhar

    c. Officer Hannah Isabella

     d.  Officer Frankie Fitzgerald, Jr.

     e.  Lieutenant Monica Meeks

     f.  Officer Callum Laing

     g.  Officer Thomas Armel

26. In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD only provided video footage types from the following officers who were on site:

     a.  Officer Moises Romero – Body Worn Camera ("BWC"), Partial Dash Camera ("DC") and Rear Seat Car Camera ("CC")

     b.  Officer Frankie Fitzgerald, Jr. – BWC, DC, and CC

     c.  Lieutenant Monica Meeks – BWC, DC, and CC

     d.  Officer Callum Laing – BWC, DC, and CC

     e.  Officer Thomas Armel – BWC

     f.  Officer Hannah Isabella – DC, and CC (Nothing after her arrival on site.)

27. In response to discovery in Mr. Hanif's disorderly conduct case, the FCPD failed to provide video footage from the following officers who were on site:

     a.  Captain (now Major) Marisa Kuhar

     b.  Officer Hannah Isabella – BWC

28. Defendant Officer Romero, deliberately ignoring his training and accepted police practices, acted solely on the unverified and false information provided by the Hotel staff. Without conducting any reasonable or adequate independent investigation to verify Mr. Hanif's guest status, despite multiple opportunities and clear indications that such investigation was warranted, Officer Romero forcibly and unlawfully detained Mr. Hanif, accusing him of trespassing.

29. Mr. Hanif was subsequently arrested by Officer Romero and maliciously charged with disorderly conduct, a charge that was ultimately dismissed by the Commonwealth's Attorney on February 28, 2024, when irrefutable video evidence and the Hotel's own eventual admissions confirmed Mr. Hanif's status as a paying guest and the utter baselessness of the accusations against him. (Fairfax County General District Court, Case No: GC23130096-00).

30. The actions of the Hotel Defendants and Officer Romero were grossly negligent, demonstrated bad faith and malice, and reflected a conscious and utter disregard for Mr. Hanif's clearly established rights as a guest and as a citizen. Specifically:

   a. Hotel management, including Defendants Hamre and Quinones Ramos, took no reasonable steps to confirm whether Mr. Hanif was a guest prior to calling the police and accusing Mr. Hanif of trespassing.

   b. Defendant Officer Romero, and any other officers under his direction or acting in concert with him, refused to take the most basic, reasonable, and readily available steps to confirm whether Mr. Hanif was a guest prior to detaining, assaulting, battering, and arresting him, thereby abdicating their investigative duties.

   c. The Hotel staff, including Defendants Hamre and Quinones Ramos, repeatedly and falsely asserted that Mr. Hanif was not a guest without taking the most basic steps to confirm their allegation and persisted in this false assertion even when presented with clear evidence to the contrary.

   d. Officer Romero consciously ignored, or was deliberately indifferent to, at least five distinct and compelling facts and statements that would indicate to any reasonable person, let alone a trained and competent police officer, that Mr. Hanif was a lawful guest

Page 9 of 60

and that his assertion of being a guest warranted immediate and thorough investigation rather than continued unlawful detention and escalation.

e.  The facts and statements ignored by Officer Romero include, but are not limited to:

    i.  The presence of a room key in Mr. Hanif's possession, which was found and acknowledged by Officer Romero;

    ii.  A Question from a superior officer, Lt. Meeks, about a second guest staying in the room with Mr. Hanif;

    iii.  A second officer, Ofc. [Fitzgerald], indicating that there was a guest in the room with Mr. Hanif independent of the superior officer;

    iv.  A second officer explicitly stating several times that Mr. Hanif had a room key;

    v.  Mr. Hanif's direct and repeated requests for Officer Romero to verify his guest status by checking the Hotel registry, going to his room, or contacting his companion in the room.

f.  Officer Romero explicitly stated that he was not going to investigate evidence that would have conclusively shown that Mr. Hanif was a guest because, in Officer Romero's subjective and improper view, Mr. Hanif was not "polite." This statement is a direct admission of an improper, arbitrary, and malicious basis for his official actions, demonstrating a profound abuse of his authority and an utter abdication of his duty to investigate objectively and impartially.

**TIMELINE OF EVENTS ON SEPTEMBER 22, 2023**
**(Taken from Police Body Camera Video)**

Page 10 of 60

31. At or around 8:36 AM on September 22, 2023, Fairfax County Police were called by Hotel staff (Defendant Hamre) and dispatched to the scene for a complaint of a Black man in the breakfast area allegedly cursing and making a disturbance. The caller falsely stated that the man was not a guest of the Hotel.

32. At or around 8:56:37 AM – Officer Romero entered the Hotel lobby.

33. At or around 8:56:52 AM – Defendant Hayley Hamre tells Officer Romero that Mr. Hanif is not a Guest.

34. At or around 8:57:29 AM – Defendant Hayley Hamre states that she is the director of sales, and the General Manager [Defendant Sharon Quinones Ramos] is not on site yet.

35. At or around 8:57:42 AM – Officer Romero makes his initial contact with Mr. Hanif. Without any lawful provocation, reasonable suspicion, or probable cause, Officer Romero immediately and unlawfully seized Mr. Hanif by physically stopping him from leaving the breakfast area, placing his hand on Mr. Hanif's chest, stopping his forward progress, and pushing him back. Mr. Hanif asked if he was being detained, but Officer Romero refused to answer Mr. Hanif's repeated question about his detention status, further exacerbating the unlawful nature of the seizure.

36. This unwarranted, offensive, and non-consensual touching constituted an assault and battery upon Mr. Hanif by Officer Romero.

37. At or around 8:57:57 AM – Officer Romero states that Mr. Hanif is trespassing.

38. At or around 8:58:03 AM – Mr. Hanif again asks if he is being detained – Officer Romero responds, "If you're going to leave, leave."

39. At or around 8:58:01 AM – Officer Romero, without basis, asks Mr. Hanif if he stole anything – escalating the conflict.

40. At or around 8:58:08 AM – Mr. Hanif, relying on Officer Romero's explicit statement that he was free to leave, attempts to do so but is again forcibly stopped by Officer Romero who grabs Mr. Hanif using both hands and forces him back.

41. This action constituted a further unlawful assault and battery.

42. At or around 8:58:12 AM – Officer Romero (again) asks if Mr. Hanif stole anything. In response, the breakfast attendant, Debra, states that Mr. Hanif did not steal anything.

43. At or around 8:58:19 AM – Officer Romero tells Mr. Hanif to leave. Mr. Hanif, understandably confused and agitated by the conflicting commands and false allegations, refuses, and Officer Romero continues to tell Mr. Hanif to leave.

44. At or around 8:58:21 AM – Mr. Hanif says to Officer Romero, "You didn't pay. You leave!" highlighting his status as a paying guest of the Hotel.

45. At or around 8:58:31 AM – Breakfast attendant, Debra, attempts to explain the situation.

46. At or around 8:58:58 AM – Debra (attendant) confirms that the general manager [Defendant Quinones Ramos] is not there, and Officer Romero incorrectly states that Defendant Hayley Hamre is the manager.

47. At or around 8:59:19 AM – Mr. Hanif starts recording the encounter and Defendant Hayley Hamre attempts to leave the area.

48. At or around 8:59:27 AM, Officer Romero falsely told Mr. Hanif that the Hotel wanted him to leave, but no one from the Hotel had directly asked Mr. Hanif to leave at that time nor would anyone from the Hotel have any lawful basis for asking Mr. Hanif to leave given his status as a paying guest.

49. At or around 8:59:37 AM, Officer Romero makes his first direct assertion to Mr. Hanif that Mr. Hanif was not a guest relying solely on the unverified claims of Defendant Hamre.

Page 12 of 60

50. At or around 8:59:40 AM, Mr. Hanif asks how Officer Romero knows that he's not a guest. Officer Romero responds, "They said you're not a guest." Mr. Hanif asks, "how do you know…?" and "Who said that…?"

51. At or around 8:59:51 AM, Mr. Hanif confronts Ms. Hamre asking if she said that he is not a guest.

52. At or around 9:00:05 AM, Officer Romero continued to demand that Mr. Hanif leave.

53. At or around 9:00:27 AM, Officer Romero finally asked Mr. Hanif, if he was a guest, for the first time – several minutes into the hostile encounter and after having physically assaulted Mr. Hanif and giving him conflicting commands.

54. At or around 9:00:28 AM, Mr. Hanif immediately responded that he was a guest.

55. At or around 9:00:30 AM, Rather than accept Mr. Hanif's assertion as the basis for further investigation with the Hotel staff, Officer Romero counters by asking "What room are you staying in?"

56. At or around 9:00:34 AM, Mr. Hanif reiterated that he was a guest for the second time saying, "I told you that I'm a guest, that's all you need to know."

57. At or around 9:00:45 AM, Rather than taking this additional opportunity to investigate, Officer Romero asked Mr. Hanif to leave again and called for support.

58. At or around 9:00:49 AM, Officer Romero stated that Mr. Hanif would be arrested for trespassing if he did not leave.

59. At or around 9:01:03 AM, Mr. Hanif continued to assert that he was a guest.

60. At or around 9:01:52 AM, Mr. Hanif explained why he was upset by the false accusations and unwarranted actions against him by the police and Hotel staff.

61. At or around 9:02:23 AM, Mr. Hanif was taken into custody with Officer Armel, who was in plain clothes, assisting in the unlawful arrest.

62. At or around 9:03:09 AM, Defendant Quinones Ramos arrived, passing the officers and Mr. Hanif as they were taking Mr. Hanif out of the hotel lobby.

63. At or around 9:04:12 AM, Officer Romero removed a bundle of cash and Mr. Hanif's Room key from Mr. Hanif's Pocket. Officer Romero then held the cash up in front of the dash cam of his squad car and placed the bundle on the hood of his squad car. At this time, Captain Kuhar was positioned on the driver's side of Officer Romero's squad car near the front windshield.

64. At or around 9:04:38 AM Captain Kuhar left her position on the driver's side of Officer Romero's Squad car and proceeded to the Passenger side of the squad car.

65. At or around 9:04:42 AM Captain Kuhar removed the bundle of cash and Mr. Hanif's Room key from the hood of Officer Romero's squad car

66. At or around 9:04:45 AM Captain Kuhar left the passenger side of Officer Romero's squad car.

67. At or around 09:04:49 Captain Kuhar returned to the Driver's side of Officer Romero's squad car with Mr. Hanif's room key in her right hand in plain view.

68. At or around 9:04:53 Captain Kuhar placed Mr. Hanif's room key and cash under Mr. Hanif's cell phone but did not alert the other officers to the presence of the room key (direct physical exculpatory evidence) that she readily observed.

69. At or around 09:05:52 Captain Kuhar responded to Officer Laing's question about what Mr. Hanif was doing inside saying "Disorderly…. Disorderly and…" This marks the first time any officer mentioned "Disorderly", but this comment was after Captain Kuhar's discovery of Mr. Hanif's room key.

70. At or around 9:06:06 AM, while searching through Mr. Hanif's possessions, incident to the unlawful arrest, Officer Romero discovered the room key that Captain Kuhar placed under Mr.

Page 14 of 60

Hanif's cell phone – direct physical evidence confirming Mr. Hanif's guest status. At that time,

Officer Romero did not alert the other officers to the presence of the room key.

71.   At or around 9:06:54 AM, Officer Fitzgerald ran Mr. Hanif's ID at Officer Romero's Request.

72.   At or around 9:07:00 AM, Officer Romero returned to the Hotel Lobby, while Mr. Hanif remained

in custody in Officer Romero's squad car.

73.   At or around 9:07:12 AM, Defendant Quinones Ramos, now present, asked to have Mr. Hanif

trespassed despite having no personal knowledge of the preceding events and without taking any

steps to verify Mr. Hanif's guest status.

74.   At or around 9:07:14 AM, Officer Romero agreed to this request.

75.   At or around 9:07:17 AM, Defendant Hamre informed Officer Romero that Defendant Quinones

Ramos was the General Manager.

76.   At or around 9:07:17 AM, Officer Romero asked if they were sure that Mr. Hanif was not a guest

but received no immediate definitive answer that would justify Mr. Hanif's continued detention.

77.   At or around 9:07:22 AM, Officer Romero asked Ms. Quinones Ramos if Mr. Hanif was a guest.

78.   At or around 9:07:23 AM, Ms. Quinones Ramos falsely denied that Mr. Hanif was a guest.

79.   At or around 9:07:24 AM, Officer Romero explicitly informed the Hotel staff, including

Defendants Hamre and Quinones Ramos, that Mr. Hanif had a Hotel key card. This direct

communication of exculpatory physical evidence put the Hotel staff on undeniable notice of a high

probability that Mr. Hanif was a guest.

80.   At or around 9:07:25 AM, Defendant Quinones Ramos, in a demonstration of gross negligence and

a reckless disregard for the truth, again denied that Mr. Hanif could be a guest, dismissively and

falsely speculating (of the key card) "he might have picked it up off the floor." This statement by

Quinones Ramos demonstrates a willful blindness to the truth and a predetermined, baseless assumption against Mr. Hanif, constituting gross negligence and evidencing malice.

81.    At or around 9:07:55 AM Defendant Quinones Ramos, told Officer Romero (speaking of Defendant Hamre "I feel bad because she has never had to deal with anything like this before."

82.    At or around 9:08:44 AM, Officer Fitzgerald reported to Lieutenant Meeks that Mr. Hanif claimed to have a guest staying in the room with him further evidence of Mr. Hanif's lawful presence in the Hotel.

83.    At or around 9:08:49 AM, Lieutenant Meeks asked why Mr. Hanif would not just "go with the program and go back to his room" but she was apparently unaware that Officer Romero had unlawfully prevented Mr. Hanif from doing so.

84.    At or around 9:09:10 AM, Mr. Hanif's ID came back valid, expiring in 2029, with no warrants or alerts.

85.    At or around 9:09:39 AM, Lieutenant Meeks went inside and asked Officer Romero and hotel staff if Mr. Hanif had family or a guest staying with him. Officer Romero, again failing to investigate, denied this without checking.

86.    At or around 9:09:47 AM, Ms. Quinones Ramos falsely claimed that Mr. Hanif just came in trying to get breakfast and started describing behavior she never witnessed – further demonstrating her commitment to a false narrative.

87.    At or around 9:10:55 AM, Ms. Quinones Ramos asked for a trespass form persisting in the unlawful course of action.

88.    At or around 9:10:58 AM, Officer Laing and Lieutenant Meeks had a discussion about keeping stats, and Officer Laing commented that he would like to take someone to jail to avoid sitting for

four hours. Lieutenant Meeks replied, "Take somebody". Officer Laing replied, "I know, I want to take somebody…"

89.   At or around 9:11:33 AM, Officer Fitzgerald informed Officer Romero that Mr. Hanif said he had another guest staying with him in the room. Officer Romero countered that the general manager (Defendant Quinones Ramos) said Mr. Hanif was not a guest, and, in so doing, Officer Romero demonstrated a reckless disregard for the truth by choosing to rely on demonstrably false information over exculpatory facts. This also marked the second time that Officer Romero was informed that Mr. Hanif was staying at the hotel with another guest, but Officer Romero again refused to investigate.

90.   At or around 9:11:39 Approximately seven minutes after her discovery of Mr. Hanif's room key, Captain Kuhar tells Officer Romero that Mr. Hanif "also has a room key." Officer Romero acknowledges her comment by saying that he saw that. This marks the first time that the officers spoke to each other about the presence of the room key.

91.   At or around 9:11:41 AM, Officer Isabella stated that Mr. Hanif had a Hotel room key.

92.   At or around 9:11:42 AM, Officer Romero confirms that he saw the Hotel room key.

93.   At or around 9:11:46 AM, Officer Isabella states a second time that Mr. Hanif had a Hotel room key.

94.   At or around 9:11:47 AM, Officer Romero states that he is going to do the trespass form to ban Mr. Hanif from the Hotel per the manager's request – continuing the unlawful arrest and process.

95.   At or around 9:11:50 AM, A M. Lieutenant Kuhar asks about the Hotel room key – suggesting that they take the key in to deactivate it if it doesn't belong to Mr. Hanif.

96.   At or around 9:11:56 AM, Mr. Hanif asks to speak to a supervisor because, as he correctly stated, "the officers are not doing proper police work."

97. At or around 9:12:33 AM, Officer Isabella showed the room key to Ms. Quinones Ramos, who again denied its significance underscoring her refusal to investigate Mr. Hanif's guest status and further demonstrating her gross negligence in this situation.

98. At or around 9:12:55 AM, Lieutenant Meeks asked if anyone was registered under Mr. Hanif's name. Officer Isabella incorrectly denied this, because no one had actually checked the Hotel's registry at that point.

99. At or around 9:13:33, Lieutenant Meeks, Officer Isabella, and Officer Fitzgerald all deactivated their body worn cameras.

100. At or around 9:14:07 AM, Ms. Quinones Ramos was still outside, as seen on Officer Fitzgerald's dash cam.

101. At or around 9:14:13 AM, Mr. Hanif offered exculpatory evidence to Officer Romero saying, "If I got a key and we go in my room, what would happen? What would that that prove? That they are lying, right?" Officer Romero responded, "we're not going to do that." Mr. Hanif countered, "Yes! Because you know I'm right! That's why we're not going to do it, because you know I'm right!"

102. At or around 9:14:35 AM, Officer Romero said to Mr. Hanif, "If you had been polite, we would have tried to figure things out." This statement is direct evidence of Officer Romero's malice and his decision to arrest and pursue charges against Mr. Hanif based on personal animus and abuse of authority, rather than on any legitimate law enforcement purpose or probable cause.

103. At or around 9:16:00 AM, Officer Romero tells Lieutenant Meeks that Mr. Hanif wants to speak to a supervisor. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 AM to 09:21:56 AM.

104. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 to 09:21:56.

105. At or around 9:16:06 AM, Defendant Sharon Quinones Ramos admitted to Officer Romero that Mr. Hanif was indeed a guest staying there with a friend and had checked in with another manager. Ms. Quinones Ramos further stated that the other manager remembered Mr. Hanif and confirmed his check-in, noting his description as a Black man with tattoos on his face.

106. Despite this admission and confirmation of Mr. Hanif's status as a paying guest, Defendant Quinones Ramos outrageously and inexplicably requested that the police proceed with charging Mr. Hanif with trespassing anyway and further requested that the other lawful guest also be removed from the Hotel room. This admission by Defendant Quinones Ramos, made after Mr. Hanif had already been unlawfully arrested and detained based on her and Hamre's false information, unequivocally establishes her actual knowledge of Mr. Hanif's status as a lawful guest. Her subsequent demand to Officer Romero to proceed with trespassing and charging Mr. Hanif despite this knowledge constitutes an act of profound bad faith, actual malice, and a willful and wanton disregard for Mr. Hanif's rights. It further demonstrates that the Hotel Defendants' actions were pretextual and intended to harass Mr. Hanif.

107. At or around 9:16:42 AM, The police declined to remove the other guest noting that because Mr. Hanif and the other guest were paid guests of the Hotel, they could not remove the other guest and that only the Hotel management could ask them to leave.

108. Despite this acknowledgement of Mr. Hanif's rights as a guest, the police unlawfully kept Mr. Hanif in custody.

109. At or around 9:16:57 AM, Ms. Quinones Ramos receives the completed trespass form from Officer Romero, asks if the name on the form is Mr. Hanif's name, and then signs the form – despite knowing that Mr. Hanif was actually a guest in the Hotel.

Page 19 of 60

110. At or around 9:18:03 AM, Officer Isabela and Officer Romero joked about giving Mr. Hanif a parking ticket further showcasing their unprofessional conduct and callous indifference for Mr. Hanif's rights.

111. At or around 9:18:33 AM, Officer Romero suggested running the plates on Mr. Hanif's vehicle to see if Mr. Hanif's car was stolen. Officer Isabella runs the plates – a fishing expedition without any basis and a blatant attempt to find some reason to justify Mr. Hanif's continued detention.

112. At or around 9:24:34 AM, Lieutenant Meeks and Officer Isabella confirmed with Hotel staff that Mr. Hanif was the registered guest for room 121.

113. At or around 9:25:11 AM, Defendant Hayley Hamre referred to Mr. Hanif as the guest.

114. At or around 9:25:39 AM, the Hotel staff confirmed that Mr. Hanif was the paid guest for the room.

115. At or around 9:28:00 AM, Officers Meeks and Isabella visited room 121.

116. At or around 9:28:39 AM, officers Meeks and Isabella personally confirmed that a guest named Talia was also a guest in room 121 and that Mr. Hanif was the registered guest for that room.

117. Despite all the unequivocal proof of Mr. Hanif's status as a paying guest, Mr. Hanif was still transported and processed on a criminal charge. The decision by Officer Romero and supervising officers to transport and process Mr. Hanif despite the mountain of exculpatory evidence and the Hotel's admission demonstrates a reckless, if not intentional, continuation of an unlawful arrest and initiation of a malicious prosecution, undertaken with gross negligence and/or malice.

## DISSIPATION OF PROBABLE CAUSE AND CONTINUED DETENTION

118. Even if probable cause had arguably existed at the time of Mr. Hanif's initial arrest (Plaintiff does not concede that it did), it quickly dissipated once officers were presented with plainly exculpatory facts including the following:

   a.  Mr. Hanif possessed a valid hotel room key;

   b.  Mr. Hanif had a valid government-issued identification, which, along with the room key or independently from it, could have been used to confirm Mr. Hanif's Guest status in the hotel registry; and

   c.  The GM, Ms. Quinones Ramos gave explicit confirmation of a second registered guest in Mr. Hanif's room.

119. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basic steps to investigate this exculpatory evidence.

120. Taken together, these facts were easily verifiable and established that Mr. Hanif was lawfully on the premises as a paying guest. However, Office Romero repeatedly refused to take the most basic steps to investigate this plainly exculpatory evidence.

121. Rather than release Mr. Hanif in the face of overwhelming exculpatory evidence, officers prolonged his detention.

122. Officer Romero directed Officer Isabella to run Mr. Hanif's vehicle plates to see if the car was stolen, even though the vehicle was wholly unrelated to the alleged offenses of trespassing and disorderly conduct.

123. Even after Mr. Hanif's guest status had been established, Officer Isabella joked that they could "just give him a parking ticket."

124. These actions demonstrate that officers were not investigating an ongoing crime but searching for an alternative justification to preserve an arrest that lacked any lawful basis.

125. The Fourth Amendment prohibits continued detention once probable cause has dissipated. By ignoring readily available exculpatory evidence and prolonging Mr. Hanif's custody, the officers violated clearly established constitutional rights.

## COUNT I – DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF VA. CODE 2.2-3904 ET SEQ. (VIRGINIA HUMAN RIGHTS ACT)

### (Against Defendants Baywood Hotels, Inc.; Hayley Hamre; Sharon Quinones Ramos; and InterContinental Hotels Group Resources, LLC)

126. Plaintiff incorporates and realleges the facts in paragraphs 1 - 125 as if fully set forth herein.

127. The foregoing events took place on September 22, 2023

128. As a direct result of the actions of the Hotel Defendants, instigated by their false reports and discriminatory animus, Officer Romero arrested Mr. Hanif. Mr. Hanif was subsequently charged with Criminal Disorderly Conduct in violation of Va. Code § 18.2-415, a misdemeanor.

129. The disorderly conduct charge against Mr. Hanif was pending until February 28, 2024, when it was dismissed by the Commonwealth.

130. The disorderly conduct charge was pending for a period of 160 Days.

131. On September 10, 2024, 195 days after the conclusion of the criminal case against Mr. Hanif, Counsel for Mr. Hanif filed two complaints with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") alleging: 1) Discrimination in a Place of Public Accommodation; and 2) Law Enforcement Misconduct.

132. On March 24, 2025, 196 days after the initial filing of Mr. Hanif's complaints with OCR, counsel for Mr. Hanif requested a "Right to Sue" letter from OCR and made a second request for the same on April 7, 2025.

133. On April 15,2025, counsel for Mr. Hanif received a Notice of Right to Sue from OCR. (Exhibit 1 – Right to Sue Notice.)

134. Va. Code § 2.2-3904 defines a "Place of public accommodation" as "all places or businesses offering or holding out to the general public goods, services, privileges, facilities, advantages, or accommodations." The Hotel was, at all relevant times, a place of public accommodation.

135. It is unlawful for any person, including the Hotel Defendants, to deny any individual, or to make any distinction, discrimination, or restriction on account of race, color, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. (Va. Code § 2.2-3904(B)).

136. On September 21, 2023, Mr. Hanif, a African American man, checked in to the Hotel as a registered and paying guest.

137. At that time, one of the amenities offered and available to registered guests was an included breakfast in the Hotel's designated breakfast facility.

138. On the morning of September 22, 2023, Mr. Hanif entered the lobby through the front door, after leaving his vehicle, which was parked in the Hotel parking lot.

139. Mr. Hanif proceeded to the breakfast area, as was his right as a guest, without returning to his room.

140. The breakfast attendant, Debra, asked Mr. Hanif if he was a guest.

141. Mr. Hanif, perceiving he was being singled out due to his race, responded by asking if the attendant had asked all of the other (non-African American) guests in the breakfast area if they were guests.

142. Mr. Hanif then informed the attendant that he was a guest and proceeded to have breakfast.

143. At the time Mr. Hanif arrived for breakfast, the guests in the breakfast area were predominantly of other races, and Mr. Hanif was one of very few, if not the only, African American guests in the

breakfast area at that moment. These facts relating to the racial composition of the guests are based on Mr. Hanif's direct observations.

144. Notwithstanding the exchange between Mr. Hanif and the attendant, Mr. Hanif sat alone and quietly had breakfast without further incident, or disturbance until confronted by Defendant Hamre and Defendant Officer Romero.

145. The Hotel staff, specifically Defendant Hamre, acting on discriminatory animus and/or as a result of conscious or unconscious bias due to Mr. Hanif's race, called the police and falsely stated that Mr. Hanif was creating a disturbance and was not a guest.

146. Defendant Hamre's claim that Mr. Hanif was not a guest was made without any reasonable basis or verification of Mr. Hanif's status as a guest.

147. Mr. Hanif was identified by his race ("Black Man") and clothing on the call to police and not by name.

148. The Hotel management, including Defendants Hamre and Quinones Ramos, did not ask Mr. Hanif to leave the Hotel based on any legitimate, non-discriminatory reason (nor, initially, at all), nor did they take any reasonable steps to confirm his status as a paying guest prior to calling the police and instigating his removal and arrest.

149. This failure to verify, and immediate escalation to police action, was motivated, in whole or in substantial part, by Mr. Hanif's race and/or his appearance as an African American man and constituted a deviation from how similarly situated non-African American guests would have been treated under like circumstances. Alternatively, if such actions represent standard practice, then such practice itself is discriminatory.

150. In order to induce the police to detain and arrest Mr. Hanif, and motivated by discriminatory animus, the Hotel Defendants, through Defendant Hamre and subsequently through Defendant

Quinones Ramos, falsely and repeatedly claimed that Mr. Hanif was not a guest, thereby denying him, on account of his race, the full and equal enjoyment of the Hotel's accommodations, privileges, and services, including the right to be present in the Hotel and enjoy its amenities without being disturbed by baseless accusations and police intervention.

151. Prior to his arrest, Mr. Hanif informed Officer Romero that he was a guest.

152. Despite Mr. Hanif's insistence that he was a guest and numerous objective facts confirming this (e.g., his possession of a Hotel room key card, his assertion that a second guest was staying in the room with him, and his offer to prove his status), the Hotel staff, particularly Defendants Hamre and Quinones Ramos, driven by discriminatory bias, still insisted on his arrest and removal.

153. When confronted by the police with the fact that Mr. Hanif had a Hotel key card in his possession, Defendant Quinones Ramos, reflecting her discriminatory assumptions and determination to deny Mr. Hanif his rights as a guest, callously and baselessly dismissed this crucial evidence, falsely speculating that he might have picked the key card up from the floor. This statement further evidenced her unsubstantiated and biased position that Mr. Hanif, an African American man, could not possibly be a guest and her resolve to deny him the resulting services and privileges in this place of public accommodation.

154. Defendant Quinones Ramos falsely indicated to police that Mr. Hanif just came in off the street and was loading up on breakfast – despite the fact that she was not present to witness any of the events leading to the arrest and had no factual basis for this assertion.

155. Even after Defendant Quinones Ramos internally confirmed through another manager that Mr. Hanif was indeed a registered guest (based on his description as a Black man with tattoos on his face – itself a racial identifier used in the context), she persisted in her discriminatory course of conduct.

156. Despite knowing that Mr. Hanif was a guest, Defendant Quinones Ramos still insisted on having Mr. Hanif "trespassed" and removed, effectively seeking to punish him for behavior she never witnessed and which was, in any event, a reaction to the Hotel Defendants' own discriminatory and provocative actions. This insistence was pretextual and a continuation of the discriminatory treatment against Mr. Hanif on account of his race.

157. The actions of the Hotel Defendants, including Riverside Hotels, LLC, Hayley Hamre, and Sharon Quinones Ramos, individually and collectively, by treating Mr. Hanif differently and less favorably than non-African American guests, and by denying him services and instigating his false arrest based on his race, constituted unlawful discrimination by denying Mr. Hanif, on the basis of his race and color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hotel, in direct violation of Va. Code § 2.2-3904(B).

158. Defendant Baywood is vicariously liable for the discriminatory acts of its agents/employees, Hamre, and Quinones Ramos, who were acting within the scope of their actual and/or apparent agency and in furtherance of Baywood's business, as previously alleged. Furthermore, Plaintiff alleges that Defendant Riverside Hotels, through its franchise agreements, its mandatory training programs (or its negligent failure to provide adequate training regarding non-discrimination, implicit bias, de-escalation, and proper guest verification), and/or its control or right of control over operational standards, created an environment wherein such discriminatory actions by its franchisee's employees were foreseeable and inadequately addressed, and/or directly contributed to the denial of Mr. Hanif's rights. The specific details of Baywood's agreements with Riverside Hotels, LLC, training programs, and mechanisms of control or oversight which establish this liability are within the exclusive knowledge and possession of Baywood and will be established through discovery. Baywood's failure to ensure its agents/employees complied with non-

discrimination laws and basic guest verification protocols constitutes a breach of its own duties and/or ratifies the discriminatory conduct.

159. As a direct and proximate result of this unlawful discrimination by the Hotel Defendants, Mr. Hanif suffered a deprivation of his civil rights, false arrest, unlawful detention, malicious prosecution, assault, battery, significant emotional distress, humiliation, fear, anxiety, damage to his reputation, and other consequential damages, including the need to retain legal counsel for his criminal defense.

WHEREFORE, Plaintiff demands judgment against Defendants Baywood and the hotel employees for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1, reasonable attorney's fees and costs under Va. Code §§ 2.2-3907(C) and 2.2-3908(D), and such further relief as the Court deems just and proper.

## COUNT II – ASSAULT AND BATTERY

### (Against Officer Moises Romero)

160. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161. At Officer Romero's initial contact with Mr. Hanif, on September 22, 2023, when Mr. Hanif, a lawful guest of the Hotel, attempted to walk past him in the breakfast area, Defendant Officer Romero committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif when he placed his hand on Mr. Hanif's chest and physically pushed him backward.

162. This act by Defendant Officer Romero also constituted an intentional assault as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of an imminent battery and further harmful or offensive contact.

163. Mr. Hanif asked Officer Romero several times if he was being detained. Officer Romero evasively responded, "If you're going to leave, leave," thereby affirmatively representing to Mr. Hanif that he was not detained and was free to depart.

164. Relying on Officer Romero's explicit representation that he was free to leave, Mr. Hanif again attempted to walk past Officer Romero and leave the area.

165. Rather than permit Mr. Hanif to leave as Officer Romero had just represented he could, and without informing Mr. Hanif that he was being detained or providing any lawful basis whatsoever for such detention or renewed use of force, Officer Romero again committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif, using both hands to forcibly push Mr. Hanif back and continue the unlawful seizure and confrontation.

166. This second act of unwanted and offensive physical force by Defendant Officer Romero also constituted an intentional assault, as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of further imminent battery and harmful or offensive contact.

167. Mr. Hanif did not consent to being touched, pushed, or physically handled in any way by Officer Romero.

168. Mr. Hanif asked Officer Romero why Officer Romero was touching him if Mr. Hanif wasn't being detained.

169. At all relevant times, Mr. Hanif was a lawful and registered guest of the Hotel and had a clear legal right to be on the premises.

170. Mr. Hanif was not trespassing, nor was he engaged in any unlawful activity that would justify Officer Romero's use of force or physical contact when Officer Romero arrived or during these initial, unprovoked interactions.

171. Officer Romero's physical actions and use of force were not privileged under the circumstances, as Mr. Hanif was not actively resisting a lawful arrest (as no lawful basis for arrest existed at that time, nor had any intent to arrest been communicated), was not committing any offense in Officer Romero's presence justifying such force, posed no threat to Officer Romero or others, and was attempting to comply with or clarify Officer Romero's ambiguous and conflicting statements, including his representation that Mr. Hanif could leave.

172. Officer Romero's unconsented, offensive, and unjustified physical contact with Mr. Hanif constituted assault and battery.

173. Officer Romero was at all times acting in his official capacity as a Fairfax County Police Officer and within the course and scope of his employment with Defendant Fairfax County. His actions, however, were undertaken with gross negligence and/or malice, thereby exceeding the scope of any legitimate discretionary authority.

174. As a direct and proximate result of the assault and battery committed by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered physical injury, pain, physical discomfort, offensive touching, fear, intimidation, severe emotional distress, public humiliation, and other damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

**Count III – False Arrest**

**(Against Defendants Officer Moises Romero; Virginia; Baywood Hotels, Inc.; Riverside Hotels, LLC; Hayley Hamre; and Sharon Quinones Ramos)**

175. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 174 as if fully set forth herein.

176. Defendants, acting individually and in concert, intentionally and unlawfully caused Mr. Hanif to be confined and detained against his will, without his consent, and without legal justification or privilege.

177. Defendant Officer Romero effectuated the arrest and confinement of Mr. Hanif by: (a) physically restraining him through repeated assaults and batteries; (b) verbally commanding him and asserting authority over his freedom of movement; (c) formally placing him in custody and handcuffing him; and (d) transporting him in a police vehicle to a police station for processing.

178. Mr. Hanif was conscious of this confinement and did not consent to it.

179. The arrest and confinement of Mr. Hanif were without probable cause, and therefore unlawful and unprivileged, because:

    a.  Mr. Hanif was initially detained and subsequently arrested ostensibly for trespassing, yet, as Defendants knew or should have known through any reasonable inquiry, he was a confirmed, paying, and lawful guest of the Hotel with an absolute legal right to be present on the premises. No probable cause existed to believe he was trespassing.

    b.  Neither Officer Romero nor the Hotel Defendants (Hamre and Quinones Ramos) conducted any objectively reasonable, or indeed any meaningful, verification of Mr. Hanif's guest status via the Hotel registry, by checking his key, or through other readily available means before instigating, causing, and effectuating his arrest for trespassing. This failure was a conscious dereliction of duty.

Page 30 of 60

  c. The subsequent charge of disorderly conduct was pretextual and also lacked probable cause, as detailed in Count IV (Malicious Prosecution), because no reasonable officer familiar with Va Code § 18.2-415 could believe that Mr. Hanif's conduct would incite violence (nor did it incite violence) in anyone whom the conduct was directed. Moreover, Mr. Hanif's conduct fell well within the bounds of activity that is protected by the first Amendment to the U.S. Constitution e.g. using profanity and recording police officers engaged in their official duties.

  d. At no point did Officer Romero possess articulable facts sufficient to establish probable cause that Mr. Hanif had committed, was committing, or was about to commit any crime that would justify his seizure and arrest.

180. Hayley Hamre, and Sharon Quinones Ramos (the "Hotel Instigating Defendants" for this Count) actively instigated, participated in, and proximately caused Mr. Hanif's false arrest by:

  a. Knowingly or with reckless disregard for the truth providing false and misleading information to Officer Romero that Mr. Hanif was not a guest and was trespassing;

  b. Persistently demanding, encouraging, and/or importuning Officer Romero to arrest and/or trespass Mr. Hanif based on this false and unverified information, thereby substituting their unlawful demands for the officer's independent judgment;

  c. Continuing to insist on Mr. Hanif's arrest and trespass even after Defendant Quinones Ramos possessed actual knowledge and had admitted that Mr. Hanif was, in fact, a registered and lawful guest, thereby demonstrating malice and an intent to cause an unlawful arrest.

181. Defendant Officer Romero knew, or in the exercise of reasonable diligence and adherence to standard police practices should have known, that there was no probable cause to arrest Mr. Hanif for trespassing or any other offense.

182. Officer Romero's awareness of the presence of the room key, Mr. Hanif's consistent assertions of guest status, statements from other officers regarding the key and a second guest, and the utter failure of Hotel staff to provide credible, verified information, all negated any reasonable belief that Mr. Hanif was trespassing.

183. Officer Romero's decision to arrest Mr. Hanif under these circumstances was made with reckless disregard for Mr. Hanif's rights, lacked any lawful basis, and constituted an abuse of his lawful authority and/or gross negligence.

184. Defendant Fairfax County is vicariously liable for the false arrest/false imprisonment committed by its employee, Officer Romero. Officer Romero's actions in arresting Mr. Hanif without probable cause constituted gross negligence and/or an intentional tort (false arrest/imprisonment) committed with malice or an abuse of lawful authority, thereby falling outside the protection of sovereign immunity. The County's liability arises from respondeat superior for these non-immunized acts.

185. As a direct and proximate result of the false arrest instigated and carried out by Defendants, Mr. Hanif suffered significant damages, including but not limited to loss of liberty, physical discomfort and injury from handcuffing and transport, public humiliation, emotional distress, psychological harm including anxiety and fear, damage to his reputation, and financial losses including costs associated with his arrest, detention, and defense of the unsubstantiated disorderly conduct case.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further

relief as the Court deems just and proper.

## Count IV – Malicious Prosecution
### (Against Defendant Officer Moises Romero)

186. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 185 as if fully
set forth herein.

187. Defendant Officer Romero instituted and caused to be continued a criminal proceeding (Fairfax
County General District Court Case No: GC23130096-00) against Mr. Hanif for the specific
criminal offense of disorderly conduct, in violation of Virginia Code § 18.2-415.

188. The aforementioned criminal proceeding for disorderly conduct was terminated in Mr. Hanif's
favor on February 28, 2024, when the Commonwealth's Attorney, recognizing the lack of merit,
moved to dismiss the charge (nolle prosequi or dismissed). This termination was indicative of Mr.
Hanif's actual innocence of the charge.

189. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero
without probable cause.

   a. Virginia Code § 18.2-415 requires conduct having a direct tendency to cause acts of
   violence by the person or persons at whom it is directed.

   b.  At no point did Mr. Hanif's conduct, even when understandably and justifiably agitated
   by being falsely accused, unlawfully detained, and physically assaulted, have a direct
   tendency to cause acts of violence by anyone. His words and actions were a direct and
   foreseeable reaction to the unlawful conduct of the Defendants.

   c. No one, including Officer Romero or any Hotel staff, responded to Mr. Hanif with
   violence or indicated they felt imminently threatened by violence from him.

Page 33 of 60

d. Officer Romero did not witness any conduct by Mr. Hanif upon his arrival that could remotely constitute disorderly conduct;

e. When Officer Romero arrived, Mr. Hanif was quietly finishing his breakfast and preparing to leave the dining area.

f. Any agitation displayed by Mr. Hanif was a direct and foreseeable result of the provocative, unlawful, and rights-violating actions of Officer Romero and the Hotel Defendants, including false accusations of theft and trespassing, and Officer Romero's physical assaults and unlawful detention.

g. Mr. Hanif's profanity and recording of the officers were protected first amendment activities.

h. Officer Romero and other officers were aware or became aware prior to formalizing the charge of disorderly conduct, that Mr. Hanif was a paying and lawful guest and thus not trespassing.

i. The disorderly conduct charge was, therefore, a pretextual charge manufactured by Officer Romero to attempt to justify an already unlawful arrest and detention, initiated after any conceivable basis for any trespass claim had evaporated and was known by him to be false.

j. The Fairfax County Magistrate refused to issue a trespassing charge against Mr. Hanif precisely because he was a paying guest of the Hotel, further evidencing the lack of probable cause for any initial detention or arrest related to his presence, and highlighting the baselessness of Officer Romero then pivoting to a disorderly conduct charge.

k. In addition, the Fairfax County Magistrate refused to issue a disorderly conduct charge against Mr. Hanif.

l.  No reasonable officer with knowledge of the disorderly conduct statute could reasonably believe that Mr. Hanif's conduct constituted disorderly conduct under the law.

190. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero with malice. Facts that show Officer Romero's Malice include, but are not limited to the following:

a.  Malice is directly evidenced by Officer Romero's statement to Mr. Hanif, "If you had been polite, we would have tried to figure things out," an unambiguous admission that the decision to arrest and prosecute was motivated by Officer Romero's personal animus, displeasure, or as a means of punishment, rather than a good faith belief based on facts that Mr. Hanif had committed any crime.

b.  Malice is further evidenced by Officer Romero proceeding with and fabricating the disorderly conduct charge despite the utter lack of any reasonable factual basis, knowing the initial trespass claims from the hotel were false or unverified, and after the hotel management themselves had confirmed Mr. Hanif was a guest but, through Defendant Quinones Ramos, still outrageously desired his continued detention and prosecution. Officer Romero's alignment with this malicious civilian desire, rather than adherence to law and fact, demonstrates his own malice.

c.  The pursuit of the disorderly conduct charge as a pretext after the trespassing allegation was known by Officer Romero to be false, demonstrates a willful and malicious disregard for Mr. Hanif's rights and an improper purpose to injure Mr. Hanif.

d.  Malice is further evidenced by Officer Romero's participation in jokes about giving Mr. Hanif a parking ticket and his suggestion that Officer Isabella run the plates on Mr. Hanif's car to see if it was stolen, all while Mr. Hanif was unlawfully detained. These

Page 35 of 60

actions demonstrate a vindictive mindset and an attempt to find \*any\* charge to levy against Mr. Hanif, irrespective of actual wrongdoing – a further indication of malice.

191. Defendant Fairfax County is vicariously liable for the malicious prosecution initiated and continued by its employee, Officer Romero. Officer Romero's actions in pursuing a baseless charge with malice constituted an intentional tort committed in the scope of his employment but far exceeded any legitimate exercise of police discretion, thus falling outside the protection of sovereign immunity.

192. As a direct and proximate result of the malicious prosecution by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered significant damages, including but not limited to legal fees and costs incurred in his criminal defense, loss of liberty during the arrest and booking process, damage to his reputation and standing in the community, profound emotional distress including humiliation, anxiety, anger, and fear, psychological harm, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

### Count V: Gross Negligence
**(Against Defendants Baywood Hotels, Inc.; Hayley Hamre; and Sharon Quinones Ramos (collectively the "Hotel Gross Negligence Defendants" for this Count))**

193. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 192 as if fully set forth herein.

Page 36 of 60

194. Defendant Riverside Hotels, LLC and Defendant Baywood Hotels, Inc. (the "Corporate Hotel Defendants" for this Count) own and operate the Hotel as a place of public accommodation for paying guests – the former being the owner and the latter being the management company.

195. Defendants Hayley Hamre and Sharon Quinones Ramos were, at all relevant times, managerial employees and/or agents of the Corporate Hotel Defendants, acting within the course and scope of their employment and agency, and vested with authority concerning guest interactions and hotel security.

196. As innkeepers, the Corporate Hotel Defendants, and through them their agents and employees Hamre and Quinones Ramos, owed Mr. Hanif, a registered and lawful paying guest, a legal duty of reasonable care.

197. This duty of reasonable care included, but was not limited to, the duty to:

    a. Accurately and diligently verify his guest status before accusing him of trespassing or causing law enforcement to be summoned to remove him or arrest him for such an offense.

    b. Refrain from making false, unverified, or reckless accusations against him to law enforcement that would foreseeably lead to his detention or arrest.

    c. Take prompt and reasonable steps to investigate and correctly resolve guest status inquiries, particularly when a person asserts guest status, before escalating to police action and instigating arrest.

    d. Ensure their conduct, policies, and procedures (or lack thereof) did not create an unreasonable risk of, or actually lead to, the false accusation, false arrest, or wrongful deprivation of liberty of a lawful guest.

e. Train and supervise their employees, including managerial staff like Hamre and Quinones Ramos, on proper, non-discriminatory guest verification procedures, de-escalation techniques, and the critical importance of accurate information when involving law enforcement.

f. Exercise prudence and diligence in their interactions with guests to protect them from unwarranted harm, humiliation, and deprivation of their rights on the Hotel premises.

198. Defendants Hamre and Quinones Ramos, acting individually and on behalf of the Corporate Hotel Defendants, breached these duties in a manner that demonstrated such an utter disregard of prudence as to constitute a complete neglect of the safety and rights of Mr. Hanif, thereby constituting gross negligence under Virginia law.

199. The gross negligence of these Hotel Gross Negligence Defendants, individually and collectively, is evidenced by, among other things, their numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of their legal duties respecting the rights of Mr. Hanif, including but not limited to:

a. Defendant Hamre initiating a police call and instigating police action based on a false report that Mr. Hanif was trespassing and causing a disturbance, without any prior attempt to verify Mr. Hanif's readily ascertainable guest status, thereby recklessly setting in motion the chain of events that harmed Mr. Hanif.

b. Both Defendants Hamre and Quinones Ramos completely failing to check the Hotel's guest registry, consult with other staff who may have checked Mr. Hanif in, examine Mr. Hanif's key if offered, or make other simple, obvious, and readily available inquiries to confirm Mr. Hanif's status, despite his repeated assertions of being a guest and the high

Page 38 of 60

stakes of involving police for a trespass accusation. This failure showed an utter indifference to their duty of care.

c.  Defendant Quinones Ramos, upon being informed by police that Mr. Hanif possessed a Hotel room key – strong evidence of his guest status – outrightly and contemptuously dismissing this critical fact by baselessly and illogically speculating he "picked it up off the floor," thereby demonstrating a deliberate refusal to consider exculpatory evidence and an utter disregard for prudence.

d.  Defendant Quinones Ramos providing false and inflammatory information to the police that Mr. Hanif "just came in off the street," an event she did not witness and had no factual basis to assert, thereby recklessly exacerbating the situation and misleading law enforcement with a complete neglect for the truth.

e.  Defendant Quinones Ramos, even after internally confirming through another manager that Mr. Hanif was indeed a registered guest (meaning she possessed actual knowledge of his lawful status), maliciously insisting that police proceed with trespassing him and continue with his arrest. This act demonstrates not merely a lack of care, but a conscious and utter disregard for Mr. Hanif's known legal right to be on the premises and a complete neglect of her duties as an innkeeper, rising to the level of gross negligence and/or willful misconduct.

f.  The Corporate Hotel Defendant' failure to implement and enforce adequate policies and training for their employees regarding proper guest verification, non-discriminatory guest treatment, and appropriate procedures for addressing alleged disturbances without recklessly involving law enforcement against lawful guests, which created the conditions for and foreseeably led to the gross negligence of Hamre and Quinones Ramos.

Page 39 of 60

200. The conduct of Defendants Hamre, Quinones Ramos, and vicariously the Corporate Hotel Defendant (Baywood Hotels, Inc.), was not merely a failure to exercise ordinary care, but demonstrated a degree of negligence showing an utter disregard of prudence amounting to a complete neglect of the safety and fundamental rights of Mr. Hanif, a paying guest, and constituted a heedless and palpable violation of legal duties owed to him, thereby constituting gross negligence.

201. As a direct and proximate result of this gross negligence by the Hotel Gross Negligence Defendants, Mr. Hanif was falsely accused, unlawfully detained and arrested, publicly humiliated, subjected to physical restraint, endured a malicious criminal prosecution, was deprived of his liberty, and suffered severe emotional distress, psychological harm, damage to his reputation, and other consequential damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally where permitted by law, for compensatory damages in an amount to be proven at trial, punitive damages against the individual and private Defendants, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## Count VI: Gross Negligence
### (Against Defendant Officer Romero)

202. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 201 as if fully set forth herein.

203. At all relevant times on September 22, 2023, Defendant Officer Moises Romero was acting under color of state law and within the course and scope of his employment as a sworn law enforcement officer of the Fairfax County Police Department, an agency of Defendant Fairfax County.

204. Defendant Fairfax County, through its Police Department, acted with gross negligence by permitting and tolerating a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene.

205. Fairfax County owed Plaintiff a duty to exercise reasonable care in the training, supervision, and conduct of its police officers, including a duty to ensure that arrests are made and continued only with probable cause and in compliance with constitutional requirements.

206. Fairfax County, through its officers, breached that duty by acting with gross negligence — defined under Virginia law as "an utter disregard of prudence amounting to a complete neglect of the safety of another."

207. The County's officers ignored plainly exculpatory evidence, including Plaintiff's valid hotel room key, government-issued identification, and confirmation of a second registered guest. These facts clearly established that Plaintiff was lawfully present on the property.

208. Supervisory officers, including Captain Kuhar and Lieutenant Meeks, failed to perform even minimal independent investigation. Instead, they deferred entirely to Officer Romero's unsupported narrative, allowed false staff statements to control the decision-making, and permitted Officer Armel — who was out of uniform and unknown to the supervising captain — to participate in the arrest without exigent circumstances.

209. Rather than intervene to prevent an unlawful arrest, these supervisors ratified Romero's conduct, prolonging Plaintiff's detention after probable cause had dissipated. Such abdication of supervisory responsibility constitutes gross negligence.

210. The County's Internal Affairs Bureau later issued a disposition letter finding Romero's arrest to be "lawful and in compliance with FCPD regulations," while simultaneously admitting that "separate policy violations were identified."

211. This contradiction demonstrates Fairfax County's systemic indifference to the rights of citizens and its entrenched custom of rubber-stamping unconstitutional conduct.

212. Fairfax County's gross negligence in training, supervision, and investigation was a direct and proximate cause of Plaintiff's unlawful arrest, detention, and prosecution, causing him humiliation, emotional distress, financial harm, and reputational damage.

213. As a law enforcement officer, Officer Romero owed Mr. Hanif, and the public generally, a legal duty to perform his police duties with reasonable care and in compliance with established law, police department policies, and accepted police practices.

214. This duty included, but was not limited to, the duty to conduct adequate and objective investigations before depriving an individual of liberty, to verify information before acting upon it to arrest, to refrain from using excessive or unwarranted force, to not arrest individuals without probable cause, and to act impartially without regard to personal pique or animus.

215. Defendant Officer Romero breached these duties in a manner so egregious that it evinced an utter disregard of prudence and a complete neglect of Mr. Hanif's constitutional and common law rights, thereby constituting gross negligence.

216. Officer Romero's gross negligence is evidenced by, inter alia, his numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of his legal duties respecting the rights of Mr. Hanif, including but not limited to:

a. Failing entirely to take the most basic, reasonable, and readily available investigative steps to verify Mr. Hanif's lawful guest status (such as checking the Hotel registry, checking the room key, or speaking with Mr. Hanif's companion) before detaining, assaulting, battering, and arresting him, despite Mr. Hanif's repeated assertions of guest

status and the presence of multiple pieces of clearly exculpatory evidence. This was a complete abdication of his investigative duty.

b. Willfully and inexplicably disregarding or consciously choosing to ignore clear, compelling, and readily apparent exculpatory facts that overwhelmingly indicated Mr. Hanif was a lawful guest. These facts included Mr. Hanif's possession of a working Hotel room key (which Officer Romero saw), information from other officers about the key and a second guest in Mr. Hanif's room, and Mr. Hanif's own direct requests to verify his status with his companion guest or the Hotel registry. Such disregard shows a complete neglect of his duty to consider all facts.

c. Unnecessarily and unlawfully escalating a verbal encounter, which he himself initiated based on false information, into a physical one by repeatedly assaulting and battering Mr. Hanif without any lawful justification, privilege, or provocation from Mr. Hanif.

d. Arresting Mr. Hanif for trespassing without a shred of credible evidence amounting to probable cause, and in the face of substantial exculpatory evidence showing he was a lawful guest, thereby demonstrating a complete neglect of the probable cause requirement.

e. His unambiguous statement that "If you had been polite, we would have tried to figure things out," which is a direct admission that his decision-making process regarding Mr. Hanif's liberty was improperly and arbitrarily influenced by his personal feelings or animus rather than by objective facts, established police procedure, and law. This constitutes a reckless and flagrant dereliction of his sworn duty to act impartially and justly, amounting to an utter disregard of prudence.

    f.  Participating in, encouraging, and facilitating the continuation of Mr. Hanif's unlawful detention and subsequent malicious prosecution for disorderly conduct even as evidence overwhelmingly and irrefutably confirmed his innocence of any trespass and the baselessness of the disorderly conduct charge. This demonstrates a complete neglect for Mr. Hanif's rights once falsely accused.

    g.  Failing to de-escalate the situation, and instead actively escalating it through baseless accusations (e.g., "did you steal anything?"), physical force, and conflicting commands, contrary to accepted police practices and demonstrating an utter disregard for the safety and rights of Mr. Hanif.

217. This conduct by Officer Romero was so egregious, reckless, and indifferent to the rights and safety of Mr. Hanif that it rises far above simple negligence to the level of gross negligence, thereby stripping Officer Romero and, vicariously, Fairfax County of any immunity (including common law qualified immunity for discretionary acts or sovereign immunity) to which they might otherwise claim entitlement under Virginia law.

218. Defendant Fairfax County, as Officer Romero's employer, is vicariously liable under the doctrine of respondeat superior for the injuries and damages caused by Officer Romero's gross negligence committed within the course and scope of his employment, as such gross negligence is not protected by sovereign immunity.

219. The sovereign immunity of Fairfax County does not extend to acts of its employees that constitute gross negligence. Furthermore, the Fairfax County Police Department, in a letter dated January 22, 2025, concerning this incident (Exhibit 2 – FCPD Disposition Letter), admitted that there were "separate policy violations" by its officer(s) in connection with Mr. Hanif's arrest. These admitted policy violations lend further factual support to the claim that Officer Romero's conduct deviated

grossly from established standards of care, procedure, and his training, and thus constituted gross negligence.

220. The acts and omissions of Defendant Fairfax County, through its agent and employee Officer Romero, demonstrate a willful and wanton disregard for Plaintiff's rights, or at a minimum, gross negligence.

221. The failure of supervising FCPD Lieutenants on scene (including but not limited to Lt. Meeks and Lt. Kuhar) to intervene effectively, to correct Officer Romero's obviously flawed and biased investigation, and to prevent the unlawful arrest and subsequent malicious prosecution of Mr. Hanif, despite being aware of many of the same compelling exculpatory facts (such as the room key and the statements about a second guest), further illustrates the environment of negligence within which Mr. Hanif's rights were violated and can constitute gross negligence on the part of such supervisors, for which the County may also be liable.

222. The foregoing conduct of Officer Romero, as well as the inaction or improper actions of his supervisors, demonstrates gross negligence, defined under Virginia law as conduct that "shows an utter disregard of prudence amounting to a complete neglect of the safety [and rights] of another" or "a heedless and palpable violation of legal duty respecting the rights of others." (e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991); *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945))

223. As a direct and proximate result of Officer Romero's gross negligence, and the gross negligence of other FCPD personnel for which Defendant Fairfax County is liable, Plaintiff suffered unlawful detention, false arrest, assault, battery, malicious prosecution, physical discomfort and injury, public humiliation, severe emotional distress, psychological harm, and other compensable injuries and damages.

224. Defendant Fairfax County's grossly negligent failure to train and supervise its officers permitted and tolerated a culture of deferral in which officers and supervisors abdicated independent judgment and deferred to the unsupported conclusions of the first officer on scene. This culture was a moving force behind Plaintiff's unlawful arrest and detention.

WHEREFORE, Plaintiff demands judgment against Fairfax County for compensatory damages, costs, and such further relief as the Court deems just and proper. Plaintiff does not seek punitive damages against Fairfax County consistent with Virginia law and City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

### COUNT VII – VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL SEIZURE
### (Against Defendant Officer Romero, under 42 U.S.C. § 1983)

225. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 224 as if fully set forth herein.

226. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be free from unreasonable searches and seizures, including arrests without probable cause or arrest warrants.

227. On September 22, 2023, Plaintiff was lawfully present at the Holiday Inn Express Alexandria–Fort Belvoir as a paying guest with valid room access.

228. Despite this, Defendant Officer Romero, acting under color of law, arrested Plaintiff for alleged trespassing and disorderly conduct without confirming his guest status or conducting a reasonable investigation into the facts.

229. General Manager Quiñones Ramos asked Officer Romero whether Plaintiff could be trespassed from the premises, and Romero agreed, despite the absence of any independent verification that Plaintiff was not a guest and despite exculpatory evidence, including Plaintiff's room key and his assertions of lawful guest status.

230. Romero misapplied and misstated the elements of Virginia's disorderly conduct statute, demonstrating a failure of training and a reckless disregard for the protections of the Fourth Amendment.

231. Captain Kuhar, as the senior officer on scene, deferred entirely to Romero's judgment and failed to intervene to prevent an unconstitutional seizure.

232. Other officers, including Lieutenant Meeks, arrived after the arrest and reinforced assumptions of guilt by making conclusory statements—such as "his name's not in the registry"—without confirming whether anyone had checked the registry or verified Plaintiff's guest status.

233. The arrest was further influenced by an internal culture encouraging arrests for the sake of statistics, evidenced by comments from supervising officers about the need to "take someone," and Romero's response that he would "take" Plaintiff.

234. Plaintiff had committed no criminal offense justifying his arrest. His conduct—disputing accusations, using limited profanity not amounting to "fighting words," and refusing to leave a place where he had a contractual right to remain—was protected by law.

235. By arresting Plaintiff without probable cause and without a lawful basis, Defendants deprived Plaintiff of his liberty in violation of the Fourth Amendment.

236. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unlawful seizure, deprivation of liberty, emotional distress, reputational harm, financial losses, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT VIII – FIRST AMENDMENT RETALIATION
### (Against Defendant Officer Romero under 42 U.S.C. § 1983)

237. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 236 as if fully set forth herein.

238. The First Amendment to the United States Constitution protects *inter alia* the rights of individuals to engage in free speech, to petition the government, and to record public officials in the performance of their duties.

239. Plaintiff engaged in constitutionally protected conduct, including:

a. Verbally disputing the accusations made by hotel staff and officers.

b. Using profanity in a limited manner, without racial or threatening language, and without rising to the level of "fighting words" that would provoke imminent violence.

c. Recording and documenting the conduct of Officer Romero and other responding officers.

240. In response to this protected activity, Officer Romero placed Mr. Hanif under arrest for trespassing – later stating, "if you had been polite, we would have tried to figure things out."

241. Defendants, acting under color of law, arrested Plaintiff in retaliation for his exercise of these protected rights.

242. Officer Romero's decision to arrest Plaintiff was not based on probable cause but was substantially motivated by Plaintiff's refusal to "go with the program," his verbal objections, and his insistence on documenting the officers' actions.

243. Captain Kuhar, as the senior officer on scene, failed to question or correct Romero's retaliatory actions and instead endorsed the decision to arrest.

244. Lieutenant Meeks, arriving later, reinforced the retaliatory nature of the arrest by making statements confirming assumptions rather than asking questions to uncover exculpatory facts.

245. The culture of retaliation within the Fairfax County Police Department was further evidenced by contemporaneous officer comments about the need to "take someone," and Romero's own confirmation that he would "take" Plaintiff.

246. Defendants' actions had a chilling effect on Plaintiff's exercise of his First Amendment rights and would deter a person of ordinary firmness from continuing to exercise those rights.

247. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and such further relief as the Court deems just and proper.

## COUNT IX – VIOLATION OF THE FOURTEENTH AMENDMENT
### (DUE PROCESS AND EQUAL PROTECTION)
### (Against Defendant Officer Romero under 42 U.S.C. § 1983)

248. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 247 as if fully set forth herein.

249. Fairfax County, through the Fairfax County Police Department, has maintained a policy, custom, or practice of deferral, by which officers and supervisors abdicate their duty to investigate and instead uncritically adopt the conclusions of the first officer on scene.

250. This culture of deferral, repeatedly demonstrated on September 22, 2023, when multiple officers ignored exculpatory evidence and deferred entirely to Officer Romero's unsupported narrative,

Page 49 of 60

constitutes a County policy or custom that reflects deliberate indifference to constitutional rights and was a moving force behind Plaintiff's unlawful arrest and detention.

251. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person the equal protection of the laws.

252. Defendants, acting under color of law, deprived Plaintiff of liberty and equal protection by arresting him without probable cause, removing him from the premises, and charging him with offenses unsupported by law or fact.

253. Procedural Due Process: Plaintiff was deprived of liberty without adequate investigation or verification of his guest status.

a. Ms. Quiñones Ramos, the hotel's General Manager, asked Officer Romero to trespass Plaintiff without confirming whether he was in fact a registered guest, despite acknowledging that her subordinate Ms. Hamre had no prior experience handling such matters.

b. Officer Romero deferred to Ramos's request without reviewing or seeking additional exculpatory evidence such as Plaintiff's room key, the hotel registry, or surveillance footage.

c. Captain Kuhar, as the highest-ranking officer on scene, likewise failed to inquire into or confirm whether Plaintiff was a lawful guest, instead deferring to Romero's judgment.

d. Lieutenant Meeks, upon arriving later, made conclusory statements—such as "his name's not in the registry"—without verifying whether anyone had in fact checked the registry. At no time did she ask the necessary questions that would have revealed exculpatory evidence and prevented an unlawful arrest.

254. Substantive Due Process: Defendants' actions were arbitrary and capricious.

a. Plaintiff's conduct—peacefully sitting in the breakfast area, verbally disputing his treatment, and

recording the officers—was constitutionally protected activity and did not constitute disorderly conduct under Virginia law.

b. Plaintiff's limited use of profanity during the encounter was not racially based, nor did it rise to the level of "fighting words" that could provoke violence.

c. Defendants' decision to criminalize this conduct bore no rational relationship to a legitimate governmental interest and instead reflected reckless disregard for Plaintiff's constitutional rights.

255. Equal Protection: Plaintiff was denied equal protection of the laws.

a. Ms. Ramos stated that Plaintiff was "just coming in to load up," implying that he was homeless, despite having no evidence and without any attempt to confirm his guest status.

b. Hotel staff and officers assumed Plaintiff's illegitimacy as a guest and treated him more harshly than other similarly situated hotel patrons.

c. The officers' culture of arbitrary enforcement is evidenced by contemporaneous statements among officers, including references to the need to "take someone," and Romero's confirmation that he would "take" Plaintiff for trespassing and disorderly conduct.

256. Supervisory Failures:

a. Captain Kuhar, as the senior officer on site, failed to supervise subordinates or question the legality of the arrest, instead endorsing Romero's unsupported conclusions.

b. Lieutenant Meeks reinforced a culture of confirmation bias by making statements rather than inquiries, thereby compounding the deprivation of Plaintiff's rights.

c. These supervisory failures were consistent with and the result of Fairfax County's policies, practices, and customs that tolerate or encourage unlawful arrests, inadequate training, and demonstrated indifference to constitutional rights.

257. As a direct and proximate result of Defendants' actions, Plaintiff suffered unlawful arrest, deprivation of liberty, reputational harm, emotional distress, and other damages to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Fairfax County under 42 U.S.C. § 1983 and pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), for compensatory in an amount to be proven at trial, attorney's fees and costs under 42 U.S.C. § 1988, and such further relief as the Court deems just and proper, on the grounds that the County's policy, custom, and practice of deferral was a moving force behind the constitutional violations suffered by Plaintiff.

### Count X– Conspiracy to Violate Civil Rights (Against Defendants Officer Romero, Hayley Hamre, Sharon Quinones Ramos under 42 U.S.C. § 1983 and § 1985(3))

258. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 257 as if fully set forth herein.

259. Defendants Romero, Hamre, Quinones Ramos, and others, reached a tacit and/or express understanding to deprive Plaintiff of his constitutional rights by effectuating an unlawful arrest without probable cause.

260. This agreement is evidenced by the coordinated actions of the Defendants.

261. Ramos and Hamre supplied unverified and misleading information about Plaintiff's guest status. Ramos asked Romero if Plaintiff could be trespassed, and Romero agreed without inquiry.

262. The conspiracy was further reinforced by the "take someone" culture present among FCPD officers. Meeks reinforced Laing's comment that he wanted to "take someone" rather than "just sitting for four hours," and Romero confirmed to Meeks that he would "take" Plaintiff for trespassing and disorderly conduct. This language demonstrates a common understanding among the officers that arrests were to be made to justify their presence, regardless of legal sufficiency.

263. Defendants overtly acted on this agreement by arresting Plaintiff without verifying his guest status, by misstating the disorderly conduct statute to justify the arrest, and by ratifying Romero's unlawful decision-making.

264. The conspiracy lacked any legitimate purpose and was driven by animus against Plaintiff as a hotel guest asserting his rights, the Plaintiff's race, and by a culture that valued statistics and arrests over constitutional compliance.

265. As a direct and proximate result of this conspiracy, Plaintiff suffered the deprivation of his Fourth and Fourteenth Amendment rights, unlawful seizure, emotional distress, humiliation, reputational harm, and other compensable damages.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

### Count XI – Violation of 42 U.S.C. § 1981 (Racial Discrimination and Interference in Contractual Rights)
### (Against Defendants Baywood Hotels, Inc., Hayley Hamre, and Sharon Quiñones Ramos; as to state actors, enforced via 42 U.S.C. § 1983)

266. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 265 as if fully set forth herein.

267. At all relevant times, Plaintiff had an existing and enforceable contractual relationship with the Hotel, operated and managed by Baywood Hotels, Inc., entitling him, as a registered and paying guest, to lodging and the full use and enjoyment of hotel facilities and services. See 42 U.S.C. § 1981(b) (defining "make and enforce contracts" to include performance, modification, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship).

268. Defendant Sharon Quiñones Ramos, the Hotel's General Manager and a managerial agent of Baywood, requested that Officer Romero trespass Plaintiff from the Hotel without taking any steps to confirm Plaintiff's guest status, despite readily available verification methods (review of the guest registry, inspection of the room key, and communications with staff who checked Plaintiff in).

269. Ramos never personally interacted with Plaintiff, never observed any of his conduct, and did not witness any of the events leading to his arrest. Instead, acting on the false and biased representations of her subordinate, Defendant Haley Hamre, Ramos falsely asserted that Plaintiff was "just coming in to load up," implying he was a non-guest (e.g., homeless or otherwise unauthorized) and had no legitimate right to be present—when, in fact, Plaintiff was a paid, registered guest.

270. Ramos further acknowledged to Officer Romero that Hamre had never dealt with anything like this before, indicating her awareness that Hamre lacked relevant training and experience. Despite this knowledge, Ramos nevertheless accepted Hamre's account at face value and escalated to law enforcement, rather than exercising her own managerial responsibility to investigate or verify Plaintiff's guest status.

271. As General Manager, Ramos was responsible for supervising Hamre, but instead of intervening appropriately, she ratified or adopted Hamre's unfounded narrative and allowed it to become the basis for a law enforcement trespass request.

272. Officer Romero then agreed to Ramos's trespass request without verifying Plaintiff's status— further interrupting Plaintiff's contracted lodging and access to hotel facilities. The request and agreement functioned to terminate, restrict, and deny Plaintiff's contractual benefits because of his race.

273. Baywood, through Ramos and Hamre, intentionally interfered with and denied Plaintiff the same right to make and enforce his lodging contract as is enjoyed by white citizens, including the enjoyment of all benefits, privileges, terms, and conditions of that contract, on account of Plaintiff's race, in violation of 42 U.S.C. § 1981.

274. To the extent state actors (including Romero and Kuhar) participated jointly with Baywood's agents in depriving Plaintiff of § 1981 rights, those deprivations are actionable via 42 U.S.C. § 1983 and are additionally pled in the § 1983 counts herein. Plaintiff pleads § 1981 directly against Baywood, Ramos, and Hamre, and pleads enforcement of § 1981 rights against state actors through § 1983 to preserve the claim structure recognized in controlling precedent.

275. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of contractual benefits, humiliation, emotional distress, reputational harm, and economic damages, and is entitled to compensatory and punitive damages, together with attorney's fees as allowed by law.

WHEREFORE, Plaintiff demands judgment against Defendants under 42 U.S.C. § 1983 for compensatory damages, punitive damages against the individual Defendants, attorney's fees and costs pursuant to 42 U.S.C. § 1988, declaratory relief, and such other and further relief as the Court deems just and proper.

## Count XII – Gross Negligence / Failure to Supervise / Negligent Supervision
### (Against Baywood Hotels, Inc. and Quiñones Ramos)

276. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 275 as if fully set forth herein.

277. Defendants Baywood Hotels, Inc. ("Baywood") and its General Manager, Quiñones Ramos, owed Plaintiff a duty to exercise reasonable care in the supervision, training, and conduct of hotel staff, including Defendant Hamre, in their interactions with guests and patrons.

278. Ramos requested that Plaintiff be trespassed by law enforcement without conducting even the most basic inquiry into his guest status, despite being in a position to verify that information through hotel records, the front desk, or by questioning Plaintiff directly. In fact, Ramos later confirmed Mr. Hanif's guest status by speaking with another manager but still insisted that Officer Romero continue with the arrest.

279. Ramos relied entirely on the account of Defendant Hamre, despite explicitly acknowledging to Officer Romero that Hamre "had never had to deal with anything like this before." Rather than taking this admission as an indicator that closer supervision or independent verification was needed, Ramos ratified Hamre's judgment and elevated her unverified account into the basis for trespassing Plaintiff.

280. Ramos further undermined her supervisory responsibility by implying to Officer Romero that Plaintiff was merely "just coming in to load up," suggesting he was homeless, despite never having personally observed Plaintiff's conduct, spoken with him, or investigated his status.

281. Baywood, as the hotel's management entity, failed to ensure that Ramos and Hamre were adequately trained or supervised to handle guest disputes in accordance with contractual and legal obligations.

282. The negligent supervision and abdication of responsibility by Ramos and Baywood created the foreseeable risk that an innocent guest would be wrongfully treated as a trespasser, escalated to law enforcement, and subjected to an unlawful arrest.

283. Their failures were a substantial factor in causing Plaintiff's unlawful detention, reputational harm, emotional distress, and other damages, and constitute gross negligence under Virginia law.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages,

punitive damages (not against Fairfax County), reasonable attorney's fees and costs pursuant to 42

U.S.C. § 1988, and such further relief as the Court deems just and proper.

### COUNT XIII – COMMON LAW CIVIL CONSPIRACY (Against All Defendants)

284. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 283 as if fully set forth herein.

285. Under Virginia law, a common-law civil conspiracy consists of a combination of two or more persons, acting in concert, to accomplish by some concerted action either (a) an unlawful purpose, or (b) a lawful purpose by unlawful means, resulting in damages to the plaintiff. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

286. Defendants, including hotel staff Haley Hamre and Sharon Quinones Ramos, and Officer Romero acted in coordination, combined and acted in concert to cause and continue Plaintiff's unlawful arrest and detention.

287. Specifically, Hamre and Ramos provided knowingly false and misleading statements to law enforcement regarding Plaintiff's status as a lawful guest of the hotel, while Fairfax County officers accepted and relied upon those statements without conducting any independent or reasonable investigation, despite the ready availability of exculpatory evidence including Plaintiff's room key, booking confirmation, and his lawful presence on the premises as a paying guest.

288. Defendants acted jointly and in agreement, with the shared objective of removing Plaintiff from the hotel premises and effectuating his arrest despite the absence of probable cause or lawful justification and while intentionally ignoring readily available exculpatory evidence.

289. The actions of Defendants, taken together, constituted concerted action designed to achieve an unlawful purpose — namely, Plaintiff's arrest without probable cause and in violation of his constitutional and statutory rights.

290. As a direct and proximate result of the conspiracy, Plaintiff suffered damages, including loss of liberty, emotional distress, reputational harm, and pecuniary losses.

WHEREFORE, Plaintiff demands judgment against the individually named Defendants in their personal capacities and the private entity Defendants, jointly and severally, for compensatory damages, punitive damages pursuant to Va. Code § 8.01-38.1 (not against Fairfax County), costs, and such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER

WHEREFORE, Plaintiff Ismail Hanif respectfully requests that this Court enter judgment in his favor and against Defendants on all counts listed herein, awarding:

A. Ten-Million Dollars ($10,000,000.00) in compensatory and/or special damages in the aggregate across all counts;

B. Punitive damages in the amount of $350,000, subject to the statutory cap under Va. Code § 8.01-38.1, recoverable only against the individually named Defendants in their individual capacities and against the private entity Defendants, and not against Fairfax County, consistent with *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981);

C. Reasonable costs and attorney's fees, including those available pursuant to Va. Code §§ 2.2-3907(C) and 2.2-3908(D) for Count I, and as otherwise permitted by law;

D.  Declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights;

E.  Injunctive relief requiring Fairfax County to adopt and implement policies, training, and supervision sufficient to eliminate the culture of deferral within the Fairfax County Police Department, including mandatory verification of exculpatory evidence and independent supervisory review in trespass and disorderly conduct investigations;

F.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable Virginia law;

G.  Pre-judgment and post-judgment interest; and

H.  Such other and further relief as the Court deems just and proper.


Respectfully submitted,

_/s/ Michael L. Daniels, Esq._____
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing First Amended Complaint was

served on all counsel of record on September 16, 2025.

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and Officer Moises Romero

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir, Haley Hamre, and Sharon Quinones Ramos

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotwels Group Resourses*

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq.

Page 60 of 60

E-FILED

09/24/2025 11:52:54

CL-2025-0007984

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

    Plaintiff,

v.                                                          **Case No.: CL 25-7984**

**Old Town Holdings, LLC, et al**

    Defendants.

## <u>ORDER</u>

THIS CAUSE came before the Court on the Plaintiff's Motion for Leave to Amend; and

IT APPEARING TO THE COURT that leave to amend should be liberally granted under Rule 1:8 of the Rules of the Supreme Court of Virginia, and that it is otherwise just and proper to do so;

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Leave to Amend is GRANTED and the Amended Complaint, which was filed on September 16, 2025 and attached to the motion as Exhibit A is deemed filed as the Plaintiff's First Amended Complaint as of September 16, 2025. Counsel for the Defendants are granted 21 days from the entry of this order to file any responsive pleadings to the Amended Complaint.

ENTERED this _____ day of _____, 2025

_____
Michelle M. Kaminsky
2025.10.09 17:54:38-04'00'
Judge, Fairfax County Circuit Court

Page 1 of 2

I ASK FOR THIS

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB#
41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

SEEN and AGREED

/s/ Alexander Castelli, Esq. *
Bernard G. Feord, Jr. VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and
Officer Moises Romero

SEEN and AGREED

/s/ Jessica Golden, Esq. *
Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotels Group Resources*

SEEN and AGREED

/s/ William L. Mitchell, II, Esq. *
William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort
Belvoir, Haley Hamre, and Sharon Quinones
Ramos

*\* Signatures added by MLD with written permission from counsel.*

Page 2 of 2

**VIRGINIA:**

    **IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX**

ISMAIL HAFIZ HANIF                }
    **Plaintiff**                          }
                                }
v.                                }     **CASE NO.  CL 2025 -- 7984**
                                }
OLD TOWN HOLDINGS, LLC, et al.   }
    **Defendants**                   }

## ORDER REMOVING PLEA IN BAR
## OF FAIRFAX COUNTY GOVERNMENT FROM MOTIONS DOCKET

CAME THIS MATTER upon the request of Defendant, Fairfax County Government, to remove its Plea in Bar from this Court's Friday Motions Docket on September 5, 2025; and

IT APPEARING that Plaintiff, Ismail Hafiz Hanif, has agreed to file an Amended Complaint; and

IT FURTHER APPEARING that all parties consent to the removal of the pending Plea in Bar from the September 5, 2025 docket;

IT IS HEREBY ORDERED that the Plea in Bar of Defendant, Fairfax County Government, is removed from this Court's Friday Motions Docket without prejudice to reassert following Plaintiff's filing of the Amended Complaint.


    **ENTERED** this _____ day of September, 2025.

                                          *Christie Leary*
                                          2025.09.03 16:51:57 -04'00'
                                     Judge

Page 1 of 2

**I ASK FOR THIS:**

Bernard G. Feord, Jr., VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;  (703) 324-2665 (fax)
**Bernard.Feord@fairfaxcounty.gov**
*Counsel for Fairfax County Government and Officer Moises Romero*

**SEEN AND AGREED:**

Michael L. Daniels, VSB No. 93154
Atchuthan Sriskandarajah, VSB No. 41115
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
(703) 278-0405
(703) 278-0420 (fax)
**michael.daniels@srislawyer.com**
**sris@srislawyer.com**
*Counsel for Ismail Hafiz Hanif*

**SEEN AND AGREED:**

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
**wmitchell@ewva.com**
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and Sharon Quinones Ramos*

**SEEN AND AGREED:**

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
**Jessica.Golden@kpmlaw.com**
*Counsel for InterContinental Hotels*
*Group Resources*

**I ASK FOR THIS:**

Bernard G. Feold, Jr., VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;  (703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
*Counsel for Fairfax County Government and Officer Moises Romero*

**SEEN AND AGREED:**

Michael L. Daniels, VSB No. 93154
Atchuthan Sriskandarajah, VSB No. 41115
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
(703) 278-0405
(703) 278-0420 (fax)
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Ismail Hafiz Hanif*

**SEEN AND AGREED:**

**SEEN AND AGREED:**

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Jessica.Golden@kpmlaw.com
*Counsel for InterContinental Hotels
Group Resources*

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir,
Haley Hamre, and Sharon Quinones Ramos*

I ASK FOR THIS:

Bernard G. Feord, Jr., VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;  (703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
*Counsel for Fairfax County Government and Officer Moises Romero*

SEEN AND AGREED:

Michael L. Daniels, VSB No. 93154
Atchuthan Sriskandarajah, VSB No. 41115
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
(703) 278-0405
(703) 278-0420 (fax)
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Ismail Hafiz Hanif*

SEEN AND AGREED:

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and Sharon Quinones Ramos*

SEEN AND AGREED:

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Jessica.Golden@kpmlaw.com
*Counsel for InterContinental Hotels*
*Group Resources*

Page 2 of 2

VIRGINIA:
IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

ISMAIL HAFIZ HANIF                    }
                                      }
        Plaintiff                     }
                                      }
v.                                    }        CASE NO.  CL 2025 -- 7984
                                      }
OLD TOWN HOLDINGS, LLC, et al.        }
                                      }
        Defendants                    }

## PLEA IN BAR OF FAIRFAX COUNTY GOVERNMENT

Comes Now Defendant, Fairfax County Government (hereinafter "Fairfax

County"), by counsel, and asserts this Plea in Bar on the basis of sovereign immunity;

and in support thereof states as follows:

1. Fairfax County is a political subdivision of the Commonwealth of Virginia.

2. Plaintiff has plead four Counts against Fairfax County and seeks judgment solely

   on the basis of *respondeat superior* for the actions of an employee of the County,

   Officer Moises Romero, in each Count:  Count II – Assault and Battery police

   officer;  Count III False Arrest;  Count IV Malicious Prosecution; and Count VI

   Gross Negligence.

3. Fairfax County is immune from tort claims.  The Virginia Supreme Court, in

   *Seabolt v. County of Albemarle, 283 VA. 717, 719 (2012)* explained:

   "At common law, the Commonwealth was immune from liability for torts
   committed by its officers, employees and agents.... [T]hat immunity continues to
   apply in the absence of a legislative waiver by which the Commonwealth consents
   to be sued in its own courts." *Doud v. Commonwealth, 282 Va. 317, 320, 717
   S.E.2d 124, 125 (2011)* (citations omitted). Counties, as political subdivisions of
   the Commonwealth, enjoy the same tort immunity as does the sovereign. *Mann v.*

Page 1 of 3

*County Bd. of Arlington County, 199 Va. 169, 175, 98 S.E.2d 515, 519 (1957); Fry v. County of Albemarle, 86 Va. 195, 197–99, 9 S.E. 1004, 1005–06 (1889).* Consequently, "a county cannot be sued unless and until that right and liability be conferred by law." *Mann, 199 Va. at 174, 98 S.E.2d at 518–19.*

4. Plaintiff has failed to cite any legislative waiver in its Complaint by which the

Commonwealth consents to be sued in its own courts.

WHEREFORE, Defendant, Fairfax County Government, prays this Court sustain

its Plea in Bar and dismiss this claim with prejudice and award Fairfax County

Government its costs and fees incurred herein, and for such other relief as this Court

deems proper.

Respectfully submitted,
**FAIRFAX COUNTY GOVERNMENT**
By Counsel

**ELIZABETH D. TEARE,
COUNTY ATTORNEY**

By:

Bernard G. Feord, Jr., VSB No. 28821
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov

Page 2 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2025, a true copy of the foregoing document was sent via email and first-class mail to:

William L. Mitchell, II, Esq.
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and*
*Sharon Quinones Ramos*


Michael L. Daniels, Esq.
Atchuthan Sriskandarajah, Esq.
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff*

Bernard G. Feord, Jr.

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

ISMAIL HAFIZ HANIF                          }
                                            }
    Plaintiff                               }
                                            }
v.                                          }    CASE NO.  CL 2025 -- 7984
                                            }
OLD TOWN HOLDINGS, LLC, et al.              }
                                            }
    Defendants                              }

### DEMURRER OF OFFICER MOISES ROMERO

Comes Now Defendant, Officer Moises Romero, by counsel, pursuant to Virginia Code §8.01-273 and asserts this Demurrer to Plaintiff's Complaint for Damages; and in support thereof states as follows:

1. Plaintiff pled four Counts against Officer Romero, seeking judgment on the following bases:

   a. Count II – Assault and Battery police officer;

   b. Count III False Arrest;

   c. Count IV Malicious Prosecution; and

   d. Count VI Gross Negligence.

2. Plaintiff failed to plead facts sufficient to support any of the claims made in the afore-mentioned Counts. Plaintiff pled that: Officer Romero responded to a call from hotel staff that a black man who was not a guest of the hotel was cursing and making a disturbance in the hotel's breakfast room; within two minutes of arriving on scene, Officer Romero placed his hand on Plaintiff's chest to prevent

Page 1 of 4

him from leaving the breakfast room, subsequently grabbed Plaintiff·with both hands to prevent him from leaving and verbally commanded Plaintiff not to leave the room; and within 20 minutes of arriving on scene, Officer Romero questioned Plaintiff and hotel staff to establish that Plaintiff was a paying guest at the hotel, but hotel management wanted Plaintiff "trespassed" from the property due to his behavior.

3. Count II fails to state a claim against Officer Romero for Assault and Battery. The facts, as pled, establish normal human interaction related to the prompt and efficient investigation of a complaint of criminal behavior. Nothing in the Complaint rises to the level of an intent to place Plaintiff in fear or apprehension of bodily harm, nor was the alleged "touching" in any manner unjustified. See Colas v. Tyree, 302 Va. 17, 29 (2023); see also Parrish v. Commonwealth, 56 Va. App 324, 330 (2010).

4. In Count III, Plaintiff erroneously states that Officer Romero falsely arrested Plaintiff because, as a paying guest, Officer Romero did not have probable cause to arrest Plaintiff for trespassing. However, Plaintiff was arrested for Disorderly Conduct pursuant to Virginia Code §18.2-415 (*see Fairfax County General District Court Case No. GC23130096-00*). At the demand of hotel management, pursuant to Virginia Code §18.2-119, Plaintiff was also trespassed from the property.

5. Count IV fails to state a claim for Malicious Prosecution insofar as the facts establish Officer Romero had probable cause to arrest Plaintiff for disorderly

Page 2 of 4

conduct and refute any possibility that Officer Romero acted with malice. See

Lee v. Southland Corp., 219 Va. 23 (1978).

6. Any claims of Gross Negligence, as made in Count VI, are fallacious at best. The

claim is predominantly based upon the erroneous claim that Officer Romero

failed to establish Plaintiff's status as a paying hotel guest "before detaining,

assaulting, battering and arresting" Plaintiff. As is made clear by the totality of

facts pled, Plaintiff's "guest-status" played no role in his arrest for disorderly

conduct nor his being trespassed from the property by hotel management.

WHEREFORE, Defendant, Officer Moises Romero, prays this Court sustain his

Demurrer and dismiss all claims with prejudice and award Officer Moises Romero his

costs and fees incurred herein, and for such other relief as this Court deems proper.

Respectfully submitted,
**OFFICER MOISES ROMERO**
By Counsel

**ELIZABETH D. TEARE,**
**COUNTY ATTORNEY**

By:

Bernard G. Feord, Jr., VSB No. 28821
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov

Page 3 of 4

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2025, a true copy of the foregoing document was sent via email and first-class mail to:

William L. Mitchell, II, Esq.
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and*
*Sharon Quinones Ramos*

Michael L. Daniels, Esq.
Atchuthan Sriskandarajah, Esq.
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff*

Bernard G. Feord, Jr.

Page 4 of 4

FILED
PROCESSING

VIRGINIA:
                IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX 2025 JUN 30  AI 3: 19

ISMAIL HAFIZ HANIF                         }
                                           }
        Plaintiff                          }
                                           }
v.                                         }        CASE NO.  CL 2025 -- 7984
                                           }
OLD TOWN HOLDINGS, LLC, et al.             }
                                           }
        Defendants                         }

## PLEA IN BAR OF FAIRFAX COUNTY GOVERNMENT

Comes Now Defendant, Fairfax County Government (hereinafter "Fairfax

County"), by counsel, and asserts this Plea in Bar on the basis of sovereign immunity;

and in support thereof states as follows:

1.  Fairfax County is a political subdivision of the Commonwealth of Virginia.

2.  Plaintiff has plead four Counts against Fairfax County and seeks judgment solely

    on the basis of *respondeat superior* for the actions of an employee of the County,

    Officer Moises Romero, in each Count:  Count II – Assault and Battery police

    officer;  Count III False Arrest;  Count IV Malicious Prosecution; and Count VI

    Gross Negligence.

3.  Fairfax County is immune from tort claims.  The Virginia Supreme Court, in

    *Seabolt v. County of Albemarle, 283 VA. 717, 719 (2012)* explained:

    "At common law, the Commonwealth was immune from liability for torts
    committed by its officers, employees and agents.... [T]hat immunity continues to
    apply in the absence of a legislative waiver by which the Commonwealth consents
    to be sued in its own courts." *Doud v. Commonwealth, 282 Va. 317, 320, 717
    S.E.2d 124, 125 (2011)* (citations omitted). Counties, as political subdivisions of
    the Commonwealth, enjoy the same tort immunity as does the sovereign. *Mann v.*

Page 1 of 3

*County Bd. of Arlington County, 199 Va. 169, 175, 98 S.E.2d 515, 519 (1957); Fry v. County of Albemarle, 86 Va. 195, 197–99, 9 S.E. 1004, 1005–06 (1889).* Consequently, "a county cannot be sued unless and until that right and liability be conferred by law." *Mann, 199 Va. at 174, 98 S.E.2d at 518–19.*

4. Plaintiff has failed to cite any legislative waiver in its Complaint by which the

Commonwealth consents to be sued in its own courts.

WHEREFORE, Defendant, Fairfax County Government, prays this Court sustain

its Plea in Bar and dismiss this claim with prejudice and award Fairfax County

Government its costs and fees incurred herein, and for such other relief as this Court

deems proper.

Respectfully submitted,
**FAIRFAX COUNTY GOVERNMENT**
By Counsel

**ELIZABETH D. TEARE,
COUNTY ATTORNEY**

By:

Bernard G. Feord, Jr., VSB No. 2882
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov

Page 2 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2025, a true copy of the foregoing document was sent via email and first-class mail to:

William L. Mitchell, II, Esq.
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and*
*Sharon Quinones Ramos*

Michael L. Daniels, Esq.
Atchuthan Sriskandarajah, Esq.
Law Offices of SRIS PC
4008 Williamsburg Court
Fairfax, Virginia 22032
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff*

Bernard G. Feord, Jr.

**VIRGINIA:**
### IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

**ISMAIL HAFIZ HANIF**          }
    **Plaintiff**                         }
                       }
**v.**                                            }    **CASE NO. CL 2025 -- 7984**
                       }
**OLD TOWN HOLDINGS, LLC, et al.**  }
    **Defendants**                      }

### ORDER GRANTING PLEA IN BAR
### OF FAIRFAX COUNTY GOVERNMENT

CAME THIS MATTER on September 5, 2025, upon the Plea in Bar of Defendant, Fairfax County Government (hereinafter "Fairfax County"), asserting sovereign immunity, and further upon the opposition thereto by Plaintiff, Ismail Hafiz Hanif; and

IT APPEARING that Fairfax County is a political subdivision of the Commonwealth of Virginia and, in the absence of legislative waiver, is immune from liability for torts committed by its officers, employees and agents; and Plaintiff seeks judgment in all Counts against Fairfax County solely on the basis of *respondeat superior* for the actions of an employee of the County; wherefore

IT IS HEREBY ORDERED that the Plea in Bar of Defendant, Fairfax County Government, is granted and all Counts against Fairfax County Government are dismissed with prejudice.

THIS ORDER IS FINAL as to all Counts against Defendant, Fairfax County Government.

ENTERED this _____ day of _____, 2025.


                                  _____
                                        Judge

I ASK FOR THIS:

Bernard G. Feord, Jr., VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421;  (703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
*Counsel for Fairfax County Government and Officer Moises Romero*


SEEN AND _____:                         SEEN AND _____:


Michael L. Daniels, VSB No. 93154           Jessica Golden, VSB No. 76775
Atchuthan Sriskandarajah, VSB No. 41115     Kalbaugh Pfund & Messersmith, PC
Law Offices of SRIS PC                      901 Moorefield Park Drive
4008 Williamsburg Court                     Suite 200
Fairfax, Virginia 22032                     Richmond, Virginia 23236
(703) 278-0405                              (804) 320-6300
(703) 278-0420 (fax)                        (804) 320-6312 (fax)
michael.daniels@srislawyer.com              Jessica.Golden@kpmlaw.com
sris@srislawyer.com                         *Counsel for InterContinental Hotels*
*Counsel for Ismail Hafiz Hanif*            *Group Resources*


SEEN AND _____:


William L. Mitchell, II, Esq.
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,*
*Holiday Inn Express & Suites Alexandria Fort Belvoir,*
*Haley Hamre, and Sharon Quinones Ramos*

**VIRGINIA:**    **IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

ISMAIL HAFIZ HANIF
_____
                    Plaintiff
                        vs.                                    Civil Action No.  CL 2025  _  7984
                                                        
OLD TOWN HOLDINGS, LLC, ET AL.                Previous Chancery No.  CH _____
_____
                    Defendant
**SERVE:**

### FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:** ☐ Plaintiff   ☑ Defendant   ☐ Other

**Title of Motion:** ~~Enter County~~ Plea in Bar of Fairfax County Government        ☑ Attached   ☒ Previously Filed

**DATE TO BE HEARD:** September 5, 2025 _____ **Time Estimate** (combined no more than 30 minutes): 15 minutes _____

**Time to be Heard:** ☐ 9:00 a.m. **with** a Judge     ☐ 9:00 a.m. **without** a Judge

☑ 10:00 a.m. (Civil Action Cases) Does this motion require 2 weeks notice? ☑ Yes ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases) Does this motion require 2 weeks notice? ☐ Yes ☐ No

**Case continued from:** _____ **continued to:** _____
                        (Date)                                    (Date)

Moving party will use *Court Call* telephonic appearance:  ☐ Yes   ☐ No

**Judge** _____ **must hear this motion because (check one reason below):**

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** Bernard G. Feord, Jr., Assistant County Attorney    Office of the County Attorney
                    Printed Attorney Name/ Moving Party Name                    Firm Name
12000 Government Center Parkway, Suite 549, Fairfax, VA 22035
                                        Address

| 703-324-2421 | 703-324-2665 | 28821 | Bernard.Feord@fairfaxcounty.gov |
|---|---|---|---|
| Tel. No. | Fax No | VSB No. | E-Mail Address |

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

                                        Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 25th   day of July _____ , 2025 _____ , a true copy of the foregoing Praecipe was

☑ mailed ☐ faxed ☑ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.   *via email*

                                        Moving Party/Counsel of Record

CCR-E-10 (Jan 2018)

## INSTRUCTIONS FOR MOVING PARTY

**DATE/TIME**: All motions should be noticed for the 10:00 a.m. Civil Action Docket or the 11:30 a.m. Domestic/Family Law Docket (All Divorce cases, adoptions and Juvenile & Domestic Relations Court Appeals) unless the moving party believes the motion will be uncontested. All motions believed to be uncontested should be noticed for 9:00 a.m. All motions noticed for 9:00 a.m. should be set without a judge, unless evidence will be required (e.g., *Ex Parte* Proof, Infant Settlements, Fiduciary Matters), or if it is necessary for the order to be entered that morning rather than in chambers at a later time. **A minimum of two weeks' notice is required for all motions for Summary Judgment, Demurrers, Pleas in Bar, motions pertaining to discovery disputes and other motions for which any party desires to file a memorandum.** A memorandum of points and authorities of five pages or less must accompany any of these pleadings and any other motion placed on the Two Week Docket. If either party believes it necessary to file a memorandum exceeding five double-spaced pages, then the parties must utilize the Briefing Schedule procedure: contact opposing counsel or the opposing party and by agreement conduct a telephone conference call with the Calendar Control Judge, (703) 246-2221; or, if agreement is not possible, give advance notice of an appearance before the Calendar Control Judge to establish a Briefing Schedule.

**Each side should bring a draft proposed order to Court on the day of the hearing, as the ruling must be reduced to an order that day, absent leave of Court.** Cases may only be removed from the docket by the Court or by counsel for the moving party or the moving party. One Week Motions may be removed from the docket up until 4:00 p.m. on the Thursday preceding the hearing date, by contacting the Motions Clerk: (703) 246-4355. Two Week Motions may not be continued or removed from the docket after 4:00 p.m. on the Friday preceding the hearing date, without leave granted by the Judge assigned to hear the motion, for good cause shown.

If a hearing on any motion must take longer than thirty (30) minutes, the moving and responding parties, or their counsel, should appear before the Calendar Control Judge to request a hearing for a day other than a Friday. See, "Motions Requiring More than 30 Minutes" in "Friday Motions Docket Procedures" on the Court's website at https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/civil-friday-motions-docket-procedures.pdf

**MOTIONS TO RECONSIDER**: Do not set a Motion to Reconsider for a hearing. (See Friday Motions Docket Procedures, available from the Clerk's Office, the Bar Association office or on the Court's website at the address above.

**CERTIFICATIONS OF MOVING PARTY/COUNSEL**: Rule 4:15 (b) of the Rules of the Supreme Court of Virginia provides in pertinent part that "Absent leave of court, and except as provided in paragraph (c) of this Rule, reasonable notice shall be in writing and served at least seven days before the hearing. Counsel of record shall make a reasonable effort to confer before giving notice of a motion to resolve the subject of the motion **and to determine a mutually agreeable hearing date and time.**"

**CERTIFICATE OF SERVICE**: Pursuant to Rule 4:15 (e), a motions pleading shall be deemed served when it is actually received by, or in the office of, counsel of record through delivery, mailing, or facsimile transmission; not when it is mailed or sent.

## INFORMATION FOR MOVING PARTY

**COURTCALL TELEPHONIC APPEARANCE** In most cases, Virginia attorneys may appear by phone in lieu of appearing in Court for the hearing. To set up a telephonic appearance, you must call (888) 882-6878. For information, please visit the Court's website at https://www.fairfaxcounty.gov/circuit/services/courtcall. The Clerk's Office prefers that you notify it that you have set up a telephonic appearance by calling (703) 246-2880 no later than 4:00 p.m. on Thursday prior to the hearing date. The Court encourages use of this procedure, and either party may appear by phone.
**NOTE**: Telephonic appearance is only for members of the Virginia State Bar and licensed attorneys allowed to practice *pro hac vice* in the Fairfax County Circuit Court (with a member of the Virginia State Bar present over the phone or in person)

**CONCILIATION PROGRAM**: The Fairfax Circuit Court strongly encourages use of conciliation procedures to resolve motions. The Fairfax Bar Association's Conciliation Program conducts conciliation without charge by experienced litigators, who meet in person or by telephone with all interested parties. To request conciliation, fax a Request for Conciliation form to the Fax Hotline, (703) 273-1274; e-mail a request for conciliation to: ffxconciliation@aol.com; or leave a voice mail message at (703) 627-1228. You will be contacted before the hearing date by a representative of the Conciliation Program.

**V I R G I N I A:**    **IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Ismail Hanif

<table>
<tr><td></td><td></td></tr>
</table>

Plaintiff

vs.

Old Town Holdings, et al

Defendant

**SERVE:**

Civil Action No. **CL**25-7984

Previous Chancery No. **CH**

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:** ☒ Plaintiff  ☐ Defendant  ☐ Other

**Title of Motion:** Motion for Leave to Amend    ☐ Attached  ☒ Previously Filed

**DATE TO BE HEARD:** 11/17/2025    **Time Estimate** (combined no more than 30 minutes): 2

**Time to be Heard:** ☒ 9:00 a.m. **with** a Judge

☐ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice? ☐ Yes  ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases)  Does this motion require 2 weeks notice? ☐ Yes  ☐ No

**Case continued from:** _____ (Date)    , **continued to:** _____ (Date)

**Judge** _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** Michael L. Daniels, Esq.    Law Offices of Sris, P.C.

Printed Attorney Name/ Moving Party Name    Firm Name

4008 Williamsburg Court, Fairfax, VA 22030

Address

703-278-0405    703-278-0420    93154    mdaniels@srislawyer.com
Tel. No.    Fax No.    VSB No.    E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

_____
Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 10th day of October , 2025 , a true copy of the foregoing Praecipe was

☐ mailed  ☐ faxed  ☒ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

_____
Moving Party/Counsel of Record

Clear

CCR-E-10 (July 2021)

## INSTRUCTIONS FOR MOVING PARTY

**DATE/TIME**: All motions should be noticed for the 10:00 a.m. Civil Action Docket or the 11:30 a.m. Domestic/Family Law Docket (All Divorce cases, adoptions and Juvenile & Domestic Relations Court Appeals) unless the moving party believes the motion will be uncontested. All motions believed to be uncontested should be noticed for 9:00 a.m.. **A minimum of two weeks' notice is required for all motions for Summary Judgment, Demurrers, Pleas in Bar, motions pertaining to discovery disputes and other motions for which any party desires to file a memorandum.** A memorandum of points and authorities of five pages or less must accompany any of these pleadings and any other motion placed on the Two-Week Docket. If either party believes it necessary to file a memorandum exceeding five double-spaced pages, then the parties must utilize the Briefing Schedule procedure: contact opposing counsel or the opposing party and by agreement conduct a telephone conference call with the Calendar Control Judge, (703) 246-2221; or, if agreement is not possible, give advance notice of an appearance before the Calendar Control Judge to establish a Briefing Schedule.

**Each side should bring a draft proposed order to Court on the day of the hearing, as the ruling must be reduced to an order that day, absent leave of Court.** Cases may only be removed from the docket by the Court or by counsel for the moving party or the moving party. One Week Motions may be removed from the docket up until 4:00 p.m. on the Thursday preceding the hearing date, by contacting the Motions Clerk: (703) 246-4355. Two Week Motions may not be continued or removed from the docket after 4:00 p.m. on the Friday preceding the hearing date, without leave granted by the Judge assigned to hear the motion, for good cause shown.

If a hearing on any motion must take longer than thirty (30) minutes, the moving and responding parties, or their counsel, should appear before the Calendar Control Judge to request a hearing for a day other than a Friday. See, "Motions Requiring More than 30 Minutes" in "Friday Motions Docket Procedures" on the Court's website at https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/civil-friday-motions-docket-procedures.pdf

**MOTIONS TO RECONSIDER:** Do not set a Motion to Reconsider for a hearing. (See Friday Motions Docket Procedures, available from the Clerk's Office, the Bar Association office or on the Court's website at the address above.

**CERTIFICATIONS OF MOVING PARTY/COUNSEL**: Rule 4:15 (b) of the Rules of the Supreme Court of Virginia provides in pertinent part that "Absent leave of court, and except as provided in paragraph (c) of this Rule, reasonable notice shall be in writing and served at least seven days before the hearing. Counsel of record shall make a reasonable effort to confer before giving notice of a motion to resolve the subject of the motion **and to determine a mutually agreeable hearing date and time.**"

**CERTIFICATE OF SERVICE**: Pursuant to Rule 4:15 (e), a motions pleading shall be deemed served when it is actually received by, or in the office of, counsel of record through delivery, mailing, or facsimile transmission; not when it is mailed or sent.

## INFORMATION FOR MOVING PARTY

**CONCILIATION PROGRAM**: The Fairfax Circuit Court strongly encourages use of conciliation procedures to resolve motions. The Fairfax Bar Association's Conciliation Program conducts conciliation without charge by experienced litigators, who meet in person or by telephone with all interested parties. To request conciliation, fax a Request for Conciliation form to the Fax Hotline, (703) 273-1274; e-mail a request for conciliation to: ffxconciliation@aol.com; or leave a voice mail message at (703) 627-1228. You will be contacted before the hearing date by a representative of the Conciliation Program.

CCR-E-10 (July 2021)

**V I R G I N I A:     IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Ismail Hanif

_____

**Plaintiff**

**vs.**                                                          Civil Action No.  **CL** 25-7984  _____

Old Town Holdings, et al                              Previous Chancery No.  **CH** _

_____

**Defendant**

**SERVE:**

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:** ☒ Plaintiff   ☐ Defendant   ☐ Other

**Title of Motion:** Motion for Nonsuit and for Joinder _____    ☒ Attached  ☒ Previously Filed

**DATE TO BE HEARD:** 11/17/2025 _____    **Time Estimate** (combined no more than 30 minutes): 2 _____

**Time to be Heard:** ☒ 9:00 a.m. **with** a Judge

☐ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice? ☐ Yes  ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases)  Does this motion require 2 weeks notice? ☐ Yes  ☐ No

**Case continued from:** _____   continued to: _____
               (Date)                                              (Date)

**Judge** _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** Michael L. Daniels, Esq. _____     Law Offices of Sris, P.C. _____
               Printed Attorney Name/ Moving Party Name                    Firm Name

4008 Williamsburg Court, Fairfax, VA 22030 _____
                                  Address

703-278-0405 _____   703-278-0420 _____   93154 _____   mdaniels@srislawyer.com _____
   Tel. No.                Fax No.             VSB No.          E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

_____
Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 10th day of October , 2025 , a true copy of the foregoing Praecipe was

☐ mailed  ☐ faxed  ☒ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

_____
Moving Party/Counsel of Record

[ Clear ]

CCR-E-10 (July 2021)

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

    Plaintiff,

v.

                          **Case No.: CL 25-7984**

**Old Town Holdings, LLC, et al**

    Defendants

## MOTION FOR NONSUIT AND FOR JOINDER

COMES NOW the Plaintiff, Ismail Hafiz Hanif, by counsel and moves this Court for a nonsuit for the defendants named below and for joinder of additional defendants as named below. In support of his motion, the Plaintiff states as follows:

1. Plaintiff asks that the court nonsuit this matter against the following Defendants:

    a. Fairfax County, Virginia;

    b. Old Town Holdings, LLC;

    c. Alexandria Hotel Company, LLC;

    d. Intercontinental Hotels Group Resources, LLC.

2. Based on the information currently in hand and in consultation with counsel for the various defendants, Plaintiff believes that:

    a. Old Town Holdings, LLC and Alexandria Hotel Company, LLC were incorrectly identified as being involved with the hotel location which is the subject of this complaint. Upon the representation of the defendant's counsel,

Page 1 of 3

the correct entity is Riverside Hotels, LLC DBA Holiday Inn Express &

Suites Alexandria.

b. Intercontinental Hotels Group Resources, LLC is the franchisor for Riverside

Hotels, LLC's use of the Holiday Inn brand and has no known direct

involvement in this case. The correct management company for the Hotel in

this complaint is Baywood Hotels, Inc.

3. Plaintiff asks that the Court join the following entitles for the reasons stated above.

a. Riverside Hotels, LLC DBA Holiday Inn Express & Suites Alexandria –

Serve: William L. Mitchell, II, Esq. /Michelle B. Jessee, Esq., Eccleston &

Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax, Virginia 22030

b. Baywood Hotels, Inc. – Serve: William L. Mitchell, II, Esq. /Michelle B.

Jessee, Esq., Eccleston & Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax,

Virginia 22030

Respectfully submitted,

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion for Nonsuit and

Joinder was served on all counsel of record on September 25, 2025.

Bernard G. Feord, Jr. VSB No. 2882
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and Officer Moises Romero

William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort Belvoir, Haley Hamre, and Sharon Quinones
Ramos

Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotwels Group Resourses*

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq.

Page 3 of 3

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| |
|---|
| **Ismail Hafiz Hanif,**<br><br>Plaintiff,<br><br>v.<br><br>**Old Town Holdings, LLC, et al**<br><br>Defendants. |

**Case No.: CL 25-7984**

## AGREED ORDER

THIS CAUSE came before the Court on the Plaintiff's Motion for Nonsuit and for Joinder; and

IT APPEARING TO THE COURT that upon the agreement of the Parties, and that it is otherwise just and proper to do so;

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Nonsuit and for Joinder is GRANTED, and the matter is dismissed without prejudice for the following Defendants:

        a. Fairfax County, Virginia;

        b. Old Town Holdings, LLC;

        c. Alexandria Hotel Company, LLC; and

        d. Intercontinental Hotels Group Resources, LLC.

IT IS FURTHER ORDERED that the following parties are hereby joined as defendants in this matter.

Page 1 of 3

a. Riverside Hotels, LLC DBA Holiday Inn Express & Suites Alexandria –

   Serve: William L. Mitchell, II, Esq. /Michelle B. Jessee, Esq., Eccleston &

   Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax, Virginia 22030

b. Baywood Hotels, Inc. – Serve: William L. Mitchell, II, Esq. /Michelle B.

   Jessee, Esq., Eccleston & Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax,

   Virginia 22030

THIS CAUSE CONTINUES

ENTERED this _____ day of _____, 2025

_____
Judge, Fairfax County Circuit Court

I ASK FOR THIS

/s/ Michael L. Daniels, Esq.
Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

SEEN and AGREED

/s/ Jessica Golden, Esq. *
Jessica Golden, VSB No. 76775
Kalbaugh Pfund & Messersmith, PC
901 Moorefield Park Drive
Suite 200
Richmond, Virginia 23236
804-320-6300
804-320-6312(fax)
Jessica.golden@kpmlaw.com
*Counsel for InterContinental Hotels Group
Resources*

Page 2 of 3

SEEN and AGREED_____

__/s/ Alexander Castelli, Esq. *_____
Bernard G. Feord, Jr. VSB No. 28821
Assistant County Attorney
Alexander Castelli, VSB No. 95361
Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
(703) 324-2421
(703) 324-2665 (fax)
Bernard.Feord@fairfaxcounty.gov
Counsel for Fairfax County Government and
Officer Moises Romero

SEEN and AGREED_____

__/s/ William L. Mitchell, II, Esq. *_____
William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria Fort
Belvoir, Haley Hamre, and Sharon Quinones
Ramos

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **Ismail Hafiz Hanif,** | |
| Plaintiff, | |
| v. | **Case No.: CL 25-7984** |
| **Old Town Holdings, LLC, et al** | |
| Defendants. | |

### AGREED ORDER

THIS CAUSE came before the Court on the Plaintiff's Motion for Nonsuit and for Joinder; and

IT APPEARING TO THE COURT that the Plaintiff has not previously suffered a nonsuit of right in this matter, that the Parties have agreed to this order as evidenced by the signatures of their respective counsel, and that it is otherwise just and proper to do so;

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Nonsuit and for Joinder is GRANTED, and the matter is dismissed without prejudice for the following Defendants:

       a. Fairfax County, Virginia;

       b. Old Town Holdings, LLC;

       c. Alexandria Hotel Company, LLC; and

       d. Intercontinental Hotels Group Resources, LLC.

IT IS FURTHER ORDERED that the following parties are hereby joined as defendants in this matter.

Page 1 of 3

   a.  Riverside Hotels, LLC DBA Holiday Inn Express & Suites Alexandria –

       Serve: William L. Mitchell, II, Esq. /Michelle B. Jessee, Esq., Eccleston &

       Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax, Virginia 22030

   b.  Baywood Hotels, Inc. – Serve: William L. Mitchell, II, Esq. /Michelle B.

       Jessee, Esq., Eccleston & Wolf, PC, 10400 Eaton Place, Suite 107, Fairfax,

       Virginia 22030


THIS CAUSE CONTINUES


ENTERED this _____ day of _____, 2025


_____
Judge, Fairfax County Circuit Court


I ASK FOR THIS                                    SEEN and AGREED_____

_/s/ Michael L. Daniels, Esq._____        __/s/ Jessica Golden, Esq. *_____
Michael L. Daniels, Esq. (VSB# 93154)             Jessica Golden, VSB No. 76775
Atchuthan Sriskandarajah, Esq. (VSB# 41115)       Kalbaugh Pfund & Messersmith, PC
Law Offices of SRIS P.C.                          901 Moorefield Park Drive
4008 Williamsburg Court                           Suite 200
Fairfax, VA 22032                                 Richmond, Virginia 23236
P: 703-278-0405                                   804-320-6300
F: 703-278-0420                                   804-320-6312(fax)
michael.daniels@srislawyer.com                    Jessica.golden@kpmlaw.com
sris@srislawyer.com                               *Counsel for InterContinental Hotels Group*
*Counsel for Plaintiff Ismail Hanif*              *Resources*

SEEN and <u>AGREED</u>_____

<u>  /s/ Katherine E. Stott, Esq. *  </u>_____
Katherine E. Stott, VSB No. 48814
Assistant County Attorney
Jamie M. Greenzweig, VSB No. 75066
Senior Assistant County Attorney
Office of the County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
Tel: (703) 324-2421
Fax: (703) 324-2665
<u>Katherine.Stott@FairfaxCounty.gov</u>
<u>Jamie.Greenzweig@FairfaxCounty.gov</u>
*Counsel for Defendant Fairfax County
Government and Officer Moises Romero*

SEEN and <u>AGREED</u>_____

<u>  /s/ William L. Mitchell, II, Esq. *</u>_____
William L. Mitchell, II, VSB No. 48585
Michelle B. Jessee, VSB No. 80125
Eccleston & Wolf, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 278-5350 (fax)
wmitchell@ewva.com
*Counsel for Alexandria Hotel Company LLC,
Holiday Inn Express & Suites Alexandria
Fort Belvoir, Haley Hamre, and Sharon
Quinones Ramos*

Page 3 of 3

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **Ismail Hafiz Hanif** )<br>)<br>**Plaintiff(s)** )<br>)<br>**versus** )<br>)<br>**Old Town Holdings LLC et al.** )<br>)<br>**Defendant(s)** ) | **Case No. CL-2025-0007984** |

## SCHEDULING ORDER

A Term Day Hearing was held on **September 22, 2025.**

After discussing the various issues presented, it was **ORDERED:**

I.    Trial

The trial date is **September 14, 2026 at 10:00 AM with a jury.** The estimated length of the trial is **7 days.**

II.    Discovery

The parties must complete discovery, including depositions, by thirty (30) days before trial; however, depositions taken in lieu of live testimony at trial will be permitted until fifteen (15) days before trial. "Complete" means that all interrogatories, requests for production, requests for admissions and other discovery must be served sufficiently in advance of trial to allow a timely response at least thirty (30) days before trial. Depositions may be taken after the specified time period by agreement of counsel of record or for good cause shown, provided however, that the taking of a deposition after the deadline established herein will not provide a basis for continuance of the trial date or the scheduling of motions inconsistent with the normal procedures of the court. The parties have a duty to seasonably supplement and amend discovery responses pursuant to Rule 4:1(e) of the Rules of Supreme Court of Virginia. Seasonably means as soon as practical. No provision of this Order supersedes the Rules of Supreme Court of Virginia governing discovery. Any discovery motion filed must contain a certification that counsel has made a good faith effort to resolve the matters set forth in the motion with opposing counsel.

III.    Designation of Experts

If requested in discovery, plaintiff's, counter-claimant's, third party plaintiff's, and cross-claimant's experts must be identified on or before ninety (90) days before trial. If requested in discovery, defendant's and all other opposing experts must be identified on or before sixty (60) days before trial. If requested in discovery, experts or opinions responsive to new matters raised in the opposing parties, identification of experts must be designated no later than forty-five (45) days before trial. If requested, all information discoverable under Rule 4:1(b)(4)(A)(i) of the Rules of Supreme Court of Virginia must be provided or the expert

will not ordinarily be permitted to express any nondisclosed opinions at trial. The foregoing deadlines do not relieve a party of the obligation to respond to discovery requests within the time periods set forth in the Rules of Supreme Court of Virginia, including, in particular, the duty to supplement or amend prior responses pursuant to Rule 4:1(e).

IV.    Dispositive Motions

All dispositive motions should be presented to the court for hearing as far in advance of the trial date as practical. All counsel of record are encouraged to bring on for hearing all demurrers, special pleas, motions for summary judgment or other dispositive motions not more than sixty (60) days after being filed.

V.    Exhibit and Witness List

Counsel of record must exchange fifteen (15) days before trial a list specifically identifying each exhibit to be introduced at trial, copies of any exhibits not previously supplied in discovery, and a list of witnesses proposed to be introduced at trial. The lists of exhibits and witnesses must be filed with the Clerk of the Court simultaneously therewith but the exhibits should **not** then be filed. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence. Any objections to exhibits or witnesses must state the legal reasons therefor except on relevancy grounds, and must be filed with the Clerk of the Court and a copy delivered to opposing counsel at least five days before trial or the objections will be deemed waived absent leave of court for good cause shown.

VI.    Pretrial Conferences

Pursuant to Rule 4:13 of the Rules of the Supreme Court of Virginia, when requested by any party or upon its own motion, the court may order a pretrial conference wherein motions *in limine*, settlement discussions or other pretrial motions which may aid in the disposition of this action can be heard.

VII.    Motions *in Limine*

Absent leave of court, any motion *in limine* which requires argument exceeding five (5) minutes shall be duly noticed and heard before the day of trial.

VIII.    Witness Subpoenas

Early filing of a request for witness subpoenas is encouraged so that such subpoenas may be served at least ten (10) days before trial.

IX.    Continuances

Continuances will only be granted by the court for good cause shown.

X.    Jury Instructions

Counsel of record, unless compliance is waived by the court, must, two (2) business days before a civil jury trial date, exchange proposed jury instructions. At the commencement of trial, counsel of record must tender the court the originals of all agreed upon instructions and copies of all contested instructions with appropriate citations. This requirement does not preclude the offering of additional instructions at the trial.

XI.    Deposition Transcripts to be Used at Trial

Counsel of record must confer and attempt to identify and resolve all issues regarding the use of depositions at trial. It is the obligation of the proponent of any deposition of any non-party witness who will not appear at trial to advise opposing counsel of record of counsel's intent to use all or a portion of the deposition at trial at the earliest reasonable opportunity. Other than trial depositions taken after completion of discovery under Paragraph II, designations of portions of non-party depositions, other than for rebuttal or impeachment, must be exchanged no later than thirty (30) days before trial, except for good cause shown or by agreement of counsel. It becomes the obligation of the non-designating parties of any such designated deposition to file any objection or counter-designation within seven days after the proponent's designation. Further, it becomes the obligation of the non-designating parties to bring any objections or other unresolved issues to the court for hearing no later than 5 days before the day of trial.

XII.    Waiver or Modification of Terms of Order

Upon motion, the time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown.

Stephen C. Shannon
2025.09.23 16:10:17 -04'00'

JUDGE

Rule 1:13
Plaintiff(s) []/Counsel for Plaintiff(s) [X]

Rule 1:13
Defendant(s) []/Counsel for Defendant(s) [X]

**VIRGINIA:**

FILED
CIVIL PROCESSING

2025 JUL 30 P 12: 42
CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

ISMAIL HAFIZ HANIF,

    Plaintiff

v.

OLD TOWN HOLDINGS, LLC, *et al.*,

    Defendants.

**CASE NO.: CL-2025-7984**

## SECOND AGREED ORDER EXTENDING TIME TO FILE RESPONSIVE PLEADINGS

Plaintiff Ismail Hafiz Hanif and Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, Sharon Quinones Ramos, and InterContinental Hotels Group Resources, LLC (hereinafter "these Defendants"), as evidenced by the below signatures of their respective counsel, hereby stipulate and agree as follows:

1.    These Defendants initially obtained extensions of time to file responsive pleadings to the Complaint.

2.    Plaintiff, however, desires to file an Amended Complaint in this action. Therefore, Plaintiff and these Defendants have agreed that these Defendants shall not be required to respond to the current Complaint.

3.    To minimize the waste of party and judicial resources, Plaintiff and these Defendants have agreed that these Defendants shall have 21 days after the filing and service of the Amended Complaint upon them to file responsive pleadings thereto.

1

4.    The Fairfax County Government and Officer Moises Romero, the remaining defendants in this action, previously filed a Plea in Bar and Demurrer in response to the Complaint, and, by the signature of their attorney below, consent to the relief requested herein.

Based on the foregoing, the Court finds that this Second Agreed Order is supported by good cause and, therefore, it is hereby **ORDERED** that Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, Sharon Quinones Ramos, and InterContinental Hotels Group Resources, LLC shall not be required to respond to the current Complaint, and shall have up to and including 21 days from the date they are served with any Amended Complaint to file responsive pleadings thereto.

AND THIS CAUSE CONTINUES.

_Michael Devine_                Michael F. Devine
                                2025.08.18 16:28:50-04'00'
_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:

_William L. Mitchell, II_
William L. Mitchell, II (VSB #48585)
Michelle B. Jessee (VSB #80125)
ECCLESTON & WOLF, P.C.
10400 Eaton Place, Suite 107
Fairfax Virginia 22030
T: (703) 218-5330
F: (703) 218-5350
wmitchell@ewva.com
armstrong@ewva.com
*Counsel for Defendants Old Town*
*Holdings, LLC, Alexandria Hotel*
*Company, LLC, Holiday Inn Express*
*& Suites Alexandria-Fort Belvoir,*
*Haley Hamre, and Sharon Quinones Ramos*

SEEN AND AGREED:

_Michael Daniels_ wem (VSB #48585)
Michael L. Daniels (VSB #93154) (w/permission)
Atchuthan Sriskandarajah (VSB #41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, Virginia 22032
T: (703) 278-0405
F: (703) 278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

2

SEEN AND AGREED:

Bernard G. Feord, Jr. (VSB #28821) w/permission
Assistant County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
T: (703) 324-2421
F: (703) 324-2665
Bernard.Feord@fairfaxcounty.gov
*Counsel for Defendants Fairfax County
Government and Officer Moises Romero*

SEEN AND AGREED:

Jessica Golden (VSB #76775) w/permission
Kelbaugh Pfund & Messersmith, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
T: (804) 320-6300
F: (804) 320-6312
Jessica.Golden@kpmlaw.com
*Counsel for Defendant InterContinental
Hotels Group Resources, LLC*

3

Based on the foregoing, the Court finds that this Second Agreed Order is supported by good cause and, therefore, it is hereby **ORDERED** that Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Holiday Inn Express & Suites Alexandria-Fort Belvoir, Hayley Hamre, and Sharon Quinones Ramos shall not be required to respond to the current Complaint, and shall have up to and including 21 days from the date they are served with any Amended Complaint to file responsive pleadings thereto.

AND THIS CAUSE CONTINUES.

_____
JUDGE, Fairfax County Circuit Court

WE ASK FOR THIS:

_____
William L. Mitchell, II (VSB #48585)
Michelle B. Jessee (VSB #80125)
ECCLESTON & WOLF, P.C.
10400 Eaton Place, Suite 107
Fairfax Virginia 22030
T: (703) 218-5330
F: (703) 218-5350
wmitchell@ewva.com
armstrong@ewva.com
*Counsel for Defendants*

SEEN AND AGREED:

_____
Michael L. Daniels (VSB #93154)
Atchuthan Sriskandarajah (VSB #41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, Virginia 22032
T: (703) 278-0405
F: (703) 278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

SEEN AND AGREED:

Bernard G. Feord, Jr. (VSB #28821)
Assistant County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
T: (703) 324-2421
F: (703) 324-2665
Bernard.Feord@fairfaxcounty.gov
*Counsel for Defendants Fairfax County
Government and Officer Moises Romero*

SEEN AND AGREED:

Jessica Golden (VSB #
Kelbaugh Pfund & Messersmith, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
T: (804) 320-6300
F: (804) 320-6312
Jessica.Golden@kpmlaw.com
*Counsel for Defendant InterContinental
Hotels Group Resources, LLC*

3

SEEN AND AGREED:

_____
Bernard G. Feord, Jr. (VSB #28821)
Assistant County Attorney
12000 Government Center Parkway, Suite 549
Fairfax, Virginia 22035-0064
T: (703) 324-2421
F: (703) 324-2665
Bernard.Feord@fairfaxcounty.gov
*Counsel for Defendants Fairfax County
Government and Officer Moises Romero*

SEEN AND AGREED:

Jessica Golden (VSB # 767775)
Kelbaugh Pfund & Messersmith, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
T: (804) 320-6300
F: (804) 320-6312
Jessica.Golden@kpmlaw.com
*Counsel for Defendant InterContinental
Hotels Group Resources, LLC*

3

COMMONWEALTH OF VIRGINIA
*CIRCUIT COURT OF FAIRFAX COUNTY*
4110 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
703-691-7320
(Press 3, Press 1)

Ismail Hafiz Hanif vs. Old Town Holdings LLC et al.

CL-2025-0007984

TO:    Alexandria Hotel Company LLC
       Via RA: Vikash K Patel
       2875 Towerview Road, Suite A4
       Herndon VA 20171

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.

Done in the name of the Commonwealth of Virginia, on June 5, 2025.

CHRISTOPHER J. FALCON, CLERK

By: _____
            Deputy Clerk

Plaintiff's Attorney:  Michael L Daniels

Case 1:25-cv-01789-MSN-LRV    Document 1-1    Filed 10/16/25    Page 294 of 339
PageID# 304

E-FILED

05/30/2025 15:30:06

CL-2025-0007984

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**Ismail Hafiz Hanif,**

    By counsel:
    Law Offices of SRIS P.C.
    4008 Williamsburg Court
    Fairfax, VA 22032

      Plaintiff,

v.

**Old Town Holdings, LLC**

    Via: Registered Agent
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Alexandria Hotel Company, LLC**

    Via: Registered Agent          **Case No.:**
    Vikash K. Patel
    2875 Towerview Road, Suite A4
    Herndon, VA 20171

**Holiday Inn Express & Suites Alexandria
- Fort Belvoir,**

    6055 Richmond Highway
    Alexandria, VA 22303

**Haley Hamre, (Individually)**

    4104 Rosewood Dr., Unit 1
    Joint Base Andrews, MD 20762

**Sharon Quinones Ramos, (Individually)**

    955 S. Columbus St. Apt 424
    Arlington VA 22204

1

**Officer Moises Romero,**
(Individually and in his capacity as a
Fairfax County Police Department Officer)

    Serve: c/o Fairfax County Attorney
    Office of the County Attorney
    12000 Government Center Parkway
    Suite 549 Fairfax, VA, 22035

**Fairfax County Government,**

    Serve Chairman of the Board of Supervisors
    Chairman Jeffrey McKay
    12000 Government Center Parkway, Suite 530
    Fairfax, VA, 22035

    Serve: Fairfax County Attorney
    Office of the County Attorney
    12000 Government Center Parkway, Suite 549
    Fairfax, VA, 22035

and

**InterContinental Hotels Group Resources, LLC**

    Serve Registered Agent
    United Agent Group Inc.
    425 W. Washington St. Suite 4,
    Suffolk, Va, 23434-5320

    Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Ismail H. Hanif (hereinafter "Mr. Hanif" or "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; Officer Moises Romero; Fairfax County, Virginia; and InterContinental Hotels Group Resources, LLC (collectively, where appropriate, "Defendants"), and in support thereof states as follows:

2

## INTRODUCTION

1. This action seeks redress for the profound violation of Plaintiff Ismail H. Hanif's civil and common law rights and the significant damages he suffered when, on September 22, 2023, as a paying and lawfully registered guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir, he was subjected to racial profiling, falsely accused of trespassing by hotel management, who acted with gross negligence and willful misconduct, and then unlawfully detained, assaulted, battered, and falsely arrested by a Fairfax County Police Officer acting with gross negligence and malice.

2. Despite clear, readily available, and ultimately irrefutable evidence confirming Mr. Hanif's status as a lawful guest, the defendant hotel management and the defendant arresting officer engaged in conduct demonstrating a conscious and utter disregard for his rights and safety, culminating in a malicious prosecution for Disorderly Conduct that was ultimately dismissed when the truth of his guest status could no longer be ignored.

## PARTIES

3. **Plaintiff Ismail Hanif** is an individual residing at 1585 Springfield Avenue, Maplewood, NJ 07040. Mr. Hanif is an African American man.

4. Holiday Inn Express & Suites Alexandria - Fort Belvoir (the "Hotel") is a hotel located at 6055 Richmond Highway, Alexandria, VA 22303 and is a place of public accommodation.

5. The name Holiday Inn Express & Suites Alexandria – Fort Belvoir is not separately registered with the Virginia State Corporation Commission ("SCC") as a distinct legal entity or fictitious name, nor are there any close variations listed with the SCC. Upon information and belief, it is the operating name for the hotel premises owned and/or managed by other named Defendants, Alexandria Hotel Company, LLC and Old Town Holdings, LLC.

3

6. **Defendant Old Town Holdings, LLC** ("Old Town Holdings") is a Virginia limited liability company with a principal office address of 5963 Richmond Highway, Alexandria, VA 22303. Public records indicate that Old Town Holdings is the owner of record for the real property located at 6055 Richmond Highway, Alexandria, VA 22303, where the Hotel Operates.

7. **Defendant Alexandria Hotel Company, LLC** ("Alexandria Hotel Company") is a Virginia limited liability company with a principal office address of 5963 Richmond Highway, Alexandria, VA 22303. Alexandria Hotel Company, LLC, is the entity that holds itself out as responsible for the day-to-day operations, management, and staffing of the Holiday Inn Express and Suites located at 6055 Richmond Highway, Alexandria, VA 22303. Plaintiff alleges that Alexandria Hotel Company acted as an agent for Old Town Holdings, LLC, and/or Defendant IHG with respect to such operations, the full details of which are within the Defendants' knowledge and will be confirmed through discovery.

8. **Defendant Haley Hamre** ("Hamre") was, at all relevant times, the Director of Sales at the Hotel and an agent, servant, and/or employee of Old Town Holdings, LLC and/or Alexandria Hotel Company, LLC. Plaintiff further alleges that Hamre acted as an agent of IHG, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with IHG are matters particularly within the knowledge of IHG and the other Hotel Defendants and will be further elucidated through discovery.

9. **Defendant Sharon Quinones Ramos** ("Quinones Ramos") was, at all relevant times, the General Manager at the Hotel and an agent, servant, and/or employee of Old Town Holdings, LLC and/or Alexandria Hotel Company, LLC. Plaintiff further alleges that Quinones Ramos acted as an agent of IHG, acting within the course and scope of her employment and such agency. The precise nature and extent of this agency relationship with IHG are matters particularly within the

4

knowledge of IHG and the other Hotel Defendants and will be further elucidated through discovery.

10. **Defendant Officer Moises Romero** ("Officer Romero") is/was, at all relevant times, a sworn law enforcement officer employed by Defendant Fairfax County, Virginia, through its agency the Fairfax County Police Department ("FCPD"). At all times relevant to this complaint, Officer Romero was acting individually, under color of state law, and within the course and scope of his employment.

11. Officer Romero is the arresting officer in this case.

12. Officer Romero was the first officer on the scene and led the actions, which culminated in Mr. Hanif's unlawful arrest.

13. Fairfax County Police Department (FCPD) is a law enforcement agency and a division of the Fairfax County Government, established pursuant to Virginia law and responsible for the supervision, training and conduct of its officers and employees.

14. **Defendant Fairfax County, Virginia** (the "County") is a political subdivision of the Commonwealth of Virginia. At all relevant times, the County, through its agency, the FCPD, employed, trained, supervised, and was responsible for the conduct of Officer Romero. The FCPD is the law enforcement agency established pursuant to Virginia law and responsible for establishing and enforcing policies, customs, and practices regarding police conduct, including but not limited to, investigations, detentions, arrests, use of force, and the verification of information in situations involving alleged trespassing at public accommodations. The County is liable for the tortious acts of its employees, including Officer Romero, when such acts constitute gross negligence or intentional wrongdoing committed within the scope of employment, thereby falling outside the protection of sovereign immunity.

5

15. **Defendant InterContinental Hotels Group Resources, LLC ("IHG")** Defendant InterContinental Hotels Group Resources, LLC ("IHG"), also known as IHG Hotels and Resorts, is a foreign limited liability company registered to do business in Virginia.

16. As franchisor for the Holiday Inn brand worldwide, including the subject Hotel, IHG establishes, mandates, and/or enforces brand standards, operational procedures, guest service protocols, and training requirements for its franchisees, including, in this instance, Old Town Holdings, LLC, and/or Alexandria Hotel Company, LLC. These mandated standards and procedures include, but are not limited to, standards concerning guest interactions, non-discrimination, complaint resolution, and procedures for verifying guest status. Plaintiff alleges that IHG exercised sufficient control over the Hotel's operations, policies, and employee training (or exhibited a negligent failure in its oversight or provision of adequate policies and training regarding non-discrimination, de-escalation, and proper guest verification) such that an actual and/or apparent agency relationship exists between IHG and Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Hamre, and Quinones Ramos. The specifics of these control mechanisms, franchise agreements, mandated operational procedures, and training programs are within the exclusive knowledge and possession of IHG and its co-defendants and will be detailed through discovery. Alternatively, Plaintiff alleges that IHG's own policies, training mandates, or the negligent failure to provide adequate policies and training directly and proximately contributed to the violations of Mr. Hanif's rights alleged herein.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the claims asserted herein pursuant to Va. Code § 17.1-513, as the amount in controversy exceeds the jurisdictional limits of the General District Court. This Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1,

6

as the events giving rise to this Complaint occurred in Fairfax County, Virginia, and/or Defendants transact business, reside, or regularly conduct affairs within Fairfax County.

18. Venue is proper in this Court under Va. Code § 8.01-262 because one or more Defendants reside or have their principal place of business in Fairfax County, Virginia, and/or the cause of action, or a part thereof, arose in Fairfax County, Virginia.

## DEFINITIONS

19. For the purposes of this Complaint, "Hotel Defendants" shall refer collectively to Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; and, where agency, vicarious, or direct liability is established by the facts and law, InterContinental Hotels Group Resources, LLC (IHG).

## FACTUAL BACKGROUND

20. On September 22, 2023, Mr. Hanif was a registered and paying guest at the Holiday Inn Express & Suites Alexandria - Fort Belvoir. (the "Hotel")

21. Mr. Hanif was lawfully present at the Hotel prior to, during, and at the time of his unlawful arrest.

22. Despite being a lawfully registered guest with all attendant rights and privileges, Mr. Hanif was falsely accused of trespassing by the Hotel staff, specifically including Defendants Hamre and Quinones Ramos, who, acting with gross negligence and/or willful and wanton disregard for the truth, incorrectly and without any reasonable verification stated that Mr. Hanif was not a guest.

23. The Fairfax County Police Department, initially represented by Defendant Officer Romero, arrived at the Hotel in response to the false report instigated by Defendant Hamre.

24. Defendant Officer Romero, deliberately ignoring his training and accepted police practices, acted solely on the unverified and false information provided by the Hotel staff. Without conducting any

7

reasonable or adequate independent investigation to verify Mr. Hanif's guest status, despite multiple opportunities and clear indications that such investigation was warranted, Officer Romero forcibly and unlawfully detained Mr. Hanif, accusing him of trespassing.

25. Mr. Hanif was subsequently arrested by Officer Romero and maliciously charged with disorderly conduct, a charge that was ultimately dismissed by the Commonwealth's Attorney on February 28, 2024, when irrefutable video evidence and the Hotel's own eventual admissions confirmed Mr. Hanif's status as a paying guest and the utter baselessness of the accusations against him. (Fairfax County General District Court, Case No: GC23130096-00).

26. The actions of the Hotel Defendants and Officer Romero were grossly negligent, demonstrated bad faith and malice, and reflected a conscious and utter disregard for Mr. Hanif's clearly established rights as a guest and as a citizen. Specifically:

   a. Hotel management, including Defendants Hamre and Quinones Ramos, took no reasonable steps to confirm whether Mr. Hanif was a guest prior to calling the police and accusing Mr. Hanif of trespassing.

   b. Defendant Officer Romero, and any other officers under his direction or acting in concert with him, refused to take the most basic, reasonable, and readily available steps to confirm whether Mr. Hanif was a guest prior to detaining, assaulting, battering, and arresting him, thereby abdicating their investigative duties.

   c. The Hotel staff, including Defendants Hamre and Quinones Ramos, repeatedly and falsely asserted that Mr. Hanif was not a guest without taking the most basic steps to confirm their allegation and persisted in this false assertion even when presented with clear evidence to the contrary.

8

d. Officer Romero consciously ignored, or was deliberately indifferent to, at least five distinct and compelling facts and statements that would indicate to any reasonable person, let alone a trained and competent police officer, that Mr. Hanif was a lawful guest and that his assertion of being a guest warranted immediate and thorough investigation rather than continued unlawful detention and escalation.

e. The facts and statements ignored by Officer Romero include, but are not limited to:

   i. The presence of a room key in Mr. Hanif's possession, which was found and acknowledged by Officer Romero;

   ii. A Question from a superior officer, Lt. Meeks, about a second guest staying in the room with Mr. Hanif;

   iii. A second officer, Ofc. [Fitzgerald], indicating that there was a guest in the room with Mr. Hanif independent of the superior officer;

   iv. A second officer explicitly stating several times that Mr. Hanif had a room key;

   v. Mr. Hanif's direct and repeated requests for Officer Romero to verify his guest status by checking the Hotel registry, going to his room, or contacting his companion in the room.

f. Officer Romero explicitly stated that he was not going to investigate evidence that would have conclusively shown that Mr. Hanif was a guest because, in Officer Romero's subjective and improper view, Mr. Hanif was not "polite." This statement is a direct admission of an improper, arbitrary, and malicious basis for his official actions, demonstrating a profound abuse of his authority and an utter abdication of his duty to investigate objectively and impartially.

9

## TIMELINE OF EVENTS ON SEPTEMBER 22, 2023
### (Taken from Police Body Camera Video)

27. At or around 8:36 AM on September 22, 2023, Fairfax County Police were called by Hotel staff (Defendant Hamre) and dispatched to the scene for a complaint of a Black man in the breakfast area allegedly cursing and making a disturbance. The caller falsely stated that the man was not a guest of the Hotel.

28. At or around 8:56:37 AM – Officer Romero entered the Hotel lobby.

29. At or around 8:56:52 AM – Defendant Haley Hamre tells Officer Romero that Mr. Hanif is not a Guest.

30. At or around 8:57:29 AM – Defendant Haley Hamre states that she is the director of sales, and the General Manager [Defendant Sharon Quinones Ramos] is not on site yet.

31. At or around 8:57:42 AM – Officer Romero makes his initial contact with Mr. Hanif. Without any lawful provocation, reasonable suspicion, or probable cause, Officer Romero immediately and unlawfully seized Mr. Hanif by physically stopping him from leaving the breakfast area, placing his hand on Mr. Hanif's chest, stopping his forward progress, and pushing him back. Mr. Hanif asked if he was being detained, but Officer Romero refused to answer Mr. Hanif's repeated question about his detention status, further exacerbating the unlawful nature of the seizure.

32. This unwarranted, offensive, and non-consensual touching constituted an assault and battery upon Mr. Hanif by Officer Romero.

33. At or around 8:57:57 AM – Officer Romero states that Mr. Hanif is trespassing.

34. At or around 8:58:03 AM – Mr. Hanif again asks if he is being detained – Officer Romero responds, "If you're going to leave, leave."

10

35. At or around 8:58:01 AM – Officer Romero, without basis, asks Mr. Hanif if he stole anything – escalating the conflict.

36. At or around 8:58:08 AM – Mr. Hanif, relying on Officer Romero's explicit statement that he was free to leave, attempts to do so but is again forcibly stopped by Officer Romero who grabs Mr. Hanif using both hands and forces him back.

37. This action constituted a further unlawful assault and battery.

38. At or around 8:58:12 AM – Officer Romero (again) asks if Mr. Hanif stole anything. In response, the breakfast attendant, Debra, states that Mr. Hanif did not steal anything.

39. At or around 8:58:19 AM – Officer Romero tells Mr. Hanif to leave. Mr. Hanif, understandably confused and agitated by the conflicting commands and false allegations, refuses, and Officer Romero continues to tell Mr. Hanif to leave.

40. At or around 8:58:21 AM – Mr. Hanif says to Officer Romero, "You didn't pay. You leave!" highlighting his status as a paying guest of the Hotel.

41. At or around 8:58:31 AM – Breakfast attendant, Debra, attempts to explain the situation.

42. At or around 8:58:58 AM – Debra (attendant) confirms that the general manager [Defendant Quinones Ramos] is not there, and Officer Romero incorrectly states that Defendant Haley Hamre is the manager.

43. At or around 8:59:19 AM – Mr. Hanif starts recording the encounter and Defendant Haley Hamre attempts to leave the area.

44. At or around 8:59:27 AM, Officer Romero falsely told Mr. Hanif that the Hotel wanted him to leave, but no one from the Hotel had directly asked Mr. Hanif to leave at that time nor would anyone from the Hotel have any lawful basis for asking Mr. Hanif to leave given his status as a paying guest.

11

45. At or around 8:59:37 AM, Officer Romero makes his first direct assertion to Mr. Hanif that Mr. Hanif was not a guest relying solely on the unverified claims of Defendant Hamre.

46. At or around 8:59:40 AM, Mr. Hanif asks how Officer Romero knows that he's not a guest. Officer Romero responds, "They said you're not a guest." Mr. Hanif asks, "how do you know…?" and "Who said that…?"

47. At or around 8:59:51 AM, Mr. Hanif confronts Ms. Hamre asking if she said that he is not a guest.

48. At or around 9:00:05 AM, Officer Romero continued to demand that Mr. Hanif leave.

49. At or around 9:00:27 AM, Officer Romero finally asked Mr. Hanif, if he was a guest, for the first time – several minutes into the hostile encounter and after having physically assaulted Mr. Hanif and giving him conflicting commands.

50. At or around 9:00:28 AM, Mr. Hanif immediately responded that he was a guest.

51. At or around 9:00:30 AM, Rather than accept Mr. Hanif's assertion as the basis for further investigation with the Hotel staff, Officer Romero counters by asking "What room are you staying in?"

52. At or around 9:00:34 AM, Mr. Hanif reiterated that he was a guest for the second time saying, "I told you that I'm a guest, that's all you need to know."

53. At or around 9:00:45 AM, Rather than taking this additional opportunity to investigate, Officer Romero asked Mr. Hanif to leave again and called for support.

54. At or around 9:00:49 AM, Officer Romero stated that Mr. Hanif would be arrested for trespassing if he did not leave.

55. At or around 9:01:03 AM, Mr. Hanif continued to assert that he was a guest.

56. At or around 9:01:52 AM, Mr. Hanif explained why he was upset by the false accusations and unwarranted actions against him by the police and Hotel staff.

12

57. At or around 9:02:23 AM, Mr. Hanif was taken into custody with Officer Armel, who was in plain clothes, assisting in the unlawful arrest.

58. At or around 9:03:09 AM, Defendant Quinones Ramos arrived, passing the officers and Mr. Hanif as they were taking Mr. Hanif out of the hotel lobby.

59. At or around 9:06:06 AM, while searching Mr. Hanif incident to the unlawful arrest, Officer Romero found a Hotel room key card in Mr. Hanif's possession – direct physical evidence confirming Mr. Hanif's guest status.

60. At or around 9:06:54 AM, Officer Fitzgerald ran Mr. Hanif's ID at Officer Romero's Request.

61. At or around 9:07:00 AM, Officer Romero returned to the Hotel Lobby, while Mr. Hanif remained in custody in Officer Romero's squad car.

62. At or around 9:07:12 AM, Defendant Quinones Ramos, now present, asked to have Mr. Hanif trespassed despite having no personal knowledge of the preceding events and without taking any steps to verify Mr. Hanif's guest status.

63. At or around 9:07:14 AM, Officer Romero agreed to this request.

64. At or around 9:07:17 AM, Officer Romero asked if they were sure that Mr. Hanif was not a guest but received no immediate definitive answer that would justify Mr. Hanif's continued detention.

65. At or around 9:07:22 AM, Officer Romero asked Ms. Quinones Ramos if Mr. Hanif was a guest.

66. At or around 9:07:23 AM, Ms. Quinones Ramos falsely denied that Mr. Hanif was a guest.

67. At or around 9:07:24 AM, Officer Romero explicitly informed the Hotel staff, including Defendants Hamre and Quinones Ramos, that Mr. Hanif had a Hotel key card. This direct communication of exculpatory physical evidence put the Hotel staff on undeniable notice of a high probability that Mr. Hanif was a guest.

13

68.  At or around 9:07:25 AM, Defendant Quinones Ramos, in a demonstration of gross negligence and a reckless disregard for the truth, again denied that Mr. Hanif could be a guest, dismissively and falsely speculating (of the key card) "he might have picked it up off the floor." This statement by Quinones Ramos demonstrates a willful blindness to the truth and a predetermined, baseless assumption against Mr. Hanif, constituting gross negligence and evidencing malice.

69.  At or around 9:08:44 AM, Officer Fitzgerald reported to Lieutenant Meeks that Mr. Hanif claimed to have a guest staying in the room with him further evidence of Mr. Hanif's lawful presence in the Hotel.

70.  At or around 9:08:49 AM, Lieutenant Meeks asked why Mr. Hanif would not just "go with the program and go back to his room" but she was apparently unaware that Officer Romero had unlawfully prevented Mr. Hanif from doing so.

71.  At or around 9:09:10 AM, Mr. Hanif's ID came back valid, expiring in 2029, with no warrants or alerts.

72.  At or around 9:09:39 AM, Lieutenant Meeks went inside and asked Officer Romero and hotel staff if Mr. Hanif had family or a guest staying with him. Officer Romero, again failing to investigate, denied this without checking.

73.  At or around 9:09:47 AM, Ms. Quinones Ramos falsely claimed that Mr. Hanif just came in trying to get breakfast and started describing behavior she never witnessed – further demonstrating her commitment to a false narrative.

74.  At or around 9:10:55 AM, Ms. Quinones Ramos asked for a trespass form persisting in the unlawful course of action.

75.  At or around 9:11:34 AM, Officer Fitzgerald informed Officer Romero that Mr. Hanif said he had another guest staying with him in the room. Officer Romero countered that the general manager

14

(Defendant Quinones Ramos) said Mr. Hanif was not a guest, and, in so doing, Officer Romero demonstrated a reckless disregard for the truth by choosing to rely on demonstrably false information over exculpatory facts.

76. At or around 9:11:41 AM, Officer Isabella stated that Mr. Hanif had a Hotel room key.

77. At or around 9:11:42 AM, Officer Romero confirms that he saw the Hotel room key.

78. At or around 9:11:46 AM, Officer Isabella states a second time that Mr. Hanif had a Hotel room key.

79. At or around 9:11:47 AM, Officer Romero states that he is going to do the trespass form to ban Mr. Hanif from the Hotel per the manager's request – continuing the unlawful arrest and process.

80. At or around 9:11:50 AM, A M. Lieutenant Kuhar asks about the Hotel room key – suggesting that they take the key in to deactivate it if it doesn't belong to Mr. Hanif.

81. At or around 9:11:56 AM, Mr. Hanif asks to speak to a supervisor because, as he correctly stated, "the officers are not doing proper police work."

82. At or around 9:12:33 AM, Officer Isabella showed the room key to Ms. Quinones Ramos, who again denied its significance underscoring her refusal to investigate Mr. Hanif's guest status and further demonstrating her gross negligence in this situation.

83. At or around 9:12:55 AM, Lieutenant Meeks asked if anyone was registered under Mr. Hanif's name. Officer Isabella incorrectly denied this, because no one had actually checked the Hotel's registry at that point.

84. At or around 9:14:07 AM, Ms. Quinones Ramos was still outside, as seen on Officer Fitzgerald's dash cam.

85. At or around 9:14:35 AM, Officer Romero said to Mr. Hanif, "If you had been polite, we would have tried to figure things out." This statement is direct evidence of Officer Romero's malice and

15

his decision to arrest and pursue charges against Mr. Hanif based on personal animus and abuse of authority, rather than on any legitimate law enforcement purpose or probable cause.

86. At or around 9:16:00 AM, Officer Romero tells Lieutenant Meeks that Mr. Hanif wants to speak to a supervisor. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 AM to 09:21:56 AM.

87. Lieutenant Meeks and Mr. Hanif spoke from approximately 09:17:44 to 09:21:56.

88. At or around 9:16:06 AM, Defendant Sharon Quinones Ramos stunningly admitted to Officer Romero that Mr. Hanif was indeed a guest staying there with a friend and had checked in with another manager. Ms. Quinones Ramos further stated that the other manager remembered Mr. Hanif and confirmed his check-in, noting his description as a Black man with tattoos on his face.

89. Despite this admission and confirmation of Mr. Hanif's status as a paying guest, Defendant Quinones Ramos outrageously and inexplicably requested that the police proceed with charging Mr. Hanif with trespassing anyway and further requested that the other lawful guest also be removed from the Hotel room. This admission by Defendant Quinones Ramos, made after Mr. Hanif had already been unlawfully arrested and detained based on her and Hamre's false information, unequivocally establishes her actual knowledge of Mr. Hanif's status as a lawful guest. Her subsequent demand to Officer Romero to proceed with trespassing and charging Mr. Hanif despite this knowledge constitutes an act of profound bad faith, actual malice, and a willful and wanton disregard for Mr. Hanif's rights. It further demonstrates that the Hotel Defendants' actions were pretextual and intended to harass Mr. Hanif.

16

90. At or around 9:16:42 AM, The police declined to remove the other guest noting that because Mr. Hanif and the other guest were paid guests of the Hotel, they could not remove the other guest and that only the Hotel management could ask them to leave.

91. Despite this acknowledgement of Mr. Hanif's rights as a guest, the police unlawfully kept Mr. Hanif in custody.

92. At or around 9:16:57 AM, Ms. Quinones Ramos receives the completed trespass form from Officer Romero, asks if the name on the form is Mr. Hanif's name, and then signs the form – despite knowing that Mr. Hanif was actually a guest in the Hotel.

93. At or around 9:18:03 AM, Officer Isabela and Officer Romero joked about giving Mr. Hanif a parking ticket further showcasing their unprofessional conduct and callous indifference for Mr. Hanif's rights.

94. At or around 9:18:33 AM, Officer Romero suggested running the plates on Mr. Hanif's vehicle to see if Mr. Hanif's car was stolen. Officer Isabella runs the plates – a fishing expedition without any basis and a blatant attempt to find some reason to justify Mr. Hanif's continued detention.

95. At or around 9:24:34 AM, Lieutenant Meeks and Officer Isabella confirmed with Hotel staff that Mr. Hanif was the registered guest for room 121.

96. At or around 9:25:11 AM, Defendant Haley Hamre referred to Mr. Hanif as the guest.

97. At or around 9:25:39 AM, the Hotel staff confirmed that Mr. Hanif was the paid guest for the room.

98. At or around 9:28:00 AM, Officers Meeks and Isabella visited room 121.

99. At or around 9:28:39 AM, officers Meeks and Isabella personally confirmed that a guest named Talia was also a guest in room 121 and that Mr. Hanif was the registered guest for that room.

17

100. Despite all the unequivocal proof of Mr. Hanif's status as a paying guest, Mr. Hanif was still transported and processed on a criminal charge. The decision by Officer Romero and supervising officers to transport and process Mr. Hanif despite the mountain of exculpatory evidence and the Hotel's admission demonstrates a reckless, if not intentional, continuation of an unlawful arrest and initiation of a malicious prosecution, undertaken with gross negligence and/or malice.

**COUNT I – DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF VA. CODE 2.2-3904 ET SEQ. (VIRGINIA HUMAN RIGHTS ACT)**

**(Against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; Sharon Quinones Ramos; and InterContinental Hotels Group Resources, LLC)**

101. Plaintiff incorporates and realleges the facts in paragraphs 1 - 100 as if fully set forth herein.

102. The foregoing events took place on September 22, 2023

103. As a direct result of the actions of the Hotel Defendants, instigated by their false reports and discriminatory animus, Officer Romero arrested Mr. Hanif. Mr. Hanif was subsequently charged with Criminal Disorderly Conduct in violation of Va. Code § 18.2-415, a misdemeanor..

104. The disorderly conduct charge against Mr. Hanif was pending until February 28, 2024, when it was dismissed by the Commonwealth.

105. The disorderly conduct charge was pending for a period of 160 Days.

106. On September 10, 2024, 195 days after the conclusion of the criminal case against Mr. Hanif, Counsel for Mr. Hanif filed two complaints with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") alleging: 1) Discrimination in a Place of Public Accommodation; and 2) Law Enforcement Misconduct.

107. On March 24, 2025, 196 days after the initial filing of Mr. Hanif's complaints with OCR, counsel for Mr. Hanif requested a "Right to Sue" letter from OCR and made a second request for the same on April 7, 2025.

108. On April 15, 2025, counsel for Mr. Hanif received a Notice of Right to Sue from OCR. (Exhibit 1 – Right to Sue Notice.)

109. Va. Code § 2.2-3904 defines a "Place of public accommodation" as "all places or businesses offering or holding out to the general public goods, services, privileges, facilities, advantages, or accommodations." The Hotel was, at all relevant times, a place of public accommodation.

110. It is unlawful for any person, including the Hotel Defendants, to deny any individual, or to make any distinction, discrimination, or restriction on account of race, color, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. (Va. Code § 2.2-3904(B)).

111. On September 21, 2023, Mr. Hanif, a African American man, checked in to the Hotel as a registered and paying guest.

112. At that time, one of the amenities offered and available to registered guests was an included breakfast in the Hotel's designated breakfast facility.

113. On the morning of September 22, 2023, Mr. Hanif entered the lobby through the front door, after leaving his vehicle, which was parked in the Hotel parking lot.

114. Mr. Hanif proceeded to the breakfast area, as was his right as a guest, without returning to his room.

115. The breakfast attendant, Debra, asked Mr. Hanif if he was a guest.

116. Mr. Hanif, perceiving he was being singled out due to his race, responded by asking if the attendant had asked all of the other (non-African American) guests in the breakfast area if they were guests.

117. Mr. Hanif then informed the attendant that he was a guest and proceeded to have breakfast.

19

118. At the time Mr. Hanif arrived for breakfast, the guests in the breakfast area were predominantly of other races, and Mr. Hanif was one of very few, if not the only, African American guests in the breakfast area at that moment. These facts relating to the racial composition of the guests are based on Mr. Hanif's direct observations.

119. Notwithstanding the exchange between Mr. Hanif and the attendant, Mr. Hanif sat alone and quietly had breakfast without further incident, or disturbance until confronted by Defendant Hamre and Defendant Officer Romero.

120. The Hotel staff, specifically Defendant Hamre, acting on discriminatory animus and/or as a result of conscious or unconscious bias due to Mr. Hanif's race, called the police and falsely stated that Mr. Hanif was creating a disturbance and was not a guest.

121. Defendant Hamre's claim that Mr. Hanif was not a guest was made without any reasonable basis or verification of Mr. Hanif's status as a guest.

122. Mr. Hanif was identified by his race ("Black Man") and clothing on the call to police and not by name.

123. The Hotel management, including Defendants Hamre and Quinones Ramos, did not ask Mr. Hanif to leave the Hotel based on any legitimate, non-discriminatory reason (nor, initially, at all), nor did they take any reasonable steps to confirm his status as a paying guest prior to calling the police and instigating his removal and arrest.

124. This failure to verify, and immediate escalation to police action, was motivated, in whole or in substantial part, by Mr. Hanif's race and/or his appearance as an African American man, and constituted a deviation from how similarly situated non-African American guests would have been treated under like circumstances. Alternatively, if such actions represent standard practice, then such practice itself is discriminatory.

20

125. In order to induce the police to detain and arrest Mr. Hanif, and motivated by discriminatory animus, the Hotel Defendants, through Defendant Hamre and subsequently through Defendant Quinones Ramos, falsely and repeatedly claimed that Mr. Hanif was not a guest, thereby denying him, on account of his race, the full and equal enjoyment of the Hotel's accommodations, privileges, and services, including the right to be present in the Hotel and enjoy its amenities without being disturbed by baseless accusations and police intervention.

126. Prior to his arrest, Mr. Hanif informed Officer Romero that he was a guest.

127. Despite Mr. Hanif's insistence that he was a guest and numerous objective facts confirming this (e.g., his possession of a Hotel room key card, his assertion that a second guest was staying in the room with him, and his offer to prove his status), the Hotel staff, particularly Defendants Hamre and Quinones Ramos, driven by discriminatory bias, still insisted on his arrest and removal.

128. When confronted by the police with the fact that Mr. Hanif had a Hotel key card in his possession, Defendant Quinones Ramos, reflecting her discriminatory assumptions and determination to deny Mr. Hanif his rights as a guest, callously and baselessly dismissed this crucial evidence, falsely speculating that he might have picked the key card up from the floor. This statement further evidenced her unsubstantiated and biased position that Mr. Hanif, an African American man, could not possibly be a guest and her resolve to deny him the resulting services and privileges in this place of public accommodation.

129. Defendant Quinones Ramos falsely indicated to police that Mr. Hanif just came in off the street and was loading up on breakfast – despite the fact that she was not present to witness any of the events leading to the arrest and had no factual basis for this assertion.

130. Even after Defendant Quinones Ramos internally confirmed through another manager that Mr. Hanif was indeed a registered guest (based on his description as a Black man with tattoos on his

21

face – itself a racial identifier used in the context), she persisted in her discriminatory course of conduct.

131. Despite knowing that Mr. Hanif was a guest, Defendant Quinones Ramos still insisted on having Mr. Hanif "trespassed" and removed, effectively seeking to punish him for behavior she never witnessed and which was, in any event, a reaction to the Hotel Defendants' own discriminatory and provocative actions. This insistence was pretextual and a continuation of the discriminatory treatment against Mr. Hanif on account of his race.

132. The actions of the Hotel Defendants, including Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Haley Hamre, and Sharon Quinones Ramos, individually and collectively, by treating Mr. Hanif differently and less favorably than non-African American guests, and by denying him services and instigating his false arrest based on his race, constituted unlawful discrimination by denying Mr. Hanif, on the basis of his race and color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hotel, in direct violation of Va. Code § 2.2-3904(B).

133. Defendant IHG is vicariously liable for the discriminatory acts of its agents Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Hamre, and Quinones Ramos, who were acting within the scope of their actual and/or apparent agency and in furtherance of IHG's business, as previously alleged. Furthermore, Plaintiff alleges that Defendant IHG, through its franchise agreements, its mandatory training programs (or its negligent failure to provide adequate training regarding non-discrimination, implicit bias, de-escalation, and proper guest verification), and/or its control or right of control over operational standards, created an environment wherein such discriminatory actions by its franchisee's employees were foreseeable and inadequately addressed, and/or directly contributed to the denial of Mr. Hanif's rights. The specific details of IHG's franchise agreements,

22

training programs, and mechanisms of control or oversight which establish this liability are within the exclusive knowledge and possession of IHG and will be established through discovery. IHG's failure to ensure its franchisees and their employees complied with non-discrimination laws and basic guest verification protocols constitutes a breach of its own duties and/or ratifies the discriminatory conduct.

134. As a direct and proximate result of this unlawful discrimination by the Hotel Defendants, Mr. Hanif suffered a deprivation of his civil rights, false arrest, unlawful detention, malicious prosecution, assault, battery, significant emotional distress, humiliation, fear, anxiety, damage to his reputation, and other consequential damages, including the need to retain legal counsel for his criminal defense.

## COUNT II – ASSAULT AND BATTERY

### (Against Officer Moises Romero and Fairfax County, Virginia)

135. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 as if fully set forth herein.

136. At Officer Romero's initial contact with Mr. Hanif, on September 22, 2023, when Mr. Hanif, a lawful guest of the Hotel, attempted to walk past him in the breakfast area, Defendant Officer Romero committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif when he placed his hand on Mr. Hanif's chest and physically pushed him backward.

137. This act by Defendant Officer Romero also constituted an intentional assault as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of an imminent battery and further harmful or offensive contact.

23

138. Mr. Hanif asked Officer Romero several times if he was being detained. Officer Romero evasively responded, "If you're going to leave, leave," thereby affirmatively representing to Mr. Hanif that he was not detained and was free to depart.

139. Relying on Officer Romero's explicit representation that he was free to leave, Mr. Hanif again attempted to walk past Officer Romero and leave the area.

140. Rather than permit Mr. Hanif to leave as Officer Romero had just represented he could, and without informing Mr. Hanif that he was being detained or providing any lawful basis whatsoever for such detention or renewed use of force, Officer Romero again committed an intentional and unlawful battery by offensively and without consent, legal justification, or privilege, touching Mr. Hanif, using both hands to forcibly push Mr. Hanif back and continue the unlawful seizure and confrontation.

141. This second act of unwanted and offensive physical force by Defendant Officer Romero also constituted an intentional assault, as it was an overt act intended to cause and did cause Mr. Hanif to experience a reasonable apprehension of further imminent battery and harmful or offensive contact.

142. Mr. Hanif did not consent to being touched, pushed, or physically handled in any way by Officer Romero.

143. At all relevant times, Mr. Hanif was a lawful and registered guest of the Hotel and had a clear legal right to be on the premises.

144. Mr. Hanif was not trespassing, nor was he engaged in any unlawful activity that would justify Officer Romero's use of force or physical contact when Officer Romero arrived or during these initial, unprovoked interactions.

24

145. Officer Romero's physical actions and use of force were not privileged under the circumstances, as Mr. Hanif was not actively resisting a lawful arrest (as no lawful basis for arrest existed at that time, nor had any intent to arrest been communicated), was not committing any offense in Officer Romero's presence justifying such force, posed no threat to Officer Romero or others, and was attempting to comply with or clarify Officer Romero's ambiguous and conflicting statements, including his representation that Mr. Hanif could leave.

146. Officer Romero's unconsented, offensive, and unjustified physical contact with Mr. Hanif constituted assault and battery.

147. Officer Romero was at all times acting in his official capacity as a Fairfax County Police Officer and within the course and scope of his employment with Defendant Fairfax County. His actions, however, were undertaken with gross negligence and/or malice, thereby exceeding the scope of any legitimate discretionary authority.

148. Defendant Fairfax County is vicariously liable for the assault and battery committed by its employee, Officer Romero. Officer Romero's actions, constituting intentional torts (assault and battery) committed with malice and/or gross negligence in the performance of his duties, fall outside the protection of sovereign immunity generally afforded to the County for the simple negligence of its employees. The County's liability arises from respondeat superior for these non-immunized acts.

149. As a direct and proximate result of the assault and battery committed by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered physical injury, pain, physical discomfort, offensive touching, fear, intimidation, severe emotional distress, public humiliation, and other damages.

25

## Count III – False Arrest

**(Against Defendants Officer Moises Romero; Fairfax County, Virginia; Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; and Sharon Quinones Ramos)**

150. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 149 as if fully set forth herein.

151. Defendants, acting individually and in concert, intentionally and unlawfully caused Mr. Hanif to be confined and detained against his will, without his consent, and without legal justification or privilege.

152. Defendant Officer Romero effectuated the arrest and confinement of Mr. Hanif by: (a) physically restraining him through repeated assaults and batteries; (b) verbally commanding him and asserting authority over his freedom of movement; (c) formally placing him in custody and handcuffing him; and (d) transporting him in a police vehicle to a police station for processing.

153. Mr. Hanif was conscious of this confinement and did not consent to it.

154. The arrest and confinement of Mr. Hanif were without probable cause, and therefore unlawful and unprivileged, because:

    a. Mr. Hanif was initially detained and subsequently arrested ostensibly for trespassing, yet, as Defendants knew or should have known through any reasonable inquiry, he was a confirmed, paying, and lawful guest of the Hotel with an absolute legal right to be present on the premises. No probable cause existed to believe he was trespassing.

    b. Neither Officer Romero nor the Hotel Defendants (Hamre and Quinones Ramos) conducted any objectively reasonable, or indeed any meaningful, verification of Mr. Hanif's guest status via the Hotel registry, by checking his key, or through other readily available means before instigating, causing, and effectuating his arrest for trespassing. This failure was a conscious dereliction of duty.

26

    c.   The subsequent charge of disorderly conduct was pretextual and also lacked probable cause, as detailed in Count IV (Malicious Prosecution).

    d.   At no point did Officer Romero possess articulable facts sufficient to establish probable cause that Mr. Hanif had committed, was committing, or was about to commit any crime that would justify his seizure and arrest.

155.   Defendants Old Town Holdings, LLC, Alexandria Hotel Company, LLC, Haley Hamre, and Sharon Quinones Ramos (the "Hotel Instigating Defendants" for this Count) actively instigated, participated in, and proximately caused Mr. Hanif's false arrest by:

    a.   Knowingly or with reckless disregard for the truth providing false and misleading information to Officer Romero that Mr. Hanif was not a guest and was trespassing;

    b.   Persistently demanding, encouraging, and/or importuning Officer Romero to arrest and/or trespass Mr. Hanif based on this false and unverified information, thereby substituting their unlawful demands for the officer's independent judgment;

    c.   Continuing to insist on Mr. Hanif's arrest and trespass even after Defendant Quinones Ramos possessed actual knowledge and had admitted that Mr. Hanif was, in fact, a registered and lawful guest, thereby demonstrating malice and an intent to cause an unlawful arrest.

156.   Defendant Officer Romero knew, or in the exercise of reasonable diligence and adherence to standard police practices should have known, that there was no probable cause to arrest Mr. Hanif for trespassing or any other offense. His awareness of the presence of the room key, Mr. Hanif's consistent assertions of guest status, statements from other officers regarding the key and a second guest, and the utter failure of Hotel staff to provide credible, verified information, all negated any reasonable belief that Mr. Hanif was trespassing.

27

157. Officer Romero's decision to arrest Mr. Hanif under these circumstances was made with reckless disregard for Mr. Hanif's rights, lacked any lawful basis, and constituted an abuse of his lawful authority and/or gross negligence.

158. Defendant Fairfax County is vicariously liable for the false arrest/false imprisonment committed by its employee, Officer Romero. Officer Romero's actions in arresting Mr. Hanif without probable cause constituted gross negligence and/or an intentional tort (false arrest/imprisonment) committed with malice or an abuse of lawful authority, thereby falling outside the protection of sovereign immunity. The County's liability arises from respondeat superior for these non-immunized acts.

159. As a direct and proximate result of the false arrest instigated and carried out by Defendants, Mr. Hanif suffered significant damages, including but not limited to loss of liberty, physical discomfort and injury from handcuffing and transport, public humiliation, emotional distress, psychological harm including anxiety and fear, damage to his reputation, and financial losses including costs associated with his arrest, detention, and defense of the unsubstantiated disorderly conduct case.

### Count IV – Malicious Prosecution
### (Against Defendant Officer Moises Romero and Defendant Fairfax County)

160. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161. Defendant Officer Romero instituted and caused to be continued a criminal proceeding (Fairfax County General District Court Case No: GC23130096-00) against Mr. Hanif for the specific criminal offense of disorderly conduct, in violation of Virginia Code § 18.2-415.

162. The aforementioned criminal proceeding for disorderly conduct was terminated in Mr. Hanif's favor on February 28, 2024, when the Commonwealth's Attorney, recognizing the lack of merit,

28

moved to dismiss the charge (nolle prosequi or dismissed). This termination was indicative of Mr. Hanif's actual innocence of the charge.

163. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero without probable cause.

    a. Virginia Code § 18.2-415 requires conduct having a direct tendency to cause acts of violence by the person or persons at whom it is directed.

    b. At no point did Mr. Hanif's conduct, even when understandably and justifiably agitated by being falsely accused, unlawfully detained, and physically assaulted, have a direct tendency to cause acts of violence by anyone. His words and actions were a direct and foreseeable reaction to the unlawful conduct of the Defendants.

    c. This contention is supported by the fact that no one, including Officer Romero or any Hotel staff, responded to Mr. Hanif with violence or indicated they felt imminently threatened by violence from him.

    d. Officer Romero did not witness any conduct by Mr. Hanif upon his arrival that could remotely constitute disorderly conduct; Mr. Hanif was quietly finishing his breakfast.

    e. Any agitation displayed by Mr. Hanif was a direct and foreseeable result of the provocative, unlawful, and rights-violating actions of Officer Romero and the Hotel Defendants, including false accusations of theft and trespassing, and Officer Romero's physical assaults and unlawful detention.

    f. Officer Romero and other officers were aware, or became aware prior to formalizing the charge of disorderly conduct, that Mr. Hanif was a paying and lawful guest and thus not trespassing.

29

g. The disorderly conduct charge was, therefore, a pretextual charge manufactured by Officer Romero to attempt to justify an already unlawful arrest and detention, initiated after any conceivable basis for any trespass claim had evaporated and was known by him to be false.

h. The Fairfax County Magistrate refused to issue a trespassing charge against Mr. Hanif precisely because he was a paying guest of the Hotel, further evidencing the lack of probable cause for any initial detention or arrest related to his presence, and highlighting the baselessness of Officer Romero then pivoting to a disorderly conduct charge.

164. The criminal proceeding for disorderly conduct was instituted and continued by Officer Romero with malice. Facts that show Officer Romero's Malice include, but are not limited to the following:

a. Malice is directly evidenced by Officer Romero's statement to Mr. Hanif, "If you had been polite, we would have tried to figure things out," an unambiguous admission that the decision to arrest and prosecute was motivated by Officer Romero's personal animus, displeasure, or as a means of punishment, rather than a good faith belief based on facts that Mr. Hanif had committed any crime.

b. Malice is further evidenced by Officer Romero proceeding with and fabricating the disorderly conduct charge despite the utter lack of any reasonable factual basis, knowing the initial trespass claims from the hotel were false or unverified, and after the hotel management themselves had confirmed Mr. Hanif was a guest but, through Defendant Quinones Ramos, still outrageously desired his continued detention and prosecution. Officer Romero's alignment with this malicious civilian desire, rather than adherence to law and fact, demonstrates his own malice.

30

c. The pursuit of the disorderly conduct charge as a pretext after the trespassing allegation was known by Officer Romero to be false, demonstrates a willful and malicious disregard for Mr. Hanif's rights and an improper purpose to injure Mr. Hanif.

d. Malice is further evidenced by Officer Romero's participation in jokes about giving Mr. Hanif a parking ticket and his suggestion to run the plates on Mr. Hanif's car to see if it was stolen, all while Mr. Hanif was unlawfully detained. These actions demonstrate a vindictive mindset and an attempt to find *any* charge to levy against Mr. Hanif, irrespective of actual wrongdoing – a further indication of malice.

165. Defendant Fairfax County is vicariously liable for the malicious prosecution initiated and continued by its employee, Officer Romero. Officer Romero's actions in pursuing a baseless charge with malice constituted an intentional tort committed in the scope of his employment but far exceeded any legitimate exercise of police discretion, thus falling outside the protection of sovereign immunity.

166. As a direct and proximate result of the malicious prosecution by Defendant Officer Romero, for which Defendant Fairfax County is vicariously liable, Mr. Hanif suffered significant damages, including but not limited to legal fees and costs incurred in his criminal defense, loss of liberty during the arrest and booking process, damage to his reputation and standing in the community, profound emotional distress including humiliation, anxiety, anger, and fear, psychological harm, and other consequential damages.

31

**Count V: Gross Negligence**

**(Against Defendants Old Town Holdings, LLC; Alexandria Hotel Company, LLC; Haley Hamre; and Sharon Quinones Ramos**
**(collectively the "Hotel Gross Negligence Defendants" for this Count))**

167. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 166 as if fully set forth herein.

168. Defendants Old Town Holdings, LLC and Alexandria Hotel Company, LLC (collectively, the "Corporate Hotel Defendants" for this Count) own and/or operate the Hotel as a place of public accommodation for paying guests.

169. Defendants Haley Hamre and Sharon Quinones Ramos were, at all relevant times, managerial employees and/or agents of the Corporate Hotel Defendants, acting within the course and scope of their employment and agency, and vested with authority concerning guest interactions and hotel security.

170. As innkeepers, the Corporate Hotel Defendants, and through them their agents and employees Hamre and Quinones Ramos, owed Mr. Hanif, a registered and lawful paying guest, a legal duty of reasonable care.

171. This duty of reasonable care included, but was not limited to, the duty to:

   a. Accurately and diligently verify his guest status before accusing him of trespassing or causing law enforcement to be summoned to remove him or arrest him for such an offense.

   b. Refrain from making false, unverified, or reckless accusations against him to law enforcement that would foreseeably lead to his detention or arrest.

32

    c. Take prompt and reasonable steps to investigate and correctly resolve guest status inquiries, particularly when a person asserts guest status, before escalating to police action and instigating arrest.

    d. Ensure their conduct, policies, and procedures (or lack thereof) did not create an unreasonable risk of, or actually lead to, the false accusation, false arrest, or wrongful deprivation of liberty of a lawful guest.

    e. Train and supervise their employees, including managerial staff like Hamre and Quinones Ramos, on proper, non-discriminatory guest verification procedures, de-escalation techniques, and the critical importance of accurate information when involving law enforcement.

    f. Exercise prudence and diligence in their interactions with guests to protect them from unwarranted harm, humiliation, and deprivation of their rights on the Hotel premises.

172. Defendants Hamre and Quinones Ramos, acting individually and on behalf of the Corporate Hotel Defendants, breached these duties in a manner that demonstrated such an utter disregard of prudence as to constitute a complete neglect of the safety and rights of Mr. Hanif, thereby constituting gross negligence under Virginia law.

173. The gross negligence of these Hotel Gross Negligence Defendants, individually and collectively, is evidenced by, inter alia, their numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of their legal duties respecting the rights of Mr. Hanif, including but not limited to:

    a. Defendant Hamre initiating a police call and instigating police action based on a false report that Mr. Hanif was trespassing and causing a disturbance, without any prior

33

attempt to verify Mr. Hanif's readily ascertainable guest status, thereby recklessly setting in motion the chain of events that harmed Mr. Hanif.

b. Both Defendants Hamre and Quinones Ramos completely failing to check the Hotel's guest registry, consult with other staff who may have checked Mr. Hanif in, examine Mr. Hanif's key if offered, or make other simple, obvious, and readily available inquiries to confirm Mr. Hanif's status, despite his repeated assertions of being a guest and the high stakes of involving police for a trespass accusation. This failure showed an utter indifference to their duty of care.

c. Defendant Quinones Ramos, upon being informed by police that Mr. Hanif possessed a Hotel room key – strong evidence of his guest status – outrightly and contemptuously dismissing this critical fact by baselessly and illogically speculating he "picked it up off the floor," thereby demonstrating a deliberate refusal to consider exculpatory evidence and an utter disregard for prudence.

d. Defendant Quinones Ramos providing false and inflammatory information to the police that Mr. Hanif "just came in off the street," an event she did not witness and had no factual basis to assert, thereby recklessly exacerbating the situation and misleading law enforcement with a complete neglect for the truth.

e. Defendant Quinones Ramos, even after internally confirming through another manager that Mr. Hanif was indeed a registered guest (meaning she possessed actual knowledge of his lawful status), shockingly and maliciously insisting that police proceed with trespassing him and continue with his arrest. This act demonstrates not merely a lack of care, but a conscious and utter disregard for Mr. Hanif's known legal right to be on the

34

premises and a complete neglect of her duties as an innkeeper, rising to the level of gross negligence and/or willful misconduct.

f. The Corporate Hotel Defendants' failure to implement and enforce adequate policies and training for their employees regarding proper guest verification, non-discriminatory guest treatment, and appropriate procedures for addressing alleged disturbances without recklessly involving law enforcement against lawful guests, which created the conditions for and foreseeably led to the gross negligence of Hamre and Quinones Ramos.

174. The conduct of Defendants Hamre, Quinones Ramos, and vicariously the Corporate Hotel Defendants (Old Town Holdings, LLC and Alexandria Hotel Company, LLC), was not merely a failure to exercise ordinary care, but demonstrated a degree of negligence showing an utter disregard of prudence amounting to a complete neglect of the safety and fundamental rights of Mr. Hanif, a paying guest, and constituted a heedless and palpable violation of legal duties owed to him, thereby constituting gross negligence.

175. As a direct and proximate result of this gross negligence by the Hotel Gross Negligence Defendants, Mr. Hanif was falsely accused, unlawfully detained and arrested, publicly humiliated, subjected to physical restraint, endured a malicious criminal prosecution, was deprived of his liberty, and suffered severe emotional distress, psychological harm, damage to his reputation, and other consequential damages.

**Count VI: Gross Negligence**
**(Against Defendants Officer Romero, and Fairfax County, Virginia)**

176. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 175 as if fully set forth herein.

35

177. At all relevant times on September 22, 2023, Defendant Officer Moises Romero was acting under color of state law and within the course and scope of his employment as a sworn law enforcement officer of the Fairfax County Police Department, an agency of Defendant Fairfax County.

178. As a law enforcement officer, Officer Romero owed Mr. Hanif, and the public generally, a legal duty to perform his police duties with reasonable care and in compliance with established law, police department policies, and accepted police practices. This duty included, but was not limited to, the duty to conduct adequate and objective investigations before depriving an individual of liberty, to verify information before acting upon it to arrest, to refrain from using excessive or unwarranted force, to not arrest individuals without probable cause, and to act impartially without regard to personal pique or animus.

179. Defendant Officer Romero breached these duties in a manner so egregious that it evinced an utter disregard of prudence and a complete neglect of Mr. Hanif's constitutional and common law rights, thereby constituting gross negligence.

180. Officer Romero's gross negligence is evidenced by, inter alia, his numerous acts and omissions on September 22, 2023, which showed a heedless and palpable violation of his legal duties respecting the rights of Mr. Hanif, including but not limited to:

    a. Failing entirely to take the most basic, reasonable, and readily available investigative steps to verify Mr. Hanif's lawful guest status (such as checking the Hotel registry, checking the room key, or speaking with Mr. Hanif's companion) before detaining, assaulting, battering, and arresting him, despite Mr. Hanif's repeated assertions of guest status and the presence of multiple pieces of clearly exculpatory evidence. This was a complete abdication of his investigative duty.

36

b.  Willfully and inexplicably disregarding or consciously choosing to ignore clear, compelling, and readily apparent exculpatory facts that overwhelmingly indicated Mr. Hanif was a lawful guest. These facts included Mr. Hanif's possession of a working Hotel room key (which Officer Romero saw), information from other officers about the key and a second guest in Mr. Hanif's room, and Mr. Hanif's own direct requests to verify his status with his companion guest or the Hotel registry. Such disregard shows a complete neglect of his duty to consider all facts.

c.  Unnecessarily and unlawfully escalating a verbal encounter, which he himself initiated based on false information, into a physical one by repeatedly assaulting and battering Mr. Hanif without any lawful justification, privilege, or provocation from Mr. Hanif.

d.  Arresting Mr. Hanif for trespassing without a shred of credible evidence amounting to probable cause, and in the face of substantial evidence showing he was a lawful guest, thereby demonstrating a complete neglect of the probable cause requirement.

e.  His unambiguous statement that "If you had been polite, we would have tried to figure things out," which is a direct admission that his decision-making process regarding Mr. Hanif's liberty was improperly and arbitrarily influenced by his personal feelings or animus rather than by objective facts, established police procedure, and law. This constitutes a reckless and flagrant dereliction of his sworn duty to act impartially and justly, amounting to an utter disregard of prudence.

f.  Participating in, encouraging, and facilitating the continuation of Mr. Hanif's unlawful detention and subsequent malicious prosecution for disorderly conduct even as evidence overwhelmingly and irrefutably confirmed his innocence of any trespass and the

37

baselessness of the disorderly conduct charge. This demonstrates a complete neglect for Mr. Hanif's rights once falsely accused.

g. Failing to de-escalate the situation, and instead actively escalating it through baseless accusations (e.g., "did you steal anything?"), physical force, and conflicting commands, contrary to accepted police practices and demonstrating an utter disregard for the safety and rights of Mr. Hanif.

181. This conduct by Officer Romero was so egregious, reckless, and indifferent to the rights and safety of Mr. Hanif that it rises far above simple negligence to the level of gross negligence, thereby stripping Officer Romero and, vicariously, Fairfax County of any immunity (including common law qualified immunity for discretionary acts or sovereign immunity) to which they might otherwise claim entitlement under Virginia law.

182. Defendant Fairfax County, as Officer Romero's employer, is vicariously liable under the doctrine of respondeat superior for the injuries and damages caused by Officer Romero's gross negligence committed within the course and scope of his employment, as such gross negligence is not protected by sovereign immunity.

183. The sovereign immunity of Fairfax County does not extend to acts of its employees that constitute gross negligence. Furthermore, the Fairfax County Police Department, in a letter dated January 22, 2025, concerning this incident (Exhibit 2 – FCPD Disposition Letter), admitted that there were "separate policy violations" by its officer(s) in connection with Mr. Hanif's arrest. These admitted policy violations lend further factual support to the claim that Officer Romero's conduct deviated grossly from established standards of care, procedure, and his training, and thus constituted gross negligence.

38

184. The acts and omissions of Defendant Fairfax County, through its agent and employee Officer Romero, demonstrate a willful and wanton disregard for Plaintiff's rights, or at a minimum, gross negligence.

185. The failure of supervising FCPD Lieutenants on scene (including but not limited to Lt. Meeks and Lt. Kuhar) to intervene effectively, to correct Officer Romero's obviously flawed and biased investigation, and to prevent the unlawful arrest and subsequent malicious prosecution of Mr. Hanif, despite being aware of many of the same compelling exculpatory facts (such as the room key and the statements about a second guest), further illustrates the environment of negligence within which Mr. Hanif's rights were violated and can constitute gross negligence on the part of such supervisors, for which the County may also be liable.

186. The foregoing conduct of Officer Romero, as well as the inaction or improper actions of his supervisors, demonstrates gross negligence, defined under Virginia law as conduct that "shows an utter disregard of prudence amounting to a complete neglect of the safety [and rights] of another" or "a heedless and palpable violation of legal duty respecting the rights of others." (e.g., *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991); *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945))

187. As a direct and proximate result of Officer Romero's gross negligence, and the gross negligence of other FCPD personnel for which Defendant Fairfax County is liable, Plaintiff suffered unlawful detention, false arrest, assault, battery, malicious prosecution, physical discomfort and injury, public humiliation, severe emotional distress, psychological harm, and other compensable injuries and damages.

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER**

39

WHEREFORE, Plaintiff Ismail Hanif respectfully requests that this Court enter judgment in his favor and against Defendants on all counts listed herein, awarding:

A. Ten-Million Dollars ($10,000,000.00) in compensatory and/or special damages in the aggregate across all counts;

B. $350,000 in Punitive damages or the maximum amount allowable by statute;

C. An award of Reasonable costs and attorney's fees, particularly pursuant to Va. Code § 2.2-3907(C) and § 2.2-3908(D) for Count I, and as otherwise permitted by law;

D. Pre-judgment and post-judgment interest; and

E. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Michael L. Daniels, Esq. (VSB# 93154)
Atchuthan Sriskandarajah, Esq. (VSB# 41115)
Law Offices of SRIS P.C.
4008 Williamsburg Court
Fairfax, VA 22032
P: 703-278-0405
F: 703-278-0420
michael.daniels@srislawyer.com
sris@srislawyer.com
*Counsel for Plaintiff Ismail Hanif*

40

# OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
## OFFICE OF CIVIL RIGHTS

---

# NOTICE OF RIGHT TO FILE A CIVIL ACTION

| | |
|---|---|
| **TO:  ISMAIL H. HANIF, CHARGING PARTY**<br>**ATTN: MICHAEL L. DANIELS, ESQ.**<br>**LAW OFFICES OF SRIS, P.C.**<br>**4008 WILLIAMSBURG COURT**<br>**FAIRFAX, VA 22032**<br><br>☐ ON BEHALF OF AGGRIEVED PERSON WHOSE IDENTITY IS CONFIDENTIAL IN ACCORDANCE WITH 1 VA. ADMIN. CODE § 45-20-30 | **FROM:**  Office of the Attorney General<br>Office of Civil Rights<br>202 N. 9th Street<br>Richmond, VA 23219<br>Phone: 804.225.2292 |
| **CHARGE NUMBER(S):**<br><br>OCR No:  25-3286<br><br>EEOC No: N/A | **OCR Representative:**<br>Name:    Timothy Wilson<br>Telephone: 804.225.2292 |

### Notice to the Person Aggrieved:

In accordance with the Virginia Human Rights Act (VHRA), this is your Notice of Right to File a Civil Action (Notice) issued for the above-numbered charge and in accordance with Va. Code § 2.2-3907. Pursuant to 1 VAC 45-20-98(C), your lawsuit under the VHRA **must be filed in a state court WITHIN 90 DAYS OF THIS NOTICE** or your right to sue based on this charge in state court will be lost.

*For additional information regarding your rights, please see the back side of this page.*

If your complaint involves employment discrimination and was dual filed by the Office with the U.S. Equal Employment Opportunity Commission (EEOC), the Office will notify the EEOC of the issuance of this Notice. (For any complaints involving federal law claims, the time limit for filing a suit in federal court will be based on federal law and, therefore, may be different.)

☒  More than 180 days have passed since the filing of this complaint.

☐  Less than 180 days have passed since the filing of this complaint, but the Office has determined that it is unlikely that it will be able to complete its administrative processing of the complaint within 180 days from the day the complaint was filed.

☒  The Charging Party has requested this Notice.

☒   The Office is ceasing its processing of this complaint.

☐   The Office will continue to process this complaint.

*If you file a lawsuit based on this complaint, please send us a copy of your court complaint.*

| | |
|---|---|
| Issued on behalf of the Office of Civil Rights by:<br><br><br>**Christine Lambrou Johnson, Chief** | **Date Issued:  04/11/2025** |

cc:  Holiday Inn Express & Suites Alexandria – Fort Belvoir
ATTN: General Manager
6055 Richmond Highway
Alexandria, VA 22303

OCR-Notice 09-16-2022

**EXHIBIT**

**1**

# OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
## OFFICE OF CIVIL RIGHTS

## Information Related to Filing Suit Under the Laws Enforced

## by the Office of the Attorney General - Office of Civil Rights

This information relates to filing a lawsuit in state court under Virginia law. If you also plan to sue claiming violations of federal law, please be aware that time limits may be shorter and other provisions of federal law may be different than those described below. *If this charge was dual filed with the U.S. Equal Employment Opportunity Commission (EEOC), the EEOC will issue its separate Notice of Right to Sue to the Charging Party for the relevant federal law claims upon receiving notification of the Office's dismissal of this charge pursuant to its issuance of this Notice.*

### PRIVATE SUIT RIGHTS – VIRGINIA HUMAN RIGHTS ACT, VA. CODE § 2.2-3900 et. seq.

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice. Therefore, you should keep a record of the date you receive this** Notice. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell your attorney the date on which you received this Notice.

Your lawsuit may be filed in the appropriate Virginia general district or circuit court or, if federal law claims are involved, in the U.S. District Court of competent jurisdiction. Whether you file in a Virginia or federal court is a matter for you to decide or in consultation with your attorney, if you have one. If you elect to file your lawsuit in federal court, you should make sure to share your Notice of Right to Sue from the EEOC with your attorney as well as this Notice, as different time limits may apply. Your lawsuit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.

### ATTORNEY REFERRAL AND ASSISTANCE

If you need assistance finding an attorney or have any questions about your legal rights, you may wish to contact the Virginia Lawyer Referral Service by telephone at (800) 552-7977 or by email at lawyerreferral@vsb.org, or a local legal aid service. If you need a copy of the information in this Office's file regarding your complaint, please request it promptly in writing and provide your OCR case number as shown on your Notice. Although the Office destroys case files after a certain time, all investigative files are kept for at least one year after our last action on the case. Therefore, if you file a lawsuit and want to obtain a copy of the investigative file, please submit your written request **within one year** of this Notice.

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

OCR-Notice 09-16-2022



# County of Fairfax, Virginia

To protect and enrich the quality of life for the people, neighborhoods, and diverse communities of Fairfax County

**Kevin Davis**
*Chief of Police*

**Brian J. Reilly**
*Executive Assistant*
*Chief of Police*

**Robert A. Blakley**
*Assistant Chief of Police*
*Operations*

**Brooke D. Wright**
*Assistant Chief of Police*
*Investigations*

**Eli Cory**
*Assistant Chief of Police*
*Administration*

**Deputy Chief**
**John M. Lieb**
*Commander, Internal*
*Affairs Bureau*

**Major Erica C. Webb**
*Commander, Internal*
*Affairs Investigations*
*Division*

January 22, 2025

Mr. Ismail Haafiz Hanif
1585 Springfield Avenue
Maplewood, NJ 07040

REF: 23IA-1597

Dear Mr. Hanif,

The Fairfax County Police Department (FCPD) has completed an administrative investigation of your complaint dated September 9, 2024. The investigation conducted by Second Lieutenant Gregory Salino, Employee Identification Number 330851, included a comprehensive examination of the facts and circumstances surrounding the event and the actions taken by PFC M. Romero which occurred on September 22, 2023.

Your complaint alleged that PFC Romero racially profiled you and that he unlawfully arrested you.

During this administrative investigation, you were interviewed by Second Lieutenant Gregory Salino on October 16, 2024. The Body Worn Camera (BWC), In-Car-Video (ICV), officer report, and court-related information were reviewed. Additionally, all officers involved in the incident were interviewed.

The investigation revealed the following facts:

On September 22, 2024, you were at the Holiday Inn at 6055 Richmond Highway in Alexandria, Virginia. The hotel staff contacted police, alleging you were acting in a disorderly manner in the continental breakfast area. PFC Romero arrived and spoke with you in addition to the hotel staff. The hotel staff requested that you leave the premises as permitted by the code of Virginia. You disregarded the request of the hotel staff and officers and yelled profanities in front of numerous guests of the hotel. PFC Romero placed you under arrest for trespassing and disorderly conduct.



**EXHIBIT**
**2**

**Fairfax County Police Department**
12099 Government Center Parkway
Fairfax, Virginia 22035
703-246-2195, TTY 711
Facsimile 703-246-3876
www.fairfaxcounty.gov

Mr. Hanif
January 22, 2025
Page 2

Based upon a review of all the evidence, it has been determined that the evidence does not support your allegations. PFC Romero's actions were lawful and in compliance with FCPD Regulations. However, during this administrative investigation, separate policy violations were identified, and the Department has taken corrective action. Any disciplinary actions taken against an employee are part of their personnel file and cannot be shared. Should you have any further questions of the FCPD concerning this matter, please contact Captain Christopher Cosgriff, Assistant Commander of the Internal Affairs Bureau, at 703-246-2793.

The Fairfax County Police Department is committed to providing transparency to the community we serve. The Fairfax County Board of Supervisors created the Police Civilian Review Panel (CRP) and the Office of the Independent Police Auditor. These two entities act independently by reviewing completed Fairfax County Police Department investigations into complaints containing allegations of abuse of authority or serious misconduct to ensure accuracy, completeness, thoroughness, objectivity, and impartiality.

- The Office of the Independent Police Auditor provides oversight of investigations involving the use of force by Fairfax County Police Officers. A detailed description of that office can be found at: http://www.fairfaxcounty.gov/policeauditor/

- The Civilian Review Panel can review investigations of the abuse of authority or serious misconduct by Fairfax County Police Officers. A detailed explanation of the Civilian Review Panel's function can be found at: http://www.fairfaxcounty.gov/policecivilianreviewpanel/

Complaints or requests for review can be made by contacting:

**Office of the Independent Police Auditor**
**12000 Government Center Parkway, Suite 233A**
**Fairfax, Virginia 22035**
**Email: IPAPoliceAuditor@fairfaxcounty.gov**
**Phone: 703-324-3459**

Or

**Fairfax County Police Civilian Review Panel**
**Email: PoliceCivilianReviewPanel@fairfaxcounty.gov**
**Phone: 703-324-2502**

Mr. Hanif
January 22, 2025
Page 3


For questions or additional assistance with this process, please contact the Office
of the Independent Police Auditor.

Sincerely,

Deputy Chief John M. Lieb
Commander, Internal Affairs Bureau
Fairfax County Police Department

JL/gjs

cc:    Administrative Investigation File